**No.: 26–_____**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE UBER TECHNOLOGIES, INC.

UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC

*Defendants-Petitioners,*

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

*Respondent,*

Plaintiffs in All Cases Consolidated, Transferred, or Filed in MDL No. 3084, *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*,

*Real Parties in Interest.*

On petition for a writ of mandamus to the United States District Court for the Northern District of California
Case No. 3:23-md-03084-CRB

## UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1

**Shook, Hardy & Bacon, L.L.P.**
John Rosenthal
1800 K St. NW, Suite 1000
Washington, D.C. 20006
(202) 783-8400

Michael B. Shortnacy
2121 Avenue of the Stars,
Suite 1400
Los Angeles, CA 90067
(424) 285-8330

Maria Salcedo
Daniel E. Cummings
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

**Perkins Coie, L.L.P.**
Michael R. Huston
Jordan M. Buckwald
2525 E Camelback Rd., Suite 500
Phoenix, AZ 85016-4227
(602) 351-8000

Jeffrey Capelouto
1301 Second Avenue, Suite 4200
Seattle, WA 98101-3804
(206) 359-8000

*Counsel for Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

# TABLE OF CONTENTS

INTRODUCTION AND RELIEF SOUGHT ............................................. 9

ISSUE PRESENTED ........................................................................ 12

BACKGROUND ............................................................................... 12

    1.  District Court's Rule 502(d) Non-Waiver Order and Privilege "Clawback" Procedures ............................................................... 12

    2.  Document Production and Initial Privilege Dispute ..................... 14

    3.  Magistrate Judge's *Sua Sponte* Blanket Waiver Ruling .............. 16

    4.  Special Master's Application of the Blanket Waiver Ruling ......... 18

LEGAL STANDARD ....................................................................... 20

ARGUMENT .................................................................................. 21

    1.  The District Court Clearly Erred by Making a Blanket Ruling that Uber Waived Privilege. .................................................................. 21

        A. The District Court's ruling violated the plain text of Rule 502(d) and the District Court's own Rule 502(d) order. ........................ 22

        B. The district court also violated Federal Rule of Evidence 502(b) by failing to make an inadvertence finding. ............................. 28

    2.  Mandamus is the only meaningful avenue for Uber to obtain relief and protect its privileged and protected documents. .................... 32

    3.  This Court's intervention can prevent an oft-repeated error on a question that has divided district courts. .................................... 34

CONCLUSION ................................................................................ 43

## TABLE OF AUTHORITIES

**Cases**                                         **Page(s)**

*Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona,*
881 F.2d 1486 (9th Cir. 1989) ............................................... 32

*Amobi v. District of Columbia Dept. of Corrections,*
262 F.R.D. 45 (D.D.C. 2009) .................................................. 30

*Arconic Inc. v. Novelis Inc.,*
2019 WL 911417 (W.D. Pa. Feb. 26, 2019) ........................... 28

*B&G Foods N. Am., Inc. v. Embry,*
2024 WL 922900 (E.D. Cal. March 4, 2024) .......................... 29

*Baker v. Dolly, Inc.,*
2024 WL 1240736 (W.D. Wash. Mar. 22, 2024) ..................... 37

*Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.,*
1988 WL 138254 (E.D.N.Y. Dec. 19, 1988) ........................... 30

*Bauman v. United States District Court,*
557 F.2d 650 (9th Cir. 1977) ....................... 20–21, 32, 34

*Blum v. Amazon.com, Inc.,*
2026 WL 279408 (W.D. Wash. Feb. 3, 2026) ......................... 37

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,*
2013 WL 2322678 (S.D.N.Y. May 21, 2013) ....................... 26, 30

*Brookfield Asset Management, Inc. v. AIG Financial Products Corp.,*
2013 WL 142503 (S.D.N.Y. Jan. 7, 2013) ............................. 37

*Carmody v. Bd. of Trs. of Univ. of Ill.,*
893 F.3d 397 (7th Cir. 2018) ............................................. 29–30

*Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.,*
218 F. Supp. 3d 197 (E.D.N.Y. 2016) ................................. 41–42

*Cheney v. U.S. Dist. Ct. for D.C.*,
 542 U.S. 367 (2004)................................................................20

*Cole v. U.S. Dist. Ct. For Dist. of Idaho*,
 366 F.3d 813 (9th Cir. 2004).......................................... 20–21

*Datel Holdings Ltd. v. Microsoft Corp.*,
 2011 WL 866993 (N.D. Cal. March 11, 2011) ....................29

*Epic Games, Inc. v. Apple, Inc.*,
 2025 WL 4663944 (N.D. Cal. Feb. 25, 2025)................. 30–31

*Epic Games, Inc. v. Apple Inc.*,
 781 F. Supp. 3d 943 (N.D. Cal.), *rev'd and*........................41

*Federal Trade Commission v. Amazon.com, Inc.*,
 801 F. Supp. 3d 1213 (W.D. Wash. 2025)...........................40

*Fifer Support Servs., LLC v. Lyndon S. Ins. Co.*,
 2024 WL 1241922 (W.D. Wash. Mar. 22, 2024) ................37

*Great-West Life & Annuity Ins. Co. v. Am. Economy Ins. Co.*,
 2013 WL 5332410 (D. Nev. Sept. 23, 2013).......... 23–24, 39

*Guidiville Rancheria of California v. United States*,
 2013 WL 6571945 (N.D. Cal. Dec. 13, 2013)......................29

*GXO Logistics Supply Chain, Inc. v. Young Living Essential
 Oils, LC*,
 2024 WL 4960008 (N.D. Miss. Dec. 3, 2024)......................36

*Hatfield v. Bonneville Cnty.*,
 2025 WL 358441 (D. Idaho Jan. 31, 2025) .................. 30, 36

*Hernandez v. Tanninen*,
 604 F.3d 1095 (9th Cir. 2010).............................................32

*Hostetler v. Dillard*,
 2014 WL 6871262 (S.D. Miss. Dec. 3, 2014).......................41

*In re Kellogg Brown & Root, Inc.*,
 756 F.3d 754 (D.C. Cir. 2014)..............................................42

*In re Kirkland,*
  75 F.4th 1030 (9th Cir. 2023) ...................................................... 201

*In re Mersho,*
  6 F.4th 891 (9th Cir. 2021) ...................................................... 20–21

*In re Zetia (Ezetimibe) Antitrust Litig.,*
  2019 WL 6122012 (E.D. Va. July 16, 2019) ...................................... 29

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,*
  529 F.3d 371 (7th Cir. 2008) ...................................................... 30

*Karnoski v. Trump,*
  926 F.3d 1180 (9th Cir. 2019) .................................................... 20

*Kasbarian v. Equinox Holdings, Inc.,*
  2016 WL 4974945 (C.D. Cal. Sept. 16, 2016) ................................... 38

*Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York,*
  2024 WL 1856302 (S.D.N.Y. Apr. 26, 2024) ..................................... 25

*Melendres v. Sheridan,* 2025 WL 3124741 (D. Ariz. Nov. 7, 2025) ................................................................. 40–41

*Osorio v. United States,*
  2024 WL 4113341 (D. Ariz. Aug. 22, 2024) ...................................... 37

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.,*
  2015 WL 11117170 (E.D. Wash. Aug. 5, 2015) .............................. 36–37

*Pac. Coast Steel v. Leany,*
  2011 WL 4704217 (D. Nev. Oct. 4, 2011) ........................................ 30

*Passadore v. State Farm Mut. Auto. Ins. Co.,*
  2023 WL 3034254 (D. Nev. Apr. 21, 2023) ...................................... 37

*Phillips v. E.I. Dupont De Nemours & Co.,*
  534 F.3d 986 (9th Cir. 2008) ...................................................... 33

*Prime AZ/Libra, LLC v. Fid. Nat'l Title Ins. Co.*,
2020 WL 4341267 (D. Ariz. July 10, 2020)........................................36

*Rabin v. Pricewaterhousecoopers LLP*,
2016 WL 5897732 (N.D. Cal. Oct. 11, 2016) .....................................38

*Roberts v. Gutierrez*,
2024 WL 4466725 (E.D. Wash. Oct. 10, 2024) ..................................37

*San Diego Coastkeeper v. SeaWorld Parks & Ent., Inc.*,
2025 WL 3275676 (S.D. Cal. Nov. 21, 2025) .....................................37

*Sibert v. King Cnty. Dep't of Cmty. & Hum. Health Servs.
Behav. Health & Recovery Div.*,
2019 WL 5549617 (W.D. Wash. Oct. 28, 2019) ...........................37–38

*Taction Tech., Inc. v. Apple Inc.*,
2021 WL 4150342 (S.D. Cal. Sept. 13, 2021) .....................................37

*Thomas v. Marshall Public School*,
690 F. Supp. 3d 941 (D. Minn. 2023)................................................37

*Traverse Therapy Servs., PLLC v. Sadler-Bridges Wellness
Grp., PLLC*,
2023 WL 7525102 (W.D. Wash. Nov. 13, 2023) ................................37

*U.S. Home Corp. v. Settlers Crossing, LLC*,
2012 WL 3025111 (D. Md. July 23, 2012) .........................................38

*United Physician Grp., LLC v. Leche*,
742 F. Supp. 3d 1251 (N.D. Ga. 2024)........................................39–40

*United States for Use & Benefit of SCI Infrastructures, LLC
v. Cherokee Gen. Corp.*,
2023 WL 7624807 (W.D. Wash. Nov. 14, 2023) ................................37

*United States v. Bauer*,
132 F.3d 504 (9th Cir. 1997)..............................................................42

*United States v. Caroleo*,
2019 WL 5869690 (E.D.N.Y. Nov. 11, 2019) .....................................37

*United States v. Hall,*
2020 WL 7027473 (N.D. Tex. Nov. 30, 2020) ................................... 37

*United States v. United Health Grp., Inc.,*
2020 WL 10731257 (C.D. Cal. Nov. 9, 2020) .................................. 29

*Vioxx Prods. Liab. Litig. Steering Comm. v. Merck & Co.,*
*Inc.,*
2006 WL 1726675 (5th Cir. May 26, 2006) ..................................... 28

*VPR Brands LP v. Jupiter Rsch. LLC,*
2021 WL 4247931 (D. Ariz. Sept. 16, 2021) .................................... 37

**Statutes and Rules**

All Writs Act, 28 U.S.C. § 1651 ................................................................ 20

Federal Rule of Civil Procedure 53 ...................................................... 20

Federal Rule of Evidence 502, Pub. L No. 110–322, 122 Stat.
3537 ................................................................................................ *passim*

Federal Rule of Evidence 502, Stat. of Cong. Intent ....................... 22–23

Federal Rule of Evidence 502, Adv. Comm. Notes .......................... 23, 35

**Legislative History**

S. Rep. No. 110–264 (2008) .................................................................... 22

**Other Authorities**

Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict*
*Litigation*, 82 Tul. L. Rev. 2323, 2373–38 (2008) ............................... 34

Declaration of Professor Daniel Capra, co-author of Federal
Rule of Evidence 502, author of Rule 502's Committee
Note (A64–68) ......................................................................... 24–25, 29

The Defendants in this multi-district litigation ("MDL") Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively "Uber"), respectfully submit this Petition for Writ of Mandamus and Other Appropriate Relief.

## INTRODUCTION AND RELIEF SOUGHT

Uber seeks a writ from this Court directing the district court to vacate its order summarily ruling that Uber's inadvertent production of privileged documents waived any and all privilege as to those protected materials.

Uber has already produced more than 1.7 million documents in this MDL. Of course, in a case of this scale, there will be numerous privileged documents that Uber cannot produce. Plaintiffs nonetheless objected to scores of entries on Uber's privilege log. After issuing a few exemplary rulings, the district court ordered Uber to re-review all disputed entries on the log based on "lessons learned" from the court's prior orders. Uber worked diligently to comply with that instruction, and ultimately reclassified thousands of documents. But working on the very compressed timeframe ordered by the district court, Uber inadvertently produced

9

some documents that are privileged and should not have been transmitted.

Thankfully, Federal Rule of Evidence 502 contemplates this scenario, and provides a solution. Or at least it should have. Rule 502(d) authorizes a court to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court." Consistent with that Rule, the district court clarified from the outset of this litigation that "the production of any privileged . . . information in this case shall not be deemed a waiver or impairment of any claim of privilege." A184. And it established procedures for the parties to "claw back" any privileged documents they had produced. A185–186.

Yet despite the Rule and its corresponding order, the district court ruled *sua sponte* (and without any briefing, prior notice or even a pending privilege dispute) that Uber had forever waived privilege over any document that it had previously produced following its re-review of privileged documents. While Uber attempted to claw back only a small number of such documents, the district court concluded that Uber had categorically waived privilege as to thousands of documents. That is, the court ruled that it does not matter the strength of Uber's privilege argument (the

10

court will not consider it) nor the individualized circumstance of any document. The district court's doors are simply closed to Uber for any clawback dispute related to thousands of documents in Uber's "lessons learned" productions.

Uber has since exhausted every avenue to seek correction from the district court. That leaves Uber no choice but to seek relief from this Court. To be clear, Uber does not ask this Court to rule on the ultimate merits of any individual privilege dispute. All it asks from this Court is a writ directing the district court to make those individualized rulings, rather than resting on a misguided theory of categorical waiver that conflicts with Rule 502(d).

The circumstances of this MDL proceeding make it necessary for this Court to review this issue now via this interlocutory writ. This Court's intervention will be important for the thousands of cases in this MDL. Without review now from this Court, there is a serious threat that much of the efficiency of the MDL procedure will be nullified. This MDL has multiple bellwether trials set to occur in the coming months. But any trial in which the plaintiff relies on privileged documents may eventually need to be undone, and the value of the MDL process to the parties and

the judicial system would be lost. Thus, this Court's intervention will not just protect Uber's fundamental attorney-client privilege in a single case; it will also promote the overall integrity and efficiency of the broader MDL.

This Court's ruling, moreover, will materially benefit district courts throughout this circuit; while some have correctly interpreted Rule 502(d), others have committed the same error as the district court here. Because discovery disputes so rarely make it to this Court on direct appeal, this Court has not yet been able to intervene. This mandamus petition presents that opportunity. The Court should grant the writ.

## ISSUE PRESENTED

Did the district court clearly err by ruling that Uber waived privilege over documents that it produced inadvertently following a re-review, notwithstanding the plain text of Rule 502(d) and its own order applying Rule 502(d)?

## BACKGROUND

### 1. District Court's Rule 502(d) Non-Waiver Order and Privilege "Clawback" Procedures

*In re Uber Technologies, Inc., Passenger Sexual Assault Litigation* centralizes thousands of actions alleging that Uber failed to implement

appropriate safety precautions to protect riders from sexual assault or harassment by independent drivers using the Uber platform. *See* MDL No. 3084. The Judicial Panel on Multidistrict Litigation transferred the actions to Judge Charles Breyer in the Northern District of California after finding that the cases share common factual questions—including Uber's knowledge of the prevalence of sexual assault, its background check and safety practice, and its handling of complaints—and that centralization would eliminate duplicative discovery and prevent inconsistent trial rulings. Document production by Uber is substantially complete, and bellwether trials are underway.

Early in the MDL, the district court entered a pretrial Rule 502(d) and Privileged Materials Order.[1] That order protects against waiver of privilege based on the production of documents or things in discovery in the MDL:

> Pursuant to Federal Rule of Evidence 502(d), ***the production of any privileged or otherwise protected or exempted information in this case shall not be deemed a waiver or impairment of any claim of privilege or protection in this case or in any other federal or state proceeding***, including, but not limited

---

[1] In the district court, this order (Pretrial Order No. 14) is often referred to as "PTO 14."

to, the attorney-client privilege [or] the protection afforded to work product materials . . . .

A184 (emphasis added).

The order also contains a procedure for parties to "clawback" privileged or protected documents that have been produced by giving notice to other parties. A185–186. And it provides procedures for parties to dispute those attempted clawbacks: a formal notice, a conferral period, submission of a joint letter brief under seal, and court resolution. A185–186.

## 2. Document Production and Initial Privilege Dispute

From the start, the MDL Plaintiffs' leadership aggressively pushed for expansive discovery on a shortened timeline. Uber ultimately produced approximately 1.7 million documents (not including extensive case-specific productions and data), collecting and reviewing countless more, all in approximately 18 months.[2] A13. Because the litigation related to issues that had often previously been escalated to in-house and outside counsel, many of these documents were protected by attorney-client privilege and attorney work product protections. Uber's privilege log contained tens of thousands of such documents. A13.

---

[2] The 1.7 million documents consist of approximately 6.2 million pages.

By late 2024, Plaintiffs had systematically challenged tens of thousands of entries in Uber's privilege logs. A13. The Magistrate Judge ruled on several sample sets of privilege disputes in late-2024 and early-2025, and ordered Uber to apply "lessons learned" from those rulings within a very short time (14 or 21 days) to amend previously produced privilege logs and better tailor future privilege logs. A13, A141, A157, A170, A172–73, A180–183.

Uber employed a team to review its privilege logs in a good faith effort to apply the "lessons learned" to other documents, removing or narrowing numerous privilege claims in the process. A13. Eventually, Uber began, and the Magistrate Judge subsequently ordered, a full-scale re-review of all disputed entries on Uber's privilege logs to align Uber's privilege claims with the court's guidance. A141. All this occurred while Uber was producing records of company document custodians and taking depositions of those custodians on an expedited schedule. A174–83. Uber ultimately modified its privilege log entries for thousands of documents by (1) producing numerous documents with narrowed privilege redactions, (2) making redactions rather than fully withholding documents, and (3) in some cases, removing documents from the log altogether. A13.

Importantly, when producing documents to Plaintiffs, Uber consistently represented that its productions were "not intended to, and [did] not, waive any applicable privilege or other legal basis under which information may be protected from disclosure." A13. Uber thus invoked the non-waiver provision under Rule 502(d) and the court's corresponding order. A13.

Later in the litigation, Uber attempted to claw back forty-two privileged documents that it inadvertently produced in the re-review process. A12, A29–30.

### 3. Magistrate Judge's *Sua Sponte* Blanket Waiver Ruling

Privilege disputes in this litigation were initially overseen by the Magistrate Judge, with responsibilities later transferred to a Special Master. A115–17. It is ultimately the Special Master's rulings, and the district court's later sign-off, that Uber challenges here. But this saga began with a Magistrate Judge ruling. And the Special Master's later orders cannot be understood without the context of the Magistrate Judge's initial *sua sponte* privilege waiver ruling.

At a status conference, the Magistrate Judge held that Uber had "waived the right to clawback documents that it originally designated as

privileged and then de-designated as part of the privilege dispute resolution process" the Magistrate Judge oversaw. A72–73, A113. The Magistrate Judge issued this ruling *sua sponte*, with no prior notice to Uber, no pending clawback dispute, no documents identified for ruling, and no briefing. Plaintiffs had not even made a substantive challenge to any of Uber's clawbacks at that point. A24–25, A53–54. The Magistrate Judge ruled before Uber had an opportunity to argue against waiver. A72–73.

Uber moved for leave to file a motion for the Magistrate Judge to reconsider her ruling. A93–112. But the Magistrate Judge denied leave on procedural grounds under the local rules, finding that Uber did not exercise reasonable diligence in moving for leave. She did not address the merits of Uber's Rule 502 waiver arguments. A85–92. Uber next sought relief from the District Judge, A78–84.[3] But the court summarily denied

---

[3] Uber argued that the Magistrate Judge's denial of leave based on lack of reasonable diligence under the local rule (which contains no time limitation on filing motions for reconsideration) was erroneous. Because the Magistrate Judge issued the *sua sponte*, blanket waiver ruling with no pending clawback privilege dispute before her, Uber had to subsequently investigate factual and legal issues regarding the ruling, its applicability to different categories of documents, and the identities of documents implicated by the ruling. *See* A78–84.

the motion and affirmed the order denying leave—again, without addressing the merits of Uber's waiver arguments. A77.

**4.    Special Master's Application of the Blanket Waiver Ruling**

Because the Special Master had been appointed to oversee privilege disputes by the time of the status conference at which the Magistrate Judge issued her waiver ruling, the Magistrate Judge did not rule on whether the production of documents de-designated during the period overseen by the Special Master also constituted waiver. A113, A115–17 ("Whether that principle applies to documents de-designated after privilege issues were referred to [the Special Master] is a question for [her]").

And because there was not any pending dispute when the Magistrate Judge issued her blanket waiver ruling, she never evaluated waiver as to any specific documents. A24–25, A72–73, A107, A113. That task fell to the Special Master, who adopted and applied the Magistrate Judge's blanket waiver ruling across the board—regardless of which judge was overseeing privilege disputes when the relevant documents were produced. A32–34, A36, A60–62. Uber argued the Special Master should in-

dependently evaluate waiver for documents produced while she was overseeing privilege disputes, but she declined to do so. A36, A39, A41–55, A60–62.

Uber thus went to the District Judge again, this time seeking review of the Special Master's rulings adopting and applying the Magistrate Judge's blanket waiver ruling to forty-two specific documents produced when the Special Master was overseeing privilege disputes. A4–26. The District Judge again summarily denied the motion, offering no explanation of the basis for the waiver ruling—despite the court's obligation to review these issues *de novo*. A3; *see also* Fed. R. Civ. P. 53(f)(3)–(4); A15.[4]

---

[4] The District Judge's order summarily denying Uber's Rule 53(f) objections to the Special Master's orders appears to have applied the wrong standard of review. While the order did not state what standard of review the District Judge applied, A3, the district court's order appointing the Special Master erroneously stated that, pursuant to "Rule 53(f)(3)–(5), the Court shall review findings of fact made or recommended by the Master for clear error," A118–119. But as Uber explained in its brief to the District Judge, A15, Rule 53(f)(3) provides that a court "must decide *de novo* all objections to findings of fact made or recommended by a master" unless the parties stipulate that the findings will be reviewed for clear error. Uber did not so stipulate.

## **LEGAL STANDARD**

"This court has the authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651." *In re Mersho*, 6 F.4th 891, 897 (9th Cir. 2021).

This Court considers the five factors drawn from *Bauman v. United States District Court*, 557 F.2d 650 (9th Cir. 1977), in determining whether to issue a writ of mandamus:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Id.* at 654–55 (citations omitted); *see also, e.g.*, *In re Kirkland*, 75 F.4th 1030, 1040 (9th Cir. 2023) (citing the *Bauman* factors).

While that standard is "demanding," it is "not insuperable." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004); *see also Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019). A petitioner need not establish all of the *Bauman* factors—"[t]he considerations are cumulative and proper disposition will often require a balancing of conflicting indicators," *Bauman*, 557 F.2d at 655, and "should not be mechanically applied," *Cole*

*v. U.S. Dist. Ct. For Dist. of Idaho*, 366 F.3d 813, 817 (9th Cir. 2004). "A showing of only one factor does not mean the writ must be denied, nor does a showing of all factors mean that the writ must be granted. And not all factors will be relevant in every case." *Mersho*, 6 F.4th at 898 (citation omitted).

An important factor in granting the writ is clear error by the district court, leaving the reviewing court with a "definite and firm conviction that a mistake has been committed," such as a ruling that is contrary to the "plain text" of a statute or rule. *Id.* (quoting *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 708, 710 (9th Cir. 2009)).

## ARGUMENT

This Court should grant Uber's Petition for Writ of Mandamus because the district court's waiver ruling was clearly erroneous, cannot be adequately remedied on direct appeal, and replicates a common error that requires this Court's intervention.

**1.    The District Court Clearly Erred by Making a Blanket Ruling that Uber Waived Privilege.**

The starting point for the writ of mandamus is whether a district court's ruling was clearly erroneous. *See Mersho*, 6 F.4th at 898. Here, the district court erred because its blanket waiver ruling rested on a

clearly erroneous interpretation of Rule 502(d), conflicted with its own Rule 502(d) order, and, in any event, did not undertake the inadvertence analysis required by Rule 502(b).

**A.    The District Court's ruling violated the plain text of Rule 502(d) and the District Court's own Rule 502(d) order.**

The district court clearly erred by finding a waiver of privilege based on nothing more than Uber's act of inadvertent production on a compressed timeline. That ruling directly contradicts the text of Rule 502(d) and the district court's own Rule 502(d) order.

### *i.    Federal Rule of Evidence 502 was enacted to protect against waiver of privilege.*

Rule 502 was directly enacted by Congress in 2008. Pub. L No. 110–322, 122 Stat. 3537. Congress acted with two key purposes: to (1) mitigate the otherwise harsh consequence of waiver for mistaken disclosures and (2) enhance predictability of the consequences of disclosure of privileged information by creating the first uniform national rule on waiver-by-disclosure. *See* S. Rep. No. 110–264, at 2–3 (2008); Fed. R. Evid. 502, Stat. of Cong. Intent Re: Rule 502. Without adequate protections against waiver of privilege by production, the costs of discovery and size of privilege logs had grown "extravagant." *Id*. Congress hoped that

22

allowing parties to claw back productions of privileged materials would reduce the downsides of lawyers' overly-cautious tendencies. *Id.*

Rule 502(b) sets a "default" procedure that allows a party to claw back certain disclosures. Specifically, it provides that disclosure does not waive privilege if, and only if, the disclosure was inadvertent, occurred despite reasonable steps, and reasonable steps were taken to promptly rectify. *See* Fed. R. Evid. 502(b). Rule 502(b) thus departed from the traditional, common-law rule that a party waives attorney-client privilege when it voluntarily discloses privileged information to a third party, including an adversary in litigation. *See* Fed. R. Evid. 502, Adv. Comm. Notes, Sept. 26, 2007 Comm. Letter.

Rule 502(d) goes even further by authorizing federal courts to issue orders protecting parties from waiver of privilege or protection by merely producing documents in discovery beyond the circumstances defined in Rule 502(b). It states, in relevant part:

> A federal court may order that the privilege or protection is not waived by disclosure [of a communication or information covered by the attorney-client privilege or work-product protection] connected with the litigation pending before the court.

In other words, Rule 502(d) allows courts to "supplant[] the default procedures set forth in Rule 502(b)" with even greater protection against

waiver. *Great-West Life & Annuity Ins. Co. v. Am. Economy Ins. Co.*, 2013 WL 5332410, at *11 (D. Nev. Sept. 23, 2013). Such "court order[s] may provide for return of documents without waiver *irrespective of the care taken by the disclosing party.*" Fed. R. Evid. 502, Adv. Comm. Note to subdivision (d) (emphasis added); *see also id.*, Stat. of Cong. Intent Re: Rule 502, Subdivision (d) (explaining that Rule 502(d) "is designed to enable a court to enter an order . . . that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, *while still preserving each party's right to assert the privilege* to preclude use in litigation of information disclosed in such discovery" (emphasis added)).

Professor Daniel Capra, the co-author of Rule 502 and author of Rule 502's Committee Note, confirmed this interpretation: "Rules 502(b) and (d) are independent protections" and "incorporating Rule 502(b) principles in a Rule 502(d) order makes no sense." A66 ¶¶ 7–8. "Rule 502(b) protection is dependent on whether a court, after the fact" finds the requirements of that provision to be met and is merely a "band aid" fix. A65 ¶¶ 4–5. But subsection (d), which the "Advisory Committee views . . . as the most important provision in the rule," "provides parties a predictable

24

protection that can be relied upon" by providing "certainty at the time of production—rather than waiting for an after-the-fact determination of reasonableness." A65–66 ¶¶ 5,7. "The Advisory Committee clearly intended that Rule 502(d) orders could cover intentional disclosures as well as mistaken ones." A65 ¶ 6.

The Sedona Conference likewise explains that "the text of Rule 502(d) is not limited to 'inadvertent' disclosures . . . . [T]he risk that the court will engage in a Rule 502(b) analysis to determine whether a disclosure was or was not inadvertent . . . is one of the principal problems with 502(b) that 502(d) eliminates." *Sedona Conference Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders*, 23 Sedona Conf. J. 1, 25 (2022);[5] *see also Sedona Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 95, 104 (2016) ("Rule 502(d)

---

[5] "The Sedona Conference is a 'nonprofit legal policy research and education organization' that has a 'working group comprised of judges, attorneys, and electronic discovery experts dedicated to resolving electronic document production issues,'" widely cited and relied upon by state and federal courts. *E.g.*, *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2024 WL 1856302, at *3 (S.D.N.Y. Apr. 26, 2024).

permits courts to enter orders that provide that a disclosure does not constitute a waiver" and "avoid any question about whether [it] was inadvertent.").

In sum, Rule 502(d) "intended, as that Rule permits, to displace the waiver text of that Rule with the more liberal clawback provisions of" a Rule 502(d) order. *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 2013 WL 2322678, at \*12 (S.D.N.Y. May 21, 2013).

### *ii.  The district court's waiver rulings conflict with Rule 502(d) and the court's own order.*

In accordance with this framework, the district court entered a typical Rule 502(d) order, providing that "the production of any privileged or otherwise protected . . . information in this case shall not be deemed a waiver or impairment of any claim of privilege or protection in this case." A184. The same pretrial order provides that in clawback disputes, parties challenging the privilege may not rely on "the fact or circumstances of disclosure"—instead requiring a clawback opponent to argue the merits of the privilege claim. A186. The district court's Rule 502(d) order does not require that the production be "inadvertent" for the clawback and nonwaiver provisions to apply. A184 ¶ 2, A185. So if and when Plaintiffs resist Uber's clawback requests, the district court should consider only

one question: Is the underlying document privileged? If it is, the terms of the district court's Rule 502(d) order provide that the document should be returned. If the document is not privileged, then Plaintiffs can keep it.[6]

But rather than heed the clear commands of Rule 502(d) and its corresponding order, the district court did not even address the merits of Uber's claims of privilege, much less require Plaintiffs to rebut them. A36, A72–73, A113, A60–63. Instead, the district court held that Uber had waived privilege simply by producing privileged documents following a re-review of documents previously designated as privileged. That result cannot be squared with Rule 502 or the court's Rule 502(d) order.

The district court never even provided a reasoned explanation of its blanket waiver ruling. The closest articulation of a rationale came from the Magistrate Judge, who, in denying Uber's motion to reconsider on procedural grounds, expressed concern about Uber "serially designating, de-designating, and re-designating documents as privileged in a manner that undermines the completion of discovery on any reasonable

---

[6] The Special Master has upheld in whole or in part the vast majority of Uber's privilege claims, including privilege claims for clawbacks not subject to the blanket waiver ruling.

27

schedule." A92; *see also* A72–73. But such a concern is unfounded. The documents at issue in this petition represent 0.002% of the 1.7 million documents produced and there are no findings—nor any evidence—that these clawbacks have meaningfully delayed the case schedule.

In any event, the Magistrate Judge's proffered policy concerns about judicial efficiency cannot trump the plain text of Rule 502(d) and the corresponding order, which "entitled [Uber] to rely on Rule 502(d) for the documents already produced" in seeking to clawback privileged documents. *See, e.g.*, *Arconic Inc. v. Novelis Inc.*, 2019 WL 911417, at *2 (W.D. Pa. Feb. 26, 2019); *cf. Vioxx Prods. Liab. Litig. Steering Comm. v. Merck & Co., Inc.*, 2006 WL 1726675, at *3 (5th Cir. May 26, 2006) ("Traditional procedural protections are not limitlessly malleable. If staying within those traditional constraints takes more time than jumping their traces, that is not justification for doing so.").

## B. The district court also violated Federal Rule of Evidence 502(b) by failing to make an inadvertence finding.

Under the district court's Rule 502(d) order, production of a document cannot constitute waiver. The analysis should end there. But even under the baseline protections of Rule 502(b) that apply in every case,

28

regardless of whether a Rule 502(d) order is in place, the district court's order was clearly erroneous. The district court made no findings to establish waiver under Rule 502(b).

Under Rule 502(b), the "disclosure of a communication or information covered by the attorney-client privilege or work-product protection" in litigation in federal court "does not operate as a waiver" if three conditions are met: (1) "the disclosure is inadvertent"; (2) "the holder of the privilege or protection took reasonable steps to prevent disclosure"; and (3) "the holder promptly took reasonable steps to rectify the error."

Inadvertence simply means a mistake, including human error. *B&G Foods N. Am., Inc. v. Embry*, 2024 WL 922900, at *2 (E.D. Cal. March 4, 2024); *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *3 (N.D. Cal. March 11, 2011); *United States v. United Health Grp., Inc.*, 2020 WL 10731257, at *3 (C.D. Cal. Nov. 9, 2020); A66–68 ¶¶ 10–11 (declaration of Rule 502 drafter, Prof. Daniel Capra). "[A] document may be produced inadvertently even after review and redaction." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *7 (E.D. Va. July 16, 2019) (collecting cases); *Guidiville Rancheria of California v. United States*, 2013 WL 6571945, at *4 (N.D. Cal. Dec. 13, 2013). "[T]he point of

29

Rule 502(b) is to protect clients' confidences from their lawyers' human errors." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018); *see also Amobi v. District of Columbia Dept. of Corrections*, 262 F.R.D. 45, 54 (D.D.C. 2009); *Hatfield v. Bonneville Cnty.*, 2025 WL 358441, at *6 (D. Idaho Jan. 31, 2025); A66–68 ¶¶ 10–11.

The inadvertence analysis also takes into account the realities of large-scale discovery when determining whether a disclosure was inadvertent. *See Pac. Coast Steel v. Leany*, 2011 WL 4704217, at *5 (D. Nev. Oct. 4, 2011); *BNP Paribas Mortg. Corp. v. Bank of America N.A.*, 2013 WL 2322678 at *8 (S.D.N.Y. May 21, 2013). "Courts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver." *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 1988 WL 138254, at *5 (E.D.N.Y. Dec. 19, 1988); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008).

Uber's mistaken production of a small number of privileged documents among the thousands of documents it produced following its privilege re-review meets all the requirements of Rule 502(b). *See Epic Games, Inc. v. Apple, Inc.*, 2025 WL 4663944 (N.D. Cal. Feb. 25, 2025)

(finding disclosure following re-review to be inadvertent and allowing clawback). Uber took reasonable steps to avoid producing privileged documents and promptly sought to rectify the error. Uber engaged a team of reviewers for a large-scale, time-pressured document production. As is common in such circumstances, the re-review was not perfect and reasonable mistakes by reviewers resulted in inadvertent production of privileged documents. If given the opportunity, Uber could have produced ample evidence showing that those productions were inadvertent.

The district court had no evidence to support a conclusion that Uber's mistaken productions of privileged documents it later attempted to claw back were anything but inadvertent—and the court made no findings on inadvertence or the other Rule 502(b) requirements. After the *sua sponte*, blanket waiver ruling, Uber repeatedly explained that the documents it sought to claw back had been inadvertently produced. A21–24, A50–53, A108–110. But the district court refused to revisit its waiver ruling or address the merits of these arguments.

31

**2.  Mandamus is the only meaningful avenue for Uber to obtain relief and protect its privileged and protected documents.**

*Bauman* factors one and two weigh strongly in favor of a writ of mandamus. 557 F. 2d at 654. The first factor, whether Uber has other means to obtain the requested relief, is met because "[a] discovery order . . . is interlocutory and non-appealable." *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (alteration in original). The second factor also weighs in favor of mandamus relief because if Uber "is forced to produce a privileged statement, it will be injured in a way not correctable on appeal." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1491 (9th Cir. 1989). As the Ninth Circuit has recognized, trial court rulings purporting to find "blanket waiver" are "particularly injurious" and deserving of mandamus relief. *See Hernandez*, 604 F.3d at 1101 ("The breadth of the waiver finding, untethered to the subject-matter disclosed, constitutes a particularly injurious privilege ruling.").

Here, the district court waiver order stripped Uber of its privilege as to the dozens of documents that Uber attempted to claw back. And the court did so with no supporting factual findings and no notice or opportunity for Uber to be heard before the ruling was made. Moreover, the

32

court categorically stripped Uber of its ability to claw back any of the thousands of documents involved in its re-review, if and when Uber discovers other privileged documents were mistakenly produced. Many of the documents at issue are plainly privileged, and Plaintiffs have offered no argument to the contrary. The writ of mandamus is the only means for Uber to obtain relief from the district court's clearly erroneous ruling.

The efficiency gains at the heart of the MDL procedure are also imperiled by the district court's orders. Bellwether trials are already underway, with more to follow in the coming months. Those trials are "designed to produce a verdict that would highlight the strengths and weaknesses of the parties' respective cases," thus "promot[ing] settlement and bring[ing] long-overdue resolution to this litigation." *Phillips v. E.I. Dupont De Nemours & Co.*, 534 F.3d 986, 995 (9th Cir. 2008); *see also* Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2373–38 (2008) (discussing the benefits of bellwether trials in driving resolution of large, complex cases). But the upcoming trials cannot serve that purpose if they are infected by privileged evidence and potentially later vacated on appeal. This Court should inter-

vene now to ensure the upcoming trials proceed on an appropriate evidentiary record and produce lasting verdicts that provide all parties with more information about the strengths of the claims in this MDL.

### 3. This Court's intervention can prevent an oft-repeated error on a question that has divided district courts.

At the most basic level, the district court's waiver ruling is an "oft-repeated error" given the sheer scope of this MDL. *See Bauman*, 557 F.2d at 654–55. There are thousands of plaintiffs, and all of them now have improper access to privileged material that they can use in litigation and in settlement negotiations absent this Court's intervention. Bellwether trials have just begun, and this Court's intervention now can protect the integrity of many more to come.

Beyond this MDL, moreover, *Bauman* factors four and five weigh in favor of granting a writ of mandamus. *Bauman*, 557 F.2d at 654–55. The district court's order is an oft-repeated error that contradicts the plain terms of Rule 502, and that raises important problems and issues of first impression for this Court. This petition presents a vehicle to provide critically needed guidance on the Rule 502 waiver protections. The

34

uncertainty on this issue undermines the purposes of the rule—and Subsection (d) in particular—of providing clarity and predictability on privilege waiver, facilitating efficient discovery, and protecting parties' rights.

Rule 502 was enacted by Congress "to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege or work-product protection. Parties to litigation need to know, for example, that if they exchange privileged information pursuant to a confidentiality order, the court's order will be enforceable." Fed. R. Evid. 502, Adv. Comm. Notes. Inconsistent approaches in the district courts are fundamentally incompatible with the purpose of Rule 502: to bring predictability to the consequences of disclosures. But that is the current state of play.

The caselaw can be roughly sorted into three basic positions:

1. Rule 502(d) means what it says: Courts can order (and parties can stipulate) that disclosure in litigation does not result in waiver of privilege;[7]

---

[7] Rule 502(e) provides: "An agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order."

2. The limitations of Rule 502(b) should be read into waiver protections under a Rule 502(d) order, unless the 502(d) order is sufficiently clear that it displaces the standard in 502(b); or

3. The limitations of Rule 502(b), or at least the inadvertence requirement, should be read into waiver protections under a Rule 502(d) order, notwithstanding the lack of textual support in 502(d).

The majority of courts to address the matter—those in the first category—interpret Rule 502(d) correctly. They construe Rule 502(d) orders to "allow[] a party to claw back privileged materials *without regard to whether the disclosure was inadvertent.*" *GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, 2024 WL 4960008, at *4 (N.D. Miss. Dec. 3, 2024) (emphasis added); *see also Hatfield.*, 2025 WL 358441, at *6 ("There is therefore no need to undertake the [inadvertence] analysis under Rule 502(b) . . . ."); *Prime AZ/Libra, LLC v. Fid. Nat'l Title Ins. Co.*, 2020 WL 4341267, at *2 (D. Ariz. July 10, 2020) (same), *R. & R. adopted,* 2020 WL 4335592 (July 27, 2020); *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 2015 WL 11117170, at *3 (E.D. Wash. Aug. 5, 2015) ("[P]ursuant to the plain terms of the 502(d) order, the privilege was not waived by [the party's] production of the e-mails, regardless of

whether that production was inadvertent or intentional.").[8] Courts in this circuit, consistent with the majority view, routinely enter Rule 502(d) orders explicitly providing that disclosures in litigation do not constitute waiver, "whether inadvertent or otherwise."[9]

---

[8] *See also Thomas v. Marshall Public School*, 690 F. Supp. 3d 941, 962 (D. Minn. 2023) ("Rule 502(d) allows a party who discloses privileged material to claw them back without having to prove the disclosure was 'inadvertent'"); *United States v. Hall*, 2020 WL 7027473, at *3 (N.D. Tex. Nov. 30, 2020) (finding Rule 502(d) applicable to privileged materials disclosed "inadvertently or purposefully"); *United States v. Caroleo*, 2019 WL 5869690, at *1 (E.D.N.Y. Nov. 11, 2019) ("Even if the disclosure is not 'inadvertent' under Rule 502(b), however, a court may nevertheless" order that production does not waive privilege); *Brookfield Asset Management, Inc. v. AIG Financial Products Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (holding there could be no waiver under stipulated Rule 502(d) order "no matter what the circumstances giving rise to their production were").

[9] *See, e.g.*, *Blum v. Amazon.com, Inc.*, 2026 WL 279408, at *4 (W.D. Wash. Feb. 3, 2026); *San Diego Coastkeeper v. SeaWorld Parks & Ent., Inc.*, 2025 WL 3275676, at *6 (S.D. Cal. Nov. 21, 2025); *Roberts v. Gutierrez*, 2024 WL 4466725, at *4 (E.D. Wash. Oct. 10, 2024); *Osorio v. United States*, 2024 WL 4113341, at *2 (D. Ariz. Aug. 22, 2024); *Baker v. Dolly, Inc.*, 2024 WL 1240736, at *5 (W.D. Wash. Mar. 22, 2024); *Fifer Support Servs., LLC v. Lyndon S. Ins. Co.*, 2024 WL 1241922, at *5 (W.D. Wash. Mar. 22, 2024); *United States for Use & Benefit of SCI Infrastructures, LLC v. Cherokee Gen. Corp.*, 2023 WL 7624807, at *6 (W.D. Wash. Nov. 14, 2023); *Traverse Therapy Servs., PLLC v. Sadler-Bridges Wellness Grp., PLLC*, 2023 WL 7525102, at *5 (W.D. Wash. Nov. 13, 2023); *Passadore v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 3034254, at *2 (D. Nev. Apr. 21, 2023); *VPR Brands LP v. Jupiter Rsch. LLC*, 2021 WL 4247931, at *8 (D. Ariz. Sept. 16, 2021) (". . . whether inadvertent or not . . ."); *Taction Tech., Inc. v. Apple Inc.*, 2021 WL 4150342, at *11 (S.D. Cal. Sept. 13, 2021), rep. and rec. adopted, 2022 WL 228978 (Jan. 26, 2022); *Sibert*

Here, the district court did not rule on the merits of Uber's clawback claims, or otherwise provide its interpretation of Rule 502. But because the district court found waiver despite its Rule 502(d) order, its ruling necessarily does not follow the majority's approach.

The second group of courts have held that a Rule 502(d) order can only displace the default standards for waiver protection in subsection (b) if the 502(d) order (or 502(e) party stipulation) includes "concrete directives" on how the requirements of Subsection (b) apply. "In other words, if [it] does not provide adequate detail regarding what constitutes inadvertence, what precautionary measures are required, and what the producing party's post-production responsibilities are to escape waiver, the court will default to Rule 502(b) to fill in the gaps in controlling law." *U.S. Home Corp. v. Settlers Crossing, LLC*, 2012 WL 3025111, at *5 (D. Md. July 23, 2012).

---

*v. King Cnty. Dep't of Cmty. & Hum. Health Servs. Behav. Health & Recovery Div.*, 2019 WL 5549617, at *1 (W.D. Wash. Oct. 28, 2019); *Rabin v. Pricewaterhousecoopers LLP*, 2016 WL 5897732, at *5 (N.D. Cal. Oct. 11, 2016); *Kasbarian v. Equinox Holdings, Inc.*, 2016 WL 4974945, at *6 (C.D. Cal. Sept. 16, 2016).

This view reflects a misunderstanding of the relationship between Rule 502(b) and 502(d) and makes Subsection (d) a superfluous alternative to Subsection (b). As explained by one district court in this circuit, "[t]he text of the rule does not contain or support such rigid, formulaic requirements. There is no requirement that, in order to supplant Rule 502(b), an agreement provide adequate detail regarding" how the requirements of Subsection (b) are to be applied; that would "defeat[] the purpose[] of Rule 502." *Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, 2013 WL 5332410, at *12 (D. Nev. Sept. 23, 2013). Most importantly, this narrow line of cases simply assumes—without acknowledging or defending the assumption—that the requirements of Subsection (b) must be imposed onto Rule 502(d) orders in some way. *See also RIPL Corp.*, 2013 WL 6632040, at *3 (agreeing with *Great-W. Life*). "[T]he 'concrete directives' requirement . . . cannot be found in the text of the FRE 502 itself, and it is arguably in tension with FRE 502(d) and (e) . . . ." *United Physician Grp., LLC v. Leche*, 742 F. Supp. 3d 1251, 1258 (N.D. Ga. 2024).

"[I]it is telling that the rule has garnered a fair share of criticism from district courts across the country." *Id.* at 1258, n.6 (collecting cases).[10]

The third group of courts take an even harder line. They question whether Rule 502(d) and 502(d) orders can protect litigation disclosures from waiver if the disclosures are not determined to be inadvertent, no matter the language in the 502(d) order.

For example, in *Melendres v. Sheridan,* a court in this circuit declined to enter a Rule 502(d) order that was not restricted to protecting only inadvertent disclosures because it was "not yet inclined to hold that Rule 502(d) applies to the intentional disclosure of privileged and protected materials, where such disclosure would normally result in waiver."

---

[10] Cases often straddle more than one of the three interpretative camps—demonstrating the need for this Court's guidance. The decision in *Federal Trade Commission v. Amazon.com, Inc.*, 801 F. Supp. 3d 1213 (W.D. Wash. 2025), is illustrative. On the one hand, the court applied the "concrete directives" requirement to invalidate a purported clawback agreement under Rule 502(e). *See id.* at 1218–20. On the other hand, the court rejected the argument that "Rule 502(d) does not apply when a party intentionally produces documents after a privilege review (or a re-review)," and denied a motion to compel the clawed-back documents in light of a clearly-worded Rule 502(d) order. *Id.* at 1217. This was because "Amazon ha[d] not actually [affirmatively] used the documents it [sought] to claw back." *Id.* In so holding, the court distinguished cases finding waiver where no effective Rule 502(d) order was in place or where the party claiming privilege waived it through conduct other than mere production. *See id.* at 1217–18.

2025 WL 3124741, at *11 (D. Ariz. Nov. 7, 2025); *see also Hostetler v. Dillard*, 2014 WL 6871262, at *4 (S.D. Miss. Dec. 3, 2014) ("Although Fed.R.Evid. 502(d) is not expressly limited to unintentional disclosures, the purpose and intent of Rule 502 is to protect litigants from inadvertent disclosures.").

Many of the courts that have expressed doubt about the scope of Rule 502(d) have misplaced concerns based on a different issue: waiver of privilege by means other than disclosure or production alone, such as a party affirmatively using a document in litigation, then attempting to claw it back. While often imprecise in their language and reasoning, these courts are at least correct in part: Nothing in Rule 502(d) changes the fact that a party can waive privilege through means *other than* disclosure. For example, a party's "*offensive* introduction of [its own] privileged communication will likely constitute waiver, under the well-established doctrine that attorney-client privilege may not be used both as a sword and shield." *E.g., Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943, 996 (N.D. Cal.), *rev'd and remd'd in part on other grounds*, 161 F.4th 1162 (9th Cir. 2025); *see also Certain Underwriters at Lloyd's, London v.*

*Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016) (rejecting argument that "the parties can *never* waive privilege with respect to *any* document" and concluding parties can waive privilege, despite clawback provision, by means other than "*disclosure* of privileged information"). But Uber has not done so here, nor has the district court found or even suggested as much. The district court's waiver finding rested wholly on the fact that Uber *produced* documents after re-reviewing them.

The result of these divergent and inconsistent approaches to Rule 502 is uncertainty. "[U]ncertainty matters in the privilege context" because "an 'uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'" *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 763 (D.C. Cir. 2014) (Kavanaugh, J.) (granting writ of mandamus) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)). "[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). This

Court should issue a writ of mandamus to bring some much-needed certainty to the scope of Rule 502(d) and its operation as an independent provision from 502(b).

## CONCLUSION

For these reasons, Uber respectfully asks this Court to grant a writ of mandamus and remand to the district court with instructions to rule on the merits of any privilege dispute properly presented to it, without consideration of any purported waiver based on the production of documents alone.

DATED: April 14, 2026          Respectfully Submitted,


_John Rosenthal_
_____
John Rosenthal


**Shook, Hardy & Bacon, L.L.P.**     **Perkins Coie, L.L.P.**
John Rosenthal                       Michael R. Huston
1800 K St. NW, Suite 1000            Jordan M. Buckwald
Washington, D.C. 20006               2525 E Camelback Rd., Suite 500
(202) 783-8400                       Phoenix, AZ 85016-4227
                                     (602) 351-8000

**Shook, Hardy & Bacon, L.L.P.**
Michael B. Shortnacy
2121 Avenue of the Stars,
Suite 1400
Los Angeles, CA 90067
(424) 285-8330

Maria Salcedo
Daniel E. Cummings
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

**Perkins Coie, L.L.P.**
Jeffrey Capelouto
1301 Second Avenue, Suite 4200
Seattle, WA 98101-3804
(206) 359-8000

*Counsel for Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

# CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(5)(A) and Ninth Circuit Rule 32–1(d), this Petition is proportionately spaced, has a typeface of 14 points. I also hereby certify that the foregoing petition complies with the requirements of Ninth Circuit Rule 21–2(c), namely that the total word count of this document, excepting those parts excluded by Fed. R. App. P. 21(a)(2)(c) and 32(f), is 7,221 words, which, when divided by 280 as provided by Circuit Rule 32–3(2), yields a page count less than or equal to thirty pages as required by Circuit Rule 21–2(c).

John Rosenthal

John Rosenthal
*Counsel for Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

## CERTIFICATE OF SERVICE

I, John Rosenthal, hereby certify that I electronically filed the foregoing Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 14, 2026. I further certify that I have transmitted this document by electronic mail, U.S. Mail, or third-party commercial carrier for delivery within 3 days, to the following:

*Plaintiffs' Co-Lead Counsel, MDL No. 3084, Counsel for Real-Parties-in-Interest*[11]

Sarah R. London
Girard Sharp LLP
601 California St., Suite 1400
San Francisco, CA 94108
(415) 981-4800
slondon@girardsharp.com

---

[11] Pursuant to the district court's December 6, 2023 Pretrial Order No. 4: Order Appointing Plaintiffs Co-Lead Counsel and Plaintiffs' Steering Committee, Ms. Sarah London serves as Co-Lead Counsel and as Plaintiffs' Liaison Counsel, and is responsible for making all documents served upon plaintiffs' counsel available to all plaintiffs' counsel in the MDL. *See* Dkt. No. 152 at 1–4, Case No. 3:23-md-03084-CRB (N.D. Cal.); *see also id.*, Dkt. 175 at 3, ¶ 5 (Dec. 28, 2023) (ordering email service on Plaintiffs' Co-Lead Counsel in the discovery context). As a result, service upon Plaintiffs' Co-Lead Counsel is treated as effective service upon all plaintiffs' counsel in MDL No. 3084.

Rachel Abrams
Peiffer Wolf Carr Kane Conway & Wise, LLP
555 Montgomery Street, Suite 820
San Francisco, CA 94111
(415) 426-5641
rabrams@peifferwolf.com

Roopal Luhana
Chaffin Luhana LLP
600 Third Avenue, 12th Floor
New York, NY 10016
(888) 480-1123
luhana@chaffinluhana.com
gangopadhyay@chaffinluhana.com;
wilkins@chaffinluhana.com;

*Third-Party Defendants in MDL No. 3084*

Ziad Zein
Counsel: Matthew T. Drenan
Quarles & Brady LLP
101 West Broadway, Suite 1500
San Diego, California 92101
619-237-5200
matt.drenan@quarles.com

Syd Syed
Counsel: Seth Wesley Wiener
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
(925) 487-5607
seth@sethwienerlaw.com

47

Haitham G. Amin
Amin Law, P.C.
50 California St., Suite 1500
San Francisco, CA 94111
(415) 851.4300
HAmin@AminLaw.com

Keith Brien
Counsel: Andrew R. Nelson
Forward Counsel LLP
4340 Von Karman Avenue, Suite 380
Newport Beach, CA 92660
anelson@forwardcounsel.com

Maybel Upierre Perez
Counsel: Thomas D. Sands
The Sands Law Group, APLC
205 S. Broadway, Suite 903
Los Angeles, CA 90012
(213) 788-4412
info@tslg.law

Yovanis Escorc A Escorcia Bustamante, II
Counsel: Patricia Rodriguez
Rodriguez Law Group, Inc.
1055 E. Colorado Blvd #500
Pasadena, CA 91106
(626) 888-5206

W.M. (Pro Se)
[*name redacted pursuant to Dkt. 38, Case No. 3:23-cv-05647-CRB (N.D. Cal.)*]

Bryan M. Carter (Pro Se)
8230 North Hickory Street, Apt. 2–241, Kansas City, MO 64118

Dencity Odeluga (Pro Se)
737 Torrence Ave, Unit 109, Calumet City, IL

Robert Ruffner (Pro Se)
517 Glan Tai Drive, Baldwin, MO 63011

Ryan Taylor-Byers (Counsel information unknown)
7311 E 10th Terrace, Kansas City, MO 64134

Patrick Shamwama (Counsel information unknown)
902 Southeast 14th Terrace, Lees Summit, MO 64081

Nadeem Amin (Counsel information unknown)
8402 Captons Lane, Apt 104, Darien, IL 60561

Majdi Altwaiti (Counsel information unknown)
2300 Westchester Boulevard, Springfield, IL 62704

Richard Kokuma (Counsel information unknown)
10505 South Corliss Avenue, Chicago, IL 60628

Hector Horlandy Mier (Counsel information unknown)
12130 Sandalcreek Way, Orlando, FL 32824

Rashad McClanahan (Counsel information unknown)
10210 Arrow Creek Road, New Port Richey, FL 34655

Razik Moussaoui (Counsel information unknown)
653 W 28th Street, Apt. 1st, Chicago, IL 60616

*Respondent*

Mark B. Busby,
Clerk of Court, Office of the Clerk, U.S. District Court for the
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

49

Hon. Charles R. Breyer
District Judge, U.S. District Court for the Northern District
of California
Courtroom 6 – 17th Floor
c/o Office of the Clerk
450 Golden Gate Avenue
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102


*John Rosenthal*

_____

John Rosenthal

**No.: 26-_____**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE UBER TECHNOLOGIES, INC.

UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC

*Defendants-Petitioners,*

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

*Respondent,*

**Plaintiffs in All Cases Consolidated, Transferred, or Filed in MDL No. 3084, *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*,**

*Real Parties in Interest.*

On petition for a writ of mandamus to the United States District Court for the Northern District of California
Case No. 3:23-md-03084-CRB

**APPENDIX IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**VOLUME 1 OF 1 – Pages A1 – A194**

**Shook, Hardy & Bacon, L.L.P.**
John Rosenthal
1800 K St. NW, Suite 1000
Washington, D.C. 20006
(202) 783-8400

Michael B. Shortnacy
2121 Avenue of the Stars,
Suite 1400
Los Angeles, CA 90067
(424) 285-8330

Maria Salcedo
Daniel E. Cummings
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

**Perkins Coie, L.L.P.**
Michael R. Huston
Jordan M. Buckwald
2525 E Camelback Rd., Suite 500
Phoenix, AZ 85016-4227
(602) 351-8000

Jeffrey Capelouto
1301 Second Avenue, Suite 4200
Seattle, WA 98101-3804
(206) 359-8000

*Counsel for Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

## Appendix

### *Table of Contents*

*Item*                                                                  *Pages*

Table of Contents ............................................................................**A1-2**

February 24, 2026 Order Denying Uber's Objections to Special Master Order [ECF 5292] .................................................................................**A3**

January 14, 2026 Uber's Rule 53(f) Objections to Special Master's Rulings [ECF 5004] ......................................................................**A4-30**

September 3, 2025 Special Master's Privilege Ruling (Ex. C to Uber's Rule 53(f) Objections) [ECF 5004-3] ...............................................**A31-34**

September 30, 2025 Special Master's Privilege Ruling for Documents De-Designated After Her Appointment (Ex. E to Uber's Rule 53(f) Objections) [ECF 5004-5] .............................................................**A35-36**

October 21, 2025 Uber's Objections to Special Master's Privilege Rulings (Ex. G to Uber's Rule 53(f) Objections) [ECF 5004-7].......**A37-58**

November 17, 2025 Special Master's Ruling on Uber's October 21, 2025 Objections to Special Master's Rulings (Ex. H to Uber's Rule 53(f) Objections) [ECF 5004-8] .............................................................**A59-62**

October 21, 2025 Declaration of Prof. Daniel Capra, Co-Author of Federal Rule of Evidence 502 and Author of Rule 502's Committee Note [ECF 5004-9] (Ex. I to Uber's Rule 53(f) Objections) ......................**A63-68**

April 25, 2025 Discovery Status Conference Transcript (Ex. J to Uber's Rule 53(f) Objections) [ECF 5004-10] ............................................**A69-76**

August 6, 2025 Order Denying Uber's Rule 72 Objections to Magistrate Judge's Order Denying Leave to File Motion for Reconsideration [ECF 3649] ...............................................................................................**A77**

August 5, 2025 Uber's Rule 72 Objections to Magistrate Judge's Order Denying Leave to File Motion for Reconsideration [ECF 3639].....**A78-84**

<div align="center">A1</div>

July 22, 2025 Order Denying Leave to File Motion for Reconsideration [ECF 3545] ...........................................................................**A85-92**

July 9, 2025 Uber's Motion for Leave to File Motion for Reconsideration [ECF 3442] ...........................................................................**A93-97**

July 9, 2025 Uber's Proposed Motion for Reconsideration [ECF 3442-1].. .......................................................................................**A98-112**

April 24, 2025 Minute Entry for April 24, 2025 Discovery Status Conference [ECF 2855].................................................................**A113-14**

February 7, 2025 Amended Order Appointing Special Master [ECF 2302]..........................................................................................**A115-19**

January 29, 2025 Order re: Third Set of Challenges to Uber's Privilege Claims [ECF 2168] ......................................................................**A120-42**

December 21, 2024 Order re: Second Set of Challenges to Uber's Privilege Claims [ECF 2005]...............................................................**A143-57**

November 27, 2024 Order re: First Set of Challenges to Uber's Privilege Claims [ECF 1908] ......................................................................**A158-73**

October 30, 2024 Pretrial Order No. 20: Modified Schedule and Directives Regarding Production and Privilege Disputes [ECF 1808] ........................................................................................**A174-83**

April 24, 2024 Pretrial Order No. 14: Federal Rule of Evidence 502(d) and Privileged Materials [ECF 396]...........................................**A184-194**

A2

Case: 26-2390, 04/14/2026, DktEntry: 1-1, Page 55 of 246
Case 3:23-md-03084-CRB   Document 5292   Filed 02/24/26   Page 1 of 1

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB |
| | ~~[PROPOSED]~~ **ORDER ON DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S OBJECTION TO SPECIAL MASTER'S ORDER** |
| This Document Relates to:<br><br>All Cases | Judge: Honorable Charles R. Breyer<br>Courtroom: 6-17th Floor |

Having considered the Parties' submissions regarding the Master's November 17, 2025 Ruling on Scope of Clawback Orders (ECF No. 4965), the Court hereby overrules Defendants' Objection and reaffirms the Special Master's January 9, 2026 Order.

**IT IS SO ORDERED:**

Dated:  February 24, 2026

IT IS SO ORDERED

Judge Charles R. Breyer

- 1 -

~~[PROPOSED]~~ ORDER ON DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S OBJECTION TO SPECIAL MASTER'S ORDER
NO. 3:23-MD-03084

A3

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

Attorneys for Uber
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| This Document Relates to:<br><br>ALL ACTIONS | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S (COLLECTIVELY "UBER") OBJECTION TO SPECIAL MASTER'S ORDER**<br><br>Judge: Hon. Charles R. Breyer<br>Date: February 20, 2026<br>Time: 10:00 a.m.<br>Courtroom: 6-17th Floor |

1

A4

## <u>NOTICE OF OBJECTION AND OBJECTION TO SPECIAL MASTER'S ORDER</u>

### TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's (collectively, "Uber") Objection to Special Master's Order is set for hearing on February 20, 2026 at 10:00 a.m.

Pursuant to Federal Rule of Civil Procedure 53 and the Amended Order Appointing Honorable Barbara Jones (Ret.) as Master [Dkt. 2302], Uber hereby objects to the Special Master's January 9, 2026 ruling [Dkt. 4965] that Uber may not claw back 42[1] documents that Uber initially designated as privileged and subsequently produced following a re-review because Uber waived attorney-client and work-product protections. Specifically, Uber respectfully requests that the Court wholly reverse and vacate the ruling and direct the Special Master to decide whether the documents are privileged by assessing the merits of Uber's privilege and work product claims, and Plaintiffs' challenges.

This objection is based on this Notice of Objection and Objection, the attached Memorandum of Points and Authorities, the attached exhibits, and the pleadings and papers on file herein.

DATED: January 14, 2026                   Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
        Maria Salcedo

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN HORN
ALLISON M. BROWN

**O'MELVENY AND MYERS LLP**
SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
        oot@shb.com

---

[1] The documents are identified in a chart in Ex. A. Uber will provide the documents to the Court at the Court's request.

2

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A5

1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
   adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
   mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
   ccotton@shb.com
JENNIFER HILL (Admitted *Pro Hac Vice)*
   jshill@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
   msalcedo@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

3

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER    Case No. 3:23-MD-3084-CRB

A6

# TABLE OF CONTENTS

I.   Introduction and Summary of Argument ........................................................ 1

II.   Relevant Facts and Background ................................................................... 2

III.   Legal Standard ........................................................................... 4

IV.   Argument ........................................................................... 4

      A.   The Special Master Substantively Erred in Finding That Uber May Not Claw Back Documents Because It Waived Privilege by Producing the Documents After a Re-Review. ........................................................................... 5

            i.   Rule 502 Exists to Protect Against Waiver of Privilege. .................................. 5

            ii.   Production Does Not Result in Waiver of Privilege Under PTO No. 14. ........ 6

            iii.   Purported Concerns About Serial Designation, De-designation, and Clawback Creating Delay and Inefficiency Do Not Justify Ignoring Rule 502(d) ............ 8

            iv.   Uber's Disclosures Were Inadvertent. ............................................. 10

      B.   The Special Master's Finding of Waiver Was Erroneous Because It Followed and Applied Magistrate Judge Cisneros's Procedurally Improper *Sua Sponte*, Blanket Ruling on Waiver by Disclosure. ........................................................ 13

V.   Conclusion ........................................................................... 15

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER      Case No. 3:23-MD-3084-CRB

A7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amobi v. District of Columbia Dept. of Corrections*,
262 F.R.D. 45 (D.D.C. 2009)...........................................................................................11

*Arconic Inc. v. Novelis Inc.*,
2019 WL 911417 (W.D. Pa. Feb. 26, 2019) .........................................................................9

*B&G Foods North America, Inc. v. Embry*,
2024 WL 922900 (E.D. Cal. March 4, 2024) ......................................................................10

*Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*,
1988 WL 138254 (E.D.N.Y. Dec. 19, 1988) .......................................................................12

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
712 F.3d 1349 (9th Cir. 2013) ............................................................................................9

*BNP Paribas Mortg. Corp. v. Bank of America N.A.*,
2013 WL 2322678 (S.D.N.Y. May 21, 2013) .....................................................................12

*Brookfield Asset Management, Inc. v. AIG Financial Products Corp.*,
2013 WL 142503 (S.D.N.Y. Jan. 7, 2013) ...........................................................................7

*Carmody v. Bd. of Trs. of Univ. of Ill.*,
893 F.3d 397 (7th Cir. 2018) ............................................................................................11

*Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*,
218 F. Supp. 3d 197 (E.D.N.Y. 2016) ..................................................................................9

*Datel Holdings Ltd. v. Microsoft Corp.*,
2011 WL 866993 (N.D. Cal. March 11, 2011).....................................................................11

*Dietz v. Bouldin*,
579 U.S. 40 (2016)..............................................................................................................9

*Epic Games, Inc. v. Apple Inc.*,
781 F. Supp. 3d 943 (N.D. Cal. 2025) .................................................................................9

*Epic Games, Inc. v. Apple, Inc.*,
Case No. 20-cv-05640-YGR (TSH), 2025 U.S. Dist. LEXIS 34007 (N.D. Cal.
Feb. 25, 2025) .................................................................................................................12

*Eureka Financial Corp. v. Hartford Acc. and Indem. Co.*,
136 F.R.D. 179 (E.D. Cal. 1991).......................................................................................15

*Everest Nat'l Ins. Co. v. Am. Claims Mgmt., Inc.*,
2025 WL 2381475 (D.N.J. Aug. 15, 2025) ..........................................................................7

ii

*Garcia v. Progressive Choice Ins. Co.*,
2012 WL 3113172 (S.D. Cal. July 30, 2012) ..................................................................15

*Great-West Life & Annuity Ins. Co. v. American Economy Ins. Co.*,
2013 WL 5332410 (D. Nev. Sept. 23, 2013) ....................................................................6

*Guidiville Rancheria of California v. United States*,
2013 WL 6571945 (N.D. Cal. Dec. 13, 2013).................................................................10

*GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*,
2024 WL 4960008 (N.D. Miss. Dec. 3, 2024)..................................................................7

*Hatfield v. Bonneville Cnty.*,
2025 WL 358441 (D. Idaho Jan. 31, 2025) ....................................................................11

*Heinz v. C.I.R.*,
770 F.2d 874 (9th Cir. 1985) ..........................................................................................14

*Hernandez v. Tanninen*,
604 F.3d 1095 (9th Cir. 2010) ........................................................................................15

*Jones v. L.A. Central Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) ........................................................................................14

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
529 F.3d 371 (7th Cir. 2008) ..........................................................................................12

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994).........................................................................................................9

*Lewis v. Woodford*,
2007 WL 196635 (E.D. Cal. Jan. 23, 2007) ...................................................................14

*Mead Reinsurance v. Granite State Ins. Co.*,
873 F.2d 1185 (9th Cir. 1988) ........................................................................................14

*Northwest Acceptance Corp. v. Lynwood Equipment, Inc.*,
841 F.2d 918 (9th Cir. 1988) . PTO 14............................................................................13

*Pac. Coast Steel v. Leany*,
2011 WL 4704217 (D. Nev. Oct. 4, 2011) ......................................................................11

*Patagonia, Inc. v. Anheuser Busch, LLC*,
2020 WL 12048989 (C.D. Cal. Sept. 29, 2020) ..............................................................12

*Redd v. Guerrero*,
84 F.4th 874 (9th Cir. 2023) ..........................................................................................15

*Reyes v. Garland*,
11 F.4th 985 (9th Cir. 2021) ............................................................................................9

iii

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A9

*S.E.C. v. TheStreet.Com*,
    273 F.3d 222 (2d Cir. 2001)............................................................................9

*Smith v. Best Buy Stores, L.P.*,
    2017 WL 3484158 (D. Idaho Aug. 14, 2017)..............................................9, 10

*Sukumar v. Direct Focus, Inc.*,
    349 Fed. Appx. 163 (9th Cir. 2009)..................................................................4

*T&W Holding Co., LLC v. City of Kemah, Texas*,
    641 F. Supp. 3d 378 (S.D. Tex. 2022) ...........................................................11

*Thomas v. Marshall Public School*,
    690 F. Supp. 3d 941 (D. Minn. 2023)...............................................................7

*U.S. v. Silverman*,
    861 F.2d 571 (9th Cir. 1988) ...........................................................................4

*United States v. Bauer*,
    132 F.3d 504 (9th Cir. 1997) .........................................................................14

*United States v. Caroleo*,
    2019 WL 5869690 (E.D.N.Y. Nov. 11, 2019)...................................................7

*United States v. Garcia-Lopez*,
    309 F.3d 1121 (9th Cir. 2002) .......................................................................15

*United States v. Hall*,
    No. 2020 WL 7027473 (N.D. Tex. Nov. 30, 2020)...........................................7

*United States v. Hatfield*,
    2010 WL 11515679 (E.D.N.Y. July 13, 2010)..................................................7

*United States v. Potts*,
    528 F.2d 883 (9th Cir. 1975) ...........................................................................9

*United States v. Sainz*,
    933 F.3d 1080 (9th Cir. 2019) .......................................................................15

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) .......................................................................15

*United States v. United Health Grp., Inc.*,
    2020 WL 10731257 (C.D. Cal. Nov. 9, 2020)................................................11

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)........................................................................................14

*Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*,
    2009 WL 464989 (N.D. Tex. Feb. 23, 2009).....................................................8

iv

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER         Case No. 3:23-MD-3084-CRB

A10

*In re Zetia (Ezetimibe) Antitrust Litig.*,
2019 WL 6122012 (E.D. Va. July 16, 2019) ..................................................................10

**Statutes**

28 U.S.C. § 2074 (b) ..................................................................................................5

Pub. L. 110-322, § 1(a), Sept. 19, 2008 ........................................................................5

**Rules**

Fed. R. Civ. P. 53 (f)(3) ............................................................................................4

Fed. R. Civ. P. 53(f)(3)-(4) ........................................................................................4

Fed. R. Civ. P. 53(f)(3)-(5) ........................................................................................4

Fed. R. Evid. 502 ...........................................................................................4, 5, 6, 8

Fed. R. Evid. 502(b)........................................................................................ *passim*

Fed. R. Evid. 502(b)(1) ............................................................................................11

Fed. R. Evid. 502(d)........................................................................................ *passim*

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A11

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.      Introduction and Summary of Argument**

The Special Master's finding that Uber may not clawback 42 documents because Uber supposedly waived privilege and work-product protections by producing them following a re-review cannot be reconciled with the protections against waiver in Pre-trial Order No. 14 and Federal Rule of Evidence 502(d). Citing Federal Rule of Evidence 502(d), PTO 14 provides that "the production of *any* privileged or otherwise protected . . . information in this case *shall not be deemed a waiver* or impairment of any claim of privilege or protection in this case." (emphases added). Congress enacted Rule 502(d) to authorize courts to issue orders providing broader protections from waiver than the otherwise default provision in Rule 502(b), such that disclosure of documents in litigation does not constitute waiver of privilege. This Court implemented those broader protections in PTO 14. And the Special Master's rejection of clawback ignores those protections, and should be overruled.

The Special Master's error traces back to April 2025, when with no pending dispute before her, no documents identified for ruling, and no briefing, Judge Cisneros ruled *sua sponte* at a status conference that Uber waived privilege and could not claw back *any* of the thousands of documents it re-reviewed, de-designated, and produced under her supervision. Uber has attempted to claw back only a small number of those documents. The Special Master followed that ruling and applied the principles of Magistrate Judge Cisneros's ruling to 42 documents de-designated and produced after the Special Master's appointment. Neither Judge Cisneros's ruling nor the Special Master's ruling provide the legal basis for the waiver conclusion for any documents, much less how that conclusion can be reconciled with PTO 14 and Rule 502(d). As explained below, Uber's re-review and production of documents does not constitute a waiver of attorney-client or work-product protections under Rule 502(d) and PTO 14.  By relying upon and applying Judge Cisneros's blanket ruling, the Special Master swept in the procedural and due process errors of that ruling and avoided addressing the merits of the privilege claims underlying Uber's clawback requests.

The Special Master's ruling inflicts harsh consequences: Uber has been deprived of its attorney-client and work-product protections despite its good faith re-review of tens of thousands of documents, produced on a compressed schedule, while relying on PTO 14 and Rule 502(d)'s

<div align="center">1</div>

protections against waiver by production. Uber, therefore, respectfully requests that the Court reverse and vacate the Special Master's January 9, 2026 order, and instruct her to decide on the merits whether the documents at issue are privileged.

## II.      Relevant Facts and Background

***Document Production and Initial Privilege Dispute:*** Uber reviewed and ultimately produced approximately 1.7 million documents at breakneck speed in 18 months. By the Fall 2024, Plaintiffs had systematically challenged thousands of entries in Uber's privilege logs. *See*, *e.g.*, Dkt. 1681.

Magistrate Judge Cisneros was responsible for supervising privilege disputes at that time. She ruled on samples of privilege disputes in Fall 2024 and early 2025, ordering Uber to apply "lessons learned" from those rulings within a very short time (14 or 21 days) to previously produced and future privilege logs. *See* Dkts. 1785, 1808, 1908, 2005, and 2168. Uber employed a team to review its privilege logs in a good faith effort to apply the "lessons learned" to tens of thousands of privilege log entries, removing or narrowing numerous privilege claims in the process. Importantly, when producing documents to Plaintiffs, Uber consistently represented that its productions were "not intended to, and [did] not, waive any applicable privilege or other legal basis under which information may be protected from disclosure"—clearly invoking the Rule 502(d) non-waiver provision of PTO 14. *See*, *e.g.*, Ex. B, Jan. 10, 2025 Correspondence to Plaintiffs' Counsel.

***Judge Cisneros's* Sua Sponte *Blanket Waiver Ruling*:** On April 24, 2025, during a status conference Magistrate Judge Cisneros issued a blanket ruling that Uber had "waived the right to claw back documents that it originally designated as privileged and then de-designated as part of the privilege dispute resolution process overseen by Judge Cisneros." Dkt. 2855. The ruling issued *sua sponte*, with no clawback dispute pending before the Court and no documents identified for ruling. Magistrate Judge Cisneros also held that whether "that principle applies to documents de-designated after privilege issues were referred to Judge Jones[2] is a question for Judge Jones." *Id.* Uber moved Judge Cisneros for leave to file a motion to reconsider her ruling. Dkt. 3442. She denied leave on procedural grounds, under Local Rule 7-9(b) governing motions for reconsideration, without

---

[2] The Special Master was appointed to handle privilege disputes on February 6, 2025. Dkts. 2289 and 2168.

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A13

addressing the merits of Uber's waiver and due process arguments. Dkt. 3545. Uber next sought relief from this Court, which denied the motion and affirmed the order denying leave. Dkt. 3649.

***Judge Jones's Application of the Blanket Waiver Ruling:*** In the clawback dispute underlying this objection (the first time a court addressed an actual clawback dispute implicating waiver by production), the Special Master concluded on September 3, 2025 that specific documents falling within the scope of Magistrate Judge Cisneros's ruling could not be clawed back. Ex. C, Sept. 3, 2025 Email Ruling. In subsequent briefing, Uber argued that the Special Master should decide the issue of privilege-waiver *de novo* as to documents inadvertently de-designated after her appointment and explained why Judge Cisneros's earlier blanket ruling was incorrect. Ex. D, Sept. 10, 2025 Brief.

On September 30, 2025, the Special Master rejected Uber's argument, concluding "that the same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders apply to the 42 documents de-designated after February 6, 2025 and Uber may not claw back those documents." Ex. E, Sept. 30, 2025 Email Ruling; Dkt. 4965.  On October 7, 2025, the Special Master entered an order applying the September 30 ruling to 15 of the 42 documents and determined that those documents were "not privileged" because they may not be clawed back.[3] Ex. F, Oct. 7, 2025 Email Ruling; Dkt. 4965.

On October 21, 2025, Uber objected to the Special Master's September 30 and October 7 rulings. Ex. G, Defs.' Oct. 21, 2025 Brief. On November 17, 2025, the Special Master denied Uber's objection via email. Ex. H, Nov. 17, 2025 Email Ruling. On January 9, 2026, the Special Master entered her Nov. 17 ruling on ECF. Dkt. 4965.

---

[3]  Those documents are: JCCP_MDL_PRIVLOG006612, JCCP_MDL_PRIVLOG006613, JCCP_MDL_PRIVLOG006614, JCCP_MDL_PRIVLOG006714, JCCP_MDL_PRIVLOG006832, JCCP_MDL_PRIVLOG007165, JCCP_MDL_PRIVLOG007166, JCCP_MDL_PRIVLOG007167, JCCP_MDL_PRIVLOG007475, JCCP_MDL_PRIVLOG007476, JCCP_MDL_PRIVLOG007513, JCCP_MDL_PRIVLOG007515, JCCP_MDL_PRIVLOG007553, JCCP_MDL_PRIVLOG007555, and JCCP_MDL_PRIVLOG039302. The Special Master found three documents could not be clawed back because they were substantially identical to one of the 42 documents subject to waiver (JCCP_MDL_PRIVLOG110078, JCCP_MDL_PRIVLOG110079, and JCCP_MDL_PRIVLOG110080).

3

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A14

### III.    Legal Standard

A district court must decide *de novo* all objections to findings of fact and conclusions of law made by a Special Master. Fed. R. Civ. P. 53(f)(3)-(4).[4] Under the *de novo* standard of review, the court does not defer to the "lower court's ruling but freely consider[s] the matter anew, as if no decision had been rendered below." *U.S. v. Silverman*, 861 F.2d 571 (9th Cir. 1988). *De novo* review means the court must give Uber's objection a "fresh look" and "independently consider all of the evidence that the special master considered." *Sukumar v. Direct Focus, Inc.*, 349 Fed. Appx. 163, 165 (9th Cir. 2009).

### IV.    Argument

The upshot of the Special Master's order is that Uber's inadvertent privilege de-designation of 42 documents, effected at a rapid pace following Judge Cisneros's sample privilege-dispute rulings, amounted to a waiver of privilege.

First, that conclusion is legally erroneous.  It cannot be reconciled with Rule 502, operationalized by this Court through PTO 14, which together provide that disclosure of privileged documents does not constitute an automatic privilege waiver. Yet that is the exact effect of the Special Master's rejection of Uber's attempt to clawback inadvertently de-designated, privileged documents. This Court should sustain Uber's objection under Rule 502(d) and PTO 14.

Second, the Special Master's ruling rejecting clawback should be overruled because it was procedurally improper. Specifically, the Special Master relied upon and applied Judge Cisneros's earlier *sua sponte* blanket ruling that Uber waived privilege over all de-designated documents, thereby replicating Judge Cisneros's earlier procedural errors.  Judge Cisneros rejected privilege categorically over all de-designated documents, without any privilege dispute pending before her and thereby deprived Uber of any opportunity to be heard.

---

[4] The order appointing the Special Master states that pursuant to "Rule 53(f)(3)-(5), the Court shall review findings of fact made or recommended by the Master for clear error." Dkt. 2302. Rule 53 (f)(3), however, provides that a court "must decide *de novo* all objections to findings of fact made or recommended by a master" unless the parties with the court's approval stipulate that the findings will be reviewed for clear error. Here the parties did not stipulate that findings of fact would be reviewed by clear error. The *de novo* standard of review provided in Rule 53(f)(3) therefore applies to both findings of fact and conclusions of law.

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A15

**A.** **The Special Master Substantively Erred in Finding That Uber May Not Claw Back Documents Because It Waived Privilege by Producing the Documents After a Re-Review.**

**i.** **Rule 502 Exists to Protect Against Waiver of Privilege.**

Rule 502(d) enables federal courts to issue orders protecting parties from waiver of privilege or protection by merely producing documents in discovery–the exact circumstances underlying the Special Master's erroneous rejection of clawback here.

Rule 502(d) provides: "A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding."

Under the traditional, common-law rule, a party waives attorney-client privilege when it voluntarily discloses privileged information to a third party, including an adversary in litigation. By enacting Rule 502 in 2008, Congress substantially departed from the traditional rule by imposing limitations on the waiver by disclosure of the attorney-client privilege or work product protection in federal proceedings. Fed. R. Evid. 502, Advisory Committee Notes, Sept. 26, 2007 Committee Letter to Congress.[5] In his statement supporting the proposed legislation, co-sponsor Senator Specter remarked:

> Current law on attorney-client privilege and work product is responsible in large part for the rising costs of discovery-especially electronic discovery. Right now, it is far too easy to inadvertently lose or "waive" the privilege. A single inadvertently disclosed document can result in waiving the privilege not only as to what was produced, but as to all documents on the same subject matter. In some courts, a waiver may be found even if the producing party took reasonable steps to avoid disclosure. Such waiver will not just affect the case in which the accidental disclosure is made, but will also impact other cases filed subsequently in State or Federal courts.

S. Rep. No. 110-264, at 2 (2008).

Two key congressional purposes for enacting Rule 502 were: (1) mitigate the otherwise harsh consequence of waiver for mistaken disclosures, and (2) enhance predictability of the consequences

---

[5] *See* Pub. L. 110-322, § 1(a), Sept. 19, 2008. Unlike all other federal rules of procedure, rules governing evidentiary privilege must be approved by an affirmative act of Congress. *See* 28 U.S.C. § 2074 (b).

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A16

of disclosure of privilege information by creating the first uniform national rule on waiver-by-disclosure. *Id.* at 3; Fed. R. Evid. 502, Statement of Congressional Intent Regarding Rule 502.

Congress included two key provisions to accomplish those goals. First, Rule 502(b) sets a "default" procedure that only allows a party to claw back certain inadvertent disclosures. Specifically, Rule 502(b) provides that disclosure does not operate as a waiver only if the disclosure was inadvertent, occurred despite reasonable steps, and reasonable steps were taken to promptly rectify. Second, Rule 502(d) allows courts to "order that the privilege or protection *is not waived* by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." (emphasis added).  In other words, Rule 502(d) orders allow courts to "supplant[] the default procedures set forth in Rule 502(b)." *Great-West Life & Annuity Ins. Co. v. American Economy Ins. Co.*, 2013 WL 5332410, at *11 (D. Nev. Sept. 23, 2013). Such "court order[s] may provide for return of documents without waiver *irrespective of the care taken by the disclosing party.*" Fed. R. Evid. 502, Advisory Committee's Note to subdivision (d) (emphasis added); *see also id.*, Statement of Congressional Intent Regarding Rule 502, Subdivision (d) - Court Orders (Rule 502(d) "is designed to enable a court to enter an order . . . that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, *while still preserving each party's right to assert the privilege* to preclude use in litigation of information disclosed in such discovery.") (emphasis added).

In this case, the Court operationalized the protections Rule 502(d) contemplates through PTO 14, as explained below.

**ii.      Production Does Not Result in Waiver of Privilege Under PTO No. 14.**

Acting on its Rule 502(d) authority, this Court issued PTO 14 to ensure that mere production of privileged documents does not amount to automatic waiver.

Merely producing documents does not constitute waiver of privilege under Stipulated Pretrial Order 14, which provides:

> Pursuant to Federal Rule of Evidence 502(d), the production of ***any*** privileged or otherwise protected or exempted information in this case ***shall not be deemed a waiver*** or impairment of ***any claim of privilege or protection*** in this case or in any other federal or state proceeding, including,

but not limited to, the attorney-client privilege, the protection afforded to work production materials, statutory privileges and protections, or the subject matter thereof, as to the produced documents and any related materials.

PTO 14 at 2 (emphases added). And for clawback disputes specifically, PTO 14 further prohibits the party challenging the privilege from relying on "the fact or circumstances of disclosure" (PTO 14 ¶ 6), requiring instead that the clawback-opponent argue the *merits* of the privilege claim.

The non-waiver language of PTO 14 applies categorically to *all* document productions in this litigation: it does not even require inadvertence, *cf.* Fed. R. Evid. 502(b), or otherwise impose any limitations concerning how or during what stage of discovery the production occurred.

Further, PTO 14 provides a claw-back procedure for documents that have "been produced for which the Producing Party asserts privilege and/or other protection," regardless of whether such production was inadvertent. *Id.* at ¶ 4. The majority of courts interpret Rule 502(d) orders "allow[] a party to claw back privileged materials *without regard to whether the disclosure was inadvertent.*" *GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, 2024 WL 4960008, at *4 (N.D. Miss. Dec. 3, 2024) (emphasis added); *Thomas v. Marshall Public School*, 690 F. Supp. 3d 941, 962 (D. Minn. 2023) (stating "Rule 502(d) allows a party who discloses privileged material to claw them back without having to prove the disclosure was 'inadvertent'"); *United States v. Hall*, No. 2020 WL 7027473, at *3 (N.D. Tex. Nov. 30, 2020) (finding Rule 502(d) applicable to privileged materials disclosed "inadvertently or purposefully"); *United States v. Caroleo*, 2019 WL 5869690, at *1 (E.D.N.Y. Nov. 11, 2019) ("Even if the disclosure is not 'inadvertent' under Rule 502(b), however, a court may nevertheless 'order that [the] privilege or protection is not waived by disclosure connected with the litigation . . . .'" (quoting Fed. R. Evid. 502(d)); *Brookfield Asset Management, Inc. v. AIG Financial Products Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (holding that under stipulated Rule 502(d) order that no waiver of any applicable privilege would result from the defendant's production "of any documents in this proceeding," the defendant had a right to claw back privileged documents "no matter what the circumstances giving rise to their production were").[6]

---

[6] *See also, e.g.*, *Everest Nat'l Ins. Co. v. Am. Claims Mgmt., Inc.*, 2025 WL 2381475, at *5 (D.N.J. Aug. 15, 2025); *United States v. Hatfield*, 2010 WL 11515679, at *1 (E.D.N.Y. July 13, 2010);

7

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A18

That majority interpretation–permitting clawback categorically, without even requiring inadvertence–correctly applies Rule 502(d), which (unlike 502(b)) does not contain an inadvertence requirement. And it is consistent with the intent of the rule's drafters. Indeed, in the attached declaration, Professor Daniel Capra, the co-author of the text of Rule 502, author of the Committee Note to that Rule, and Reporter to the Judicial Conference Advisory Committee on Evidence Rules since 1996, confirms that:

> The Advisory Committee viewed Rule 502(d) as the most important provision in the rule [because] it provides parties a predictable protection that can be relied upon . . . That is why the Committee was of the view that a Rule 502(d) order could protect against waiver *even when disclosures are intentional*. The Advisory Committee clearly intended that Rule 502 (d) orders could cover intentional disclosures as well as mistaken ones. . . . Under Rule 502(d), protective orders—like the one in this case—are only effective when they approve procedures that would not pass muster if analyzed exclusively under Rule 502(b).

Ex. I at ¶¶ 4-5, 7 (emphasis added).

### iii. Purported Concerns About Serial Designation, De-designation, and Clawback Creating Delay and Inefficiency Do Not Justify Ignoring Rule 502(d).

While neither Magistrate Judge Cisneros nor the Special Master have provided the legal basis for the conclusion that Uber waived privilege despite the Rule 502 (d) order in this case, Judge Cisneros has noted "the clawback protocol on which Uber relies in Pretrial Order No. 14 did not contemplate Uber serially designating, de-designating, and re-designating documents as privileged in a manner that undermines the completion of discovery on any reasonable schedule." Dkt. 3545 at 8; *see also* Ex. J, April 24, 2025 Hr'g Tr. at 15:9-19 (Judge Cisneros stating that allowing clawbacks of de-designated documents would be "inefficient" and amount to "redoing" the "prior corpus of . . . documents that we worked through over the fall."). Those concerns about supposed delay and inefficiency are not only misguided, but also cannot justify ignoring the plain text and purposes of

---

*Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, 2009 WL 464989, at *4 (N.D. Tex. Feb. 23, 2009). As explained in more detail below, a minority of courts require a showing of **inadvertence** before permitting clawback under Rule 502(d). That minority view incorrectly applies the rule, but Uber would be entitled to clawback even under that reading, as its production was inadvertent. *See infra* at 9-12.

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER        Case No. 3:23-MD-3084-CRB

Rule 502(d) and PTO 14, which permit Uber to clawback privileged documents in these exact circumstances regardless of inadvertence.

Courts' inherent authority "to manage their own affairs" must yield "to any express grant of or limitation on the district court's power contained in a rule," like Rule 502(d). *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). As explained above, PTO 14 plainly provides, as Rule 502(d) permits, that production of a document is not a waiver of privilege. Dkt. 396 ¶ 2. Neither Magistrate Judge Cisneros nor the Special Master have identified anything other than the review and production of documents that could constitute a waiver. But to treat mere review and production of documents as waiver would require ignoring PTO 14 and Rule 502(d), which prohibit treating mere production as waiver and provide a procedure to clawback privileged documents post-production. That result is impermissible, as PTO 14 "entitled [Uber] to rely on Rule 502(d) for the documents already produced" to permit clawback. *See, e.g.*, *Arconic Inc. v. Novelis Inc.*, 2019 WL 911417, at *2 (W.D. Pa. Feb. 26, 2019).[7]

A minority of courts apply an inadvertence requirement to 502(d) orders—notwithstanding its lack of textual support—for policy reasons, fearing that parties will otherwise "intentionally and tactically disclose protected materials during litigation, while preserving the ability to assert privilege when such tactics change." *E.g.*, *Smith v. Best Buy Stores, L.P.*, 2017 WL 3484158, at *4 (D. Idaho Aug. 14, 2017) (dicta).[8]

---

[7] Finding waiver in violation of the 502(d) order in PTO 14 violates due process and basic notions of fairness because it would effectively amend that order and apply the amendment retroactively, despite Uber's reliance on the non-waiver protections of the order. *Cf. Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *Reyes v. Garland*, 11 F.4th 985 (9th Cir. 2021); *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013); *United States v. Potts*, 528 F.2d 883, 886 (9th Cir. 1975); *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001).

[8] Many such cases are inapposite because they reject an argument much broader than the one Uber makes here, that no waiver is possible *by any means* when a 502(d) order is in place, even waiver by means other than mere disclosure and production. *See, e.g. Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 202 (E.D.N.Y. 2016); *Smith*, 2017 WL 3484158, at *4. For example, notwithstanding a 502(d) order, a party's "*offensive* introduction of [its own] privileged communication" in litigation "will likely constitute waiver, under the well-established doctrine that attorney-client privilege may not be used both as a sword and shield." *Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943, 996 (N.D. Cal. 2025). Here Uber has not used the documents for any purpose and there is no basis for finding waiver other than Uber' review and production.

9

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER                    Case No. 3:23-MD-3084-CRB

A20

Those policy concerns not only must yield to the plain text of Rule 502(d), but they also have no application here. There is no evidence that Uber clawed back documents to engage in any type of gamesmanship or because it was acting "tactically" to gain an advantage in litigation, such as using the documents in support of a motion. *Smith*, 2017 WL 3484158, at *4. Instead, the goal of Uber's re-review was to ensure its privilege assertions better adhere to Judge Cisneros's sample rulings. But inevitably, that re-review was imperfect: some privileged documents were incorrectly de-designated. As a result, Uber has clawed back a small number of those documents-42 documents at issue representing 0.0024% of the 1.7 million produced–upon discovering the privileged productions.

Judge Cisneros's concerns about efficiency and delay from following PTO 14's clawback procedure are likewise misguided and inapplicable here. Indeed, there is *zero evidence* in the record of how the relevant clawbacks have meaningfully delayed the case schedule. The Court's procedures sufficiently guard against any delay, given that any clawback notices must be made within 21 days of discovery and can be challenged by Plaintiffs under Special Master Order No. 4 (Dkt. 2933). If Plaintiffs do not challenge the clawback, that ends the matter–no inefficiency or delay will materialize. The Special Master procedures have allowed any challenge to be resolved quickly. But for the blanket waiver ruling, the clawbacks at issue could have been resolved on the merits months ago.

### iv.    Uber's Disclosures Were Inadvertent.

Even if the minority view were correct that the inadvertence requirement must be met to avoid waiver by production under Rule 502(d) orders, Uber would still be entitled to clawback.  Uber's production of later-clawed back documents was inadvertent, regardless of the fact that attorneys had reviewed the documents prior to de-designation.

"An 'inadvertent disclosure' is simply where the work-product protected [or privileged] document was produced as the result of a mistake." *B&G Foods North America, Inc. v. Embry*, 2024 WL 922900, at *2 (E.D. Cal. March 4, 2024). "[A] document may be produced inadvertently even after review and redaction." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *7 (E.D. Va. July 16, 2019) (collecting cases); *Guidiville Rancheria of California v. United States*, 2013 WL 6571945, at *4 (N.D. Cal. Dec. 13, 2013).  This is because "the 'inadvertence' requirement of Rule 502(b) was not designed to turn on fine distinctions based on the nature of the mistake to determine

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A21

whether the particular type of mistaken disclosure qualifie[s] for protection from waiver." *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *3 (N.D. Cal. March 11, 2011); *see also United States v. United Health Grp., Inc.*, 2020 WL 10731257, at *3 (C.D. Cal. Nov. 9, 2020). Therefore, an intentional production of documents qualifies as inadvertent disclosure if it is the result of a mistake. *Datel*, 2011 WL 866993, at *3. This comports with the purpose of Rule 502(b). "[T]he point of Rule 502(b) is to protect clients' confidences from their lawyers' human errors." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018). As one court explained:

> [T]o find that a document disclosed by a lawyer is never inadvertent would vitiate the entire point of Rule 502(b). Concluding that a lawyer's mistake never qualifies as inadvertent disclosure under Rule 502(b) would gut that rule like a fish. It would essentially reinstate the strict waiver rule in cases where lawyers reviewed documents, and it would create a perverse incentive not to have attorneys review documents for privilege.

*Amobi v. District of Columbia Dept. of Corrections*, 262 F.R.D. 45, 54 (D.D.C. 2009); *see also Hatfield v. Bonneville Cnty.*, 2025 WL 358441, at *6 (D. Idaho Jan. 31, 2025).

These cases are consistent with the intent of the rule's drafters, who "by that term, intended to cover any disclosure that was mistaken. The term 'inadvertent' was taken from prior case law . . . . That case law covered all disclosures that the producing party claimed to be a mistake." Ex. I, ¶ 11 (Prof. Capra Decl.).

While nothing more than a mistake is required to establish inadvertence, courts also take account of the realities of large-scale discovery when determining whether a disclosure was inadvertent.[9] *Pac. Coast Steel v. Leany*, 2011 WL 4704217, at *5 (D. Nev. Oct. 4, 2011) ("The scope

---

[9] Some courts have distinguished between two approaches to the inadvertence analysis under Rule 502(b)(1), the first approach considering "if the party intended to produce a privileged document or if the production was a mistake," and the second approach conducting a "totality of the circumstances" analysis that, in effect, determines whether the disclosure was both inadvertent *and* reasonable based on factors like the precautions taken to prevent the inadvertent disclosure and efforts to rectify it. *Amobi*, 262 F.R.D. at 53; *see also T&W Holding Co., LLC v. City of Kemah, Texas*, 641 F. Supp. 3d 378, 382 (S.D. Tex. 2022); *Pac. Coast Steel v. Leany*, 2011 WL 4704217, at *4 (D. Nev. Oct. 4, 2011) (totality of the circumstances approach).  Most courts have rejected the second approach, noting that this analysis conflates the 502(b)(2) and (3) factors ("reasonable steps to prevent" and "reasonable steps to rectify" the inadvertent disclosure) with the 502(b)(1) inadvertence factor, and that the first, simpler approach is more consistent with the language of the rule. *E.g.*, *Amobi*, 262 F.R.D. at 53-54. However, courts using the simpler "mistake" inadvertence standard can still consider the

11

of the discovery . . . in this case also weighs in favor of finding the documents were inadvertently disclosed. Plaintiffs produced more than 2.3 million pages of documents."). "Such errors are, of course, inevitable in complex litigation involving the production of tens of thousands of documents." *BNP Paribas Mortg. Corp. v. Bank of America N.A.*, 2013 WL 2322678 at *8 (S.D.N.Y. May 21, 2013). As such, "[c]ourts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver." *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 1988 WL 138254, at *5 (E.D.N.Y. Dec. 19, 1988); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008).

Indeed, under similar circumstances, Judge Hixson of this District found that Apple inadvertently disclosed and was entitled to clawback two documents it de-designated following a re-review because:

> Epic cites no authority for the proposition that inadvertence does not include an intentional but mistaken decision by a human document reviewer. The question, after all, is whether Apple deliberately produced a document, not whether one particular document reviewer deliberately decided these documents should have been redacted rather than withheld in full. Apple used a large team of reviewers to make privilege calls on large numbers of documents, and a mistake does not mean that the company deliberately produced the document.

*Epic Games, Inc. v. Apple, Inc.*, Case No. 20-cv-05640-YGR (TSH), 2025 U.S. Dist. LEXIS 34007 (N.D. Cal. Feb. 25, 2025).

Here too, certain documents were produced by reviewing attorneys who did not appreciate the privileged nature during review or who simply made a mistake in applying redactions or coding a document–a common occurrence in any large-scale, time-pressured document production as illustrated by the above authority. Uber did not intend to produce privileged documents and waive its privilege. In fact, the content of the documents at issue confirms that privileged content was inadvertently produced. For example, JCCP_MDL_PRIVLOG007423 and JCCP_MDL_PRIVLOG006832 are email threads that were produced in full on March 8, 2025. While the last emails in each thread are

---

circumstances and context of a disclosure, such as the large scope and timing of discovery, to determine whether a disclosure of privileged documents was, in fact, a mistake. *See, e.g.*, *Patagonia, Inc. v. Anheuser Busch, LLC*, 2020 WL 12048989, at *1 (C.D. Cal. Sept. 29, 2020) (finding disclosure of narrowly redacted documents was inadvertent in "a major case with massive document discovery and production, posing a major challenge to review of documents for privilege").

12

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A23

between non-lawyers only, the thread includes earlier emails to and from Aaron Brand, then-Legal Director, Mobility Product Counsel Team. These documents were clawed back and reproduced on May 16 and June 16 to apply redactions to the legal advice requested from and provided by Mr. Brand. Plaintiffs have never disputed the privileged nature of the redacted communications to and from Mr. Brand.

Another example is JCCP_MDL_PRIVLOG057200, an email thread that was produced in full on March 8, 2025. Shortly thereafter, it was discovered that the document was produced and mistakenly did not contain the necessary redactions. It was clawed back and reproduced with redactions on April 18, 2025. Limited redactions have been applied to messages to and from Scott Binnings, Uber's Associate General Counsel.

As a result of the Special Master's erroneous ruling denying clawback, Uber is unfairly deprived of its bedrock right to attorney-client privilege and work-product protection even though Plaintiffs have not challenged the underlying merits of Uber's clawback.

**B.    The Special Master's Finding of Waiver Was Erroneous Because It Followed and Applied Magistrate Judge Cisneros's Procedurally Improper *Sua Sponte*, Blanket Ruling on Waiver by Disclosure.**

The Special Master's ruling rested on the finding "that the same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders apply to the 42 documents de-designated after February 6, 2025 and Uber may not claw back those documents." Dkt. 4965; Ex. E. By relying upon and applying Magistrate Judge Cisneros's *sua sponte* blanket ruling, the Special Master's ruling sweeps in the procedural and due process errors of that blanket ruling.

First, the issue was not properly before Magistrate Judge Cisneros as the blanket privilege ruling was made with no pending clawback challenge dispute before her. PTO 14 governs clawback disputes in this litigation and provides specific procedural mechanisms for resolving them. *Northwest Acceptance Corp. v. Lynwood Equipment, Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) ("A pretrial order . . . controls the subsequent course of action in the litigation."). PTO 14 prescribes a procedure for a producing party to notify the receiving party that it produced a document for which it asserts privilege. The receiving party then can contest the assertion of privilege by providing a written "Notice of

13

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A24

Clawback Challenge." The parties then go through a conferral period. If the conferral does not resolve the dispute, the parties are required to submit the issue to the Court by filing a "joint letter brief." Dkt. 396 ¶¶ 4-6.

None of that happened here. The general topic of clawbacks *procedures* was mentioned by Plaintiffs in a Joint Status Report, along with many other discovery topics. Plaintiffs made no substantive challenge to documents Uber had clawed back. Joint Status Report (Dkt. 2823) at 2-3. Plaintiffs never mentioned waiver—neither in the Joint Status Report nor at the Status Conference. Nevertheless, the Court found Uber's de-designation decisions constituted a waiver of its attorney-client or work-product privilege before Uber was given an opportunity to argue against waiver. Ex. J, April 24, 2025 Hr'g Tr. at 9:18–19. This is directly contrary to PTO 14's clawback dispute resolution procedures.

Second, and relatedly, the blanket ruling was improper because it was made *sua sponte* without an opportunity for Uber to be heard on an important issue with wide implication. To allow litigants the full and fair opportunity to be heard, courts generally disfavor *sua sponte* review. *See, e.g., Lewis v. Woodford*, 2007 WL 196635, at *20 n.12 (E.D. Cal. Jan. 23, 2007). "There are, however, several respects in which the Federal Rules allow the district court, *with appropriate notice*, to raise issues *sua sponte*." *Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (emphasis added). Further, "[a] court *may only* grant a motion *sua sponte* if all parties have a full opportunity to address the issue." *Mead Reinsurance v. Granite State Ins. Co.*, 873 F.2d 1185, 1189 (9th Cir. 1988) (emphasis added); *see also Heinz v. C.I.R.*, 770 F.2d 874, 876 (9th Cir. 1985).

The due process problems with a *sua sponte* ruling are only heightened when a court determines whether a party has waived attorney-client privilege. "[T]he **attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges**, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) (emphasis added). Indeed, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Thus, "[w]hether express or implied, the scope of a waiver must be *narrowly construed* and 'fit within the confines of the waiver.'"

14

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A25

*Garcia v. Progressive Choice Ins. Co.*, 2012 WL 3113172, at *3 (S.D. Cal. July 30, 2012) (emphasis added).

By rejecting Uber's clawbacks *sua sponte*, without an opportunity to be heard, Judge Cisneros's order violated Uber's due process right to notice and an opportunity to be heard on the matter.[10] Uber neither had notice that waiver would be raised at the Status Conference before Judge Cisneros nor a fair opportunity to address the issue. In short, Uber did not have the "full opportunity to address the issue" necessary for the Court to raise and rule on waiver of the attorney-client and attorney work-product protections *sua sponte*.[11] And while the Special Master allowed Uber the opportunity to be heard, she rested her decision on the blanket ruling that violates due process, effectively replicating Judge Cisneros's earlier procedural errors.

**V.     Conclusion**

The Special Master's order and its reliance on Magistrate Judge Cisneros's orders denied Uber of substantive rights afforded under PTO 14's non-waiver provision. Uber respectfully requests that the Court vacate the Special Master's January 9, 2026 order and direct her to decide Uber's clawback privilege claims on the merits.

---

[10] Those errors were magnified by the fact that Judge Cisneros opted to resolve Uber's privilege dispute through a categorical, blanket ruling, rather than on a document-by-document basis. As a mixed question of fact and law, "waiver of the attorney-client privilege favors a case-by-case determination of waiver based on a consideration of all the circumstances." *Eureka Financial Corp. v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991); *see also United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (mixed question); *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010). The Magistrate Judge did not consider the specific factual circumstances concerning Uber' de-designations or clawback of certain documents. Nor did Uber have the opportunity to develop, brief, or present its legal arguments that its de-designations do not constitute waiver before the Magistrate Judge made the blanket ruling.

[11] Even assuming that the parties' mention of clawback procedures in the Status Report was sufficient to allow Magistrate Judge Cisneros to rule on waiver *sua sponte* without violating due process (and it was not), the ruling would still be improper because Plaintiffs themselves forfeited the potential privilege-waiver argument by not asserting it. *See Redd v. Guerrero*, 84 F.4th 874, 892 (9th Cir. 2023) ("[T]his court will not address waiver if not raised by the opposing party." (quoting *United States v. Doe*, 53 F.3d 1081, 1082 (9th Cir. 1995)); *United States v. Garcia-Lopez*, 309 F.3d 1121, 1123 (9th Cir. 2002) (noting that a party "can 'waive waiver' implicitly by failing to assert it"); *cf. United States v. Sainz*, 933 F.3d 1080 (9th Cir. 2019) (reversing based on district court raising *sua sponte* defendant's waiver of right to seek sentence reduction).

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A26

DATED: January 14, 2026

Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
     Maria Salcedo

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN HORN
ALLISON M. BROWN

**O'MELVENY AND MYERS LLP**
SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
    oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
    ccotton@shb.com
JENNIFER HILL (Admitted *Pro Hac Vice)*
    jshill@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
    msalcedo@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,

16

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A27

RASIER, LLC, and RASIER-CA, LLC

17

**EXHIBIT A**

| **Privilege Log Number** |
| --- |
| JCCP_MDL_PRIVLOG006153 |
| JCCP_MDL_PRIVLOG058772 |
| JCCP_MDL_PRIVLOG005511 |
| JCCP_MDL_PRIVLOG007033 |
| JCCP_MDL_PRIVLOG059502 |
| JCCP_MDL_PRIVLOG024087 |
| JCCP_MDL_PRIVLOG009470 |
| JCCP_MDL_PRIVLOG006133 |
| JCCP_MDL_PRIVLOG016154 |
| JCCP_MDL_PRIVLOG016161 |
| JCCP_MDL_PRIVLOG016164 |
| JCCP_MDL_PRIVLOG017899 |
| JCCP_MDL_PRIVLOG017900 |
| JCCP_MDL_PRIVLOG005512 |
| JCCP_MDL_PRIVLOG059680 |
| JCCP_MDL_PRIVLOG059681 |
| JCCP_MDL_PRIVLOG059682 |
| JCCP_MDL_PRIVLOG059683 |
| JCCP_MDL_PRIVLOG059684 |
| JCCP_MDL_PRIVLOG059685 |
| JCCP_MDL_PRIVLOG023201 |
| JCCP_MDL_PRIVLOG043587 |

1

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A29

| |
|---|
| JCCP_MDL_PRIVLOG007423 |
| JCCP_MDL_PRIVLOG057200 |
| JCCP_MDL_PRIVLOG057551 |
| JCCP_MDL_PRIVLOG057552 |
| JCCP_MDL_PRIVLOG006612 |
| JCCP_MDL_PRIVLOG006613 |
| JCCP_MDL_PRIVLOG006614 |
| JCCP_MDL_PRIVLOG006832 |
| JCCP_MDL_PRIVLOG006714 |
| JCCP_MDL_PRIVLOG007165 |
| JCCP_MDL_PRIVLOG007166 |
| JCCP_MDL_PRIVLOG007167 |
| JCCP_MDL_PRIVLOG007475 |
| JCCP_MDL_PRIVLOG007476 |
| JCCP_MDL_PRIVLOG007553 |
| JCCP_MDL_PRIVLOG007555 |
| JCCP_MDL_PRIVLOG039302 |
| JCCP_MDL_PRIVLOG007513 |
| JCCP_MDL_PRIVLOG007515 |
| JCCP_MDL_PRIVLOG014929 |

2

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

A30

# EXHIBIT C

A31

# BRACEWELL

September 3, 2025

<u>BY EMAIL</u>

Tiffany R. Ellis
Peiffer Wolf Carr Kane Conway & Wise
15 E Baltimore Ave
Detroit, MI 48202

Maria R. Salcedo
Shook Hardy & Bacon
2555 Grand Blvd
Kansas City, Missouri 64108

      Re:    *In Re: Uber Technologies*, *Inc.,* 3:23-md-3084 (N.D. Cal.),
                Ruling on Scope of Clawback Orders

Dear Counsel,

On April 24, 2025 Judge Cisneros issued a ruling (Dkt. 2855) that "foreclosed Uber's ability to claw back certain documents" that had been de-designated during the period when Judge Cisneros was overseeing privilege disputes.   Dkt. 3545 at 1.  On July 22, 2025, Judge Cisneros issued an order denying defendants' motion for leave to move for reconsideration of the Court's April 24, 2025 order. *Id.*

On July 23, 2025, I requested a list from the parties identifying all documents that had been previously submitted to me for a privilege determination that were also subject to these orders. Plaintiffs provided a list of 112 documents that defendants have attempted to claw back.[1]  The parties dispute which documents are within the scope of Judge Cisneros' orders and whether they may be clawed back.

On August 26, 2025, following a meet and conferral process, defendants acknowledged that 38 of the 112 documents are subject to Judge Cisneros' orders. Accordingly, those 38 documents may not be clawed back.

---

[1] The parties do not dispute that the 112 documents were included in the four tranches of custodial documents originally overseen by Judge Cisneros. *See* Dkt. 3545 at 1-6.

**Hon. Barbara S. Jones, (ret.)** T:+1.212.508.6105       F: +1.800.404.3970
**Partner**                    31 W. 52nd Street, Suite 1900, New York,New York 10019-6118
                    barbara.jones@bracewell.com       bracewell.com

AUSTIN  DALLAS  DUBAI  HOUSTON  LONDON  NEW YORK  PARIS  SAN ANTONIO  SEATTLE  WASHINGTON, DC

# BRACEWELL

September 3, 2025
Page 2

As for the remaining 74 documents in dispute that defendants seek to claw back, the parties agree the documents can be divided into three categories: (1) 17 documents that were designated as privileged in part and never de-designated by defendants; (2) 11 documents that were de-designated in part, and; (3) 46 documents de-designated by defendants after February 6, 2025, when I was appointed as Special Master.

Upon review of the parties' submissions, and the orders of the Court, I have determined that the 17 documents in Category 1 that were never de-designated are not subject to Judge Cisneros' orders.  Judge Cisneros' orders are clear that "Uber has waived the right to claw back documents that it originally designated as privileged and then de-designated as part of the privilege dispute resolution process overseen by Judge Cisneros."  Dkt. 2855; *see also* Dkt. 3545 (the Court "ruled that Uber had waived any claim to privilege for documents that it specifically de-designated and agreed to produce during the period when the Court was overseeing privilege disputes."); Dkt. 3059 ("Uber may not claw back documents that it has designated as privileged and subsequently de-designated, at least where such de-designation occurred while the Court was overseeing privilege disputes."). The parties do not dispute that defendants did not de-designate the 17 documents in Category 1.

As for the 11 documents in Category 2 that were de-designated in part, those documents are subject to Judge Cisneros' orders and may not be clawed back.  A review of Judge Cisneros' orders demonstrates that Judge Cisneros did not draw a distinction between documents de-designated in part or in whole and I decline to do so.

As for the remaining category of 46 documents that were de-designated after I was appointed on February 6, 2025, defendants have expressly requested an opportunity to more "fully brief and argue their position." This request is granted. Uber may submit additional briefing on or before September 5, 2025 at 4pm PT, and should address whether the same principles identified by Judge Cisneros regarding waiver should also apply to the 46 documents de-designated after February 6, 2025.  *See* Dkt. 2855 ("Whether that principle applies to documents de-designated after privilege issues were referred to Judge Jones is a question for Judge Jones.").  Plaintiffs may file a reply to defendants' brief on or before September 9, 2025 at 4pm PT.

If there are documents that remain in dispute that require earlier resolution, the parties are directed to meet and confer and raise the issues with me as soon as possible.

# BRACEWELL

September 3, 2025
Page 3


Finally, the parties are ordered to submit a status report regarding any further agreements that may be reached on the remaining disputed documents on or before September 9, 2025.


Hon. Barbara S. Jones (Ret.)


cc: Counsel of record

# EXHIBIT E

A35

| | |
|---|---|
| **From:** | Jones, Barbara |
| **To:** | Tiffany R. Ellis; Goldman, Rachel; Shortnacy, Michael (SHB); Jacobs, Andrew; Geoffrey Spaulding; Chris Cox; Cummings, Dan (SHB); Cole, Brandon J. (SHB); Lean, Amanda M. (SHB); Potter, Erich C. (SHB); Gromada, Veronica G. (SHB); Hill, Jennifer (SHB); Salcedo, Maria (SHB); Uber-DefensePrivilegeTeam; St. Amand, Amy; Roopal Luhana; Sarah London; Rachel Abrams; Steven Cohn; Uber MDL Privilege Log Team |
| **Cc:** | Kokalas, Tom; Connolly, Daniel; Ball, David; Foxwell, Rebecca; Wulfe, Mark; Moriarty, Alexandria |
| **Subject:** | RE: Ruling on Scope of Clawback Orders |
| **Date:** | Tuesday, September 30, 2025 3:37:14 PM |
| **Attachments:** | image001.png image003.png image004.png image005.png image006.png |

**EXTERNAL**

Dear Counsel,

In my September 3, 2025 order, I granted defendants' request to submit briefing on the 46 documents that were de-designated after February 6, 2025 pursuant to the re-review process directed by Judge Cisneros.

By letter dated September 16, 2025, plaintiffs withdrew their challenge to four of these documents (JCCP_MDL_PRIVLOG043850, JCCP_MDL_PRIVLOG043854, JCCP_MDL_PRIVLOG043856, and JCCP_MDL_PRIVLOG043859). Accordingly, only 42 of the 46 documents remain at issue.

After considering the parties' submissions, the relevant authority, the procedural history in this case, and the related court orders, I find that the same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders apply to the 42 documents de-designated after February 6, 2025 and Uber may not claw back those documents.

Barbara Jones

---

**HON. BARBARA JONES (RET.)**
Partner
barbara.jones@bracewell.com | download v-card
T: +1.212.508.6105 | F: +1.800.404.3970 | M: +1.917.273.2292

**BRACEWELL LLP**

31 W. 52nd Street, Suite 1900 | New York, NY | 10019-6118
bracewell.com | profile | LinkedIn | Twitter

CONFIDENTIALITY STATEMENT

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

A36

# EXHIBIT G

A37

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANT UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES** |

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A38

Case No. 3:23-MD-3084-CRB

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA LLC respectfully submit the following objections to the Special Master's September 30, 2025 and October 7, 2025 rulings on Defendants' waiver of attorney-client privilege and attorney work product protection.[1]

\* \* \* \* \*

As a Rule of substance over procedure, Congress enacted Federal Rule of Evidence 502(d) to allow courts to issue orders providing that disclosure of documents in litigation does not constitute waiver of privilege. Orders issued under 502(d) provide much broader protection from waiver than the default provision in 502(b). The Court issued a broad 502(d) order in PTO No. 14 in this litigation providing that "the production of any privileged or otherwise protected … information in this case shall not be deemed a waiver or impairment of any claim of privilege or protection in this case."

With no pending clawback dispute before her and no briefing from the parties, Magistrate Judge Cisneros ruled *sua sponte* at a status conference that Defendants waived privilege and could not claw back *any* of the tens of thousands of documents it previously re-reviewed, de-designated, and produced. Defendants have only attempted to claw back a small number of these documents. To this day, Magistrate Judge Cisneros has not issued any order articulating the legal basis for her *sua sponte* blanket waiver ruling or how it could be consistent with the Court's Rule 502(d) order. The Special Master followed this ruling and applied the principles of Magistrate Judge Cisneros's ruling to documents de-designated and produced after her appointment. As Defendants explain below, under 502(d) and the 502(d) order here, Defendants' re-review and production of documents was not a waiver of privilege, even if the inadvertence requirement of 502(b)(1) were required to avoid waiver notwithstanding the 502(d) order.

The upshot of these rulings is that Defendants have been deprived of their legal rights as to dozens of indisputably privileged documents produced by mistake as part of Defendants' good faith privilege re-review of tens of thousands of documents. Defendants respectfully object to the Special

---

[1] For purposes of preserving future review, Defendants also object to the related September 3, 2025 ruling from the Special Master.

1

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A39

Case No. 3:23-MD-3084-CRB

Master's ruling and its reliance on Magistrate Judge Cisneros's legally and procedurally infirm blanket waiver ruling.

## BACKGROUND

### *Defendants' Document Production and Privilege Logs*

The parties have kept an aggressive pace of discovery in this case, resulting in producing approximately 1.7 million documents in 18 months and reviewing many more. By the fall of 2024, Plaintiffs had systematically challenged thousands of entries on Defendants' privilege logs. *See* Dkt. 1681, § XIII. As the Court began to hear and resolve privilege disputes on a limited number of documents, Magistrate Judge Cisneros advised the parties that "Uber is expected to apply rulings on privilege disputes to other previous designations of privilege" Dkt. 1785, but Defendants were left to interpret how those rulings applied in the context of a growing body of documents. As the parties worked to resolve their disputes as expeditiously as possible in advance of impending company custodian depositions, the Court entered Pretrial Order No. 20, which set an expedited schedule for re-reviewing and producing documents from privilege logs in advance of depositions. Magistrate Judge Cisneros then entered a series of orders in November 2024, December 2024, and January 2025, ruling on samples of privilege disputes, and Defendants were ordered to apply "lessons learned" within 14 or 21 days to previously produced privilege logs and to future privilege logs. *See* Dkts. 1908, 2005, and 2168.

Under the protections of 502(d), Defendants reviewed their privilege logs in a good faith effort to apply the "lessons learned" to tens of thousands of privilege log entries within a compressed schedule to accommodate depositions. To meet the aggressive schedule, Defendants employed a team of reviewers to conduct an expedited review in order to meet the extremely quick deadlines set forth by Judge Cisneros and adjust privilege claims to reflect the Court's latest instructions and the parties' ongoing conferrals. Throughout that process, Defendants removed or narrowed their privilege claim as to many documents in dispute. Importantly, in Defendants' production of documents to Plaintiffs, Defendants have consistently represented that their productions were "not intended to, and [did] not, waive any applicable privilege or other legal basis under which information may be protected from

2

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A40

Case No. 3:23-MD-3084-CRB

disclosure." *See*, *e.g.*, Jan. 10, 2025 Correspondence to Plaintiffs' Counsel. Plaintiffs received multiple productions under this reservation of rights without objection.

### *Magistrate Judge Cisneros's* **Sua Sponte** *Blanket Waiver Ruling*

On April 24, 2025, Magistrate Judge Cisneros issued her blanket ruling that Uber had "waived the right to claw back documents that it originally designated as privileged and then de-designated as part of the privilege dispute resolution process overseen by Judge Cisneros." Dkt. 2855. The Court did so even though there was no clawback dispute pending before the Court and no documents identified for ruling. Magistrate Judge Cisneros deferred to the Special Master to decide if that ruling should apply to documents de-designated after the Special Master was appointed. *Id.* Following Magistrate Judge Cisneros's blanket waiver ruling, Defendants worked diligently to identify the universe of documents affected by the ruling, including attempting to confer with Plaintiffs on a dispute over the number of affected documents and raising the issue with the Special Master. *See* Dkt. 3442 at 3-4; Dkt. 3505 at 2-4. Then, because of the procedure, or lack thereof, by which the blanket waiver ruling was made, Defendants filed a motion for leave to file a motion to reconsider the waiver ruling with Magistrate Judge Cisneros. Dkt. 3442. She denied leave on procedural grounds, under Civil Local Rule 7-9(b) governing motions for reconsideration, without addressing the merits of Defendants' waiver or due process and procedural arguments. Dkt. 3545. Defendants moved for relief from Judge Breyer, who also denied the motion on procedural grounds. Dkt. 3649.

### *Special Master's Application of the Blanket Waiver Ruling*

The first actual clawback dispute implicating waiver by disclosure after privilege re-review and de-designation was the underlying dispute before the Special Master. On September 3, 2025, the Special Master concluded that documents falling within the scope of Magistrate Judge Cisneros's ruling could not be clawed back. In briefing that followed, Defendants argued that the Special Master should decide the issue of waiver *de novo* as to documents de-designated after her appointment and explained why the blanket ruling was incorrect. Defs.' Sept. 10, 2025 Letter Brief. On September 30, 2025, the Special Master disagreed and found "that the same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders apply to the 42 documents de-designated after February

3

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A41

Case No. 3:23-MD-3084-CRB

6, 2025 and Uber may not claw back those documents." Special Master Sept. 30, 2025 Email Ruling. On October 7, 2025, the Special Master entered an order applying the September 30, 2025 ruling to 15 of the 42 documents at issue and determined that those documents were "not privileged" because they may not be clawed back.[2]

### ARGUMENT

**I.    The Special Master Erred in Finding That Uber Waived Privilege by Producing Documents After a Re-Review.**

**A.    Rule 502 Exists to Protect Against Waiver of Privilege Here.**

Congress enacted Rule 502 in order to protect against waiver of privileges in circumstances like this. It did so by providing a baseline protection against waiver by disclosure in Rule 502(b) and allowed courts to provide greater protection from waiver in Rule 502(d).

Rule 502 was enacted by Congress and signed into law by President Bush in 2008. Pub. L. 110-322, § 1(a), Sept. 19, 2008. Unlike all other federal rules of procedure, rules governing evidentiary privilege, like Rule 502, must be approved by an affirmative act of Congress. *See* 28 U.S.C. § 2074 (b). Under the traditional rule, a party waives attorney-client privilege when it voluntarily discloses privileged information to a third party, including an adversary in litigation. In enacting Rule 502, Congress substantially departed from the traditional rule by imposing limitations on the waiver by disclosure of the attorney-client privilege or work product protection in federal proceedings. Fed. R. Evid. 502, Advisory Committee Notes, Sept. 26, 2007 Committee Letter to Congress. In his statement supporting the proposed legislation, co-sponsor Senator Specter remarked:

> Current law on attorney-client privilege and work product is responsible in
> large part for the rising costs of discovery-especially electronic discovery.
> Right now, it is far too easy to inadvertently lose or "waive" the privilege.

---

[2] Those documents are: JCCP_MDL_PRIVLOG006612, JCCP_MDL_PRIVLOG006613, JCCP_MDL_PRIVLOG006614, JCCP_MDL_PRIVLOG006714, JCCP_MDL_PRIVLOG006832, JCCP_MDL_PRIVLOG007165, JCCP_MDL_PRIVLOG007166, JCCP_MDL_PRIVLOG007167, JCCP_MDL_PRIVLOG007475, JCCP_MDL_PRIVLOG007476, JCCP_MDL_PRIVLOG007513, JCCP_MDL_PRIVLOG007515, JCCP_MDL_PRIVLOG007553, JCCP_MDL_PRIVLOG007555, JCCP_MDL_PRIVLOG039302, JCCP_MDL_PRIVLOG110078,JCCP_MDL_PRIVLOG110079, JCCP_MDL_PRIVLOG110080.

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A42

Case No. 3:23-MD-3084-CRB

> A single inadvertently disclosed document can result in waiving the privilege not only as to what was produced, but as to all documents on the same subject matter. In some courts, a waiver may be found even if the producing party took reasonable steps to avoid disclosure. Such waiver will not just affect the case in which the accidental disclosure is made, but will also impact other cases filed subsequently in State or Federal courts.

S. Rep. No. 110-264, at 2 (2008).

In addition to addressing the high cost of privilege reviews and providing protections against waiver, Congress enacted Rule 502 to address the fact that, when mistakes happened, the standards for evaluating the consequences of the disclosure varied from district to district, and to prevent the harsh consequence of waiver for mistaken disclosures. *Id.* at 3. Rule 502 codified, for the first time, a national standard that addressed waiver resulting from disclosure of privileged material. *Id.*; Fed. R. Evid. 502, Statement of Congressional Intent Regarding Rule 502. In other words, two key purposes for enacting Rule 502 were to ensure (1) protection against waiver of privilege, and (2) predictability of the consequences of disclosure of privilege information.

Congress included two key provisions to accomplish those goals. First, Rule 502(b) sets a "default" procedure that only allows a party to claw back certain inadvertent disclosures. Specifically, Rule 502(b) provides that disclosure does not operate as a waiver only if the disclosure was inadvertent, occurred despite reasonable steps, and reasonable steps were taken promptly to rectify. Second, Rule 502(d) allows courts to "order that the privilege or protection *is not waived* by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." (emphasis added). In other words, Rule 502(d) orders can "supplant[] the default procedures set forth in Rule 502(b)." *Great-West Life & Annuity Ins. Co. v. American Economy Ins. Co.*, 2013 WL 5332410, at *11 (D. Nev. Sept. 23, 2013). Rule 502's Advisory Committees Notes further explain, "[T]he court order may provide for return of documents without waiver *irrespective of the care taken by the disclosing party*." Fed. R. Evid. 502, Advisory

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

A43

Committee's Note to subdivision (d) (emphasis added).[3] Additionally, the Statement of Congressional Intent explains that subdivision (d) "is designed to enable a court to enter an order ... that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, *while still preserving each party's right to assert the privilege* to preclude use in litigation of information disclosed in such discovery." *Id.*, Statement of Congressional Intent Regarding Rule 502, Subdivision (d) - Court Orders (emphasis added).

Those are the exact 502(d) protections the Court adopted in the pretrial order in this case—return of documents without waiver irrespective of Defendants' actions and preservation of Defendants' right to assert privilege even after production—and upon which Defendants relied at the time they re-reviewed documents to apply the Court's privilege rulings.

**B.    Production Does Not Result in Waiver of Privilege Under Pretrial Order No. 14.**

Merely producing documents does not operate as a waiver under the non-waiver provision of Stipulated Pretrial Order 14, which provides:

> Pursuant to Federal Rule of Evidence 502(d), the production of ***any*** privileged or otherwise protected or exempted information in this case ***shall not be deemed a waiver*** or impairment of ***any*** claim of privilege or protection in this case or in any other federal or state proceeding, including, but not limited to, the attorney-client privilege, the protection afforded to work production materials, statutory privileges and protections, or the subject matter thereof, as to the produced documents and any related materials.

PTO 14 ¶ 2 (emphases added). PTO 14 further provides that, in a clawback dispute presented to the Court or Special Master, the party challenging the privilege is not permitted to assert "the fact or

---

[3] Indeed, "Rule 502(d) permits courts to enter orders that provide that a disclosure does not constitute a waiver–regardless of the actions taken by the producing party" and "avoid any question about whether [it] was inadvertent." The Sedona Conference, The Sedona Conference Commentary on Protection of Privileged ESI, 17 SEDONA CONF. J. 95, 104 (2016) (emphasis added); *see also* The Sedona Conference, The Sedona Conference Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders, 23 Sedona Conf. J. 1, 25 (2022) ("[T]he text of Rule 502(d) is not limited to 'inadvertent' disclosures . . . . [T]he risk that the court will engage in a Rule 502(b) analysis to determine whether a disclosure was or was not inadvertent . . . is one of the principal problems with 502(b) that 502(d) eliminates.").

6

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A44                                        Case No. 3:23-MD-3084-CRB

circumstances of disclosure" (PTO 14 ¶ 6), and instead must argue the merits of the privilege claim. By its plain language, this non-waiver provision does not require inadvertence. It does not depend on the level of review or re-review conducted prior to production. Nor does it have any conditions or limitations concerning how or during what stage of discovery the production occurred. *Any* production is subject to the non-waiver clause. Further, PTO 14 provides a procedure to claw back documents that have "been produced for which the Producing Party asserts privilege and/or other protection," regardless of whether such production was inadvertent. *Id.* at ¶ 4. Many courts addressing this issue have found that similar orders pursuant to Rule 502(d) "allow[] a party to claw back privileged materials ***without regard to whether the disclosure was inadvertent***." *GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, 2024 WL 4960008, at *4 (N.D. Miss. Dec. 3, 2024) (emphasis added); *Thomas v. Marshall Public School*, 690 F. Supp. 3d 941, 962 (D. Minn. 2023) (stating "Rule 502(d) allows a party who discloses privileged material to claw them back without having to prove the disclosure was 'inadverent'"); *United States v. Hall*, No. 2020 WL 7027473, at *3 (N.D. Tex. Nov. 30, 2020) (finding Rule 502(d) applicable to privileged materials disclosed "inadvertently or purposefully"); *United States v. Caroleo*, 2019 WL 5869690, at *1 (E.D.N.Y. Nov. 11, 2019) ("Even if the disclosure is not 'inadvertent' under Rule 502(b), however, a court may nevertheless 'order that [the] privilege or protection is not waived by disclosure connected with the litigation pending before the court.'" (quoting Fed. R. Evid. 502(d)); *Brookfield Asset Management, Inc. v. AIG Financial Products Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (holding that under stipulated Rule 502(d) order that no waiver of any applicable privilege would result from defendants' production "of any documents in this proceeding," defendants had right to claw back privileged documents "no matter what the circumstances giving rise to their production were").[4]

---

[4] *See also, e.g.*, *Everest Nat'l Ins. Co. v. Am. Claims Mgmt., Inc.*, 2025 WL 2381475, at *5 (D.N.J. Aug. 15, 2025) ("While some courts have engrafted additional standards to determine if a waiver has occurred even in the presence of a Rule 502(d) order, this Court finds the plain language of Rule 502(d) to not be so constrained. Indeed, 'the text of Rule 502(d) is not limited to "inadvertent" disclosures[.]'"); *United States v. Hatfield*, 2010 WL 11515679, at *1 (E.D.N.Y. July 13, 2010) (stating that argument "Rule 502 is limited to inadvertent disclosure … finds no support in either Rule 502(d)'s plain text, or in the Advisory Committee notes"); *Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, 2009 WL 464989, at *4 (N.D. Tex. Feb. 23, 2009) (in discussion of

7

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A45    Case No. 3:23-MD-3084-CRB

These courts' decisions are correct. They accord with the text of Rule 502(d), which does not contain an inadvertence requirement. And they are consistent with the intent of the rule's drafters. Indeed, in the attached declaration, Professor Daniel Capra, the co-author of the text of Rule 502, the author of the Committee Note to that Rule, and the Reporter to the Judicial Conference Advisory Committee on Evidence Rules since 1996, confirms that the "Advisory Committee viewed Rule 502(d) as the most important provision in the rule" because it "provides parties a predictable protection that can be relied upon – a protection that does not require a showing of reasonable efforts that will result in significant expenditure of resources. That is why the Committee was of the view that a Rule 502(d) order could protect against waiver even when disclosures are intentional. The Advisory Committee clearly intended that Rule 502 (d) orders could cover intentional disclosures as well as mistaken ones." Ex. A at ¶¶ 4-5. He further explains that "the principal benefit of Rule 502(d) is that it provides certainty at the time of production–rather than waiting for an after-the-fact determination of reasonableness (as Rule 502(b) mandates). Under Rule 502(d), protective orders—like the one in this case—are only effective when they approve procedures that would not pass muster if analyzed exclusively under Rule 502(b)." *Id.* at ¶ 7.

Plaintiffs cited only one case in their September 16 opposition submitted to the Special Master, *De Coster v. Amazon.com, Inc.*, 2025 WL 904465, at *4–5 (W.D. Wash. Mar. 25, 2025). But that case is inapposite. The protective order in *De Coster* explicitly invoked the protections of Rule 502(b), and the district court therefore applied the Rule 502(b) standard in deciding that Amazon could not claw back documents it de-designated following a re-review. *Id.* at *4 ("No reasonable reading of the Order supports Amazon's contention that it allows a party to claw back a document under any circumstances. The Order expressly [invoked Rule 502(b)] . . . . Thus, the Rule 502 (b) waiver standard applies to the parties' claw back request."). Not so here. The relevant pretrial order clearly invokes the protections

---

502(d), rejecting "argu[ment] that Rule 502 is limited to inadvertent disclosures. Although the rule addresses the consequences of an inadvertent disclosure of privileged information, this is not the extent of the rule. Instead, the plain language of the rule addresses the 'disclosure of a communication or information covered by the attorney-client privilege or work-product protection' in various 'circumstances.'").

8

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

A46

of Rule 502(d), so the case is not on point. But even if it was, *De Coster* is not binding on the Special Master.

In short, Defendants' production of the documents at issue does not operate as a waiver of the attorney-client or work-product protections under the Court's order adopting Rule 502(d).

**C.    The concerns of serial designation, de-designation, and clawback, creating delay and inefficiency do not justify ignoring Rule 502(d).**

Concerns that not imposing the inadvertence requirement of 502(b)(1) onto 502(d) would result in serial designation, de-designation, and re-designation and clawback, leading to significant delay and inefficiency, are misguided. And in any event, they do not justify ignoring the text of Rule 502(d) and the 502(d) order in PTO 14 (Dkt. 396 ¶ 2).

Courts no doubt have inherent authority to "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," but that "exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule," like Federal Rule of Evidence 502(d). *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). As explained above, PTO 14 plainly provides, as Rule 502(d) permits, that production of a document is not a waiver of privilege. Dkt. 396 ¶ 2. Neither Magistrate Judge Cisneros nor the Special Master have identified anything other than the review and production of documents that could constitute a waiver.[5] The Court cannot ignore its own order pursuant to a federal rule that Congress enacted and find waiver inconsistent with the 502(d) order in effect at the time the productions were made. *See, e.g.*, *Arconic Inc. v. Novelis Inc.*, 2019 WL 911417, at *1 (W.D. Pa. Feb. 26, 2019) (holding that "the parties are entitled to rely on Rule 502(d) for the documents already produced" when 502(d) order was in effect).[6]

---

[5] If the Court wished to place a further limitation on parties' ability to claw back documents, it could have adopted a 502(d) order that was limited to *inadvertent* disclosures (*see, e.g.*, *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 2013 WL 2322678, at *2 (S.D.N.Y. May 21, 2013)), but instead afforded the parties the full protection of 502(d) in PTO 14 and protects all "production[s] … in this case" from resulting in waiver.

[6] Finding waiver in violation of the 502(d) order in PTO 14 violates due process and basic notions of fairness because it would effectively amend that order and apply the amendment retroactively, despite Defendants' reliance on the non-waiver protections of the order. *Cf. Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (the presumption against retroactive application of new laws and

9

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A47

Case No. 3:23-MD-3084-CRB

Some of the courts adopting the minority view that the inadvertence requirement of 502(b)(1) applies to 502(d)—notwithstanding the lack of textual support in 502(d)—have done so for policy reasons, fearing this would "[a]llow[] a party to intentionally and tactically disclose protected materials during litigation, while preserving the ability to assert privilege when such tactics change." *E.g.*, *Smith v. Best Buy Stores, L.P.*, 2017 WL 3484158, at *4 (D. Idaho Aug. 14, 2017) (dicta).[7] Magistrate Judge Cisneros expressed a similar concern, "not[ing] that the clawback protocol on which Uber relies in Pretrial Order No. 14 did not contemplate Uber serially designating, de-designating, and re-designating documents as privileged in a manner that undermines the completion of discovery on any reasonable schedule." Dkt. 3545 at 8.

This concern is misguided. There is no evidence that Defendants clawed back previously de-designated documents to engage in any type of gamesmanship or because they were acting "tactically"

rules "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."); *Reyes v. Garland*, 11 F.4th 985 (9th Cir. 2021) ("[A] due process concern always at the heart of retroactivity analysis.") (holding that Board of Immigration Appeals erred by retroactively applying new interpretation retroactively); *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013) ("[B]efore deciding to modify the protective order, the court that issued it … must weigh the countervailing reliance interest of the party opposing modification"); *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007) (noting that "bankruptcy courts have as courts of equity [power] '"to reconsider, modify or vacate their previous orders *so long as no intervening rights have become vested in reliance on the orders*." (emphasis added)); *United States v. Potts*, 528 F.2d 883, 886 (9th Cir. 1975) (en banc) (finding that "due process fairness bars the retroactive judgment of his conduct using the expanded definition" of crime in case law that "expands the scope of potential criminal liability"); *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001) ("Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'").
[7] Many such cases are inapposite because they reject an argument much broader than the one Defendants make here, that no waiver is possible *by any means* when a 502(d) order is in place, even waiver by means other than disclosure and production. *See, e.g. Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 202 (E.D.N.Y. 2016); *Smith*, 2017 WL 3484158, at *4. For example, notwithstanding a 502(d) order, a party's "*offensive* introduction of [its own] privileged communication" in litigation "will likely constitute waiver, under the well-established doctrine that attorney-client privilege may not be used both as a sword and shield." *Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943, 996 (N.D. Cal. 2025). But here, Defendants have not used the clawed back documents for any purpose and there is no basis for finding waiver other than Defendants' review and production.

10

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A48

Case No. 3:23-MD-3084-CRB

to gain an advantage in litigation. *Smith*, 2017 WL 3484158, at \*4. Defendants have complied with discovery obligations that are enormous in scale on a rapid schedule, producing 1.7 million documents and reviewing many more. The goal of the re-review was for Defendants' privilege assertions to better adhere to the Court's guidance. But inevitably, it was imperfect; some errors were made in the other direction when de-designating documents. As a result, Defendants have clawed back a small number of these documents upon discovering inadvertently produced privileged documents, representing a very small fraction of those it de-designated and a miniscule percentage of the overall discovery in this litigation. No evidence even suggests that Defendants' clawbacks were some sort of gamesmanship or bad faith, nor did Defendants use them "tactically" before clawing them back, such as using them in support of a motion. And courts have ample tools to deal with gamesmanship other than rewriting Rule 502(d).

Concerns over efficiency and delay are likewise misguided. The process of resolving privilege disputes, by necessity of the scale and scope of discovery, has been an iterative approach, with the number of disputes narrowing dramatically at each step. The documents previously de-designated and produced, then clawed back, represent the bottom of this funnel. The concern that Defendants will continue "serially designating, de-designating, and re-designating [these] documents as privileged in a manner that undermines the completion of discovery on any reasonable schedule" (Dkt. 3545 at 8) is not realistic or possible. Indeed, despite multiple briefs and orders on this issue, there is zero evidence in the record of how the relevant clawbacks have or will meaningfully delay the case schedule. Any clawback notices by Defendants must be made within twenty-one days of discovery and can be challenged by Plaintiffs under Special Master Order No. 4 (Dkt. 2933). If Plaintiffs do not timely challenge the clawback notice, that ends the matter as well.  The Special Master procedures have allowed any challenge to be resolved quickly without impacting the overall case schedule.  But for the blanket waiver ruling, the clawbacks at issue could have been resolved on the merits long ago following these procedures.

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A49

Case No. 3:23-MD-3084-CRB

### D.    Defendants' disclosures were inadvertent.

Even if the minority view were correct that the inadvertence requirement of Rule 502(b)(1) must be met to avoid waiver by production, notwithstanding a 502(d) order, Defendants' production of later-clawed back documents was inadvertent.

Uber's de-designation and production of certain privileged documents was inadvertent under the circumstances, regardless of the fact that attorneys had reviewed the documents prior to de-designation. "An 'inadvertent disclosure' is simply where the work-product protected [or privileged] document was produced as the result of a mistake." *B&G Foods North America, Inc. v. Embry*, 2024 WL 922900, at *2 (E.D. Cal. March 4, 2024). "[A] document may be produced inadvertently even after review and redaction." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *7 (E.D. Va. July 16, 2019) (collecting cases); *Guidiville Rancheria of California v. United States*, 2013 WL 6571945, at *4 (N.D. Cal. Dec. 13, 2013) (finding, despite two levels of attorney privilege review, "that the Production Disclosure of the document … was inadvertent").  This is because "the 'inadvertence' requirement of Rule 502(b) was not designed to turn on fine distinctions based on the nature of the mistake to determine whether the particular type of mistaken disclosure qualifie[s] for protection from waiver." *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *3 (N.D. Cal. March 11, 2011); *see also United States v. United Health Grp., Inc.*, 2020 WL 10731257, at *3 (C.D. Cal. Nov. 9, 2020) ("[I]nadvertence could include any type of accidental or mistaken production, particularly when that production occurs during the production of voluminous documents."). Therefore, an intentional production of documents is an inadvertent disclosure if it is the result of a mistake. *Datel*, 2011 WL 866993, at *3.  This comports with the purpose of Rule 502(b).  "[T]he point of Rule 502(b) is to protect clients' confidences from their lawyers' human errors." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018). As one court explained:

> [T]o find that a document disclosed by a lawyer is never inadvertent would vitiate the entire point of Rule 502(b).  Concluding that a lawyer's mistake never qualifies as inadvertent disclosure under Rule 502(b) would gut that rule like a fish.  It would essentially reinstate the strict waiver rule in cases where lawyers reviewed documents, and it would create a perverse incentive not to have attorneys review documents for privilege.

12

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A50

Case No. 3:23-MD-3084-CRB

*Amobi v. District of Columbia Dept. of Corrections*, 262 F.R.D. 45, 54 (D.D.C. 2009); *see also Hatfield v. Bonneville Cnty.*, 2025 WL 358441, at *6 (D. Idaho Jan. 31, 2025) (stating, in case where attorney reviewers mistakenly missed an attorney-client communication in an email in a large-scale review, that "although the document itself may have been intentionally produced, the disclosure of a communication protected by the attorney-client privilege was inadvertent").

These cases are consistent with the intent of the rule's drafters. As Professor Capra states in his declaration, "the Committee by that term, intended to cover any disclosure that was mistaken. The term 'inadvertent' was taken from prior case law ....  That case law covered all disclosures that the producing party claimed to be a mistake." Ex. A, ¶ 11.

While nothing more than a mistake is required to establish inadvertence, courts take account of the realities of large-scale discovery when determining whether a disclosure was inadvertent.[8] *Pac. Coast Steel v. Leany*, 2011 WL 4704217, at *5 (D. Nev. Oct. 4, 2011) ("The scope of the discovery … in this case also weighs in favor of finding the documents were inadvertently disclosed. Plaintiffs produced more than 2.3 million pages of documents.").  "Such errors are, of course, inevitable in complex litigation involving the production of tens of thousands of documents." *BNP Paribas Mortg. Corp. v. Bank of America N.A.*, 2013 WL 2322678 at *8 (S.D.N.Y. May 21, 2013).  As such, "[c]ourts

---

[8] Some courts have distinguished between two approaches to the inadvertence analysis under Rule 502(b)(1), the first approach considering "if the party intended to produce a privileged document or if the production was a mistake," and the second approach conducting a "totality of the circumstances" analysis that, in effect, determines whether the disclosure was both inadvertent *and* reasonable based on factors like the precautions taken to prevent the inadvertent disclosure and efforts to rectify it.  *Amobi*, 262 F.R.D. at 53; *see also T&W Holding Co., LLC v. City of Kemah, Texas*, 641 F. Supp. 3d 378, 382 (S.D. Tex. 2022); *Pac. Coast Steel v. Leany*, 2011 WL 4704217, at *4 (D. Nev. Oct. 4, 2011) (totality of the circumstances approach).  Most courts have rejected the second approach, noting that this analysis conflates the 502(b)(2) and (3) factors ("reasonable steps to prevent" and "reasonable steps to rectify" the inadvertent disclosure) with the 502(b)(1) inadvertence factor, and that the first, simpler approach is more consistent with the language of the rule.  *E.g.*, *Amobi*, 262 F.R.D. at 53-54.  However, courts using the simpler "mistake" inadvertence standard can still consider the circumstances and context of a disclosure, such as the large scope and timing of discovery, to determine whether a disclosure of privileged documents was, in fact, a mistake.  *See, e.g.*, *Patagonia, Inc. v. Anheuser Busch, LLC*, 2020 WL 12048989, at *1 (C.D. Cal. Sept. 29, 2020) (finding disclosure of narrowly redacted documents was inadvertent in "a major case with massive document discovery and production, posing a major challenge to review of documents for privilege").

13

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A51

Case No. 3:23-MD-3084-CRB

have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver." *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 1988 WL 138254, at *5 (E.D.N.Y. Dec. 19, 1988); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) ("Where discovery is extensive, mistakes are inevitable.").

Indeed, under similar circumstances, Judge Hixson of this District found that Apple inadvertently disclosed and was entitled to clawback two documents it de-designated following a re-review process because:

> Epic cites no authority for the proposition that inadvertence does not include an intentional but mistaken decision by a human document reviewer. The question, after all, is whether Apple deliberately produced a document, not whether one particular document reviewer deliberately decided these documents should have been redacted rather than withheld in full. Apple used a large team of reviewers to make privilege calls on large numbers of documents, and a mistake does not mean that the company deliberately produced the document.

*Epic Games, Inc. v. Apple, Inc*., Case No. 20-cv-05640-YGR (TSH), 2025 U.S. Dist. LEXIS 34007 (N.D. Cal. Feb. 25, 2025).

Uber has produced approximately 1.7 million documents in this litigation. As is common with any large-scale document production under a compressed timeline for review, certain documents were produced by reviewing attorneys who did not appreciate the privileged nature during review or who simply made a mistake in applying redactions or coding a document as not privileged. Uber did not intend to produce privileged documents and waive its privilege.

The documents at issue in the Special Master's September 30 decision illustrate how privileged content was mistakenly produced without an intentional waiver of privilege. One such example is JCCP_MDL_PRIVLOG007033, a 14-page email thread that was produced with redactions on March 8, 2025. When the document was subsequently used as a deposition exhibit, it was discovered that the redactions were incomplete. For example, the thread includes an email from Uber attorney Mr. Binnings that carries across two PDF pages. The March 8 production included a redaction only to half

14
DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A52

Case No. 3:23-MD-3084-CRB

of Mr. Binnings's email. The second half of Mr. Binnings's email was unintentionally left unredacted on the next page. There were also messages directed to Mr. Binnings seeking his legal advice within the body of larger communications that should have been redacted when the document was produced on March 8. Defendants reproduced the document with corrected redactions on May 2, 2025. While it was always maintained on Defendants' privilege log, a clawback was necessary to correct the scope of redactions. PTO 14 provides a procedure for clawing back documents under these circumstances.

**E.**    **The Special Master's finding of waiver was erroneous because it followed Magistrate Judge Cisneros's *sua sponte*, blanket ruling on waiver by disclosure.**

The Special Master's September 30, 2025 ruling on Uber's clawback rested on the finding "that the same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders apply to the 42 documents de-designated after February 6, 2025 and Uber may not claw back those documents" (Email from Spec. Mast. Hon. Barbara S. Jones (Sep. 30, 2025)).  By deferring to Magistrate Judge Cisneros's *sua sponte* blanket ruling, rather than deciding the issue *de novo*, the Special Master's ruling sweeps in the procedural and due process errors of that blanket ruling.

First, the blanket privilege ruling was made with no pending clawback challenge dispute before Magistrate Judge Cisneros.  PTO 14 (Dkt. 396 ¶ 4) governs clawback procedures in this litigation. *Northwest Acceptance Corp. v. Lynwood Equipment, Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) ("A pretrial order … controls the subsequent course of action in the litigation."). PTO 14 prescribes a procedure by which the producing party may notify the receiving party that it produced a document for which it asserts privilege. The receiving party then can contest the assertion of privilege by providing a written "Notice of Clawback Challenge." The parties then go through a conferral period. If the conferral does not resolve the dispute, the parties are required to submit the issue to the Court by filing a "joint letter brief." Dkt. 396 ¶¶ 4-6.

None of that happened here.  The general topic of clawbacks *procedures* was mentioned by Plaintiffs in a Joint Status Report–updating the Court on the status of *eight* different discovery disputes within ten pages (five per side)–none of which included a challenge to any particular claw back document.  Plaintiff made no substantive challenge to documents Uber had clawed back.  Indeed,

15

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A53                                                Case No. 3:23-MD-3084-CRB

Plaintiffs argued they did not have the "requisite information … to assess and potentially challenge the clawback." Joint Status Report (Dkt. 2823) at 3. Plaintiffs never mentioned the notion of waiver—neither in the Joint Status Report nor at the Status Conference. Nevertheless, the Court found Uber's de-designation decisions constituted a waiver of its attorney-client or work-product privilege before Uber was given an opportunity to argue against waiver. April 24, 2025 Hr'g Tr. at 9:18–19. Respectfully, this is directly contrary to PTO 14's clawback dispute resolution procedures.

Second, and relatedly, the blanket privilege ruling was improper because it was made *sua sponte* without an opportunity for Defendants to be heard in violation of their due process rights. To allow litigants the full and fair opportunity to be heard, it is generally disfavored for courts to raise issues *sua sponte*. *See, e.g., Lewis v. Woodford*, 2007 WL 196635, at *20 n.12 (E.D. Cal. Jan. 23, 2007) ("[I]t is generally inappropriate for judicial officers to raise issues sua sponte."). "There are, however, several respects in which the Federal Rules allow the district court, *with appropriate notice*, to raise issues *sua sponte*." *Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (emphasis added). Further, "[a] court *may only* grant a motion *sua sponte* if all parties have a full opportunity to address the issue." *Mead Reinsurance v. Granite State Ins. Co.*, 873 F.2d 1185, 1189 (9th Cir. 1988) (emphasis added); *see also Heinz v. C.I.R.*, 770 F.2d 874, 876 (9th Cir. 1985) (reversing the tax court's *sua sponte* ruling where the taxpayers "were not given a 'full and fair opportunity to ventilate the issues'"). This is because "[i]n our adversarial system of adjudication, we follow the principle of party presentation" (*United States v. Sinneng-Smith*, 590 U.S. 371, 375 (2020)), "it is generally up to the parties to decide, within the parameters of the applicable procedural rules, what particular relief they wish to seek, what type of motion they wish to present to obtain that relief, and which arguments they wish to make in support" (*Jones*, 74 F.4th at 1058). At the very least, "[g]iven the due process and fairness concerns presented, a district court generally must provide the parties with adequate notice that it is contemplating invoking a particular procedural device *sua sponte*." *Id.* at 1060.

Due process concerns are particularly acute when a court determines a party has waived attorney-client privilege. "[T]he attorney-client privilege is, perhaps, the most sacred of all legally

16

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A54                                                          Case No. 3:23-MD-3084-CRB

recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). Indeed, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Consequently, "[w]hether express or implied, the scope of a waiver must be *narrowly construed* and 'fit within the confines of the waiver.'" *Garcia v. Progressive Choice Ins. Co.*, 2012 WL 3113172, at *3 (S.D. Cal. July 30, 2012) (emphasis added).

Waiver of privilege is inappropriate for a blanket rule, but rather should be analyzed in a fact-specific manner. Indeed, "[w]hether a privilege has been waived is a mixed question of fact and law." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). Thus, "waiver of the attorney-client privilege favors a case-by-case determination of waiver based on a consideration of all the circumstances." *Eureka Financial Corp. v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991).

The Magistrate Judge did not have the opportunity to consider the specific factual circumstances concerning Defendants' de-designations or clawback of certain documents. In fact, the documents subject to waiver pursuant to the Order were not even specifically identified at the Status Conference or in the Order itself. Nor did Defendants have the opportunity to develop and brief legal arguments that its de-designations do not constitute waiver before the Magistrate Judge made the blanket ruling. The Court indicated its position concerning waiver before Defendants had an opportunity to speak about the topic during the hearing. *See* Hr'g at 9:18–19. And after the Court stated its position, Uber had limited opportunity to argue its position on its privilege claim.

Even assuming that the mention of clawback procedures in the Status Report was sufficient to allow Magistrate Judge Cisneros to rule on waiver *sua sponte* without violating due process (and it was not), the ruling would still be improper because Plaintiffs themselves waived the potential waiver by not asserting it. *See Redd v. Guerrero*, 84 F.4th 874, 892 (9th Cir. 2023) ("[T]his court will not address waiver if not raised by the opposing party." (quoting *United States v. Doe*, 53 F.3d 1081, 1082 (9th Cir. 1995)); *United States v. Garcia-Lopez*, 309 F.3d 1121, 1123 (9th Cir. 2002) (noting that a

17

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A55

Case No. 3:23-MD-3084-CRB

party "can 'waive waiver' implicitly by failing to assert it"); *cf. United States v. Sainz*, 933 F.3d 1080 (9th Cir. 2019) (reversing based on district court raising *sua sponte* defendant's waiver of right to seek sentence reduction).

"'The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending "hearing."' … Without notice, '[the] right to be heard has little reality or worth.'"  *Wright v. Beck*, 981 F.3d 719, 727 (9th Cir. 2020).  Defendants neither had notice that waiver would be raised at the Status Conference nor a fair opportunity to address the issue.  In short, Defendants did not have the "full opportunity to address the issue" necessary for the Court to raise and rule on waiver of the attorney-client and attorney work-product protections *sua sponte*.  Magistrate Judge Cisneros's ruling, finding a blanket waiver of privilege for an unidentified group of at least 30 documents, stripped Defendants of the opportunity to inform the Court of the particular circumstances they believe entitle them to assert attorney-client privilege over certain documents they de-designated.  While the Special Master allowed Defendants the opportunity to be heard, she rested her decision on the blanket ruling that violates due process, making the Special Master's ruling the fruit of the poisonous tree, subject to the same errors.

**F.    The waiver ruling results in the unfair outcome of production of clearly privileged documents in violation of Defendants' bedrock right to attorney-client privilege.**

The consequences of the Court's April 24 decision are far-reaching and significant. While the Court entered this order because of the perceived need to promote efficiency and avoid lingering privilege disputes, the result is that Defendants are unable to claw back undeniably privileged documents, even though Plaintiffs have not challenged the merits of the clawback. For example:

- JCCP_MDL_PRIVLOG005511 is an email thread with Dalene Bramer, then-Senior Counsel, Employment. It was produced in full on March 8, 2025. It was clawed back less than four weeks later when it was discovered that the document was produced without necessary redactions. It was reproduced on April 1, 2025, with redactions, including redactions to an email from Ms. Bramer to Uber employees in which she summarized the legal advice that she provided to the business from her employment law perspective. Plaintiffs have never challenged the merits of Defendants' redactions, and there could be no credible basis to do so.

- JCCP_MDL_PRIVLOG007423 and JCCP_MDL_PRIVLOG006832 are email threads that were produced in full on March 8, 2025. While the last emails in each thread are between non-

18

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

A56

Case No. 3:23-MD-3084-CRB

lawyers only, the thread includes earlier emails to and from Aaron Brand, then-Legal Director, Mobility Product Counsel Team. These documents were clawed back and reproduced on May 16 and June 16 to apply redactions to the legal advice requested from and provided by Mr. Brand. Plaintiffs have never disputed the privileged nature of the redacted communications to and from Mr. Brand.

- JCCP_MDL_PRIVLOG057200 is another email thread that was produced in full on March 8, 2025. Shortly thereafter, it was discovered that the document was produced without the necessary redactions. It was clawed back and reproduced with redactions on April 18, 2025. Limited redactions have been applied to discrete messages to and from Scott Binnings, Associate General Counsel, regarding his legal advice on the development of a product feature.

Denying Defendants the ability to claw documents back in these circumstances undermines a primary purpose of Rule 502(d), which is to provide a predictable protection for privileged material. Defendants made their document productions with the protections of Rule 502(d) in mind. To circumvent these protections after the fact is fundamentally unfair because it deprives Defendants of a substantive legal right in a way that the Court's pretrial orders did not contemplate.

## CONCLUSION

The April 24 Order denied Defendants of substantive rights afforded under PTO 14's non-waiver provision. It should not be adopted to apply to the documents at issue here. Defendants respectfully request that the Special Master decide this issue *de novo* and decline to adopt the April 24 Order for the reasons outlined above.

DATED: October 21, 2025                     Respectfully submitted,

                                            **SHOOK HARDY & BACON L.L.P.**

                                            By: */s/ Maria Salcedo*
                                                Maria Salcedo

                                            **KIRKLAND & ELLIS LLP**
                                            LAURA VARTAIN
                                            ALLISON M. BROWN
                                            JESSICA DAVIDSON

                                            **O'MELVENY AND MYERS LLP**
                                            SABRINA STRONG

19

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

A57

JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
    oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
    ccotton@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
    msalcedo@shb.com
JENNIFER HILL (Admitted Pro Hac Vice)
    jshill@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

20

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS
ON PLAINTIFFS' CLAWBACK CHALLENGES

A58                                    Case No. 3:23-MD-3084-CRB

# EXHIBIT H

# BRACEWELL

November 17, 2025

<u>BY EMAIL</u>

Maria Salcedo, Esq.
Shook Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108

Tiffany R. Ellis, Esq.
Peiffer Wolf Carr Kane Conway & Wise
15 E Baltimore Ave
Detroit, MI 48202

> Re:   *In Re: Uber Technologies*, *Inc.,* 3:23-md-3084 (N.D. Cal.)
> Objections to Rulings on Scope of Clawback Orders

Dear Counsel,

Defendants have submitted objections to two of my rulings that denied defendants' requests to claw back certain documents.

On September 30, 2025, I issued my ruling that denied defendants' request to claw back 42 documents that defendants had de-designated pursuant to a re-review process directed by Judge Cisneros.

On October 7, 2025, I issued my determinations regarding plaintiffs' challenge to documents listed on defendants' June 17, 2025 Clawback Notice.  Fifteen of the 42 documents on defendants' June 17, 2025 Clawback Notice were also subject to my September 30, 2025 ruling, and accordingly, I determined that those 15 documents may not be clawed back.

On October 21, 2025, defendants objected to my September 30, 2025 ruling and the portion of my October 7, 2025 ruling regarding the 15 documents noted above.  Defendants submitted briefing and a declaration from Professor Daniel J. Capra.  On November 5, 2025, plaintiffs submitted a responsive brief, and by email dated November 7, 2025, defendants submitted a reply.

For the reasons set forth below, defendants' objections are denied.

**Hon. Barbara S. Jones, (ret.)**  T:+1.212.508.6105        F: +1.800.404.3970
**Partner**                                                    31 W. 52nd Street, Suite 1900, New York,New York 10019-6118
barbara.jones@bracewell.com          bracewell.com

AUSTIN   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   PARIS   SAN ANTONIO   SEATTLE   WASHINGTON, DC

A60

# BRACEWELL

November 17, 2025
Page 2

The issue before me is the scope and application of Judge Cisneros' April 24, 2025 and July 22, 2025 orders, in which Judge Cisneros ruled "Uber has waived the right to claw back documents that it originally designated as privileged and then de-designated as part of the privilege dispute resolution process overseen by Judge Cisneros." Dkt. 2855; *see also* Dkt. 3545 at 5 (the Court "ruled that Uber had waived any claim to privilege for documents that it specifically de-designated and agreed to produce during the period when the Court was overseeing privilege disputes."); Dkt. 3059 ("Uber may not claw back documents that it has designated as privileged and subsequently de-designated, at least where such de-designation occurred while the Court was overseeing privilege disputes."). In the April 24, 2025 order, Judge Cisneros also stated that "[w]hether that principle applies to documents de-designated after privilege issues were referred to Judge Jones is a question for Judge Jones." Dkt. 2855.

The parties provided multiple submissions regarding which documents in dispute should be subject to the April 24, 2025 and July 22, 2025 orders. Additionally, defendants specifically requested an opportunity to brief whether the 46 documents that were produced as de-designated documents after my appointment should fall within the April 24 and July 22 orders.

In my September 3, 2025 decision, I ruled on the majority of de-designated documents in dispute and granted defendants' request to brief "whether the same principles identified by Judge Cisneros regarding waiver should also apply to the 46 documents de-designated after [my appointment on] February 6, 2025." The parties submitted additional briefing and defendants sought de novo review of whether 42 documents could be clawed back.[1]

In my September 30, 2025 ruling, after considering the parties' submissions, the procedural history in this case, the related court orders, and relevant authority, I determined "that the same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders apply to the 42 documents de-designated after February 6, 2025 and Uber may not claw back those documents." In my October 7, 2025 determination, I applied my September 30, 2025 ruling to the documents then before me.

In their present objection, defendants have not provided any relevant new facts or argument that would justify the reversal of my prior rulings.

The re-review and de-designation of the documents at issue was undertaken and conducted by defendants pursuant to the orders of Judge Cisneros. That process was established by Judge Cisneros well before my appointment, and it was carried out in accordance with her various rulings. *See* Dkt. 3545; *see also* Dkt. 1808, 1908, 2005, 2168. The process was ongoing when I was appointed on February 6, 2025 and, as represented by the parties at that time, the

---

[1] Originally, 46 documents were at issue, but plaintiffs withdrew their objection to four of those documents, leaving only 42 in dispute. *See* September 30, 2025 ruling.

# BRACEWELL

November 17, 2025
Page 3

process was nearly complete.  Indeed, the only change to the re-review and de-designation process after my appointment was the parties' February 7, 2025 stipulation and joint request to Judge Cisneros that the Court extend the deadlines for completion of the process.  *See* Dkt. 2304. Judge Cisneros granted the parties' request on February 9, 2025.  *See* Dkt. 2307.  In the parties' February 14, 2025 status reports, they agreed that defendants would complete the re-review and de-designation of the documents under Judge Cisneros' orders by March 10, 2025.  Dkt. 2343 at 2; Dkt. 2344 at 5.  I incorporated the parties' agreement in Master Order No. 2, dated February 18, 2025.  Dkt. 2357 at 2, n.2.

Defendants have proffered no reasonable or principled distinction between the documents de-designated in accordance with Judge Cisneros' orders before or after February 6, 2025.  The 42 documents in dispute were de-designated pursuant to, and as a part of, the process ordered and overseen by Judge Cisneros.  *See also* November 7, 2025 email submitted in reply from J. Hill to B. Jones (the "documents that Defendants now seek to claw back were inadvertently de-designated and produced *during* the re-review process") (emphasis in original).  Accordingly, Judge Cisneros' orders apply to the 42 documents.

For the foregoing reasons, defendants' request for relief is denied.

Hon. Barbara S. Jones (Ret.)

cc:    Counsel of record

AUSTIN  DALLAS  DUBAI  HOUSTON  LONDON  NEW YORK  PARIS  SAN ANTONIO  SEATTLE  WASHINGTON, DC

A62

# EXHIBIT I

A63

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | Judge:     Honorable Charles Breyer |
| This Document Relates to: | **DECLARATION OF PROFESSOR DANIEL J. CAPRA** |
| ALL ACTIONS | |

1.      I am the Philip Reed Professor of Law at Fordham Law School. I have served as the Reporter to the Judicial Conference Advisory Committee on Evidence Rules since 1996. I am the co-author of the text of Rule 502 of the Federal Rules of Evidence, and I authored the Committee Note to that Rule. I also worked with Congressional staffers and Members of Congress in the run-up to the enactment of Rule 502 by Congress in 2008.

2.      I have also served as Special Master reviewing privilege claims in MDLs before Judge Scheindlin and Judge David Norton, D.S.C.  And I have written and co-authored articles and treatises on the Federal Rules of Evidence, including Rule 502.

---

DECLARATION OF PROFESSOR DANIEL J. CAPRA                    Case No. 3:23-MD-3084-CRB

A64

3.    I have been asked by the defendants in this litigation for my view on the purpose and scope of Rule 502(b) and (d), including Rule 502(d)'s protection for disclosures of privilege and work product. Fundamentally, the question is whether Rule 502(d) was designed to act independently from Rule 502(b).

4.    The Advisory Committee viewed Rule 502(d) as the most important provision in the rule. Rule 502(b) provides protection from waiver, but that protection is unpredictable. Rule 502(b) protection is dependent on whether a court, after the fact, finds the producing party's efforts to preserve confidentiality to be reasonable. The Committee was well aware that risk-averse lawyers, in the absence of a court order, would spend significant time and resources to avoid a subsequent determination that their efforts were unreasonable. And yet, the very reason for Rule 502 was to reduce the costs of privilege review. It was clear to the Committee that Rule 502(b) was a band aid --- necessary to provide protection against some of the common law cases that applied a strict liability rule for waiver of privilege, but clearly not the answer to controlling the costs of preproduction privilege review.

5.    It is Rule 502(d) that provides parties a predictable protection that can be relied upon --- a protection that does not require a showing of reasonable efforts that will result in significant expenditure of resources. That is why the Committee was of the view that a Rule 502(d) order could protect against waiver even when disclosures are intentional.[1]

6.    The Advisory Committee clearly intended that Rule 502(d) orders could cover intentional disclosures as well as mistaken ones. The Committee discussed, for example, the fact that parties may not care about whether they disclose privileged information in the instant litigation, but are very concerned that disclosure will result in use of the material in other litigations. Without Rule 502(d) protections, such parties will have to undertake substantial costs of preproduction privilege review when they don't even care about disclosure in the case. Protecting intentional disclosures

---

[1] Judge Grimm makes this point in *Federal Rule 502: Has it Lived Up to Its Potential?,* 17 Richmond J. L. & Tech. 8, 64 (2011) ("parties should be permitted the flexibility to enter into non-waiver agreements that permit less than full compliance with Rule 502(b)(2) preproduction review. This freedom would allow parties to avoid disproportionate discovery costs occasioned by comprehensive preproduction review for privilege or work-product protection").

2

DECLARATION OF PROFESSOR DANIEL J. CAPRA                    Case No. 3:23-MD-3084-CRB

A65

allows these costs to be avoided. The Committee was also aware that in large scale productions of ESI, the producing party will be aware that many privileged documents will be turned over to the other side; the Committee did not want parties subject to arguments that such disclosures were "intentional" simply because they were inevitable, and therefore concluded that intentional disclosures should be subject to protection under a Rule 502(d) order.

7.    The Advisory Committee structured the rule so that the provisions of a Rule 502(d) order could displace the requirements under Rule 502(b) that a privilege holder take reasonable steps to prevent disclosure and reasonable steps to rectify the error. Rules 502(b) and (d) are independent protections. The principal benefit of Rule 502(d) is that it provides certainty at the time of production—rather than waiting for an after-the-fact determination of reasonableness (as Rule 502(b) mandates). Under Rule 502(d), protective orders --- like the one in this case --- are only effective when they approve procedures that would not pass muster if analyzed exclusively under Rule 502(b).

8.    Indeed, incorporating Rule 502(b) principles in a Rule 502(d) order makes no sense. Those Rule 502(b) provisions apply by operation of law; the parties don't need a Rule 502(d) order to make the Rule 502(b) provisions applicable. The very purpose of a Rule 502(d) order is to allow the parties greater and more predictable protection from waiver than Rule 502(b) provides.

9.    It is notable that nothing in the text of Rule 502(d) indicates that it is subject to Rule 502(b), or that it is intended to operate subject to Rule 502(b) standards. The rule is written without any restriction at all:

> **Controlling Effect of a Court Order**.  A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding.

The Committee Note emphasizes that Rule 502(d) does not operate in the shadow of Rule 502(b) by stating that a "court order may provide for return of documents without waiver *irrespective of the care taken by the disclosing party*."

10.    Finally, the Advisory Committee was well aware that a producing party could make two different kinds of mistakes in disclosing privileged material during discovery. One is to mistakenly

3

DECLARATION OF PROFESSOR DANIEL J. CAPRA                    Case No. 3:23-MD-3084-CRB

A66

disclose a document that is clearly privileged or work product, but is one of a million similar such documents. The other is a document that is reviewed and found to be unprotected, but that analysis is mistaken and the document is actually privileged. The Advisory Committee intended for Rule 502 to cover *both* kinds of error. Both errors are more than possible in the context of a large production of ESI. Providing protection for mistaken legal analysis is especially important because without that protection, the party is likely to overdesignate documents --- declaring them privileged on the off chance that their assessment of unprivileged status turns out to be incorrect. Determinations of privilege are obviously not cut-and-dried. That is why we have Special Masters. Subtle issues include whether legal advice is being sought, whether a particular party on the e-mail chain destroys the privilege, and whether the document is prepared for ultimate public disclosure. Legal review of terabytes of information is bound to result in some analytic errors on these complex topics, and these are precisely the kinds of errors that are subject to the protection of Rule 502(d). The costs of analyzing and re-analyzing legal issues in a document are every bit as problematic as the costs of reviewing documents.

11.    I have also been asked to express what Rule 502(b) means when it refers to an "inadvertent" disclosure. The Committee, by that term, intended to cover any disclosure that was mistaken. The term "inadvertent" was taken from prior case law (as was the term "waiver"). That case law covered all disclosures that the producing party claimed to be a mistake. There was no intent to require courts to delve deeply into the state of mind of the producing party. Nor was there an intent to have the court review the producing party's efforts to protect the document in determining whether the disclosure was "inadvertent." The party's protective efforts were to be reviewed in determining whether "reasonable steps" were taken to prevent disclosure, not whether the disclosure was mistaken in the first place. The Advisory Committee intended that if disclosure of privileged information was a mistake, then waiver should be determined under the relatively permissive standards of Rule 502(b). The structure laid out by the Committee provides that Rule 502(a) governs voluntary or purposeful disclosures—specifically where the disclosing party is attempting to gain an advantage by selectively

4

DECLARATION OF PROFESSOR DANIEL J. CAPRA

Case No. 3:23-MD-3084-CRB

A67

and misleadingly providing only certain documents—while Rule 502(b) governs mistaken disclosures.[2]

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 21, 2025.

Daniel J. Capra

_____

[2] Judge Grimm put it as follows:

The courts that have construed "inadvertence" under Rule 502(b)(1) as the equivalent of "unintentional" or "mistaken" have adopted an approach that is much more consistent with Rule 502 as a whole (in which the focus of 502(a) is intentional disclosure, and 502(b) is the opposite of that, namely, mistaken or unintentional disclosure). This approach makes far more sense than the approach taken by the courts that have adhered to the pre-502 case law and duplicatively applied the same balancing factors to determine inadvertence as to measure reasonableness of actions taken to prevent disclosure of privileged or protected information.

Grimm, supra at 33.

5

DECLARATION OF PROFESSOR DANIEL J. CAPRA                    Case No. 3:23-MD-3084-CRB

A68

# EXHIBIT J

A69

## Page 2

Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Lisa J. Cisneros, Magistrate Judge

IN RE: UBER TECHNOLOGIES,      )
INC., PASSENGER SEXUAL ASSAULT )
LITIGATION                     ) NO. C 23-md-03084-CRB (LJC)
                               )
_____)

San Francisco, California
Thursday, April 24, 2025

TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS

APPEARANCES: (via videoconference)

For Plaintiffs:

CHAFFIN LUHANA LLP
600 Third Avenue - 12th Floor
New York, New York 10016
BY: ROOPAL LUHANA, ATTORNEY AT LAW
    ELIZABETH M. WILKINS, ATTORNEY AT LAW

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street - Suite 820
San Francisco, California 94111
BY: RACHEL B. ABRAMS, ATTORNEY AT LAW

GIRARD SHARP LLP
601 California Street - Suite 1400
San Francisco, California 94108
BY: SARAH R. LONDON, ATTORNEY AT LAW

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

Remotely Reported: Marla F. Knox, RMR, CRR
CSR No. 14421, Official U.S. Reporter

## Page 2 (right column)

APPEARANCES:   (CONTINUED, VIA VIDEOCONFERENCE)

For Defendants:

SHOOK, HARDY & BACON LLP
2121 Avenue of the Stars - Suite 1400
Los Angeles, California 90067
BY: MICHAEL B. SHORTNANCY, ATTORNEY AT LAW
    ALYCIA A. DEGEN, ATTORNEY AT LAW

SHOOK, HARDY & BACON LLP
600 Travis Street - Suite 3400
Houston, Texas 77002
BY: VERONICA H. GROMADA, ATTORNEY AT LAW
    KATHLEEN FRAZIER, ATTORNEY AT LAW

SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
BY: JEREMIAH WIKLER, ATTORNEY AT LAW
    CHRISTOPHER V. COTTON, ATTORNEY AT LAW

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
BY: JESSICA DAVIDSON, ATTORNEY AT LAW

## Page 3

Thursday - April 24, 2025                    8:38 a.m.

P R O C E E D I N G S

---oOo---

THE CLERK: All right. We will get started. The U.S. District Court is now in session. The Honorable Magistrate Judge Lisa J. Cisneros presiding.

We are calling 23-MD-03084, In Re: Uber Technologies, Inc.

Counsel, please state your appearances for the record. We will start off with Plaintiff and Roopal.

MS. LUHANA: Good morning, Your Honor, Roopal Luhana of Chaffin Luhana for the Plaintiffs.

THE COURT: Good morning.

MS. LONDON: Good morning, Your Honor, Sarah London, Girard Sharp, on behalf of the Plaintiffs.

THE COURT: Good morning.

MS. ABRAMS: Good morning, Your Honor, Rachel Abrams from Peiffer Wolf for the Plaintiffs.

THE COURT: Good morning.

MS. WILKINS: Good morning, Your Honor, Beth Wilkins Chaffin Luhana for the Plaintiffs.

THE COURT: Good morning.

THE CLERK: Defendants. Michael, will you start us off.

MR. SHORTNANCY: Sure. Good morning, Your Honor, good to see you. Michael Shortnancy from Shook Hardy on behalf of

## Page 4

the Uber Defendants.

I have a number of colleagues on with me who will speak depending on the topic including Alycia Degen, Chris Cotton, Veronica Gromada and Jeremy Wikler.

THE COURT: Okay. Good morning.

MR. SHORTNANCY: Good morning.

THE COURT: Okay. So, thank you for the joint status report that you-all filed in advance of today's discovery status conference. We don't have a lot of time this morning, so I'm going to walk through this as quickly as possible, the various issues that were addressed; and I want to also touch on the depositions for the current Uber CEO as well as the former one, Travis Kalanick, just briefly at the end regarding logistics.

So, focusing in on this report, there are some issues related to 30(b)(6) depositions, and Plaintiffs had proposed a May 2nd deadline to attempt to reach an agreement and a May 5th deadline to raise disputes if they are not resolved.

I think that just given the tight timeline that we have to get all of this done, it does make sense for the Court to impose those deadlines to keep the process moving.

So, I -- I hope that you-all can resolve this by May 2nd. If -- if Uber wants to be heard on that deadline and a May 5th deadline to submit briefing on this, you can propose some alternate timeframe right now; but those deadlines seem

reasonable to me as opposed to Uber's proposal that no deadlines be set at all.

MS. DEGEN: Good morning, Your Honor, this is Alycia Degen with Shook Hardy for the Uber Defendants. We would like to be heard briefly on the timing of resolving the disputes and getting a submission to the Court and some suggestions on how we might do that sort of submission most efficiently.

I would suggest if we can -- so, I think May 2nd is next Friday. May 5th is next Monday. Knowing the coordination that needs to happen on these issues, I would suggest that we move the time to finish our meet-and-confer to early the week of the 5th with a submission later that week; and I think that will be important because I just -- as I walked in or turned on my computer this morning, we had suggested last Friday a series of dates to Plaintiffs on topics that overlap with depositions that are moving forward in the JCCP including dates coming up relatively quickly.

And I saw for the first time this morning that Plaintiffs do not want those dates and want to -- looks like reschedule them. It is not clear to me at this point whether the rescheduling is just for the MDL or for the JCCP as well, but I think we are going to need a little bit of time to herd the cats and get this done in a way that's going to make sense because, you know, there is a lot to be done in both jurisdictions; and I think we can get these done in a

coordinated fashion relatively directly.

With respect to how we would provide the submission, I'm familiar with the PTO 8 process. I also know there's a lot -- there can be a lot of back-and-forth that takes up time.

Our thought was if we are going to need to submit something to the Court, that the parties exchange a list of the topics that they think are at issue. We each write up our -- set a time for that exchange, set a time to exchange our positions. Defendants will be happy to combine all of that into a single document to the Court, but I don't think this is something we are going to need to have a lot of -- you know, back-and-forth in a written submission over the course of a week. We should all just get our positions down on paper and, you know, get them to the Court in a single document.

(Pause in proceedings.)

THE COURT: Why -- sorry, why doesn't the PTO process that is currently in place not work for that?

MS. DEGEN: So, Your Honor, I think it is more a question of -- the PTO 8 process, effectively if we were going to be submitting a -- disputes to the Court -- if we are supposed to meet and confer through next Friday and then submit disputes to the Court on Monday, we effectively have to start drafting now. And I think the parties -- we all just need to get -- to sit down and work through this a bit more.

So, I think in this one circumstance something a little

more direct that doesn't take a week -- or a week-and-a-half of back and forth on what we are going to say on paper, let us focus on what we actually need to get done; see what we can work out, and then this should be a -- you know, this topic, you know, Plaintiffs, Defendants; this topic, Plaintiffs Defendants. So, we do it pretty quickly.

THE COURT: Okay. Do Plaintiffs want to respond to either the timing or this formatting proposal?

MS. LUHANA: Yes, Your Honor, Roopal Luhana for the Plaintiffs. Judge, just to give you some background, we had served these 30(b)(6) notices on Defendants March 19th and March 21st. We received dates for depositions on April 18th, and those were dates that were negotiated with the JCCP, and they have provided dates all in the beginning of May with three depositions on the same date. They are unworkable only for the MDL. We are not representing the JCCP Plaintiffs, of course.

And so, we believe in light of what's outstanding, we have 18 more depositions to handle. We have eight more 30(b)(6)s to do. We just need to move this process along in terms of the timeline.

I think next week is sufficient to meet and confer, as we had suggested, to be resolving these issues by May 2nd to file something on May 5th; and we think the PTO process thus far has worked well, and I think will work in this circumstance.

MS. DEGEN: May I respond, Your Honor?

THE COURT: Sure.

MS. DEGEN: Thank you. They served 162 30(b)(6) topics. A lot of those overlap with topics that are moving forward in the JCCP. We have had lawyers who participate in both the JCCP and the MDL involved in the meet-and-confers and the coordination. In fact, we have a gentleman who is -- you know, his job in this is to coordinate amongst the two jurisdictions.

If we -- we need to be speaking with MDL and JCCP Counsel right away to get these issues figured out. In fact, some of the deposition dates -- you know, they are not following through on placeholder dates that have been -- that we have been holding for quite some time. So --

THE COURT: All right. Let's do this. Finish your meet-and-confer effort by Friday, May 2nd; and then submit the dispute by May 8th to the Court if you haven't resolved it entirely or if there is some remaining disputes that I need to address; but May 2nd is the deadline for the meet-and-confer process and then the submission will be by May 8th.

In terms of the page limits and the like, PTO 8 sets the default; but if the parties stipulate to some other format that doesn't give me more than ten pages to read as a letter, that will be fine with me. Given the number of topics that have been noticed, you-all may need some more pages.

So, all right. So let's move on. Clawback procedures.

So, I -- when I looked at this issue, I tend to agree with Uber that -- to the extent that these clawback disputes are privilege disputes, then they ought to be addressed by Special Master Judge Barbara Jones.

However, I have a problem with allowing clawback notices concerning documents that were de-designated over the course of the fall months, winter when -- before Judge Jones was appointed as Special Master; and when I was overseeing a -- you know, tranches of privilege log disputes, and I specifically ordered in multiple orders -- in October, November, December -- Uber to rereview and de-designate based on what my rulings had been.

So, essentially if I allow Uber to serve clawback notices as to documents that were de-designated during that process after they had been posted on a privilege log that was then re-reviewed, then we are seriously turning this into a merry-go-round process.

And so, I consider those de-designation decisions to be waiver of -- of the privilege assertion. So, those -- I don't know how many -- I think the status report referenced 30. It may not be a lot that are at issue in that regard, but at least to cabin this process so that it's focused on documents that were not previously on the privilege log that Uber may view that it inadvertently disclosed them as part of the discovery process, then those seem to me fair game for a clawback notice

unless there is something that Judge Jones has done in her -- in her handling of the privilege logs dispute. I will leave that to her.

But at least for the time period in which privilege assertions were withdrawn, documents were de-designated and taken off the privilege log while I was handling the privilege log process and ordering rereviews on multiple occasions, then those privilege assertions are waived and they should not be part of clawback -- new clawback notices and disputes that are submitted to Judge Jones.

MS. LUHANA: Thank you, Your Honor.

MR. SHORTNANCY: May I speak to that, Your Honor? This is Michael Shortnancy speaking for the Uber Defendants.

THE COURT: Yes.

MR. SHORTNANCY: I hear what you are saying, Judge. I absolutely understand that. Let me offer some additional, I think, color. When we were in the process before Your Honor for the privilege log challenges, there were a number of documents that we reviewed on very tight timelines. I don't have the exact dates in front of me; but as Your Honor was entering orders, we were directed to go back -- and we did go back -- to re-review documents on the log to apply lessons learned. Plaintiffs also were ordered to apply lessons learned to their challenges but -- the parties did that.

Uber was required to do that in very compressed

11

timeframes. And so, to the extent a document may have been de-designated -- and there are very few of them. So, we are talking about 30 at this point, give or take -- but in the rare instance that I think some of those documents may have come off of the privilege logs or assertions of privilege over them -- over the passage of time and with rulings subsequent by Your Honor and by Judge Jones and as we learn additional information that may not have been apparent at the time we were working under those deadlines to apply the Court's lessons learned -- there may be cases where we believe a clawback is appropriate and supportable.

And so, I would just urge Your Honor -- you know, the attorney-client privilege is a very important privilege. I would urge the Court to consider not imposing a blanket waiver in that -- and permitting because the circumstances are quite few. We are not trying to redo or get everybody back on the merry-go-round. We are very sincerely asserting what we believe is a privilege that we have a foundation to assert in a rare instance in these cases where information may have become apparent later through the course of our discovery and investigation about, perhaps, the -- that a lawyer who was not apparent on the face of the document actually asked the business person to prepare the presentation or something like that, to use a hypothetical, those are the instances where we would be asserting a clawback.

12

I would respectfully request that the Court permit the parties to bring that to Judge Jones. It is not something that we have, you know, used in bad faith to encourage a merry-go-round and let Judge Jones decide; was that a waiver, was it not. Was that part of lessons learned or was it not. It is such a small number of documents, Judge, and the privilege is so important that I think that it militates in favor in this case allowing Judge Jones to be sort of the arbiter of that decision.

THE COURT: I'm not inclined to do that. To me it sounds like a motion for reconsideration based on newly discovered evidence, so it would be submitted to me since I made the decision. And for Judge Jones it was, you know, would be within her purview to address new privilege log disputes that couldn't have been raised in front of me. And I think it's a bad -- if I went in that direction that you are proposing, it sets up, I think, a -- some real procedural problems in the way it incentivizes parties to maybe not do a thorough review in the first instance; and really, the re-review process was a second opportunity for Uber to do the due diligence that it needed to do to appropriately assert attorney-client privilege and any other privilege that may -- or protection that might have been applicable.

So, I was serious about the re-review process. The timeframes for what they were -- if there was concern that

there were individuals that you were not able to talk to and that you needed to, you know, follow-up with for a certain subset of documents, that could have been raised at that time.

And so, I think also what -- I'm thinking about too is the extent to which there was broad de-designations of thousands of documents that were then -- where the assertions were then withdrawn. And so, that to me -- struck me as substantial over-designation. And so, you know, that's just also why I'm skeptical of any further efforts to turn this process into another trip around a carousel. It felt like we already took one trip around the merry-go-round.

MR. SHORINANCY: Your Honor --

THE COURT: And -- go ahead, sir.

MR. SHORINANCY: Sorry, I didn't want to interrupt, Judge. Are you --

THE COURT: No. I'm done. What did you want to --

MR. SHORINANCY: Thank you. I would just clarify a couple of points. I mean, we are not suggesting that we take a document the Court has specifically ruled on and redoing that document. I think that is a fair point, Judge.

I think what we are suggesting is that in a situation where you have many thousands of documents and many thousands of privilege log entries where we were asked to have lawyers sitting in -- you know, in a room apply the Court's thinking and reasoning on one document that was ruled on and applying it

to a larger set of documents, that is the situation I think that we are talking about.

THE COURT: It is a larger set of documents that were already on privilege logs that had already been served to the Plaintiffs that were already part of the process of involving a series of tranches of documents that were sampled. And so, that's a process that I instituted and oversaw and utilized everyone's time and resources as we focused in on that.

And so, I'm not going to have that process redone. Even if I didn't adjudicate a particular document, it still feels like we are going back to that prior corpus of -- of ESI or documents that we worked through over the fall. And it seems inefficient and inconsistent. And then if I'm willing to re-open the process, then that undercuts the Court's efforts to do things as efficiently as possible and also not reintroduce a whole new set of privilege disputes for Judge Jones that we at least -- were a portion of.

So, I don't think that it's a good use of my discretion and oversight of the process to re-open that. I think, you know, obviously attorney-client privilege and other privileges are, you know, incredibly, exceptionally important and foundational to how litigation happens and how people and companies seek representation. And that's why at the outset, that attention and care needs to be taken to get -- make the right calls. And essentially Uber -- for the body of documents

that we worked through, Uber had two opportunities. So, that's where -- how I'm handling this.

MS. LUHANA: Your Honor, can I say one thing?

THE COURT: Well, we don't have a lot of time today because I have also got --

MS. LUHANA: It's just -- sorry. It is just a quick request. We just had requested that we submit the dispute to Judge Jones by April 28th because these clawbacks were happening on the eve of depositions during depositions, so the process just needs to be addressed. So, we want to submit our dispute. And so, we just wanted to ensure that --

THE COURT: I'm not going to control the timeline for when she handles these disputes. I don't know how she is going to want them worked up or what timeframe that would be. So, I would leave that to the parties to, you know, meet and confer and to propose to her a timeframe and she can respond to that how she sees fit.

MS. LUHANA: Understood, Your Honor.

MR. SHORINANCY: Judge, just so you know, the parties met ex parte separately with the Special Master yesterday to discuss gaming out a plan for this, just so you are aware.

THE COURT: Okay. All right. Thank you.

All right. Safety data. Okay. So, the interrogatory request looks pretty straightforward. To the extent that Plaintiffs are asking for the number of sexual violent

incidents for each month in each category, those terms say "incidents" not "reports." It sounds like there is a lot of -- there was meet-and-confers on this. Obviously it's possible that there is more to the story as far as what Uber agreed to, and I don't have a record of that. This dispute is not briefed or explained beyond what I have in the status report, but it just seems like if it is -- it says "incidents," not "reports."

So, to the extent Uber may need to de-duplicate the data so that it reflects incidents rather than reports, then -- you know, per month and per category, then that would be Uber's burden to do that.

I will give you-all another week to meet and confer on this. And if you don't have it fully resolved, you can submit it through a PTO 8 letter to me a week from today.

MR. WIKLER: Your Honor, Jeremy Wikler, if I may, that's what Uber provided is the number of incidents classified by each category by month for 2017 to 2022.

(Pause in proceedings.)

THE COURT: Plaintiffs.

MS. WILKINS: Your Honor, Beth Wilkins for the Plaintiffs. I'm happy to respond to that. Appreciate the deadlines for filing a PTO 8 letter. I think that makes sense. From the Plaintiffs' perspective, despite what Mr. Wikler just represented, there is still a dispute that remains. What Uber provided to the Plaintiffs includes duplication in potentially

18

every category and every data point from January 1st, 2017, all the way through December of 2022.

They have identified that each month in each of the 23 categories that were produced is essentially unreliable because we don't know how much duplication is in each category.

I'm glad to continue to meet and confer on that and file a PTO 8 letter if we can't reach resolution, but the bottom line is what Plaintiffs need is whatever Uber's witnesses intend to rely on without being surprised when we see it in an expert report or somewhere later on. So, if they are going to use de-duplicated data at some point in this litigation, then we need to know what their numbers are.

THE COURT: Okay. Then it seems like to some extent Uber's position in the status report is that Plaintiffs have raw data. And so, therefore, they should just look at and analyze the raw data; but I think Plaintiffs are entitled to serve interrogatories to ask, you know, additional questions that are relevant to the case, and those questions may be about data that -- or analyses that Uber is relying on or uses apart from what's in the safety report or what's in the data that was provided in the safety report.

So, to the extent Uber's position is, Well, you know, they will have everything and there is nothing -- based on that raw data and nothing further is discoverable, I just don't foresee that Rule 26 applying in that way but --

19

MR. SHORTNANCY: Your Honor, it is Michael Shortnancy, if I may speak to that. The chief data scientist is being deposed about a hundred yards from me right now, the person who prepared this data, the person who certified this data. I believe, although I'm obviously not in that room right now, that there is participation by the MDL Plaintiffs in the deposition by agreement to minimize duplicative questions that may arise in what is set to be a deposition of the same data scientist tomorrow on these topics.

So, I think that this is being presented to the Court as somewhat of a manufactured dispute. We have provided information to Plaintiffs. We have provided in numerous forms at the Plaintiffs' request. We provided unique counts at the Plaintiffs' request. We are not saying that the data is unreliable.

We are saying what we have always said to the Court and in the safety reports; that when you are outside of the five most serious categories of the taxonomy, which go through the audit process and the safety reporting process, some of the -- the 16 through 21 can be categorized in multiple categories because they may be subjective.

And so, when they are not sort of adjudicated or firmly decided or audited to be in one category, they are going to be in multiple; and that's why we are saying -- we have explained this to Counsel multiple times -- that that's the way the data

exists. And so, this is being presented, Judge, as some dispute and --

THE COURT: Yeah.

MR. SHORTNANCY: -- there is no --

THE COURT: I'm not going to decide it today. So, there will be a letter where you can provide this more fulsome explanation and record there. And I will carefully review it.

Okay. All right. So, moving on, we have got the TAR update. It doesn't seem like there is an active dispute here that needs to be addressed, and we really don't have time to talk about anything that's unnecessary for discussion today.

So, the bellwether -- I'm going to move on to the next item. The bellwether deposition -- Plaintiffs' depositions, I'm going to hold off on resolving this until I have a clear understanding with what -- of what Judge Breyer is going to do with the bellwether waves and staggering discovery by bellwether waves. So -- so, that's how I'm going to approach that. I think that should be resolved soon given that you-all briefed it and submitted it to him, you know, just a short while ago; but the parties should be prepared to conduct the Wave 1 depositions very, very quickly.

I think at different times Plaintiffs have said that this is like exceptionally challenging, but there are a lot of different firms involved in this litigation. So, I imagine that the leads will allocate the work so it can be handled

20

expeditiously.

So, all right.

MS. ABRAMS: Thank you, Your Honor, Rachel Abrams for the Plaintiffs. And we have provided deposition dates for all of the proposed bellwether in Wave 1 and most of them in 2 already.

THE COURT: Okay, all right. So, let's move on to the next item, release authorizations. And this does not sound like a dispute that's ripe just yet.

So, now moving on to the Plaintiffs' responses to discovery request, it seems like this is a dispute about delinquencies in the Plaintiff fact sheets and that Uber is looking for a more -- a streamline process than what PTO 10 provides for, for raising deficiencies.

You know, I'm reluctant at this point to diverge from that process; but if there are particular Plaintiffs' firms or lawyers that are using that process essentially to get de facto extensions and to consistently avoiding Plaintiff fact sheets when they are actually due, then, you know, that's disregarding a discovery order and that's opening yourself up to potential sanctions.

So, I don't know exactly what is going on here but that's my reaction on the record. So, you know.

MS. ABRAMS: Thank you, Your Honor, this is Rachel Abrams for the Plaintiffs again. Just so you know, we as well

were unaware of this -- this issue, and this is the first time in the JSR that we saw this; and we have not been advised of the firms, the cases that are allegedly deficient for PFSs. So, we are very much willing to work with Uber and their Counsel on rectifying these. We were just unaware of it and typically, as we have done in the past, we have seen the PTO 8 briefs on this failure to provide PFSs. So, again we were as surprised as you were.

THE COURT: Okay. Well, now that you.

MS. FRAIZER: If I may, Kat Frazier for the Uber Defendants. We just raised this here because it is an ongoing issue, and we wanted to raise to Your Honor's awareness that we were just thinking about ways to potentially not change PTO 10 in any way but to increase the -- maybe the effectiveness and the efficiencies in resolving deficiencies.

And so, we are absolutely willing to meet and confer with the Plaintiffs about how best to do that in a way that won't further burden the Court and that will be something that we can all sort of agree on moving forward.

THE COURT: Okay.

(Pause in proceedings.)

THE CLERK: Sorry, Your Honor, I'm seeing --

THE COURT: A raised hand.

THE CLERK: Jessica Davidson, is she with any --

MS. DEGEN: Yes, Your Honor, she is with the

---

Defendants and may be the best person if we have questions about the Apex depositions.

THE COURT: Oh, okay. So, let's bring her on because I want to turn to that very quickly before we wrap up.

THE CLERK: Yes, Your Honor.

THE COURT: Just to respond to Ms. Frazier, so now -- it sounds like, according to Ms. Abrams, the lead Counsel on Plaintiffs' side were unaware of this. Now, they are. And, you know, that's one of the benefits of the joint status reports is it helps to surface issues that the parties need to address and to keep the process moving.

So, you-all should address it and you have got my -- the Plaintiffs' Counsel have my preliminary views on this. I do -- you know, we need to make sure that the PFS process serves -- happens in a timely way, in a way that's consistent with PTO 10. And if not, it is disregard of the discovery order so that's very risky and creates exposures to sanctions.

So let's move on. I got the safety lens order out. I know there is an outstanding set of issues related to the bellwether depositions protocols. I will handle those shortly. But as far as the depositions for Khosrowshahi and for Mr. Kalanick, I don't think we set a start time; and I think the parties kindly start to planning late morning on the East Coast so that I could get on Zoom at an ordinary hour and monitor the depositions.

---

I'm willing to start as early as 8:00 in the morning or 7:30 in the morning to move the process along. And given that there is coordination for -- in depositions with JCCP Counsel, that may be necessary. So, we can talk about timing right now or you could e-mail my courtroom deputy after we wrap up today and let me know what time you think it would make sense to start and share with me -- to the extent you know today -- how you plan -- how you think this process will play out timing-wise and as far as coordination.

MS. DAVIDSON: Your Honor, this is Jessica Davidson. It is nice to meet you. I'm with the firm of Kirkland & Ellis. As you may have heard, we recently joined Uber's defense team. I'm the one who is tasked with making sure that all of your accessibility is perfect for those depositions. And so, if something goes wrong, if your real-time doesn't work, I'm the person to yell at.

THE COURT: Thank you.

MS. DAVIDSON: I just want to make sure I understand one thing. When you say "8:00 a.m." -- obviously one deposition is going to be in California. One deposition is going to be in New York. I assume you mean 8:00 a.m. Pacific time.

THE COURT: Yes, Pacific time so that your 7:30 a.m. -- and I was specifically -- didn't want to delay the deponent, Mr. Khosrowshahi and all the Counsel on the East

---

Coast. I can wake up and get onto Zoom if it needs to be 7:30 or 8:00 or earlier. I don't want you to be shy about asking me to start earlier than you might have originally anticipated if that's going to be helpful for the process.

MS. DAVIDSON: That would be very, very helpful with respect to Dara's deposition in New York. If I may, I would like to take you up on the offer that we follow up with an e-mail after I talk to our team and talk to Plaintiffs and make sure that we are well coordinated with the MDL part and the JCC part.

THE COURT: Okay. Also, I will have my law clerk observing as well. So, that's something that you can handle on the back end with my courtroom deputy.

MS. DAVIDSON: Will your law clerk be with you or separate?

THE COURT: We will probably be on separate screens.

MS. DAVIDSON: And do you want real-time for your law clerk as well?

THE COURT: Sure. Why not? All right. Is there anything else that we should discuss?

MS. LUHANA: Nothing for the Plaintiffs, Your Honor.

THE COURT: Okay.

(Pause in proceedings.)

THE COURT: From Defense?

MR. SHORTNACY: Nothing, Your Honor.

THE COURT: Okay. All right. Thank you. I had to move this along pretty quickly just because I have other settings this morning.

MR. SHORTNANCY: We appreciate your time.

MS. LUHANA: Thank you, Your Honor.

THE COURT: All right. Thank you.

THE CLERK: Court is adjourned.

(Proceedings adjourned at 9:17 a.m.)

---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   April 24, 2025


_____
Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter

A76

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

_____/

This Order Relates To:

*ALL CASES*

MDL No. 3084

**ORDER DENYING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**

Re: Dkt. Nos. 3545, 3639

After considering Defendants' dkt. 3639 Motion for Relief from the dkt. 3545 Nondispositive Pretrial Order of Magistrate Judge Cisneros, the Court has concluded that Judge Cisneros exercised sound judgement in denying Defendants' Motion for Leave to File a Motion for Reconsideration due to Uber's failure to exercise adequate diligence. The Court agrees with Judge Cisneros that Uber has not presented a reasonable justification for its significant delay in filing its Motion for Leave.  *See* dkt. 3545 at 8.

Accordingly, Defendants' Motion for Relief is denied.

**IT IS SO ORDERED.**

Dated: August 6, 2025

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

A77

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| This Document Relates to: <br><br> ALL ACTIONS | **DEFENDANT UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC'S (COLLECTIVELY "UBER") MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** <br><br> JUDGE: HONORABLE R. BREYER <br> COURTROOM: 6-17TH FLOOR |

DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 3:23-MD-3084-CRB

A78

Uber respectfully objects to Magistrate Judge Lisa Cisneros's July 22, 2025 Order (Dkt. 3545) denying Uber leave to file a motion for reconsideration of her April 24, 2025 Minute Order (Dkt. 2855) on the sole ground that Uber failed to exercise diligence in seeking leave. Because that finding is contrary to law addressing reasonable diligence in similarly complex cases and based on the incorrect and unsupported factual conclusion that the timing of Uber's motion is inconsistent with the case schedule and would delay discovery, this Court should set aside the July 22 Order and allow Uber to file its motion for reconsideration (Dkt. 3442, Ex. A).

## BACKGROUND

The attorney-client and work product privileges are bedrock principles of American jurisprudence and core to fair representation. At the April 24 Status Conference, the Magistrate Judge *sua sponte* concluded that Uber had waived these sacrosanct protections for certain unidentified documents Uber de-designated during the time she was overseeing privilege disputes. In so finding, the Magistrate Judge did not follow the procedure for submitting clawback disputes to the Court established by Pretrial Order 14. The Magistrate Judge also made her *sua sponte* ruling without first providing notice to Uber and/or a full and fair opportunity to be heard on this consequential issue. As a result, Uber was deprived of its attorney-client and work-product protections without consideration of the factual circumstances surrounding the de-designation and clawback of the unidentified documents or even a chance to develop and brief arguments. In response, Uber asked for leave to file a motion for reconsideration on July 9, 2025. However, the Magistrate Judge again refused to consider the merits of Uber's position, and instead denied its motion based on a conclusory finding that granting the motion would delay discovery. Dkt. 3545 at 8.

## LEGAL STANDARD

A magistrate judge's rulings on non-dispositive motions may be set aside or modified by the district court if found to be "clearly erroneous" or "contrary to law." 28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 72(a). The clearly erroneous standard applies to findings of fact, whereas legal conclusions are reviewable to determine whether they are contrary to law. *See, e.g.*, *Equal Employment Opportunity Comm'n v. Peters' Bakery*, 301 F.R.D. 482, 484 (N.D. Cal. 2014); *Perry v.*

DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 3:23-MD-3084-CRB

A79

*Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). Under the clearly erroneous standard, a district court must reverse the magistrate judge's order if it is left with "a definite conviction that a [factual] mistake has been committed." *Perry,* 268 F.R.D. at 348 (quotations and citations omitted). By contrast, the contrary to law standard requires the district court to conduct an "independent, plenary review of purely legal determinations by the magistrate judge" and set aside her order if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *See Perez v. Cty. of Fresno*, 519 F. Supp. 3d 718, 722 (E.D. Cal. 2021) (collecting cases); *see also Olais-Castro v. U.S.*, 416 F.2d 1155, 1158 n.8 (9th Cir. 1969) ("The term 'contrary to law' means contrary to any existing law.").

## ARGUMENT

This Court should set aside the July 22 Order for at least two reasons. *First*, the finding that Uber failed to exercise diligence is contrary to law. Rule 7-9's "reasonable diligence" requirement imposes no specific time limits on filing a motion for leave, and instead contemplates leave to move for reconsideration of any interlocutory order before entry of final judgment. *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, No. 14-CV-03953-BLF, 2015 WL1548833, *5 n.9 (N.D. Cal. Apr. 7, 2015). Courts handling class actions or other complex cases have found, after looking at the cases' circumstances and complexity, that parties exercised reasonable diligence in filing their motion more than 10 weeks after the courts' orders. *See, e.g.*, *Senne v. Kansas City Royals Baseball Corp.,* No. 14-CV-00608-JCS, 2016 WL 1623913, at *4 (N.D. Cal. Apr. 25, 2016) (Judge Spero finding "[m]oving Defendants were reasonably diligent in bringing the Motion" over 300 days after the court's order and approximately five months after one of the depositions that provided new evidence, "given the magnitude of the case, the many difficult discovery issues that have arisen in recent months and the deadlines facing the parties"); *Huawei Techs. Co. v. Samsung Elecs. Co.,* No. 3:16-cv-02787-WHO, 2018 U.S. Dist. LEXIS 34793, at *16 (N.D. Cal. Mar. 1, 2018) (Judge Orrick refusing "to deny the motion on procedural grounds" of reasonable diligence "'[g]iven the case's complexity and extended schedule,'" where plaintiff sought leave more than four months after the order).

The Magistrate Judge failed to apply the reasoning of this authority and improperly failed to consider the case's complexity and numerous deadlines; thus, her finding that Uber failed to show

3

diligence is contrary to law. Indeed, because the legal issues were never briefed or argued, and the documents subject to the ruling were never identified prior to her ruling, Uber was not even given an opportunity to investigate the legal and factual issues until *after* it received the transcript of the order on April 28. As explained below, these unprecedented circumstances added a layer of complexity that did not exist in *Senne*, *Huawei*, or any of the cases that have addressed reasonable diligence, and which further supports Uber's showing of reasonable diligence.

After the April 24 Order, Uber carefully assessed the meaning, scope, and potential impact of the ruling and the authority that justifies reconsideration. Since the order did not identify any particular documents, Uber requested a list from Plaintiffs to understand their interpretation of the ruling. After Uber received Plaintiffs' list on May 5, it investigated the documents' production and clawback history.[1] Analysis of Plaintiffs' list revealed the parties viewed the scope and application of the ruling differently. Nevertheless, Uber analyzed the documents to determine ways to narrow or resolve the dispute. Uber investigated and assessed all of these factors in deciding whether to file, and in preparing, the motion for leave. Parties normally spend time on such analysis before filing and arguing motions, and before a court order, not after, as here given the Magistrate Judge's *sua sponte* ruling.

Uber's reasonable diligence is further underscored by the fact that it reverse-engineered the April 24 Order while keeping a very aggressive schedule for briefing (often with multiple deadlines per week) and submission of thousands of other privilege disputes to the Special Master.[2] Indeed, between April 24 and July 9, Defendants briefed and submitted approximately 2,500 documents to the Special Master for review. Uber also analyzed the Special Master's rulings for hundreds of documents that had been previously submitted to determine whether to object to the rulings, drafted any such objections if needed, and met and conferred with Plaintiffs weekly on privilege disputes. That was in addition to the many other complex issues and deadlines in this MDL. For example, between April 24

---

[1] This included a document-by-document analysis of the original privilege claim and the timing and circumstances for the de-designation, including whether any privilege redactions were maintained during the de-designation. Reconstructing the production history required review of multiple versions of the produced documents, some of which were voluminous, and various iterations of the privilege log.

[2] The Special Master has upheld in full or in part the vast majority (85-90%) of Uber's privilege claims.

DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 3:23-MD-3084-CRB

and July 9, Uber produced approximately 150,000 documents, defended approximately 37 company witness depositions and 40 fact depositions, briefed 60 motions, including motions to transfer bellwether cases, and served 1,005 Plaintiff Fact Sheet deficiency notices. The magnitude of the case, the many difficult discovery issues, and the deadlines facing the parties are more complex than the ones in *Senne*, *Huawei*, and most cases.

In light of the foregoing, the Magistrate Judge incorrectly found that *Senne* and *Huawei*–cases instructing that case-complexity must factor into the reasonable diligence analysis–were unpersuasive and inapposite. The Magistrate Judge distinguished *Senne* because Judge Spero denied leave after finding the moving party had failed to establish "new material facts" and the question of diligence "was not material to the outcome." Dkt. 3545 at 7. But Uber did not cite *Senne* for its finding on the merits of the new material facts. Instead, Uber cited *Senne* to illustrate that the defendant was "reasonably diligent in bringing the Motion" even though it was filed over 300 days after the order and five months after discovery of the evidence. *Senne*, 2016 WL 1623913, at *4.

Similarly, the Magistrate Judge distinguished *Huawei* because Judge Orrick granted the plaintiff's motion for reconsideration "with no explanation for the delay beyond 'the case's complexity and extended schedule.'" Dkt. 3545 at 7. Although Judge Orrick's diligence reasoning was sparse, he nevertheless explained that requirement was satisfied by the plaintiff's "*insistence that it was reasonably diligent* 'given the case's complexity and extended schedule.'" *Huawei*, 2018 U.S. Dist. LEXIS 34793, at *17 (emphasis added). There, the plaintiff successfully argued it was reasonably diligent because the case was "highly complex" and "a long runway remain[ed] in the case schedule," with several months before the close of discovery and trial. *Huawei* Pl.'s Mot. at 8-9 (Dkt. 225). Similar circumstances support a finding of reasonable diligence here. Uber did not seek reconsideration anywhere near "the eve of trial," with discovery not closing until October 6 and trial scheduled to begin December 8.

The Magistrate Judge also distinguished *Huawei* because Judge Orrick relied on the Federal Circuit's endorsement of a "rolling claim construction, in which the [district] court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves"–a process not

5

relevant here. Dkt. 3545 at 7-8. But the rolling claim construction issue in *Huawei* was not the basis for Judge Orrick's reasonable-diligence finding. Indeed, Plaintiff identified in its motion for leave, claims construction as a ground for relief separate from Rule 7-9. *Huawei* Pl.'s Mot. at 9 (Dkt. 225).

*Second*, the Magistrate Judge committed clear factual error in finding that the timing of Uber's motion is inconsistent with Rule 7-9(b) because it was filed after June 16 and would delay discovery. Dkt. 3545 at 8. The Magistrate Judge denied leave because she "made clear at the April 24 status conference its interest in not letting these clawback disputes further delay discovery and other proceedings" and filing "nearly a month after the substantial completion deadline, in a case that has already faced substantial delays and where both this Court and Judge Breyer have repeatedly emphasized adherence to the case schedule is not consistent with reasonable diligence . . . ." *Id.* But the order did not actually find that the clawbacks impeded the substantial completion of discovery or identify *any* facts supporting the assertion that leave would delay discovery. Nor could she have done so given there is no evidence in the record to support those points. Uber substantially completed production by June 16–having produced 1.7 million documents. And it is undisputed that Uber has clawed back a small number of documents potentially subject to the ruling. Plaintiffs have not challenged the merits of Uber's privilege claims for most of those documents. Resolving Plaintiffs' procedural challenge for the approximately 100 documents will not impact the schedule. But even if Plaintiffs challenge the merits of the claims, the 100 documents are a drop in the bucket compared to the over 2,000 documents that have been submitted for review and remain to be ruled upon by the Special Master. Resolving the dispute for the 100 documents will not impede the case schedule.[3]

Uber has a right to be heard on the merits before losing its right to assert evidentiary privileges. Because the Magistrate Judge's abbreviated process afforded Uber no opportunity to be heard, she made decisions that were contrary to law and which rested upon a clearly erroneous view of the facts. Accordingly, the Court should reverse the Magistrate Judge's ruling.

---

[3] If Plaintiffs want to prioritize review of these 100 documents, the parties can jointly approach the Special Master and request that she prioritize them over the other 2,000. The Special Master has previously accommodated such requests. This matter can certainly be resolved in a short time.

DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 3:23-MD-3084-CRB

A83

DATED: August 5, 2025

Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
    MARIA SALCEDO

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN HORN
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY AND MYERS LLP**
SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
    oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
    ccotton@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
    msalcedo@shb.com
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.  23-md-03084-CRB   (LJC) |
| This Document Relates To:<br><br>ALL CASES. | **ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 3442 |

**United States District Court**
**Northern District of California**

## I.    INRODUCTION

Pending before the Court is Defendants Uber Technologies, Inc., Raiser, LLC, and Raiser-CA, LLC's (collectively, Uber's) motion for leave to file a motion for reconsideration of the Court's April 24, 2025 order that foreclosed Uber's ability to claw back certain documents that had been subject to a re-review for privilege designation. Dkt. No. 3442.  Since the summer of last year, the parties to this multidistrict litigation have engaged in extensive disputes over Uber's assertions of privilege.  In the course of those disputes, which required a series of orders by this Court on samples of documents submitted for in camera review, Uber withdrew its designations as to thousands of documents.  As the discovery process advanced, aided in part by a Special Master appointed to resolve privilege disputes, the Court restrained Uber from exercising a clawback provision as to a subset of its documents.  On July 9, 2025, Uber moved for leave from the Court to file a motion for reconsideration of that order.  Because Uber failed to exercise diligence in seeking leave to file a motion for reconsideration, Uber's motion is DENIED.

## II.    BACKGROUND

Overall, the Court has managed discovery in this MDL through a series of Pretrial Orders and regular status reports and monthly status conferences with the parties.  The Court entered

A85

Pretrial Order No. 14, Dkt. No. 396, regarding the handling of privileged and otherwise protected material that may be the subject of discovery and related disputes. Pretrial Order 14 included clawback provisions. *Id.* at 2–4. A subsequent Deposition Protocol, Pretrial Order 16, required the production of custodial files generally within twenty-one days in advance of a confirmed deposition date, and a privilege log ten days after that production of documents. Dkt. No. 866 at 3–4.

The parties first raised a dispute regarding privilege in a letter brief filed June 24, 2024, which addressed three documents that Uber inadvertently produced and asserted its right to claw back. Dkt. No. 664. The parties narrowed their dispute, and the Court ultimately held that Uber had not established that the one document that remained in dispute before the Court was privileged. Dkt. No. 1727. On August 30, 2024, in response to a dispute as to when Uber was required to produce privilege logs, the Court underscored Pretrial Order No 16's requirement to produce logs no later than ten days after producing a custodial document file. Dkt. No. 1622; *see* Dkt. No. 866 at 3–4.

On September 10, 2024, the Court observed that the September 1 deadline had expired for substantial completion of Uber's production of documents in response to Plaintiffs' first set of requests, and set new deadlines. ECF No. 1629. On September 14, 2024, the Court granted a stipulation to extend time for Uber to produce certain privilege logs. ECF No. 1644. At a status conference October 23, 2024, the Court extended the deadline for the parties' joint letter presenting the first sample of privilege disputes, and "advised the parties that Uber is expected to apply rulings on privilege disputes to other previous designations of privilege. ECF No. 1785. On October 25, 2024, the Court adopted (in part) a proposal to phase document production into four tranches of custodians, with each tranche ranging from nine to seven custodians. *See* ECF Nos. 1774, 1797. On October 30, 2024, as the parties prepared to file a joint letter regarding privilege disputes from the first tranche, the Court set a schedule providing—for each subsequent tranche— deadlines for Uber to produce documents and privilege logs, for the parties to present a sample of disputed privilege log entries to the Court, and for Uber's re-review and de-designation of documents based on the Court's resolution of those sample disputes. Dkt. No. 1808 (Pretrial

United States District Court
Northern District of California

2

A86

United States District Court
Northern District of California

Order No. 20).  That Order was intended to "promote[] the efficient resolution of this litigation," recognizing that "in general discovery of custodial records should be completed before a custodian is deposed, and that "discovery of custodial records necessarily calls for, to the extent feasible, the resolution of related privilege disputes."  *Id.* at 5.

The parties' letter regarding privilege disputes from the first tranche of document production indicated that Uber had withdrawn or modified its privilege designations for the vast majority of documents that Plaintiffs selected for discussion and possible presentation to the Court.  Dkt. No. 1858-2 at 1–2.  In resolving that letter, the Court determined that five of the ten documents submitted for resolution by the Court must be produced either in full or with redactions.  Dkt. No. 1908.  The Court ordered Uber to apply lessons learned from that Order to other documents on an ongoing basis.  *Id.* at 13.

On December 16, 2024, the Court set a schedule for Uber to produce de-designated documents after it produced revised privilege logs, noting the Court's intent to "reduce delays to other aspects of discovery."  Dkt. No. 1954.  In a status report filed later the same day, as the Court continued to resolve the parties' privilege disputes, Uber represented that "*each* document [had undergone] independent privilege review," and that Uber "continue[d] to revisit documents to apply lessons learned" from the parties' meet-and-confer efforts and the Court's decisions.  Dkt. No. 1957 at 7.

The sampling process from Tranche 2 echoed the first tranche.  As Plaintiffs selected documents for discussion, Uber withdrew its privilege designations either in whole or in part as to most such documents.  *See* Dkt. No. 1952 at 2.  Uber asserted that "[g]iven the scope and pace of discovery, it is no surprise that there are a large number of privilege claims—each of which is made only after an individualized review of the document," and that it "has continued to re-assess its privilege claims in light of court orders, conferrals with Plaintiffs, and on its own initiative, withdrawing privilege claims where appropriate."  *Id.* at 7 (footnote omitted).  Uber presented its "good faith changes in position" as "an indication that the iterative process set up by the Court is working," in contrast to Plaintiffs' "*en masse*, categorical challenges that lack individualized bases."  *Id.*  The Court determined that the majority of the thirteen documents that the parties

3

A87

United States District Court
Northern District of California

submitted for review must be produced either in full or with narrower redactions than Uber had proposed. *See generally* Dkt. No. 2005. The Court ordered the parties to include a random sample of documents in the meet-and-confer process for their next joint letter. *Id.* at 13–14.

In privilege disputes from Tranche 3 and from a random sample of documents from Tranche 2, Uber fared better with respect to documents actually submitted for the Court's resolution, but as the Court noted in its January 29, 2025 Order, Uber still conceded during the meet-and-confer process "that a large portion of the documents at issue were not privileged at all or should be produced with redactions." Dkt. No. 2168 at 22. Uber touted its "extensive efforts . . . to implement the Court's guidance from the Tranche 1 and 2 rulings and address other issues where appropriate," Dkt. No. 2091 at 8, asserting that it "continue[d] to work in good faith to refine its privilege claims in light of conferrals, the Court's rulings on prior challenges, and on its own initiative," Dkt. No. 2089 at 7. Plaintiffs sought sanctions, which the Court denied as a procedurally improper "eleventh-hour addition to the [joint] letter." Dkt. No. 2168 at 22. But the Court expressed concern about Uber's apparent over-designation and "directed the parties to meet and confer regarding next steps in this process to ensure that responsive material is not wrongfully withheld from production." *Id.*

On January 31, 2025, the parties proposed that Uber would re-review privilege log entries and produce revised logs and any de-designated documents only two days before certain depositions. Dkt. No. 2191. In response, this Court notified the parties that it was considering appointing a special master to handle further disputes regarding privilege. Dkt. No. 2196. On February 6, 2025, Judge Breyer appointed the Honorable Barbara Jones as Special Master to "assist the Court with all disputes relating to privilege logs and the assertion of attorney client and work product privileges in this MDL, as well as deal with any other matters at the Court's direction." Dkt. No. 2289 at 3, ¶ 6.

In preparation for a discovery status conference on April 24, 2025, the parties noted disputes over Uber's efforts to claw back (based on assertions of privilege) documents that it had previously produced in discovery, including some documents that Uber had originally withheld as privileged but later produced when it withdrew privilege designations. The Court deferred to the

4

United States District Court
Northern District of California

Special Master on the merits of particular clawback disputes, but ruled that Uber had waived any claim to privilege for documents that it specifically de-designated and agreed to produce during the period when the Court was overseeing privilege disputes, before the Special Master was appointed. Dkt. No. 2907 at 8:25–15:2. In response to Uber's arguments that it was faced with reviewing a large number of documents on a tight timeline, the Court found that to be a problem of Uber's own making due to its substantial over-designation of documents as privileged, and concluded that Uber had a sufficient opportunity to determine whether those documents were or were not privileged. *Id.* at 13:17–15:2. The Court memorialized its ruling in minute order filed the same day. Dkt. No. 2855.

The parties have since participated in two further discovery status conferences, filing status reports in advance of each of them. Dkt. Nos. 3033, 3328. Despite the May 19, 2025 status report addressing in detail several issues related to the clawback process, neither filing suggested that Uber would ask the Court to reconsider its May April 24, 2025 order regarding waiver.[1]

Two and a half months after the Court's order, Uber moved on July 9, 2025 for leave to file a motion for reconsideration of that decision. Dkt. No. 3442. Uber does not dispute that the Court issued a sufficiently clear and enforceable order both on the record and in the minute order, but argues that the Court's finding of waiver was erroneous, and the Court improperly raised the issue sua sponte. *See id.* Uber asserts that Plaintiffs' delay in presenting certain disputes to the Special Master justifies Uber's timing in bringing this Motion. *Id.* at 4.

The Court directed the parties to file additional briefs on the question of whether Uber was reasonably diligent in bringing its Motion for Leave, as required by this Court's Local Rules. Dkt. No. 3475. Plaintiffs argue that the delay of around ten week's between the Court's Order and Uber's present Motion does not reflect diligence, that Uber had all information that it needed to seek reconsideration immediately after the Court issued its Order, and that granting reconsideration would risk delaying trial. Dkt. No. 3490. Uber argues that there is no fixed

---

[1] A June 26, 2025 brief to the Special Master—not to this Court—asserted that Uber was "considering seeking relief and/or reconsideration from Judge Cisneros regarding any waiver claim," without discussing any basis on which Uber might seek such relief. Dkt. No. 3363 at 3.

5

A89

deadline for bringing a motion for leave to file a motion for reconsideration, and that because the Court ruled sua sponte, Uber required time to "investigate the legal and factual issues for the first time *after* receiving the transcript[2] of the Court's Order," including conferring with Plaintiffs to determine which documents were actually in dispute.  Dkt. No. 3505 at 2–3.

## III.    ANALYSIS

This Court's Local Rules require a party to seek and obtain leave of court before filing a motion for reconsideration.  Civ. L.R. 7-9(a).  Among other requirements, the "moving party must specifically show reasonable diligence in bringing the motion."  Civ. L.R. 7-9(b).  Uber argues that it was diligent in bringing this motion because it did not have sufficient opportunity to brief and argue the Court's sua sponte ruling on waiver at the April 24 status conference, and because Plaintiffs have been slow to identify particular clawback disputes for resolution by the Special Master.

Whatever might be said of Uber's argument that it was not sufficiently prepared to address this issue at the April 24 status conference, it does not explain why Uber did not challenge the Court's ruling in the days or weeks following that conference.  As a point of comparison, if Uber had sought relief from the presiding district judge rather than reconsideration by this Court, the deadline for it to do so would have been fourteen days later: May 8, 2025, more than two months before Uber brought its present Motion.  Fed. R. Civ. P. 72(a); *cf. also* Fed. R. App. P. 4(a)(1)(A) (requiring a notice of appeal of a final judgment to be filed within thirty days under most circumstances).  Uber's argument that it required time to research and respond to a sua sponte ruling is unpersuasive, when Uber took far longer to bring its present Motion than it would have been allowed to respond to any motion Plaintiffs might have filed seeking the same relief.

The Court finds Plaintiffs' purported delay in raising specific disputes about specific documents to the Special Master to be of little consequence to Uber's delay in seeking reconsideration of an order issued months ago.  The Court's ruling—that Pretrial Order No. 14's

---

[2] Uber's focus on the *transcript* is questionable, when Uber's attorneys were present for the status conference and the Court memorialized its ruling in minutes filed the same day.  Dkt. No. 2855. In any event, the transcript was filed on May 2, 2025—still more than two months before Uber filed its present Motion.  *See* Dkt. No. 2907.

6

A90

United States District Court
Northern District of California

clawback mechanism was no longer available for documents that Uber de-designated during this Court's oversight of privilege disputes and re-review—was sufficiently clear when it was issued that Uber could have challenged it at that time, without needing to wait for developments regarding particular documents that might be submitted to the Special Master.  Even if proceedings before the Special Master were relevant, which they do not appear to be, Uber identifies no relevant developments since a communication by Plaintiffs on May 19, 2025—well over a month before Uber filed its present Motion.[3]

Cases Uber cites as allowing longer delays between an order and a motion for leave to seek reconsideration are inapposite and not persuasive here.  In *Senne v. Kansas City Royals Baseball Corp.*, "the focus of the Motion [was] new evidence," which Uber has not asserted here.  No. 14-CV-00608-JCS, 2016 WL 1623913, at *4 (N.D. Cal. Apr. 25, 2016).  The question of diligence was also not material to the outcome: Judge Spero denied leave to file a motion for reconsideration because the moving party failed to establish "new material facts," which is one of the several potential grounds for reconsideration that Civil Local Rule 7-9(b) requires *in addition to* reasonable diligence.  *See id.* at *5.  Judge Orrick's decision in *Huawei Technologies Co. v. Samsung Electronics Co.* comes closer, in that Judge Orrick allowed a four-month belated motion for reconsideration of a claim construction order, with no explanation for the delay beyond "the case's complexity and extended schedule."  2018 U.S. Dist. LEXIS 34793, *15–16, 2018 WL 1116738.  There, however, Judge Orrick specifically relied on the Federal Circuit's endorsement of "a 'rolling claim construction, in which the [district] court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.'"  *Id.* at *16 (quoting *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002)) (alteration in original).

Here, this Court's ruling at issue was decidedly not intended as part of a rolling process, or

---

[3] Uber's arguments regarding the large number of privilege disputes still pending before the Special Master, Dkt. No. 3505 at 4, also do not land as intended.  To the extent such issues might be marginally relevant to the dispositive question of Uber's diligence, the Special Master's already significant workload does not counsel in favor of allowing reconsideration of other privilege disputes after the substantial completion deadline (although it would not preclude referral of additional privilege disputes under appropriate circumstances).

7

A91

as an interim measure subject to further consideration at an unspecified later date. The Court made clear at the April 24 status conference its interest in not letting these clawback disputes further delay discovery and other proceedings in this litigation, an interest the Court emphasized throughout several months of overseeing the parties' disputes over Uber's privilege designations. The deadline for substantial completion of fact discovery common to the MDL was June 16, 2025, Dkt. No. 2028 at 1–2, after the parties failed to meet a deadline for substantial completion of certain document production in September of last year, *see* Dkt. No. 175 (Pretrial Order No. 5) at 4. Uber waiting to seek leave to file a motion for reconsideration until more than two months after the Court's ruling on waiver, nearly a month after the substantial completion deadline, in a case that has already faced substantial delays and where both this Court and Judge Breyer have repeatedly emphasized adherence to the case schedule, is not consistent with reasonable diligence as required by Civil Local Rule 7-9(b). That is enough to end the inquiry, and the Motion for Leave is DENIED on that basis.

The Court does not reach Uber's remaining arguments, but notes that the clawback protocol on which Uber relies in Pretrial Order No. 14 did not contemplate Uber serially designating, de-designating, and re-designating documents as privileged in a manner that undermines the completion of discovery on any reasonable schedule.

## IV.    CONCLUSION

Uber was not diligent in raising any challenge to the Court's April 24, 2025 order on the record that Uber waived its right to claw back documents that it had previously designated as privileged but de-designated while this Court was overseeing the parties' privilege disputes. The Court therefore DENIES Uber leave to file a motion for reconsideration.

**IT IS SO ORDERED.**

Dated: July 22, 2025

LISA J. CISNEROS
United States Magistrate Judge

A92

LAURA VARTAIN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723
*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

[*Additional Counsel Listed on Following Pages*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANT UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |
| This Document Relates to: | |
| ALL ACTIONS | **JUDGE: HON. LISA J. CISNEROS**<br>**COURTROOM: G- 15TH FLOOR** |

DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

A93

Case No. 3:23-MD-3084-CRB

## ADMINISTRATIVE MOTION FOR LEAVE

## TO FILE MOTION FOR RECONSIDERATION

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC respectfully move for leave to file a motion for reconsideration of the Court's April 24, 2025 Minute Order (Dkt. 2855), finding Uber waived attorney-client or work product privilege for documents it originally designated as privileged and then inadvertently de-designated when this Court was overseeing privilege disputes. Attached as Exhibit A to this Motion for Leave to File Motion for Reconsideration is Uber's Proposed Motion for Reconsideration.

### ARGUMENT

Local Rule 7-9(a) allows "any party" to "make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order." To be granted leave, the party must show "reasonable diligence in bringing the motion." Local Rule 7-9(b). The moving party also must show one of three grounds for leave. Local Rule 7-9(b)(1)–(3).

**I.      Uber Meets the First Ground Under Local Rule 7-9(b)(1).**

Under Local Rule 7-9(b)(1), a party seeking leave to file a motion for reconsideration must show:

> That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order.

Local Rule 7-9(b)(1).[1]

First, "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought." Local Rule 7-9(b)(1). Here, Plaintiffs did not request the Court to determine whether Uber waived attorney-client or work-product privilege for certain documents at the April 24, 2025 Status Conference. Rather, the Court

---

[1] Another ground that supports this motion is Local Rule 7-9(b)(3), which provides that the moving party must show "A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Here the Court manifestly failed to consider materials facts and dispositive legal arguments because Uber was not provided an adequate opportunity to present such facts and legal arguments to the Court because the Court raised and ruled on waiver *sua sponte* during a status conference.

2

DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

A94                    Case No. 3:23-MD-3084-CRB

raised the issue *sua sponte* without any prior notice to the parties. Consequently, the Court was not presented with *any* facts or circumstances concerning the specific documents at issue; indeed, the documents were not even identified in the Joint Status Report or during the hearing in which the oral order was made. Nor was the Court presented with law regarding privilege, waiver of privilege, or the propriety of deciding waiver on an unidentified category of documents as a whole without any notice to Uber and/or briefing and argument.[2]

Nevertheless, ample facts and law exist that materially affect this Court's decision finding waiver without any notice to Uber and/or briefing and legal argument. For example, the Court's decision that Uber waived the privilege as to a certain category of documents runs contrary to the procedures prescribed by Pretrial Order 14. *See* Dkt. 396 at ¶ 6. Further, the Court raised and ruled on privilege waiver *sua sponte*. *See* April 24, 2025 Status Conference Tr. at 9:18-10:9 (Ex. B). The authority cited in Uber's Proposed Motion for Reconsideration (Argument, Sections A-C)—and incorporated herein—respectfully should have been considered by the Court prior to entering the Order.

Second, despite the exercise of reasonable diligence, Uber did not have the relevant facts or law at its disposal at the time of the Status Conference. Because there was no pending motion or notice that the Court would consider the issue of privilege waiver at the April 24, 2025 Status Conference, Uber did not have any notice that waiver of its attorney-client or work product privilege would be addressed at the Status Conference and, thus, was unable to alert the Court to key legal authority and specific factual circumstances that should have been considered by the Court prior to any decision. Accordingly, Uber meets the first ground for leave to file a motion for reconsideration.

**II.    Uber Exercised Reasonable Diligence in Bringing This Motion.**

Uber exercised reasonable diligence in bringing this Motion following the Court's *sua sponte* ruling.  The April 24, 2025[3] hearing raised, without prior notice to Uber, several significant, complex new issues, including waiver of attorney-client privilege and work-product protection, the procedure

---

[2] At best, Uber only asserted vague legal principles regarding the importance of privilege. *See* April 24, 2025 Status Conference Tr. at 11:12–13 (Ex. B).

[3] Uber did not receive the transcript of the status conference until April 28, 2025, which was necessary for understanding the Minute Order and the Court's reasoning.

3

for waiver, and other legal and factual issues, that Uber had not previously briefed. These issues necessitate and warrant analysis of the relevant facts and applicable law.

Additionally, when the Court issued an oral order on the waiver issue at the April 24, 2025, Status Conference, Plaintiffs took issue *only with the timing of clawback* for approximately *30 unidentified documents*. Dkt. 2823. Shortly thereafter, on April 29, Plaintiffs raised the issue before Special Master Jones, claiming there were actually *83 documents* for which Plaintiffs claimed that Defendants had waived their opportunity to clawback in light of the Court's ruling, and requested that Special Master Jones find Uber had waived privilege on the 83 documents. Defendants diligently requested that Plaintiffs identify these documents on April 30, May 1, and May 2, but received no response until May 5. Plaintiffs then sought an *ex parte* meeting with the Special Master to discuss their position on these documents, which Defendants believe occurred on or around May 13. Defendants made a request to the Special Master to receive Plaintiffs' position in writing so that Defendants could respond and have an opportunity to be heard. While Plaintiffs indicated on multiple occasions, and as recently as May 19, that they intended to "formally raise" this issue of waiver for specific documents before Special Master Jones, as of this date to Defendants' knowledge, Plaintiffs have not done so. Uber exercised reasonable diligence in bringing this Motion prior to the Special Master addressing the issue as to any particular documents.

## CONCLUSION

For the reasons set forth above, this Court should grant Uber leave to file its proposed motion for reconsideration.

DATED: July 9, 2025                              Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
    Maria Salcedo

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY AND MYERS LLP**

4

SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
    oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
    ccotton@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
    msalcedo@shb.com
JENNIFER HILL (Admitted Pro Hac Vice)
    jshill@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

5

A97

# Exhibit A

LAURA VARTAIN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| This Document Relates to: | **DEFENDANT UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION** |
| ALL ACTIONS | Date:<br>Time:<br>Place: |

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

A99                                      Case No. 3:23-MD-3084-CRB

## <u>NOTICE OF MOTION AND MOTION FOR RECONSIDERATION</u>

### TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Civil Local Rule 7-9 and the Court's Order Granting Defendants' Motion for Leave to File Motion for Reconsideration, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will and hereby do move the Court to reconsider a portion of its April 24, 2025 Minute Order (Dkt. 2855) (the "Order"). Specifically, Uber seeks reconsideration of the portion of the Order finding Uber waived the attorney-client privilege or work product protection for a category of documents it originally designated as privileged and then de-designated when this Court was overseeing privilege disputes. Order at p. 1.

The Motion for Reconsideration (the "Motion") is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, and the pleadings and papers on file herein.

DATED: July 9, 2025                    Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
    Maria Salcedo

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY AND MYERS LLP**
SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
    oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
    ccotton@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
    msalcedo@shb.com
JENNIFER HILL (Admitted Pro Hac Vice)
    jshill@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

3

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

A101                         Case No. 3:23-MD-3084-CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

The attorney-client privilege and work product protection are bedrock principles of American jurisprudence and are core to fair representation in the legal system. At the April 24, 2025 Status Conference (the "Status Conference"), the Court *sua sponte* questioned whether Uber waived these sacrosanct protections for certain unidentified documents it de-designated during the time this Court was overseeing privilege disputes and found that Uber had in fact waived such protections. In so finding, the Court did not follow the procedure for submitting clawback disputes to the Court established by Pretrial Order 14. The Court also made its *sua sponte* ruling without adequate notice to Uber and/or a full and fair opportunity to be heard on this consequential issue. As a result, Uber was deprived of its attorney-client privilege and work-product protection without consideration of the factual circumstances surrounding the de-designation and clawback of the unidentified documents and without the opportunity to develop and brief its legal arguments. There are unique sets of facts that warrant clawing back certain documents that may have been previously de-designated during the earlier, expedited review process. Yet, Uber did not have an opportunity to explain those facts before the Court categorically ruled. Therefore, Uber respectfully requests this Court reconsider and vacate the relevant portion of its Order. Additionally, Uber maintains that, if the Court grants reconsideration and vacates the relevant portion of the Order, Special Master Barbara Jones should address all privilege clawback disputes in accordance with Judge Breyer's Order appointing Judge Jones as Special Master.

## BACKGROUND

On April 21, 2025, the parties filed a Joint Status Report in advance of the April 24, 2025 Discovery Status Conference. Joint Status Report (Dkt. 2823). Among other discovery issues addressed by the parties, Plaintiffs raised the issue of the "Clawback Procedure" and their view that Uber was using an "improper process" for clawbacks. *Id.* at 2–4. Plaintiffs argued Uber's clawbacks were "improperly timed" and did "not provide requisite information for Plaintiffs to assess and potentially challenge the clawback." *Id.* at 3.  Plaintiffs further argued that Uber had clawed back "at least 30 documents" for which it had previously withdrawn its privilege assertions. *Id.* Plaintiffs asked the Court to set an April 28 deadline to submit any clawback disputes to the Court.  *Id.*

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

A102

Case No. 3:23-MD-3084-CRB

In response, Uber pointed out in the Joint Status Report that current privilege disputes, including disputes over clawed back documents, should be submitted to Special Master Jones. *Id.* Uber also disagreed with Plaintiffs' characterization of Uber's clawback efforts and explained that it complied with Pretrial Orders 14 and 16. *Id.* at 4. Finally, Uber explained that it was conferring with Plaintiffs to address their concerns and was "preparing an omnibus list of all documents clawed back to date and updated privilege log entries corresponding to the documents, as Plaintiffs requested." *Id.* Nowhere in the Joint Status Report did Plaintiffs argue that Uber had waived its ability to claw back privileged documents.

Importantly, in Uber's production of documents to Plaintiffs, Uber has consistently represented that the production was "not intended to, and does not, waive any applicable privilege or other legal basis under which information may be protected from disclosure." *See*, *e.g.*, Jan. 10, 2025 Correspondence to Plaintiffs' Counsel. Plaintiffs received multiple productions under this reservation of rights without objection.

On April 24, 2025, this Court held a Discovery Status Conference to address the issues raised by the parties in the Joint Status Report. April 24, 2025 Discovery Status Conference Tr. (Ex. B). At the hearing, the Court agreed with Uber that clawback disputes "ought to be addressed by Special Master Barbara Jones"; however, the Court took issue with "allowing clawback notices concerning documents that were de-designated … before Judge Jones was appointed special master." *Id.* at 9:1–8. The Court went on to find "those de-designation decisions to be waiver of … the privilege assertion." *Id.* at 9:18–19. Specifically, the Court found, "[T]hose privilege assertions are waived and they should not be part of … new clawback notices that are submitted to Judge Jones." *Id.* at 10:4–10.

After the Court's ruling, Uber responded that due to the volume of documents Uber re-reviewed pursuant to the Court's prior order and in light of the compressed timeframe in which Uber had to conduct the re-review, "there may be cases where we believe clawback is appropriate and supportable." *Id.* at 10:21–11:11. The Court then stated it construed Uber's explanation as "a motion for reconsideration based on newly discovered evidence," which would be submitted to this Court because it ordered the re-review. *Id.* at 12:10–12:13. The Court, however, acknowledged that it "would

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

A103

Case No. 3:23-MD-3084-CRB

be within [Judge Jones's] purview to address new privilege log disputes that couldn't have been raised in front of [the Court]." *Id.* at 12:13–15. Uber clarified that it was not "suggesting we take a document the Court has specifically ruled on and redoing that document." *Id.* at 13:17–13:20. The Court, nevertheless, found, "Even if [it] didn't adjudicate a particular document," allowing clawback of documents that were de-designated when the Court was overseeing privilege disputes would be revising "that prior corpus of … documents that we worked through over the fall." *Id.* at 14:9–14:12.

After the Status Conference, the Court entered the Order, which reiterated its oral order during the hearing. The Order specifically states, "The merits of privilege clawback disputes are a matter to be addressed to Special Master Jones.  But as a general matter, Uber has waived the right to claw back documents that it originally designated as privileged and then de-designated as part of the privilege dispute resolution process overseen by Judge Cisneros."  Order at 1 (Dkt. 2855).

## **ARGUMENT**

Federal Rule of Civil Procedure 54(b) provides that interlocutory orders "may be revised at any time before entry of a judgment adjudicating all the claims." Indeed, Local Rule 7-9(b)(1) allows a party to seek reconsideration where "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought."

A party seeking reconsideration of a *judgment* under Federal Rule of Civil Procedure 59(e) must show "newly discovered evidence, [] clear error, or … an intervening change in the controlling law." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). However, "when a district court issues 'an *interlocutory order*, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59.'" *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (quoting *Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1315 (11th Cir. 2000)) (emphasis added). Accordingly, this Court "possesses the inherent procedural power to reconsider, rescind, or modify [its] interlocutory order *for cause seen by it to be sufficient*." *Hartzell v. Marana Unified School Dist.*, 130 F.4th 722, 741 (9th Cir. 2025) (emphasis added). Respectfully, sufficient cause exists for the Court to reconsider its Order.

3

**A.       The Required Procedures for Addressing Clawback Disputes Were Not Followed.**

Federal Rule of Civil Procedure 72(a) requires that "[w]hen a pretrial matter not dispositive of party's claim is referred to a magistrate judge to hear and decide, *the magistrate judge must promptly conduct the required proceedings*." (Emphasis added).

Here the applicable clawback procedure originates from the Court's Pretrial Order 14 ("PTO 14"). *Northwest Acceptance Corp. v. Lynwood Equipment, Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) ("A pretrial order … controls the subsequent course of action in the litigation.") (quotation omitted). PTO 14 prescribes a procedure by which the producing party may notify the receiving party that it produced a document for which it asserts privilege. PTO 14 (Dkt. 396), at p. 2. The receiving party then can contest the assertion of privilege by providing a written "Notice of Clawback Challenge." *Id.* The parties then go through a conferral period. If the conferral does not resolve the dispute, the parties are required to submit the issue to the Court by filing a "joint letter brief." *Id.* at 3.

This process simply did not occur here. Instead of a joint letter brief, the parties filed a Joint Status Report addressing within the ten page limit the status of eight different discovery disputes–none of which included a challenge to any particular claw back document. Although Plaintiffs did raise issues regarding clawback *procedures*, Plaintiff made no substantive challenge to documents Uber believed were subject claw back and made no request for the Court to make a finding of waiver. Indeed, Plaintiffs argued they did not have the "requisite information … to assess and potentially challenge the clawback." Joint Status Report (Dkt. 2823) at 3. Plaintiffs never mentioned the notion of waiver—neither in the Joint Status Report nor at the Status Conference.  Nevertheless, the Court found Uber's de-designation decisions constituted a waiver of its attorney-client or work-product privilege before Uber was given an opportunity to argue against waiver. Ex. B at 9:18–19. Respectfully, this is contrary to how the agreed-upon pretrial order contemplated that such disputes would be submitted to the Court and resolved.

**B.       The Court Improperly Raised and Ruled on Privilege Waiver *Sua Sponte*.**

To allow litigants the full and fair opportunity to be heard, it is generally disfavored for courts to raise issues *sua sponte*. *See, e.g., Lewis v. Woodford*, Case No. CIV–S–02–0013 FCD GGH DP,

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

A105                        Case No. 3:23-MD-3084-CRB

2007 WL 196635, at \*20 n.13 (E.D. Cal. Jan. 23, 2007) ("[I]t is generally inappropriate for judicial officers to raise issues sua sponte."). "There are, however, several respects in which the Federal Rules allow the district court, *with appropriate notice*, to raise issues *sua sponte*." *Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (emphasis added). Further, "[a] court *may only* grant a motion *sua sponte* if all parties have a full opportunity to address the issue." *Mead Reinsurance v. Granite State Ins. Co.*, 873 F.2d 1185, 1189 (9th Cir. 1988) (emphasis added); *see also Heinz v. C.I.R.*, 770 F.2d 874, 876 (9th Cir. 1985) (reversing the tax court's *sua sponte* ruling where the taxpayers "were not given a 'full and fair opportunity to ventilate the issues'"). This is because "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sinneng-Smith*, 590 U.S. 371, 375 (2020). At the very least, "[g]iven the due process and fairness concerns presented, a district court generally must provide the parties with adequate notice that it is contemplating invoking a particular procedural device *sua sponte*." *Jones*, 74 F.4th at 1060.

Due process must be carefully considered before a party can be said to have waived attorney-client privilege. "[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir.1997). Indeed, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Consequently, "[w]hether express or implied, the scope of a waiver must be *narrowly construed* and 'fit within the confines of the waiver.'" *Garcia v. Progressive Choice Ins. Co.*, 2012 WL 3113172, at \*3 (S.D. Cal. July 30, 2012) (quotation omitted) (emphasis added).

Further, waiver of privilege is inappropriate for a blanket rule, but rather should be analyzed in a fact-specific manner. Indeed, "[w]hether a privilege has been waived is a mixed question of fact and law." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (emphasis added). Accordingly, "waiver of the attorney-client privilege favors a case-by-case determination of waiver based on a consideration of all the circumstances." *Eureka Financial Corp. v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991) (citing *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 329 (N.D. Cal. 1985)).

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

Case No. 3:23-MD-3084-CRB

A106

This Court did not have the opportunity to consider the specific factual circumstances concerning Uber's de-designations or clawback of certain documents. In fact, the documents subject to waiver pursuant to the Order were not even specifically identified at the Status Conference or in the Order itself. Nor has Uber had the opportunity to develop and brief legal arguments that its de-designations do not constitute waiver. The Court indicated its position concerning waiver before Uber had an opportunity to speak about the topic during the hearing. *See* Ex. B at 9:18–19. And after the Court stated its position, Uber was only permitted to make spontaneous and impromptu arguments supporting its privilege claim.

"The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.' … Without notice, '[the] right to be heard has little reality or worth.'" *Wright v. Beck*, 981 F.3d 719, 727 (9th Cir. 2020). Uber neither had notice that waiver of its privilege claims would be raised at the Status Conference nor a fair opportunity to address the issue. In short, Uber did not have the "full opportunity to address the issue" necessary for the Court to raise and rule on waiver of the attorney-client privilege and attorney work-product protection *sua sponte*.

To the contrary, the Order, which finds a blanket waiver of an unidentified group of at least 30 documents, stripped Uber of the opportunity to inform the Court of the particular circumstances that Uber believes entitle it to assert attorney-client privilege over certain documents it de-designated. Uber should be allowed such an opportunity, as envisioned by pretrial orders, the case law, and due process.

**C.    The Facts and Law Support Claw Back of Certain De-Designated Documents.**

Because the Court ruled on waiver without the benefit of briefing, the Court was not able to consider the unique factual circumstances and legal reasons that necessitated the claw back of certain documents in this case. PTO 14 allows Uber to claw back the production of privileged documents regardless of whether the production was inadvertent. Federal Rule of Evidence 502(b) sets a "default" procedure that only allows a party to claw back certain inadvertent disclosures. Rule 502(d), however, allows the court to "order that the privilege or protection is not waived by disclosure connected with

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

A107                                   Case No. 3:23-MD-3084-CRB

the litigation pending before the court." In other words, Rule 502(d) orders can "supplant[] the default procedures set forth in Rule 502(b)." *Great-West Life & Annuity Ins. Co. v. American Economy Ins. Co.*, No. 2:11–cv–02082–APG–CWH, 2013 WL 5332410, at *11 (D. Nev. Sept. 23, 2013) (finding Rule 502(d) order supplanted Rule 502(b) where "it outline[d] specific action required from the receiving party when it receive[d] information subject to a claim of privilege after inadvertent production."). The Advisory Committees Notes further explain, "[T]he court order may provide for return of documents without waiver *irrespective of the care taken by the disclosing party.*" Fed. R. Evid. 502, Advisory Committee's Note to subdivision (d) (emphasis added). Indeed, "Rule 502(d) permits courts to enter orders that provide that a disclosure does not constitute a waiver–*regardless of the actions taken by the producing party*" and "avoid any question about whether [it] was inadvertent." The Sedona Conference, *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 SEDONA CONF. J. 95, 104 (2016) (emphasis added).

Here, PTO 14 invokes Rule 502(d) to supplant the default procedures in Rule 502(b). Specifically, it provides, "Pursuant to Federal Rule of Evidence 502(d), the production of any privileged or otherwise protected or exempted information in this case shall not be deemed a waiver or impairment of any claim of privilege or protection in this case." PTO 14 ¶ 2. By its plain language, the non-waiver provision does not require inadvertence. Further, PTO 14 provides a procedure to claw back documents that have "been produced for which the Producing Party asserts privilege and/or other protection," regardless of whether such production was inadvertent. *Id.* at ¶ 4. Several courts have found similar orders pursuant to Rule 502(d) "allow[] a party to claw back privileged materials *without regard to whether the disclosure was inadvertent.*" *GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, 2024 WL 4960008, at *4 (N.D. Miss. Dec. 3, 2024) (collecting cases) (emphasis added).

Even so, Uber's de-designation of certain documents was inadvertent under the circumstances, regardless of the fact that attorneys had reviewed the documents prior to de-designation. "An 'inadvertent disclosure' is simply where the work-product protected document was produced as the result of a mistake." *B&G Foods North America, Inc. v. Embry*, 2024 WL 922900, at *2 (E.D. Cal.

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

A108

Case No. 3:23-MD-3084-CRB

March 4, 2024). "[A] document may be produced inadvertently even after review and redaction." *In re Zetia (Ezetimibe) Antitrust Litig.*, MDL No. 2:18md2836, 2019 WL 6122012, at *7 (E.D. Va. July 16, 2019) (collecting cases). This is because "the 'inadvertence' requirement of Rule 502(b) was not designed to turn on fine distinctions based on the nature of the mistake to determine whether the particular type of mistaken disclosure qualifie[s] for protection from waiver." *Datel Holdings Ltd. v. Microsoft Corp.*, Case No. C–09–05535 EDL, 2011 WL 866993, at *3 (N.D. Cal. March 11, 2011). Therefore, an intentional production of documents is an inadvertent disclosure if it is the result of a mistake. *Id.* This comports with the purpose of Rule 502(b). "[T]he point of Rule 502(b) is to protect clients' confidences from their lawyers' human errors." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018). As one court explained:

> Concluding that a lawyer's mistake never qualifies as inadvertent disclosure under Rule 502(b) would gut that rule like a fish. It would essentially reinstate the strict waiver rule in cases where lawyers reviewed documents, and it would create a perverse incentive not to have attorneys review documents for privilege.

*Amobi v. District of Columbia Dept. of Corrections*, 262 F.R.D. 45, 54 (D.D.C. 2009). This is particularly true where, as here, "'[s]uch errors are, of course, inevitable in complex litigation involving the production of tens of thousands of documents.'" *BNP Paribas Mortg. Corp. v. Bank of America N.A.*, Nos. 09 Civ. 9783(RWS), 09 Civ. 9784(RWS), , at *8 (S.D.N.Y. May 21, 2013) (quotation omitted). As such, "Courts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver." *Baker's Aid v. Hussmann Foodservice Co.,* No. 87 Civ. 0937, , at *5 (E.D.N.Y. Dec. 19, 1988).

Indeed, under similar circumstances, Judge Thomas Hixson of this District found that Apple inadvertently disclosed and was entitled to clawback two documents it de-designated following a re-review process because:

> Epic cites no authority for the proposition that inadvertence does not include an intentional but mistaken decision by a human document reviewer. The question, after all, is whether Apple deliberately produced a document, not whether one particular document reviewer deliberately decided these documents should have been redacted rather than withheld in full. Apple used a large team of reviewers to make privilege calls on large numbers of documents, and a mistake does not mean that the company deliberately produced the document.

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

A109

Case No. 3:23-MD-3084-CRB

*Epic Games, Inc. v. Apple, Inc.*, Case No. 20-cv-05640-YGR (TSH), 2025 U.S. Dist. LEXIS 34007 (N.D. Cal. February 25, 2025).

Uber has produced approximately 1.5 million documents in this litigation. Due to the large number of documents and compressed timeline for review, certain documents were produced as a result of the mistakes of reviewing attorneys who had an incomplete and/or incorrect understanding of the documents. Uber did not intend to produce privileged documents and waive its privilege. Uber should have the opportunity to explain on a document-by-document basis the factual circumstances and applicable law supporting its clawbacks, as contemplated in PTO 14.

**D.    Special Master Jones Should Decide Whether Uber Waived Privilege for Any Documents.**

If this Court grants Uber's Motion, Uber maintains its position that all clawback disputes should be referred to Special Master Jones, including those concerning documents that were de-designated when this Court was overseeing privilege disputes. Judge Breyer's Order Appointing Judge Barbara Jones as Special Master provides that she "shall assist the Court with all disputes relating to privilege logs and the assertion of attorney client and work product privileges in this MDL." Order Appointing Judge Barbara Jones as Special Master (Dkt. 2289) ¶ 6. As the Court itself recognized, "the merits of privilege clawback disputes are a matter to be addressed to Special Master Jones." Order (Dkt. 2855) at 1. Indeed, it "would be within [Judge Jones's] purview to address new privilege log disputes that couldn't have been raised in front of" the Court. Ex. B at 12:13–12:15. Accordingly, the relevant timing for clawback disputes properly within Special Master Jones's purview is not when the inadvertent de-designation occurred, but rather, when Uber discovered the inadvertent de-designation. Only after discovery of the inadvertent disclosure could Uber raise the clawback issue.  Thus, the current clawback dispute is a new privilege dispute and, thus, should be addressed by Special Master Jones.

Special Master Jones is already assigned to resolve privilege disputes and she should decide whether Uber has met its burden to establish privilege or has waived privilege for any particular documents. Indeed, Special Master Jones has already ruled on approximately 1,100 privilege

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

A110

Case No. 3:23-MD-3084-CRB

challenges and is very familiar with the specific issues related to privilege in this case. In fact, she has already entered an order setting the timeline and procedures for addressing clawback privilege disputes, and several sets of claw back documents have already been submitted to her for in-camera review. (Dkt. 2933). Several other sets of privilege challenges, including challenges to clawbacks, are scheduled for submission in the next several weeks. For efficiency and pursuant to Judge Breyer's Order, Special Master Jones should hear all privilege clawback disputes.

## CONCLUSION

For the reasons set forth above, Uber requests the Court grant Uber's Motion for Reconsideration. Uber further requests the Court vacate its April 24, 2025 Order to the extent it holds Uber waived its attorney-client and work-product privilege for documents it de-designated and refer all disputes arising out of clawed back documents to Special Master Jones.

Alternatively, even if the Court does not refer this clawback dispute to Special Master Jones, Uber respectfully requests that the Court vacate the Order and provide an opportunity to present its legal and factual arguments supporting clawback for specific documents that Plaintiffs claim are subject to waiver due to de-designation when this Court was overseeing privilege disputes. For any documents the Court determines Uber may clawback, Uber respectfully requests that Special Master Jones decide the merits of the privilege claims.

DATED: July 9, 2025                           Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
     Maria Salcedo

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY AND MYERS LLP**
SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

A111

Case No. 3:23-MD-3084-CRB

oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
  adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
  mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
  ccotton@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
  msalcedo@shb.com
JENNIFER HILL (Admitted Pro Hac Vice)
  jshill@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION FOR RECONSIDERATION

A112                                    Case No. 3:23-MD-3084-CRB

# OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT

## Northern District of California

## CIVIL MINUTES

| **Date:** April 24, 2025 | **Time:** 8:35 a.m.-9:17 a.m. | **Judge:** LISA J. CISNEROS |
|---|---|---|
| **Case No.:** 3:23-md-03084-CRB | **Case Name:** In re: Uber Technologies, Inc. | |

**For Plaintiffs:** Roopal Luhana and Elizabeth Wilkins, Chaffin Luhana LLP; Sarah, London, Lieff Cabraser Heimann & Bernstein LLP; Rachel Abrams, Peiffer Wolf Carr Kane Conway & Wise, LLP; Layne Hilton, Meyer Wilson, Co., LPA, counsel for Plaintiffs.

**For Defendants:** Michael Shortnacy, Jeremy Wikler, Veronica Gromada, Alycia Degen, Kathleen Frazier and Christopher Cotton, Shook, Hardy & Bacon L.L.P.; Jessica Davidson, Kirkland & Ellis LLP, counsel for Defendants

**Deputy Clerk:** Brittany Sims                **Reported by:** Marla Knox

## PROCEEDINGS

Discovery Status Conference held.  The Court held and instructed the parties as follows:

The parties shall attempt to reach an agreement regarding 30(b)(6) depositions by May 2, 2025. The parties shall raise any remaining dispute on that issue no later than May 8.  The parties may stipulate to increase the page limit for that submission to no more than ten pages.

The merits of privilege clawback disputes are a matter to be addressed to Special Master Jones. But as a general matter, Uber has waived the right to claw back documents that it originally designated as privileged and then de-designated as part of the privilege dispute resolution process overseen by Judge Cisneros. Whether that principle applies to documents de-designated after privilege issues were referred to Judge Jones is a question for Judge Jones.  The timing of any clawback disputes to be raised to Judge Jones is also a question for Judge Jones to decide.

The parties shall submit a PTO 8 letter no later than May 1, 2025 presenting their dispute regarding safety report incident data.

The Court declines to address scheduling Plaintiffs' depositions until Judge Breyer resolves the pending dispute regarding bellwether waves. The parties should be prepared to take depositions of the Wave 1 plaintiffs very quickly.

The Court is not inclined to deviate from the PTO 10 process for disputes regarding the

A113

sufficiency of Plaintiff Fact Sheets. The Court noted that if particular plaintiffs' counsel were using that process to obtain de facto extensions of the deadline to provide fact sheets, that would be a violation of PTO 10 and potentially sanctionable.

The Court is willing to start the deposition of Dara Khosrowshahi early in the morning (Pacific Time) to account for the fact that it will take place in New York.  The Court's law clerk will also observe the depositions that the Court is supervising.  Defense counsel will coordinate with the Courtroom Deputy to arrange for the Court's remote access to those depositions.

The Court noted the issues of TAR validation and record release authorizations addressed in the parties' status report, which do not present any disputes as ripe for resolution.  The Court also noted the pending bellwether deposition protocol disputes referred by Judge Breyer, which the Court will resolve in due course.

A114

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br>_____/<br><br>This Order Relates To:<br><br>*ALL ACTIONS* | MDL No. 3084<br><br>**AMENDED ORDER APPOINTING HONORABLE BARBARA S. JONES (RET.) AS MASTER** |

On February 3, 2025, the Court notified the parties of its intention to appoint the Honorable Barbara S. Jones (Ret.) as a Master to conduct a review of privilege logs and documents relating to the assertion of attorney client and work product privileges in this MDL. Dkt. No. 2204. Uber objected to her appointment on the basis that a "California-experienced jurist" would be better suited; Plaintiffs did not object. Dkt. No. 2275. The Court overruled Uber's objection in an order appointing Judge Jones. Dkt. No. 2289. This Order now amends Judge Jones's appointment.

Judge Jones has informed the Court that she is willing to accept this appointment and has filed an affidavit stating that there are no grounds for disqualification. Dkt. No. 2299. The Court is not aware of any grounds for her disqualification. Accordingly, pursuant to Federal Rule of Civil Procedure 53, the Court APPOINTS Judge Jones as Master.

The Clerk shall add Judge Jones as a filer on the Court's Electronic Case Filing system ("ECF"), at barbara.jones@bracewell.com, and the Clerk shall electronically serve

A115

this order on Judge Jones.

## I.   BASIS FOR APPOINTMENT

1.   <u>Appointment</u>.  The Court appoints the Honorable Barbara S. Jones (Ret.) as a Master to assist the Court in this litigation pursuant to Rule 53(a)(1) to "perform duties consented to by the parties," Fed. R. Civ. P. 53(a)(1)(A), and to "address pretrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district," Fed. R. Civ. P. 53(a)(1)(C).

2.   <u>No Grounds for Disqualification</u>.  On February 7, 2025, pursuant to Rule 53(a)(2) and 53(b)(3), Judge Jones filed an affidavit that states that she has no "relationship to the parties, attorneys, action or court that would require disqualification of a judge under 28 U.S.C. § 455[.]"  <u>See</u> Fed. R. Civ. P. 53(a)(2). If during Judge Jones's tenure as Master, she or the parties become aware of any potential grounds for disqualification, they shall notify the Court immediately.

3.   <u>Fairness Considerations</u>.  Pursuant to Rule 53(a)(3), the Court has considered the fairness of imposing the likely expenses of the Master on the parties.  The Court believes that the appointment and use of the Master will materially advance the litigation, thereby achieving considerable cost-saving to all parties.  The Master will work with the parties to minimize the time and expense related to proceedings before the Master.

4.   <u>Proper Notice Given to All Parties</u>.  Pursuant to Rule 53(b)(1), on February 3, 2025, the Court gave all parties to these proceedings notice of its intent to appoint the Master and provided the parties until February 5, 2025, to object to the appointment, and until February 6, 2025, to propose potential alternates.  As discussed above, Plaintiffs did not object to Judge Jones's appointment, and Uber's objection has been heard and overruled.

## II.   MASTER'S DUTIES, SCOPE OF AUTHORITY, AND COMPENSATION

5.   <u>Diligence</u>.  Pursuant to Rule 53(b)(2), the Court hereby directs the Master to proceed with all reasonable diligence in performing her duties in these proceedings.

6.   <u>Scope of Master's Duties</u>.  Pursuant to Rule 53(b)(2)(A), the Master shall

2

A116

United States District Court
Northern District of California

assist the Court with all disputes relating to privilege logs and the assertion of attorney client and work product privileges in this MDL, as well as deal with any other matters at the Court's direction. The Master shall have the authority to set the date, time and place for all hearings, to preside over hearings, to take evidence, to conduct telephonic conferences to resolve disputes arising during depositions, and to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorneys' fees, as provided by Rules 37 and 45. The Master may recommend a contempt sanction against a party and sanctions against a nonparty as provided in Rule 53(c)(2). The Master is authorized to receive and consider information designated as CONFIDENTIAL and HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY confidential pursuant to the protective order entered in this matter, as well as information previously submitted to the Magistrate Judge or submitted directly to the Master for in camera review. See Dkt. No. 176. The Master has agreed to be bound by the protective order.

7. Scope of Master's Authority. The Master shall have the authority provided in Rule 53(c) and 53(d).

8. Procedure for Motions Submitted to the Master. The procedural requirements contained in the Court's standing order on all civil cases shall govern any motion practice before the Master.

9. Ex Parte Communications. Pursuant to Rule 53(b)(2)(B), the Master may communicate ex parte with the Court at any time. The Master shall not communicate ex parte with any party without first providing notice to, and receiving consent from, the Plaintiff's Steering Committee and Defendants' counsel.

10. Preservation of Materials and Preparation of Record. Pursuant to Rule 53(b)(2)(C), the Master shall maintain orderly files consisting of all documents submitted to her by the parties and of any of her written orders, findings, and/or recommendations. Pursuant to Rule 53(d), the Master shall file any written orders, findings, and/or recommendations with the Court via ECF. Such filing shall fulfill the Master's duty to serve her orders on the parties. Any records of the Master's activities other than written

3

A117

orders, findings, and/or recommendations shall be filed in accordance with paragraph 15.

11. Compensation. The procedures for establishing and paying the Master's compensation and expenses shall be determined in a later order. Within one week of this Order, the Master and counsel for the parties shall confer on this issue, and the Master shall submit a proposal for the Court's approval as to the procedures for paying the Master's compensation and expenses.

12. Master's Reports to Court. Pursuant to Rule 53(d), the Master shall issue orders on motions presented to her which shall be final and not require the Court's signature, subject to the parties' right to file objections as described below. If the Master considers it advisable to make a report to the Court, she shall do so in accordance with Rule 53(e).

### III. ACTION ON MASTER'S ORDERS, REPORTS, OR RECOMMENDATIONS

13. Scope of Section. Pursuant to Rule 53(b)(2)(D) and 53(f), the procedures described in paragraphs 14 through 17 herein shall govern any action on the Master's orders, reports, and/or recommendations.

14. Time Limits for Review. Any party wishing to file objections to or a motion to adopt or modify the Master's orders, reports, and/or recommendations must file such objections or motion with the Court within 5 days from the day the Master filed the order, report, and/or recommendation via ECF. Any order issued by the Master shall remain in effect pending any such objection or motion.

15. Filing the Record for Review. The party filing the objection or motion shall submit with such objection or motion any record necessary for the Court to review the Master's order, report, and/or recommendation, including any transcripts of proceedings before the Master and any submitted by the parties in connection with the Master's order, report, and/or recommendation. Failure to provide the record shall constitute grounds for the Court to overrule the objection or deny the motion.

16. Standard for the Court's Review. Pursuant to Rule 53(f)(3)-(5), the Court shall review findings of fact made or recommended by the Master for clear error. The

4

A118

Court shall review de novo any conclusions of law made or recommended by the Master. The Court will set aside the Master's ruling on a procedural matter only for an abuse of discretion.

17.    Court's Actions on Master's Orders.  Pursuant to Rule 53(f)(1), in acting on an order, report, or recommendation of the Master, the Court shall afford the parties an opportunity to present their positions and, in its discretion, may receive evidence, and may adopt or affirm; modify; wholly or partly reject or reverse; resubmit to the Master with instructions; or make any further orders it deems appropriate.

**IT IS SO ORDERED.**

Dated: February 7, 2025

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 23-md-03084-CRB  (LJC) |
| This Document Relates To: | **ORDER REGARDING THIRD SET OF CHALLENGES TO UBER'S PRIVILEGE CLAIMS** |
| ALL CASES. | Re: Dkt. Nos. 2088, 2089, 2090, 2091 |

## I.    INTRODUCTION

In accordance with the process previously set by the Court, the parties have filed two joint letters addressing samples of disputed privilege log entries.  Dkt. Nos. 2089, 2091.  The Court resolves the parties' disputes as follows.  This Order also resolves related motions to consider filing documents under seal.  Dkt. Nos. 2088, 2090.

As a housekeeping matter, the Court notes that the parties' filings at issue use a font smaller than size 12 in some footnotes—primarily in Plaintiffs' sections of joint filings—in violation of a previous Order.  *See* Dkt. No. 1996.  Those violations are excused in this instance, but future filings that fail to comply with that Order may be stricken.

## II.    LEGAL STANDARD

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  California law therefore applies to issues of privilege in this multi-district litigation, at least absent any showing that the law of some other state should apply.  *See Holley v. Gilead Scis., Inc.*, No. 18-cv-06972 JST (JSC), 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021) (applying California choice-of-law rules to conclude that California privilege law applied in a case with "factual connections to multiple states," where no

A120

party introduced evidence of a conflict of laws or another state's governmental interest in applying its own law).

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code §§ 911, 954, 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Id.* "[T]he relevant inquiry is not the content of the communication but is instead the relationship of the communicators." *Id.* at 52. If "the communications were made during the course of an attorney-client relationship"—as opposed to a relationship with some other "dominant purpose"—then "the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means." *Costco*, 47 Cal. 4th at 740. Even when an attorney-client relationship is established, however, "the inquiry turns on . . . the link between the content of the communication and the types of communication that the attorney-client privilege was designed to keep confidential. In order for a communication to be privileged, it must be made for the purpose of the legal consultation, rather than some unrelated or ancillary purpose." *L.A. Cty. Bd. of Supervisors v. Superior Ct.*, 2 Cal. 5th 282, 297 (2016) (adopting the reasoning of a concurring opinion in *Costco*).

California courts have recognized that "that in order to implement the advice of lawyers, the advice must be communicated to others within the corporation," and "[i]t is neither practical

nor efficient to require that every corporate employee charged with implementing legal advice given by counsel for the corporation must directly meet with counsel or see verbatim excerpts of the legal advice given" as a condition of maintaining privilege. *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1498 (2007). A communication between non-lawyer employees that conveys privileged attorney advice remains privileged so long as sharing that information with the recipient "further[s] the interest of the client in the consultation or . . . is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." *Id.* at 1503 (quoting Cal. Evid. Code § 952).

> There are additional relevant limitations on the attorney-client privilege. It is established that otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is "copied in" on correspondence or memoranda. In addition, [a party] may not shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney. In addition, [i]t is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent.

*Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 (cleaned up); *see also, e.g.*, *Chi. Title Ins. Co. v. Superior Ct.*, 174 Cal. App. 3d 1142, 1151 (1985).

Applying federal law, courts have held that "[n]o privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023) (quoting *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990), and citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (alteration in original). Under that standard, communications involving in-house counsel "warrant[] heightened scrutiny because in-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Id.* (N.D. Cal. Mar. 29, 2023) (cleaned up). Although federal law does not govern the scope of privilege in this litigation, the Court funds that principle consistent with California law

United States District Court
Northern District of California

3

A122

United States District Court
Northern District of California

recognizing that privilege does not attach to communications where an attorney provides business advice rather than legal advice, or where an attorney is merely "copied in" on internal business communications.  *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

### III.   APPLICATION TO PARTICULAR DOCUMENTS

#### A.   Tranche 2 Random Selections

The Court previously ordered the parties to randomly select a sample of disputed privilege claims from Tranche 2 of custodial discovery, and to file a joint letter addressing any documents for which they were not able to resolve their disputes through efforts to meet and confer.  The parties have identified six such documents, which Uber has submitted for in camera review.  The Court addresses those documents as follows.

#### 1.   JCCP_MDL_PRIVLOG026377

This document is an email chain that was produced with redactions during the meet-and-confer process.  It is not clear which portions of the document were or were not redacted,[1] but "Plaintiffs dispute the redactions only as to [Senior Manager Buddy] Loomis's December 7, 2017 email at 12:48 MST," the earliest email in the chain.  Dkt. No. 2089 at 4.  That email states rules for when certain consequences should be imposed on driver's accounts with Uber.

According to Uber, the email is privileged because it "conveys legal advice that Associate General Counsel Scott Binnings and other Uber in-house attorneys had previously provided to Ms. Loomis and her team concerning deactivation of independent driver accounts in circumstances involving reported fatalities or sexual misconduct allegations."  Dkt. No. 2089 at 10.  Binnings includes the same assertion in his declaration, and states that Loomis's email "begins the process of implementing this legal advice within Uber's support organization."  Dkt. No. 2089-9, ¶ 11.

Uber asserts in a footnote that it was prejudiced by the manner in which this dispute was raised.  According to Uber, Plaintiffs failed to include this document in an initial sample of log entries to be included in this joint letter, but "included it in [their] portion of the letter brief on the evening of January 9, without notice."  Dkt. No. 2089 at 10 n.16.  The Court is concerned about

---

[1] Going forward, the parties are encouraged to indicate any redactions to documents at issue in privilege disputes.

4

whether Plaintiffs fully complied with the process previously ordered. That said, the parties had already begun to meet and confer about this document (as indicated by the fact that Uber first produced a redacted version on January 7th as part of the meet-and-confer process, *see id.* at 4), Uber had the better part of a week to address the document between Plaintiffs including it in a draft joint letter on January 9th and the filing of that joint letter on January 15th, both parties include substantive arguments regarding the document, and the principle at issue is relatively straightforward. The Court therefore proceeds to consider whether the document is privileged.

Contrary to Uber's assertions, the email does not on its face convey advice for the recipients to consider in carrying out their duties. It states a policy that they must follow, without mentioning any involvement by Uber's attorneys in crafting that policy. That this policy was apparently informed by legal advice does not make the policy itself privileged. If it did, virtually all aspects of the functioning of any major corporation would be protected from disclosure. The Court has previously made clear that business records and communications are not privileged merely because they were informed by legal advice. *See, e.g.*, Dkt. No. 1908 at 7 ("[T]he mere fact that an internal communication *benefited* from legal advice does not render it privileged."). The disputed portion of this document (the December 7, 2017 email) is therefore not privileged, and must be produced.

To account for Plaintiffs' apparently belated selection of this document, however, if Uber believes additional evidence would establish that this document is privileged, Uber may file letter brief seeking reconsideration no later than four days from the date of this Order. That letter shall not exceed two pages, but may attach declarations as needed. Plaintiffs may respond with a two-page letter brief three days later. If Uber seeks reconsideration, Uber need not produce this document until that issue is resolved.

### 2. JCCP_MDL_PRIVLOG028703

This document is a 2017 email notification generated by Jira, a project management platform used by Uber, and sent to Matthew Baker, a non-lawyer. Uber's privilege log asserts both attorney-client privilege and work product protection, and described this document as a "[c]onfidential e-mail prepared in anticipation of litigation *by in-house counsel* regarding reports

A124

United States District Court
Northern District of California

of driver sexual assault or sexual misconduct." Dkt. No. 2116-1 (emphasis added).

That description is false. The email conveys a Jira comment by Laura Alioto, a non-lawyer. The only "privileged names" identified on Uber's privilege log are Alioto and Mike Haas (who is tagged in Alioto's comment), neither of whom are attorneys. *See id.* There is also no indication in the record that Alioto's comment was directed to any attorney.

Uber asserts in the joint letter, and its in-house counsel Maureen Frangopoulos states in a declaration, that Alioto—who was then Uber's Head of Global Special Investigation Unit & Large Loss & Legacy Insurance Claims—"worked at the direction and supervision of in-house counsel and would have made this comment in that capacity." Dkt. No. 2089-8, ¶ 6; *see* Dkt. No. 2089 at 7–8. According to Frangopoulos, Alioto's "comment provides specific advice at the direction of counsel about steps that have been taken and that need to be taken in light of the risk of litigation related to the reported incident." Dkt. No. 2089-8, ¶ 6.

It is not clear from Frangopoulos's declaration whether she was personally involved in the matters at issue, which attorney(s) purportedly directed Alioto to make this comment or to conduct an investigation, or how Frangopoulos determined that the comment was made at the direction of an attorney. *See generally id.* In the joint letter, Uber asserts that Frangopoulos's declaration regarding this document is "based on her personal knowledge about how the JIRA system works." Dkt. No. 2089 at 8. It is not clear how Frangopoulos's knowledge of how a project management software platform functions would give her a sufficient basis to assert that Alioto's comment was privileged or protected as work product. Frangopoulos also states in her declaration that she is "familiar with the document" at issue, Dkt. No. 2089-8, ¶ 6, but it is not clear that she means anything more by that statement than that she reviewed the document before preparing her declaration.

Uber is correct that work by non-lawyers conducting investigations at the direction of counsel in anticipation of litigation can fall within work product protection. *See, e.g.*, *United States v. Shaw*, No. 22-cr-00105-BLF-1 (SVK), 2023 WL 4539849, at *2 (N.D. Cal. July 12, 2023). Lending some support to that basis for protection, Alioto (or perhaps the Jira system) labeled her message "AC Privileged & Confidential | Monitoring and investigating at legal

6

A125

directive in anticipation of potential litigation."

On its face, however, the comment states an operational directive for other Uber employees to take action regarding a particular driver's account—not legal advice, or a recommendation, or the findings of an investigation. Even if that directive originated from an in-house attorney, it likely would not be privileged. The Court is highly skeptical that Uber could cloak the conduct of its business under the attorney-client privilege simply by placing attorneys in the chain of operational command. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 ("[T]he attorney-client privilege is inapplicable where the attorney . . . acts as a business agent."). In any event, Uber has failed to provide a sufficient evidentiary foundation to support Alioto's characterization of her comment as part of an attorney-directed investigation through a declaration by someone familiar with the circumstances of that comment, as opposed to Frangopoulos's mere understanding of "how the JIRA system works." *See* Dkt. No. 2089 at 8.

The Court recognizes that Uber may not be able to obtain declarations from former employees directly involved in communications that occurred seven years ago. In some circumstances, a privilege claim might be supported by a current employee's involvement in the events surrounding the communication, or their review of other contemporaneous documents that provide sufficient context to support the claim (i.e., documents that demonstrate sufficient involvement by attorneys). Here, though, Frangopoulos's declaration does not offer any meaningful foundation for her assertions about the nature of the document at issue.

The Court also does not expect Uber to provide declarations about every document at issue at the time it serves a privilege log. But once Plaintiffs have challenged a claim, the parties have reached an impasse, and the dispute is submitted to the Court, Uber must provide evidentiary support for at least "the preliminary facts necessary to support . . . a prima facia claim of privilege." *Costco*, 47 Cal. 4th at 733.[2] It has not met that burden for this document, with respect to either attorney-client privilege or the work product doctrine. Uber must therefore produce this

---

[2] If the document itself evinces privilege or work product protection, submission of the document for in camera review may be sufficient to meet Uber's burden. Boilerplate labels of privilege, however, are not sufficient without extrinsic support.

A126

document.

Uber asserts that Plaintiffs should be required to re-review their privilege challenges because they lack a sufficiently particularized basis to challenge this document. Dkt. No. 2089 at 8. But Uber does not acknowledge that its description of this document in its privilege log—the primary information available to Plaintiffs in determining whether challenge a privilege assertion—is flatly inaccurate, in that it falsely asserts that the document was an email prepared by counsel. Moreover, as discussed above, Uber did not sufficiently substantiate its privilege claim after Plaintiffs challenged the document. The Court declines to fault Plaintiffs for this challenge.

### 3.      JCCP_MDL_PRIVLOG030622

This document is a chain of several emails, all but the earliest of which include in-house counsel. The third earliest email, sent at 1:38 PM by Tyler Spitz to in-house counsel Brandon Myers and Jennifer Handley, specifically seeks legal advice, and subsequent emails convey and discuss such advice. Those emails are privileged, and may be redacted.

The earliest email was sent by Zach Singleton to a team of non-lawyers, and is addressed "Hi Ops Leads." It discusses a proposed operational change. It is not specifically labeled as privileged. Uber asserts that it is nevertheless privileged because it "discusses previous legal advice by Uber's in-house attorneys on a data privacy issue and a proposal to implement that legal advice." Dkt No. 2089 at 8; *see also* Dkt. No. 2089-7 (Handley Decl.) ¶ 5.

Based on the Court's in camera review, Singleton's email includes two references to legal advice: (1) the sentence beginning "This is a" in the first paragraph; and (2) the sentence beginning "I also" in the second-to-last paragraph. Those sentences may be redacted. The email as a whole, however, is sent from a product manager to a group of "Ops Leads," discussing an upcoming operational change, and requesting the ops leads' feedback. That the operational change may have been informed by legal advice does not render it privileged. Other than the two sentences addressed above, Uber has not shown that this original is anything other than a business communication among non-lawyer employees, with the dominant purpose of both their relationship and this particular email being Uber's business operations rather than seeking or conveying legal advice. The original email must therefore be produced with only those two

United States District Court
Northern District of California

8

A127

sentences redacted.

The email immediately following that is from Nick Murphy, apparently forwarding Singleton's email to Spitz without significant commentary. Uber has not asserted that Murphy is an attorney, nor offered other evidence to show specifically that Murphy's email is privileged. That email therefore also must be produced without redaction. As discussed above, all subsequent emails included in this document may be redacted.

Uber objects to Plaintiffs' challenge to this document, arguing that Plaintiffs lacked a sufficiently particularized basis for the challenge. The mere fact that the top-level email, as logged, included attorneys only in the "cc" field is not a strong reason to believe that it is not privileged—as indicated by the Court's ruling that the top-level email (like several other emails in the chain) is privileged. But when Plaintiffs' challenges continue to identify documents that Uber has improperly over-designated as privileged, the Court declines to turn a blind eye to material that should have been produced, regardless of any flaw in Plaintiffs reasons for choosing a particular document.

### 4.    JCCP_MDL_PRIVLOG031766

This documents is an email from Kate Parker to Jenna Wuu and Tracey Breeden—all non-lawyers—forwarding an email sent by Deanna Slocum, an in-house attorney, with a proposed agenda for a meeting. Uber's privilege log described this as a "[c]onfidential e-mail thread provided for purposes of seeking legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety." Dkt. No. 2116. Uber contends that this document is privileged because Slocum's email, to a group of recipients that included a large number of other attorneys, "consisted of an agenda for an upcoming legal team meeting at which this group would discuss employment policies and company initiatives," or in other words, "legal advice concerning employment policies and topics." Dkt. No. 2089-9 (Binnings Decl.) ¶ 10; *see* Dk. No. 2089 at 9. Parker, who was then Uber's Head of Safety and Insurance Brand, was to participate in that meeting as a guest speaker. Dkt. No. 2089-9, ¶ 10. Although not dispositive, the Court notes that neither email was labeled by its author as privileged.

The Court assumes for the sake of argument that Slocum's email was privileged when she

A128

sent it, and that any actual proceedings at the meeting it discusses would also be privileged. This document, however, is (in Uber's words) "a forward of the prior email by Ms. Parker to two additional non-attorney employees." Dkt. No. 2089 at 9. As both of this Court's previous orders regarding privilege log disputes have stated, a "communication between non-lawyer employees that conveys privileged attorney advice remains privileged *so long as* sharing that information with the recipient 'further[s] the interest of the client in the consultation or . . . is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted.'" Dkt. No. 1908 at 2–3 (quoting *Zurich Am. Ins.*, 155 Cal. App. 4th at 1503) (emphasis added); Dkt. No. 2005 at 2–3 (same).

Uber has not addressed why Parker forwarded this email to other non-lawyer employees, and has made no showing that doing so furthered any interest in seeking or conveying legal advice. The Court is generally willing to infer that dissemination of legal *advice* within the company furthers the purpose for which such advice was rendered, absent some indication to the contrary. Here, though, Slocum's original agenda email does not on its face convey any advice that might inform how other Uber employees should do their jobs, and Uber has not offered any evidence to show that Parker forwarding the email otherwise furthered an attorney-client relationship. Uber therefore has not met its burden to show that the document actually submitted for review—Parker's email to Wuu and Breeden—is privileged. On its face, and absent explanation of how it furthers any interest in an attorney-client relationship, that email appears to waive any privilege that might have attached to the forwarded material.[3] This document must therefore be produced in its entirety.

### 5.    JCCP_MDL_PRIVLOG031851

This document is a notification email generated by Google Docs regarding comments on a draft press release.[4] This document was not included in the excerpt of Uber's privilege log

---

[3] To be clear, this email does not appear to waive any privilege that might attach to the actual proceedings of the contemplated meeting, and Plaintiffs do not argue that it does. *See* Dkt. No. 2089 at 5 (acknowledging Uber's position that the meeting included legal advice, and arguing that "whether legal advice was provided at the meeting is immaterial" to whether this document is privileged).

[4] The Court has previously addressed several other notification emails from Google Docs and

10

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

submitted to the Court, so it is not clear how Uber characterized it in its log. *See* Dkt. No. 2116-1. The document includes comments by Kathleen Waitzman and Scott Binnings, both of whom were in-house attorneys. Dkt. No. 2089-9 (Binnings Decl.) ¶ 9. In the first comment, Binnings "tagged" two other attorneys to seek their advice. *See id.* In the second comment, Waitzman raised concerns regarding pending litigation. In the third, Binnings "tagged" two non-lawyer employees to make them aware of Waitzman's legal advice and concerns. *Id.* In the fourth and final comment included in this email, "Waitzman provided legal advice on a different portion of the draft." *Id.* The document on its fact comports with Binnings's description of it in his declaration. *See id.*

Plaintiffs contend that the document does not appear to be privileged because it was sent to Breeden, a non-lawyer, regarding a press release. Dkt. No. 2089 at 5–6. For the reasons explained in Binnings's declaration, however, this email conveys legal advice, and is privileged. Uber need not produce this document.

### 6. JCCP_MDL_PRIVLOG032247

This document is an email from non-attorney Danielle Sheridan providing feedback on a proposed policy change in response to a request for such feedback by non-attorney Susan Muehrcke. Uber asserts that it has redacted a portion of the email conveying legal advice. Dkt. No. 2089 at 10. The version of the document provided for in camera review does not indicate the redaction, but based on Uber's description, the Court understands that the beginning of Muehrcke's email up to (but not including) listed item number 2 has been redacted. As Uber has explained, that portion of the email describes Muehrcke's discussions with in-house counsel and conveys their advice. *Id.*; Dkt. No. 2089-8 (Frangopoulos Decl.) ¶ 2. Plaintiffs do not address that explanation. *See* Dkt. No. 2089 at 6.

Muehrcke specifically asked Sheridan to consider the legal advice conveyed in determining whether to implement the policy change, indicating that dissemination of that advice to Sheridan was necessary to further the purpose for which the attorneys were consulted. *See*

---

similar platforms.

11

A130

United States District Court
Northern District of California

*Zurich Am. Ins.*, 155 Cal. App. 4th at 1503. The redacted portion of the document is therefore privileged and may remain redacted.

### B. Tranche 3 Documents

The parties submit disputes regarding thirteen documents from the third tranche of custodial discovery, consisting of nine documents selected by Plaintiffs and four documents randomly selected for review. *See* Dkt. No. 2089 at 3. Uber has submitted those documents for in camera review. The Court addresses them as follows.

### 1. JCCP_MDL_PRIVLOG040099

This document is an email chain that began with a 2019 request by in-house counsel Jennifer Handley for information about safety features in Uber's app, directed to two non-lawyer employees. Handley explained both in that email and in her present declaration that she sought that information so that she could provide advice in anticipation of litigation. Dkt. No. 2091-7, ¶ 2. She also directed the non-lawyer employees to label any documents in connection with their response as privileged and work product. The remainder of the email chain consists of discussion of Handley's request.

Plaintiffs challenge this assertion of privilege because Handley is only cc'd on the top-level email, she "does not appear to respond to any emails,"[5] and "based on Uber's [privilege] log, this appears to be a business data collection requestion with a dominant business purpose." Dkt. No. 2091 at 4. Plaintiffs do not address Handley's declaration.

Uber's privilege log described the document as a "[c]onfidential e-mail thread seeking and providing legal advice from in-house counsel regarding drafting and implementation of Uber's Taxonomy." Dkt. No. 2116-2 at 2. The characterization of the document as "seeking and providing legal advice" does not appear to be accurate. It is not entirely clear whether the document relates to "drafting and implementation of Uber's Taxonomy," which Handley does not mention in her declaration. *Cf.* Dkt. No. 2091-7, ¶ 2. The Court remains concerned about the accuracy of Uber's privilege log descriptions.

---

[5] It is not clear how Plaintiffs reached this conclusion, which is inaccurate.

That said, Uber has offered evidence that this document reflects an attorney's request for information to facilitate the provision of legal advice, and further discussion in response to that request. Plaintiffs have not rebutted that characterization, which is consistent with the Court's in camera review of the document. This document need not be produced.

### 2.  JCCP_MDL_PRIVLOG040249

This document is an email chain that begins with a request for information by Mike Haas, who served at the time as Senior Legal Project Manager on the Safety Legal Special Investigations team, to non-lawyer employees on the Safety and Insurance team. Haas's email includes a boilerplate notation reading "A/C Privileged & Confidential | Prepared at Direction of Counsel in Anticipation of Litigation" and "Confidential Attorney Work Product." Haas also noted specific anticipated litigation, and stated that "Insurance Litigation" was seeking the information at issue. Jennifer Handley, who served as in-house counsel at the time, states that Haas was acting at the direction of counsel to seek information to facilitate legal advice. Dkt. No. 2091-7, ¶ 3. That characterization is consistent with the face of Haas's email. The remainder of the document consists of further emails either responding to Haas's questions or adding other employees with relevant to knowledge to answer them.

Plaintiffs correctly note that Uber's privilege log description—"Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding Uber's policies and practices for responding to allegations of driver sexual assault or sexual misconduct," Dkt. No. 2116-2 at 2—is not an accurate description of this document. Dkt. No. 2091 at 5. But Plaintiffs do not address Uber's arguments in the joint letter or the explanation in Handley's declaration, and do not dispute that the document would be privileged if Haas is acting at the direction of counsel to gather information for counsel in anticipation of litigation.

This document is privileged, and need not be produced.

### 3.  JCCP_MDL_PRIVLOG040518 (and Attachment -40519)

The primary document at issue here is an email chain that begins with a 7:47 PM email from in-house counsel Scott Binnings to a non-lawyer employee, Brittany Anthony, regarding sending a draft of Uber's U.S. Safety Report to outside counsel for review. *See* Dkt. No. 2091-9

(Binning Decl.) ¶ 2.  Binnings then added another non-lawyer, Brooke Anderson, to the conversation.  *See id.*  Anderson responded to Binnings within a short time and provided a copy of the draft.  Soon afterwards, Anderson forwarded the email chain to three other non-lawyer employees.[6]  According to Binnings, all of those employees were involved with the draft report, and Binnings infers that Anderson forwarded these emails to them to make them aware of the plan to seek additional legal advice and the possibility of further edits in response to that advice.  *Id.* That inference is reasonable in context, and the Court is satisfied that these communications sufficiently furthered the purposes of the attorney-client relationship (e.g., by ensuring that any advice could be implemented properly before the document was released) to remain within the scope of attorney-client privilege.

The document identified with a Bates number ending in -519 is the draft of Uber's Safety Report that was attached to this email chain and shared with outside counsel for the purpose of seeking legal advice.  The Court is satisfied that this draft, in this particular context where it evinces the subject of a request for legal advice, is privileged.  That is not to say that other drafts of this report, or even instances of the same draft, would necessarily be privileged.  Such documents are not presently before the Court.

Uber's privilege log description characterizes the email chain as a "[c]onfidential e-mail seeking and providing legal advice from in-house counsel regarding media inquiry concerning Uber's Safety Report," and the attachment as a "[d]raft Confidential document seeking and providing legal advice from in-house counsel regarding preparation and drafting of Uber's Safety Report."  Dkt. No. 2116-2 at 3.[7]  It is not clear that those descriptions are entirely accurate— particularly with respect to the purported media inquiry, which is not mentioned in Binnings's declaration.  Based on those descriptions, Plaintiffs' concern that the "email appears to be nothing

_____

[6] The final email included in this document bears a timestamp of "4:05:19 AM (UTC)," which corresponds to 8:05 PM PST, suggesting that it was sent just a few minutes after the next most recent email in the chain.

[7] Uber revised its privilege log for this document during the meet-and-confer process, omitting the reference to a media inquiry and instead describing the email as "seeking and providing legal advice from in-house counsel regarding drafting and implementation of Uber's Safety Report." *See* Dkt. No. 2091-6 at 2.

United States District Court
Northern District of California

14

A133

more than forwarding a draft copy of Uber's Safety Report to non-attorneys for edits or advice on how to respond to media inquiries" is not entirely unreasonable. *See* Dkt. No. 2091 at 6.

That said, Plaintiffs do not address Uber's explanation of its privilege claim in the joint letter and in Binnings's declaration. However reasonable Plaintiffs' concerns may have been in response to the privilege log alone, they do not rebut Uber's present showing of privilege. These documents need not be produced.

### 4. JCCP_MDL_PRIVLOG043475

This document is an email from data scientist Sunny Jeong to several other non-lawyer employees, with in-house counsel Scott Binnings cc'd. Jeong labeled the email, which states that Binnings had requested certain information, as privileged and as prepared at Binnings's direction. Binnings states in his declaration that he "asked Mr. Jeon to send this communication to relevant individuals who worked at Uber in the areas of analytics, data science, and software engineering, . . . to request information that [Binnings] needed to provide legal advice to the company concerning rider safety issues with legal liability risks that were resulting in lawsuits against the company." Dkt. No. 2091-1, ¶ 3. Binnings also asked Jeong to set up a meeting to "discuss such information and related legal issues and legal strategies with the group," and Binnings attended that meeting "to continue providing legal advice." *Id.*

Uber's privilege log description for this document—"Confidential e-mail thread providing legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety," Dkt. No. 2116-2 at 2—is not accurate, because no advice is conveyed in this email. Jeong's email nevertheless reflects an investigation at the direction of counsel in order to gather information that Binnings considered necessary to provide legal advice. *See* Dkt. No. 2091-1, ¶ 3. "[T]he attorney-client privilege applies to investigations performed by non-attorneys working at the direction of counsel." <u>Shaw</u>, 2023 WL 4539849, at *2. This email is distinguishable from a previous document where Uber asserted somewhat similar arguments for privilege, but where Binnings did not assert either that he specifically directed any of the employees involved, or that the purpose of their data collection work was specifically to obtain legal advice. *See* Dkt. No. 2005 (discussing JCCP_MDL_PRIVLOG034111).

United States District Court
Northern District of California

15

A134

Plaintiffs challenged the privilege assertion primarily because the only attorney included in the email (Binnings) was listed on the "cc" line and "does not appear to have responded to any emails," without addressing Binnings's declaration or Uber's arguments in the joint letter.  Dkt. No. 2091 at 3–4.  This document is privileged for the reasons stated by Binnings, and need not be produced.  The Court remains concerned about the accuracy of Uber's privilege log descriptions.

### 5.      JCCP_MDL_PRIVLOG044017

The parties' remaining dispute regarding this document concerns a single-sentence redaction[8] to an email from non-lawyer Ben Busian, which appears in four-page email chain (not counting two pages of signatures).  The Court's understanding is that Uber initially either withheld this document in full or redacted other passages as well, but produced a version with only that sentence redacted during the meet-and-confer process.  *See* Dkt. No. 2091 at 6, 15.

Uber contends that, in context, the redacted sentence is a request for legal advice from the one attorney who was included as a recipient on the email.  Dkt. No. 2091 at 15.  Plaintiffs argue that based on the subject line and the fact that the attorney is one of twelve people copied on the email, "it appears [the author] is giving a business opinion."  Dkt. No. 2091 at 6.

It is perhaps not as clear as Uber suggests that this sentence seeks advice from Megan Poonolly, the only lawyer included on the email thread.  At the very least, though, the redacted sentence specifically discusses intent to seek legal advice.  Courts have held that such communications among corporate employees fall within the scope of the privilege.  *OwLink Tech., Inc v. Cypress Tech. Co., Ltd*, No. 8:21-cv-00717-SPG (KESx), 2023 WL 4681543, at *2 (C.D. Cal. June 29, 2023); *see also Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019) (applying federal privilege law).  The Court is satisfied that the redacted sentence is privileged and need not be produced.

### 6.      JCCP_MDL_PRIVLOG044768

This document is a Jira notification email containing a single comment by Mike Haas, a non-lawyer employee who worked on an Uber legal team as discussed above.  Haas's comment

---

[8] The Court appreciates Uber's inclusion of both the redacted and unredacted versions of this document in its submission for in camera review.

16

A135

United States District Court
Northern District of California

discusses outreach to counsel about potential litigation, and is therefore privileged. Because all substantive content in this document is privileged, Uber properly withheld at least that substantive content.

Plaintiffs argue that this email should have been produced with redactions if it included privileged content. Dkt. No. 2091 at 7. The Court understands that the parties will meet and confer regarding treatment of similarly privileged Jira notifications, including whether it is appropriate to produce such emails with redactions when all substantive content is privileged.

### 7.    JCCP_MDL_PRIVLOG050377

This document is a Jira notification remail containing a single comment by Stephanie Vitale, an attorney. Vitale's comment appears on its face to provide legal advice, and is therefore privileged. Plaintiffs argue that this email should have been produced with redactions if it included privileged content, Dkt. No. 2091 at 7, but because the only substantive content of the email is privileged, it was reasonable and appropriate for Uber to withhold at least the substantive content of this document.

### 8.    JCCP_MDL_PRIVLOG052655

This document is a Jira notification email containing a single comment by Maureen Frangopoulos, an attorney, providing legal advice. As with the similar documents discussed above, all substantive content in this email is privileged.

### 9.    JCCP_MDL_PRIVLOG053996

This document is a draft procedures manual for driver background checks. It includes a header stating that it is privileged and confidential, and that it was "prepared at the direction of counsel (E. Madavo)." (Capitalization altered.) According to Uber, "this draft contains numerous comments directed to or by Ms. Madavo in which legal advice is requested and provided," Dkt. No. 2091 at 11, although those comments are not apparent in the version of the document submitted for in camera review. In-house counsel Scott Binnings (who is mentioned in the document as the "owner" of a small portion of it) describes this document as follows:

> It is a confidential and privileged draft document dated July 2018 regarding driver background checks policies and procedures. As part of my responsibility at the time as Legal Director, Safety Legal, I

United States District Court
Northern District of California

17

A136

advised the business on complying with legal and regulatory requirements related to safety issues such as background checks for independent drivers on the Uber platform. This draft manual was created at the direction of then-Regulatory Counsel Emily Madavo, which is noted at the top of the draft document. Ms. Madavo and other Uber in-house attorneys, including Jason Burch, Legal Director, U.S. Regulatory, directed the creation of this draft manual to provide legal guidance to Uber employees on complying with background check requirements of various jurisdictions. The draft manual explains, among other things, the substantive legal requirements related to background checks, the role of Uber's legal department in approving changes to background check criteria in response to changes in the law in different jurisdictions, and the concrete steps for adhering to those legal requirements. Additionally, this draft contains numerous comments directed to or by Ms. Madavo in which legal advice is requested or provided.

Dkt. No. 2091-9, ¶ 4.

This document presents a somewhat close call. On its face, it describes operational policies, not advice. The finished version of the policy would likely not be privileged for reasons similar to the first document discussed in this Order, JCCP_MDL_PRIVLOG026377. As Plaintiffs note, privilege log information indicates the document included several non-attorney collaborators (including its creator), and the Court has previously held that a number of collaboratively edited documents involving both attorneys and non-attorneys were not privileged. Dkt. No. 2091 at 4 & n.14.

This draft, however, was prepared at the direction of attorney Madavo, apparently for the specific purpose of obtaining feedback (in other words, advice) and approval from Madavo and other attorneys. *See* Dkt. No. 2091-9, ¶ 4. Uber's explanation of its attorneys' involvement in creating this document is supported by its subject matter, a topic with significant legal implications for which Uber would be expected to seek legal advice. The evidence Uber has offered that this document was prepared at the direction of counsel distinguishes it from other collaboratively edited documents that the Court has previously found not privileged. *Cf., e.g.,* Dkt. No. 1908 at 4 (noting that Binnings's "declaration [did] not support the assertion . . . that [another collaboratively edited document] was 'prepared at the direction of in-house counsel'"); *id.* at 6 (noting the lack of such evidence with respect to a different document).

The Court therefore concludes that this document is privileged and need not be produced.

United States District Court
Northern District of California

### 10.    JCCP_MDL_PRIVLOG056137

This document is an email chain among several Uber employees discussing a proposed driver authentication program. The top-level email adds attorney Keith Yandell to the chain and requests his advice. The fact that Yandell is on the "cc" line of the email is of no consequence. That email is privileged.

As stated in Scott Binnings's declaration, another email in the chain (before Yandell was added) also "discuss[es] seeking legal advice from then-General Counsel Salle Yoo." Dkt. No. 2091-9, ¶ 6. Plaintiffs assert without citation to authority that "an employee merely discussing if they should seek legal advice is not" privileged. Dkt. No. 2091 at 4–5. Federal privilege law, at least, is to the contrary: "The attorney-client privilege 'may attach to communications between nonlegal employees where[] . . . an employee discusses her intent to seek legal advice about a particular issue.'" *Dolby Labs. Licensing*, 402 F. Supp. 3d at 866 (N.D. Cal. 2019) (quoting *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011)). At least one case has held the same under California law, and this Court is aware of no California authority to the contrary. *See OwLink Tech.*, 2023 WL 4681543, at *2. The sentence discussing seeking legal advice is therefore privileged, and may be redacted. Because the focus of the discussion is on the non-lawyers' own assessment of the program under consideration rather than their intent to obtain advice from counsel, however, the reference to seeking legal advice is reasonably segregable from the rest of the email in which it appears.

Uber contends that the entire email chain is privileged, because the earliest email discusses potential legal risks and the subsequent emails evince intent to seek legal advice. Dkt. No. 2091 at 11–12; *see also* Dkt. No. 2091-9 (Binnings Decl.) ¶ 6. Uber cites no authority indicating that non-lawyers' discussion of legal risks is privileged, or that a subsequent discussion of seeking legal advice can retroactively render an earlier discussion among non-lawyers privileged. The Court therefore concludes that all emails in this chain except for the last one (where attorney Keith Yandell was added) are not privileged, except for the sentence discussed above that addresses seeking legal advice.

### 11.    JCCP_MDL_PRIVLOG056148

This document is an email chain that begins with an email by Joe Sullivan specifically seeking legal advice from in-house counsel Keith Yandell (as well as feedback from non-lawyer employees) regarding a proposed course of action.  Yandell forwarded the email to in-house counsel Seth Schreiberg, who provided advice, which Yandell then sent to the group of employees included on the email.  The group continued to discuss the issue, apparently seeking Schreiberg's and/or Yandell's opinions on their views, and Schreiberg continued to provide advice in two subsequent emails.  The Court is satisfied that this exchange consists primarily of requests for and provision of legal advice, and that it is privileged.

### 12.    JCCP_MDL_PRIVLOG057545

Uber describes this document on its privilege log as a "[c]onfidential e-mail thread seeking legal advice from in-house counsel regarding data or metrics collected and reviewed for Uber's Safety Report."  Dkt. No. 2116-2 at 2.  The privilege log accurately reflects that no attorneys are included as recipients or as the sender of the top-level email, but lists in-house counsel Curtis Scott in the "privileged names" field.  *Id.*

Uber argues in the joint letter that this document is privileged in its entirety because the earliest email in the thread "about a planned data sharing transparency report" (which does not include any attorneys) conveys legal advice previously given to the author, the next email "discuss[es] seeking further advice on these issues," the email after that added attorney Scott and "expressly sought his legal advice concerning regulatory requests," and subsequent emails that do not include Scott "include[] discussions about continuing to seek legal advice from Mr. Scott on this issue."  Dkt. No. 2091 at 10.[9]

The email chain begins with a message from non-lawyer Sarah van Vliet to non-lawyers Dorothy Chou and Betsy Masiello regarding data collection.  That message conveys legal advice from attorney Bob O'Leary.  Although O'Leary is not listed on the privilege log, the portions of

---

[9] Uber supports these arguments with Scott Binnings's declaration, but Binnings does not appear to have had any personal involvement in this 2016 email exchange, and describes only what is apparent from the face of the document.  Dkt. No. 2091-9, ¶ 8.

20

the email that convey his advice are privileged. That said, because this is an email entirely among non-lawyers, discussing preparation of a planned transparency report that Uber has not suggested is itself privileged, redactions are sufficient to protect O'Leary's advice. In the Court's view, the following redactions are appropriate to van Vliet's initial email:

(1) A passage beginning with "Since October" in the first paragraph and running through "from them," two paragraphs below.

(2) The sentence under the heading "Current Status" beginning with "Bob suggested."

(3) The sentence towards the end of the email beginning with "As discussed."

Although portions of this email that will not be redacted discuss the general contours of a data collection maintained by Uber's legal department, Uber has not explained how that description would fall within attorney-client privilege, and has not asserted that any portion of this email is protected under the work product doctrine.

The next email in the chain, from Robin Horton, does not seek, provide, or discuss legal advice, and is not privileged.

The next email is from Betsy Masiello, forwarding the discussion to attorney Curtis Scott and requesting his help assembling the data needed for the report. This email does not on its face seek legal advice, but instead appears to discuss the purely logistical question of locating data for a public report. Uber has offered no evidentiary support to suggest that Masiello intended to seek legal advice from Scott, or that Scott understood the request as such. Scott's role in this exchange, as someone who might have access to business records relevant to an intended report, is not meaningfully distinguishable from a non-attorney employee. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 ("[T]he attorney-client privilege is inapplicable where the attorney . . . acts as a business agent."). The request in this email therefore appears to be only "ancillary" to the attorney-client relationship. *L.A. Cty. Bd. of Supervisors*, 2 Cal. 5th at 297 ("In order for a communication to be privileged, it must be made for the purpose of the legal consultation, rather than some unrelated or ancillary purpose."). That email must be produced, as well as the subsequent emails among the non-lawyer employees, none of which discuss legal advice.

United States District Court
Northern District of California

21

A140

United States District Court
Northern District of California

## IV.  REQUEST FOR SANCTIONS, AND PROCESS GOING FORWARD

Plaintiffs ask the Court to deem all of Uber's privilege claims waived, and to order Uber to reimburse Plaintiffs' attorneys' "fees and costs pursuant to Rule 37(b)(2)(A) for the considerable time that Plaintiffs' counsel has spent to date reviewing Uber's inadequate logs." Dkt. No 2089 at 2–3. Uber asserts that Plaintiffs first raised this request on the eve of filing the joint letter. Dkt. No. 2089 at 7. As discussed at the hearing on January 28, 2025, the Court agrees that Plaintiffs' eleventh-hour addition to the letter is not an appropriate means to seek sanctions, particularly sanctions as significant as those sought here. The Court therefore DENIED Plaintiffs' request for sanctions without prejudice.

That said, the Court is concerned that for each sample of documents addressed by the parties thus far, Uber has conceded that a large portion of the documents at issue were not privileged at all or should be produced with redactions, at least based on this Court's interpretation of the scope of the privilege. The Court recognizes that some of those concessions reflect lessons learned from the Court's prior orders, which were not always available prior to the start of each meet-and-confer process. Uber's concessions therefore do not necessarily reflect blameworthiness in its initially broader privilege designations. Regardless of the extent to which Uber is or is not at fault, however, its consistently broad concessions raise a potential inference that a large amount of responsive and non-privileged material remains withheld that should be produced. The Court therefore directed the parties to meet and confer regarding next steps in this process to ensure that responsive material is not wrongfully withheld from production, and to file a status report no later than January 31, 2025 and either a stipulation or a joint letter as soon as possible thereafter.

The Court expects that after further re-review by Uber, the parties and (if necessary) the Court will review at least one further verification sample from the previous tranches of production to ensure that Uber's remaining privilege claims are well founded.

## V.  SEALING MOTIONS

Plaintiffs filed administrative motions to consider whether certain documents related to these joint letters should be filed under seal. Dkt. Nos. 2088, 2090. Uber filed a response seeking sealing of portions of those documents, and attaching redacted version. Dkt. No. 2116. The

A141

United States District Court
Northern District of California

present discovery dispute is only tangentially related to the merits of this litigation, and Uber has shown good cause to seal the narrowly tailored redactions addressed in its response. Sealing is GRANTED as to those portions of the documents, and no further public filings are necessary to complete the record. This resolves the administrative motions filed as docket entries 2088 and 2090.

The Court does not reach the question of whether compelling reasons would support sealing the same material if it were filed in a context more closely related to the merits of this litigation.

**IT IS SO ORDERED.**

Dated: January 29, 2025

LISA J. CISNEROS
United States Magistrate Judge

23

A142

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT
LITIGATION

Case No. 23-md-03084-CRB   (LJC)

**ORDER REGARDING SECOND SET
OF CHALLENGES TO UBER'S
PRIVILEGE CLAIMS**

This Document Relates To:

ALL CASES.

Re: Dkt. No. 1952

## I.    INTRODUCTION

In accordance with the process previously set by the Court, the parties have filed a joint letter addressing a sample of disputed privilege log entries. Dkt. No. 1952. The Court resolves the parties' disputes as follows.

## II.    LEGAL STANDARD

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. California law therefore applies to issues of privilege in this multi-district litigation, at least absent any showing that the law of some other state should apply. *See Holley v. Gilead Scis., Inc.*, No. 18-cv-06972 JST (JSC), 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021) (applying California choice-of-law rules to conclude that California privilege law applied in a case with "factual connections to multiple states," where no party introduced evidence of a conflict of laws or another state's governmental interest in applying its own law).

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code §§ 911, 954, 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco Wholesale*

A143

*Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Id.* "[T]he relevant inquiry is not the content of the communication but is instead the relationship of the communicators." *Id.* at 52. If "the communications were made during the course of an attorney-client relationship"—as opposed to a relationship with some other "dominant purpose"—then "the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means." *Costco*, 47 Cal. 4th at 740. Even when an attorney-client relationship is established, however, "the inquiry turns on . . . the link between the content of the communication and the types of communication that the attorney-client privilege was designed to keep confidential. In order for a communication to be privileged, it must be made for the purpose of the legal consultation, rather than some unrelated or ancillary purpose." *L.A. Cty. Bd. of Supervisors v. Superior Ct.*, 2 Cal. 5th 282, 297 (2016) (adopting the reasoning of a concurring opinion in *Costco*).

California courts have recognized that "that in order to implement the advice of lawyers, the advice must be communicated to others within the corporation," and "[i]t is neither practical nor efficient to require that every corporate employee charged with implementing legal advice given by counsel for the corporation must directly meet with counsel or see verbatim excerpts of the legal advice given" as a condition of maintaining privilege. *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1498 (2007). A communication between non-lawyer employees that conveys privileged attorney advice remains privileged so long as sharing that information with the recipient "further[s] the interest of the client in the consultation or . . . is reasonably necessary for

United States District Court
Northern District of California

2

A144

the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." *Id.* at 1503 (quoting Cal. Evid. Code § 952).

> There are additional relevant limitations on the attorney-client privilege. It is established that otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is "copied in" on correspondence or memoranda. In addition, [a party] may not shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney. In addition, [i]t is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent.

*Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 (cleaned up); *see also, e.g.*, *Chi. Title Ins. Co. v. Superior Ct.*, 174 Cal. App. 3d 1142, 1151 (1985).

Applying federal law, courts have held that "[n]o privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023) (quoting *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990), and citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (alteration in original). Under that standard, communications involving in-house counsel "warrant[] heightened scrutiny because in-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Id.* (N.D. Cal. Mar. 29, 2023) (cleaned up). Although federal law does not govern the scope of privilege in this litigation, the Court funds that principle consistent with California law recognizing that privilege does not attach to communications where an attorney provides business advice rather than legal advice, or where an attorney is merely "copied in" on internal business communications. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

## III.    APPLICATION TO PARTICULAR DOCUMENTS

Uber has submitted thirteen documents for in camera review. The Court addresses those as follows.

United States District Court
Northern District of California

3

A145

### A.    JCCP_MDL_PRIVLOG028868

This document is a notification email generated by Google Docs containing comments, responses, and suggested changes by various Uber employees on a collaboratively edited document. Plaintiffs argue that it is not privileged because its is a "notification to Matt Baker (Uber's Community Operations Manager) notifying him that Margalit Kluger, (Uber's Senior Operations Manager), left a comment on a document titled 'US&C Safety Ops - Safety Media Business Standard,'" and neither Baker nor Kluger are attorneys. Dkt. No. 1952 at 3 (footnote omitted). Plaintiffs contend that Uber's privilege log does not make clear the role of the two attorneys listed in the "Privileged Name(s)" column, Daniel Kolta and Jennifer Handley, with respect to this document.[1] *Id.*

Uber argues that the "underlying document was shared with . . . Handley and . . . Kolta for the collaboration and for the purpose of seeking their legal advice concerning the potential legal risks of [media inquiry] policies and of any public statements that may be made based on them," and that the comments included in this email include legal advice by those attorneys and requests for such advice. Dkt. No. 1952 at 8.

This document is best understood as containing multiple distinct communications. Uber is correct that some comments seek or provide legal advice. Other comments, however, are specifically directed from non-lawyers to non-lawyers, and do not appear to seek, convey, or discuss legal advice. Uber must therefore produce a version of this email with privileged comments redacted and non-privileged comments unredacted. *Cf.* Dkt. No. 1908 at 6 (requiring Uber to produce a collaboratively edited document with redactions to privileged margin notes). Uber is further ordered to do the same for other comment-notification emails that contain both privileged and non-privileged comments.

---

[1] This Court's Order addressing a previous set of privilege disputes required Uber to include more detail in its privilege logs regarding this sort of notification email going forward. Dkt. No. 1908 at 9. The Court recognizes that Uber may not have been required to implement that Order as to this log entry by the time that this dispute was submitted, but expects that compliance with that previous Order's requirements regarding log entries—and with this Order's requirement below for redactions—to reduce the number of disputes raised as to comment-notification emails.

4

A146

United States District Court
Northern District of California

**B.      JCCP_MDL_PRIVLOG029996**

This document is an email from Uber's then-Regional Operations Manager Katherine Gaspar to a fellow non-lawyer Uber employee, Corey Freivogel, with in-house counsel Laura McAdams and Jennifer Handley cc'd.  As Uber explains in its portion of the joint letter, this email is part of a conversation that began with Gaspar specifically seeking legal advice from Handley.  Handley added McAdams to share her advice as well, and Gaspar added Freivogel to discuss potential courses of action with the two attorneys.  The conversation as a whole took place in the context of an attorney-client relationship for the purpose of seeking and sharing legal advice.  The document is privileged.

Some confusion here appears to have stemmed from Uber initially listing the attorneys in the "Email BCC" column of its privilege log rather than the "Email CC" column, and later updating the privilege log to list the same two attorneys in both of those columns.  *See* Dkt. No. 1952 at 3.  If any of Plaintiffs' remaining challenges concern log entries where attorneys appear in the "Email BCC" column but no attorneys appear in the "Email From," "Email To," or "Email CC" columns, Uber is ordered to re-review those entries to ensure that they are accurate and that its claims of privilege are appropriate.

**C.      JCCP_MDL_PRIVLOG036737**

Although this email was sent from non-lawyer Tracey Breeden to non-lawyer Steffi Bryson, with three lawyers and one other employee cc'd, it is part of (and includes) a thread that began with an email from in-house counsel Lauren Shapiro providing advice regarding communications with potential claimants.

Plaintiffs' primary basis for challenging this document appears to be the fact that attorneys appeared only on the "cc" line of the top-level email.  Dkt. No. 1952 at 3–4.  Plaintiffs offer no particular reason to doubt the explanation on Uber's privilege log that this is a "thread discussing legal advice from inhouse counsel regarding reports of driver sexual assault or sexual misconduct."  *See id.*; Dkt. No. 1952-2 at 1.

In the joint letter, Uber characterizes the proposed language under consideration as "proposed communications with potential claimants to be made by a third-party claims

5

A147

administrator." Dkt. No. 1952 at 8. It is not clear whether Uber's characterization is entirely accurate: the proposed language appears on its face to have been contemplated as a communication to be made by *Uber* with potential claimants, *regarding* the role of the third-party administrator. Either way, however, it concerned a matter for which Shapiro was employed to provide legal advice, and the advice she provided here was informed by her legal judgment. The other emails in the thread consist of non-attorney employees discussing Shapiro's advice and suggesting alternatives or modifications, while seeking feedback from the group as a whole, which included Shapiro and two other attorneys. The Court is satisfied that Uber's privilege log entry is accurate (even if its characterization in the joint letter might not be entirely accurate), and that this document is therefore privileged.

### D. JCCP_MDL_PRIVLOG039363

This document is a set of notes prepared by Uber's then-CEO Travis Kalanick regarding safety considerations at Uber. As Uber notes in the joint letter, the document begins with the line: "Document Prepared for Legal Analysis: attorney/client privileged," and was accessible on Google Docs only to Kalanick. Dkt. No. 1952 at 9. Uber asserts that it has no further information about the purposed of this document because Kalanick left Uber in 2017. Based on that note at the top of the document, the fact that Kalanick was the only person who had access, and the subject matter of the document (including sporadic references to the Uber legal department), however, Uber contends that "*[a]ll available evidence* leads to the conclusion that it was prepared for the purpose of facilitating legal advice." *Id.*

Both parties cite the Western District of New York's decision in *Clark v. Buffalo Wire Works Co.*, 190 F.R.D. 93, 95–96 (W.D.N.Y. 1999), where the court held that notes a witness had taken were protected by attorney-client privilege. Although *Clark* applied federal privilege law, *see id.* at 95 n.3, neither party argues that California law materially differs. Uber contends that Kalanick's notes here are analogous to the witness's notes in that case, and that *Clark* stands for the proposition that "[p]ersonal notes made for the purpose of seeking legal advice are privileged, even if never read by an attorney." Dkt. No. 1952 at 9. Plaintiffs argue that *Clark* is distinguishable because that court relied on an affidavit by the witness as to his intent in preparing

6

A148

United States District Court
Northern District of California

the notes. *Id.* at 4 n.14.

The Court agrees with Plaintiffs that the witness's affidavit in *Clark* was material to the court's finding that the notes were privileged. The witness in that case provided a sworn statement asserted that his "entire purpose of keeping notes . . . was to provide these notes to [his] counsel to assist them in representing [him]." *Clark*, 190 F.R.D at 94. *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2009 WL 2905898, at \*2 (N.D. Cal. Sept. 10, 2009) (relying specifically "upon the declaration of" the author that notes were prepared "in response to an instruction from counsel, and in order to facilitate his communication with counsel," to conclude in "a close question" that the notes were privileged). As an additional consideration not addressed by either party, the witness in *Clark* also provided the notes to his attorneys, 190 F.R.D. at 95, which Kalanick apparently did not do here. Although an undelivered communication that was intended for counsel can still be privileged, *People v. Gardner*, 106 Cal. App. 3d 882, 887 (1980), the actual delivery of the notes in *Clark* lends circumstantial support to the affidavit that they were always intended to be delivered.

In this case, there is neither a clear statement that Kalanick intended his notes to be shared with or otherwise communicated to counsel, nor any actual delivery of the notes to counsel. There is only Kalanick's unexplained and unsworn note that the document was "Prepared for Legal Analysis" (by whom, it is not clear—perhaps Kalanick himself) and "attorney/client privileged." As has been demonstrated in this litigation, even experienced counsel can disagree as to the scope of attorney-client privilege. A non-lawyer CEO's mere label of a document as privileged is not sufficient to satisfy Uber's burden to withhold this document from production. The content of the document also does not support an inference that it is privileged, as it appears largely to describe aspects of Uber's operations and strategic planning. Uber must produce this document.

The Court further notes Uber's assertion in its privilege log that this document was "prepared at the direction of in-house counsel," Dkt. No. 1952-2 at 1, which is not reflected in Kalanick's heading, supported by any other evidence, or pursued in Uber's arguments for privilege. The Court's previous Order regarding privilege disputes identified a potentially systemic misuse of log entries asserting documents were prepared at the direction of counsel, and

A149

required Uber to "review all entries that assert a document was prepared at the direction of counsel to determine whether they are accurate." Dkt. No. 1908 at 15. The deadline set by that Order may not have required Uber to revise this entry before the current joint letter was filed. The Court expects, however, that this issue will not recur in future privilege log entries submitted for the Court's review.

### E.    JCCP_MDL_PRIVLOG039270

This document is an email, which Plaintiffs assert is not privileged because it was sent from Kalanick to non-lawyer employee Betsy Masiello, and attorneys appear only in the "cc" field. Dkt. No. 1952 at 4. Kalanick is responding to an earlier email that Masiello sent to the group, which specifically requests and relays legal advice. Masiello's email is privileged and may be redacted. Kalanick's email, however, does not request, relay, convey, or discuss legal advice. It discusses goals for a group that includes both lawyers and non-lawyers, and next steps logistically in preparing Uber's Safety Report. Uber's assertion that Kalanick "provided additional information that in-house counsel would have used to provide the requested legal advice," *id.* at 9, is not reflected in the document. Kalanick's email must be produced.

### F.    JCCP_MDL_PRIVLOG039202

This is a guide prepared by in-house counsel Maureen Frangopoulos to advise employees responsible for responding to and logging incident reports using the Jira platform. Dkt. No. 1952 at 9; Dkt. No. 1952-6 (Frangopolous Decl.) ¶ 4. The document is a communication of legal advice from an in-house attorney to other employees, and is therefore privileged.

### G.    JCCP_MDL_PRIVLOG034111

This document is an email chain among several Uber employees regarding a driver minimum age policy, with in-house counsel Scott Binnings cc'd. Binnings states that a participant in the conversation, Danielle Sheridan (at the time, Danielle Portugal), had asked him for his advice on the policy and related issues, and that he was included on the emails so that he would have information necessary to render that advice. Dkt. No. 1952-4 (Binnings Decl.) ¶ 3. Binnings does not assert, however, that the participants in the conversation were working at his direction, or that the purpose of their analysis was specifically to obtain legal advice, rather than to inform

8

A150

United States District Court
Northern District of California

business decisions for which Binning's legal advice would be only one relevant component. *Id.* Sheridan's email that began the chain requests information from the team to support analysis of the policy in question. Although Sheridan labeled her first email "A/C Privilege," that email did not specifically request or refer to review by Binnings, nor did any subsequent email.

The thread includes one email from Binnings providing advice related to the issues discussed. That email, as well as the first two sentences of the subsequent email by Sheridan that respond to and reference Binnings's advice, may be redacted. Otherwise, however, Uber has not shown that the dominant purpose of this email conversation among non-lawyer employees was to request or provide legal advice. It appears instead to have been focused on conducting data analysis to inform a business decision. Uber must therefore produce this document.

**H.    JCCP_MDL_PRIVLOG039352**

This is an internal presentation regarding the preparation of Uber's Safety Report. Uber asserts that "[t]he bottom row in slide 12 contains the legal advice that Mr. Binnings and other in-house counsel provided regarding a qualitative assessment of the Safety Report vis-a-vis pending and future litigation," and that it is "willing to produce a redacted version of this presentation" with that information redacted. Dkt. No. 1952 at 10; *see* Dkt. No. 1952-4 (Binnings Decl.) ¶ 4. The Court agrees that the bottom row of slide 12 conveys legal advice, albeit in a general sense. Uber may redact that information, but must produce the remainder of the presentation.

It is not clear why Uber did not produce a redacted copy of this document before the issue was submitted to the Court.

**I.    JCCP_MDL_PRIVLOG039431**

This document is a Google Docs comment notification email. It includes comments by attorney Scott Binnings and non-attorney Kate Parker that seek, convey, and discuss legal advice. It is therefore privileged, and need not be produced.

**J.    JCCP_MDL_PRIVLOG039488**

This document is an email among non-lawyer employees discussing a potential public statement, but stems from a thread including several in-house attorneys, who provide legal advice throughout the conversation. As Uber states in the joint letter, "[t]he final, top-level email in the

9

A151

chain does not include [the attorneys], but relays the legal advice to four recipients and continues to discuss the legal advice." Dkt. No. 1952 at 11.  Uber's characterization of the document is accurate as confirmed by the Court's in camera review.  Plaintiffs' arguments that the final email includes no attorneys and that Scott Binnings (on whose declaration Uber relies) was not personally familiar with the document, *see id.* at 5 & n.22, do not rebut the fact Uber's explanation of its privilege claim is accurate and valid.  The document is privileged, and need not be produced.

### K.      JCCP_MDL_PRIVLOG039513

This document is a Google Docs comment notification email containing a large number of comments by different employees.  Some comments by or directed to attorneys (including Jennifer Handley, Maureen Frangopoulos, Tracey Merwise, and Monique McNellie) plainly seek or convey legal advice.  Other comments by and directed to non-lawyers that do not relate to legal advice, like a comment discussing the design department's opinion on the flow of a proposed layout.  As with the document ending in 28868 discussed above, Uber must produce a redacted version of this document that redacts only comments that are themselves privileged.

### L.      JCCP_MDL_PRIVLOG033799

This document is a chain of two emails regarding efforts to prevent sexual assault.  The parties' arguments indicate that the document was produced with redactions.  *See* Dkt. No. 1952 at 6, 11.  The Court's understanding is that the top-level email from non-attorney Kate Parker to non-attorney Danielle Portugal was (properly) not redacted, and the original email below that was redacted in its entirety.  *See* Dkt. No. 1952-4 (Binnings Decl.) ¶ 7.  Although it is not dispositive, the Court notes that neither email was contemporaneously labeled attorney/client privilege.

The original email was from Parker to Tony West (Uber's Chief Legal Officer, Senior Vice President, and Corporate Secretary) and non-attorney Meghan Verena Joyce, with several other attorneys cc'd, as well as non-attorney Gus Fuldner.  Parts of that email convey legal strategy and advice, or plans for obtaining such advice, and are therefore privileged and may be redacted.  Other parts, however, set forth business and outreach plans, communicated by a non-lawyer employee (Parker) and apparently directed to another non-lawyer employee (Joyce), and to some extent also to West in his capacity as an executive and surrogate for Uber (e.g., discussing

United States District Court
Northern District of California

10

A152

West's role in "evangeliz[ing]" for Uber). As one example, the portion of a section titled "Summary of Asks" that is specifically directed to West is effectively a request for legal advice. On the other hand, other parts of the email discuss business and public relations strategies, like the portion of the same "Summary of Asks" section specifically addressed to Joyce. Those portions are not privileged, and must be produced.

In the Court's view, the permissible redactions are as follows:

(1) The portion of the "Summary of Asks" section addressed to West;

(2) The first bullet point under the heading "1. Education"; and

(3) The second bullet point under the heading "2. Community Guidelines."

If Uber believes any other portion of this document warrants redaction, it must file a letter brief no later than January 3, 2025 presenting arguments for such redactions, and need not produce the document until the Court resolves that issue. Plaintiffs may respond with their own letter, filed no later than January 7, 2025. Neither letter is to exceed three pages.

The Court is concerned that although Uber's descriptions of this document on its privilege log, in the joint letter, and in Scott Binnings's declaration accurately reflect the privileged portions of the document regarding West's provision of legal advice, they fail to disclose that significant portions of the document discussing public relations and business operations efforts apparently intended to be undertaken by both Joyce and West. Absent in camera review, only the subject line of the email ("Sexual Assault Prevention: Business Plan / Next Steps") and Joyce's inclusion as a recipient tend to suggest that it might have had purposes unrelated to legal advice. The difficulty of discerning the non-privileged nature of much of this document without reviewing it underscores the need for careful and accurate privilege review by Uber's attorneys.

### M.    JCCP_MDL_PRIVLOG039242

This document is a 2022 email chain discussing the release of Uber's second U.S. Safety Report. Uber redacted substantially all of the first email in this chain on the basis that attorney Jennifer Handley asked non-attorney Andrew Hasbun to send the email on her behalf to convey her legal advice concerning the release of Uber's Safety Report. Dkt. No. 1952-5 (Handley Decl.) ¶¶ 4–5. As revealed in an unredacted portion, however, the email ends with the signature

United States District Court
Northern District of California

11

A153

United States District Court
Northern District of California

"Andrew on behalf of Emilie, Kristin, Katy, Elise, and Jen."  Uber does not claim that all of the other attributed authors besides Handley are attorneys.  More importantly, even if Handley drafted the entirety of the email, it does not convey legal advice, but instead states a goal "to create a quick, controlled news cycle focusing on the topline data leading into the extended 4th of July weekend," provides bullet points of data included in the report, and discusses outreach plans regarding media and advocacy groups.

In a case not discussed by the parties, a California appellate recognized that "[t]here may be situations in which an attorney's use of a public relations consultant to develop a litigation strategy or a plan for maneuvering a lawsuit into an optimal position for settlement would make communications between the attorney, the client, and the consultant reasonably necessary for the accomplishment of the purpose for which the attorney was consulted," suggesting that public relations is sometimes a component of litigation strategy.  *Behunin v. Superior Ct.*, 9 Cal. App. 5th 833, 849–50 (2017).  But the court construed that potential avenue for claiming privilege narrowly:

> In arguing his and Steiner's communications with Levick were reasonably necessary to accomplish the purpose of Steiner's representation because the negative publicity would help get the Schwabs to the settlement table, Behunin extends the privilege too far. [Citations, generally for the principle that privilege must be narrowly construed.] To be sure, maximizing a client's negotiating position and increasing the prospects for a favorable settlement are important parts of representing a client in litigation. All kinds of strategies could conceivably put pressure on the Schwabs to settle with Behunin, such as hiring away employees of the Schwabs or their company, lobbying governmental officials to enact regulations adverse to the Schwabs' investment business, and creating a competing brokerage business to take away the Schwabs' clients. Such strategies might help get the Schwabs to settle the Sealutions litigation on favorable terms. But that does not mean Behunin's or Steiner's communications with headhunters, lobbyists, and lenders who might finance a competing company would be privileged. Without some explanation of how the communications assisted the attorney in developing a plan for resolving the litigation, Behunin would not be able to show such communications were reasonably necessary to accomplish Steiner's purpose in representing Behunin.

*Id.* at 850–51.[2]

---

[2] As this Court discussed in a previous Order, *Behunin* considered the somewhat distinct question of when disclosure to a third-party public relations consultant waives privilege.  Dkt. No. 1727 at

12

A154

United States District Court
Northern District of California

Managing public relations could always have downstream effects on litigation, but the sort of core public relations strategy at issue here—focusing attention on positive developments while limiting attention on potentially less favorable information—is not legal advice.  Handley's conclusory assertion that she "assessed various legal issues, including the implications the report, and public statements about the report, may have on pending and future litigation," Dkt. No. 1952-5 (Handley Decl.) ¶ 5, suggests that she merely sought to avoid negative publicity for Uber. That goal is the opposite side of the same coin invoked and rejected in *Behunin*, where a plaintiff sought to foment negative publicity regarding defendants in order to pressure them to settle— without even as clear a connection to any particular litigation as in that case.

Uber's privilege log entry for this document, characterizing it as an "e-mail thread seeking legal advice from in-house counsel regarding preparation and drafting of Uber's Safety Report," is simply inaccurate, and Uber does not attempt to defend that characterization of the document in the joint letter or its supporting declarations.  *See* Dkt. No. 1952-2 at 4.  Handley's description of the document is not as inaccurate as the privilege log, but still obscures its substantial non-legal content in much the same was as discussed above with respect to the previous document.

As far as the Court can discern, one parenthetical phrase in the email immediately following the words "PDF of final report" conveys legal advice and may be redacted.  The remainder of the email is not privileged and must be produced.

## IV. OTHER ISSUES

### A. Plaintiffs' Arguments Regarding Systemic Over-Designation

Plaintiffs assert, and Uber does not dispute, that Uber withdrew its privilege claims in whole or in part for more than seventy percent of the documents Plaintiffs identified for potential inclusion in this joint letter during the meet-and-confer process.  Plaintiffs argue that such a high rate of erroneous privilege claims suggests that there may be thousands of improperly designated

---

6 n.2; *see also* Dkt. No. 1908 at 12.  Its analysis of how public relations relate to the purpose of an attorney's retention nevertheless informs the Court's analysis here of whether an in-house counsel's public relations work falls within the scope of privilege or is best understood as non-privileged "business advice" or conduct "as a business agent."  *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

United States District Court
Northern District of California

documents in the tranche of production at issue. Uber contends that the documents Plaintiffs selected are not a representative sample, because they are the documents Plaintiffs considered most likely to have been wrongfully withheld. Both parties make valid points: the rate of reversals raises concerns that Uber is over-designating documents as privileged, but the sample at issue is likely not representative.

The parties are therefore ORDERED to meet and confer and agree to a process to select twenty documents at random from the 5,611 documents Plaintiffs challenged in this tranche, excluding documents already addressed in the meet-and-confer process, no later than two business days from the date of this Order.[3] The parties shall meet and confer regarding Uber's privilege claims and Plaintiffs' challenges as to those documents. No later than January 14, 2024 (at the same time as their joint letter addressing Tranche 3 custodians), the parties shall file a joint status report addressing the disposition of documents from the random sample where either Plaintiffs agreed to withdraw their challenges or Uber agreed to withdraw its privilege claims in whole or in part. The parties shall file a joint letter by the same deadline, consistent with Pretrial Order No. 8 except that it may not exceed ten pages, addressing any unresolved disputes from that sample. Any documents submitted for in camera review must be lodged by the same deadline.

The parties are additionally ORDERED to add ten randomly selected documents from Plaintiffs' privilege challenges for Tranche 3 documents to the pool of documents at issue in their ongoing meet-and-confer process for that tranche of production, and to address the disposition of the challenges to Uber's privilege claims to those ten documents in their joint status report due January 14, 2024.

Depending on the outcome of the randomly selected documents and other Tranche 3 privilege disputes, the Court will consider whether a more comprehensive re-review of documents designated as privileged is necessary.

---

[3] The parties are free to *agree* that some other sampling method—e.g., randomly selecting five documents from one type or category of documents at issue, and the remaining fifteen from outside that category—is more likely to be representative than an entirely random sample from the full universe of challenged documents. If the parties do not agree to a representative sampling method, however, they shall randomly select documents from within the challenged documents that have not yet been specifically addressed.

14

A156

**B.  Withdrawal of Plaintiffs' Privilege Claims**

Uber contends that "Plaintiffs have not meaningfully revised their . . . privilege challenges," which number in the thousands, in response to the meet-and-confer process and this Court's previous Order.  Dkt. No. 1952 at 7.  To address an asymmetry in the parties' current obligations, the Court now ORDERS that the deadlines set forth in Pretrial Order No. 20 for Uber to de-designate documents in response to Court orders and the meet-and-confer process also apply to Plaintiffs withdrawing any challenges that no longer appear warranted in light of lessons learned from this process.

**C.  Timing of Production of De-Designated Documents**

The Court has separately resolved Plaintiffs' request that Uber produce de-designated documents soon after serving a revised privilege log.  *See* Dkt. No. 1954.

**V.  CONCLUSION**

The parties shall comply with the timelines set forth at page 7 of Pretrial Order No. 20 to implement the rulings set forth above, except to the extent modified by more specific directives in this Order.

**IT IS SO ORDERED.**

Dated:     12//21/2024

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

15

A157

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES. | Case No.  23-md-03084-CRB   (LJC)<br><br>**ORDER REGARDING FIRST SET OF CHALLENGES TO UBER'S PRIVILEGE CLAIMS**<br><br>Re: Dkt. Nos. 1812, 1858-2 |

## I.    INTRODUCTION

In accordance with the process previously set by the Court, the parties have filed a joint letter addressing a sample of disputed privilege log entries.  Dkt. No. 1858-2.[1]  Plaintiffs have also proposed four "bright-line rules" regarding privilege assertions, and Uber has requested that the Court require the parties to comply with the document exchange deadlines set forth in Pretrial Order No. 8 for future privilege disputes.  The Court resolves the parties' disputes as follows.

## II.    LEGAL STANDARD

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  California law therefore applies to issues of privilege in this multi-district litigation, at least absent any showing that the law of some other state should apply.  *See Holley v. Gilead Scis., Inc.*, No. 18-cv-06972 JST (JSC), 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021) (applying California choice-of-law rules to conclude that California privilege law applied in a case with "factual connections to multiple states," where no

---

[1] Dkt. No. 1858-2 is a minimally redacted version of the joint letter, filed after the Court ordered Uber to show cause why its request to seal more significant portions of the letter should not be denied. The original redacted version of the joint letter is filed as Dkt. No. 1812.  An unredacted version of the joint letter is filed under seal as Dkt. No. 1811-3.

party introduced evidence of a conflict of laws or another state's governmental interest in applying its own law).

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code §§ 911, 954, 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Id.* "[T]he relevant inquiry is not the content of the communication but is instead the relationship of the communicators." *Id.* at 52. If "the communications were made during the course of an attorney-client relationship"—as opposed to a relationship with some other "dominant purpose"—then "the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means." *Costco*, 47 Cal. 4th at 740.

California courts have recognized that "that in order to implement the advice of lawyers, the advice must be communicated to others within the corporation," and "[i]t is neither practical nor efficient to require that every corporate employee charged with implementing legal advice given by counsel for the corporation must directly meet with counsel or see verbatim excerpts of the legal advice given" as a condition of maintaining privilege. *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1498 (2007). A communication between non-lawyer employees that conveys privileged attorney advice remains privileged so long as sharing that information with the recipient "further[s] the interest of the client in the consultation or . . . is reasonably necessary for

United States District Court
Northern District of California

2

A159

the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." *Id.* at 1503 (quoting Cal. Evid. Code § 952).

> There are additional relevant limitations on the attorney-client privilege. It is established that otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is "copied in" on correspondence or memoranda. In addition, [a party] may not shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney. In addition, [i]t is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent.

*Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 (cleaned up); *see also, e.g.*, *Chi. Title Ins. Co. v. Superior Ct.*, 174 Cal. App. 3d 1142, 1151 (1985)

Applying federal law, courts have held that "[n]o privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023) (quoting *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990), and citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (alteration in original). Under that standard, communications involving in-house counsel "warrant[] heightened scrutiny because in-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Id.* (N.D. Cal. Mar. 29, 2023) (cleaned up). Although federal law does not govern the scope of privilege in this litigation, the Court funds that principle consistent with California law recognizing that privilege does not attach to communications where an attorney provides business advice rather than legal advice, or where an attorney is merely "copied in" on internal business communications. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

### III.    APPLICATION TO PARTICULAR DOCUMENTS

Uber has submitted ten documents for in camera review. The Court addresses those as follows.

United States District Court
Northern District of California

### A.    JCCP_MDL_PRIVLOG005897

This document consists of an email chain in which attorney Nicole Benincasa provides legal advice—including discussing potential litigation risks—regarding a proposed communications strategy, and other Uber employees then respond to and disseminate that advice. Although Uber's privilege log perhaps could have been clearer as to the nature of the document, it is privileged, and Uber need not produce it.

### B.    JCCP_MDL_PRIVLOG006370

This is a draft message to two reporters authored by Uber's Chief Marketing Officer Jill Hazelbaker, and marked with the header "A/C privilege." Based on the parties' arguments and the Court's familiarity with this case, it appears that the document was stored in Google Docs, where certain other employees designated by Hazelbaker also had access to it. Plaintiffs assert (without citation to evidence) that no attorney is listed as a "Google Collaborator." Dkt. No. 1858-2 at 4. Uber's Associate General Counsel Scott Binnings states in a declaration that three in-house attorneys (Candace Kelly, Courtney Hoyt, Katherine Tassi) are listed as collaborators in the metadata. Dkt. No. 1811-8 (Binnings Decl.) ¶ 7. The privilege log included as collaborators three email addresses that appear to correspond to those names, but unhelpfully listed only "Uber Legal Department" in the "Privileged Name(s)" field. Dkt. No. 1811 6 at 2. Other Uber employees, whom Uber has not identified as lawyers, are also listed in the collaborators field.

Binnings states that the subject matter of the message posed legal risk and, "[i]n practice, drafts like this document which pose legal risk are marked as privileged and are expressly designed to receive legal advice and direction, and ultimately reflect and incorporate legal advice and work product provided by Uber's in-house counsel." Binnings Decl. ¶ 7. Notably, his declaration does not support the assertion in the privilege log that the document was "prepared at the direction of in-house counsel." Dkt. No. 1811-6 at 2; Dkt. No. 1858-4 at 2.

On its face, this is a draft of an email to a reporter, which would not typically be privileged. "[O]therwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda," and "the

4

A161

attorney-client privilege is inapplicable where the attorney merely . . . gives business advice or otherwise acts as a business agent." *Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

If this draft had been created specifically for the purpose of seeking legal advice regarding potential risks of sending the email as written, it would likely be privileged. But in the absence of a declaration by Hazelbaker or contemporaneous documentation indicating such intent, and taking into account the fact that the document included non-lawyer collaborators, Uber has not met its burden to show that this document is a privileged attorney-client communication. Neither Binnings's declaration that documents of this type typically receive and incorporate legal advice, nor Hazelbaker's unexplained "A/C privilege" designation, is sufficient to show that this is anything more than an instance of "in-house . . . counsel . . . 'copied in' on" a business communication, *see Zurich Am. Ins.*, 155 Cal. App. 4th at 1504, or that the draft "would [not] have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice," *McCaugherty*, 132 F.R.D. at 238.

Having failed to establish that this document is privileged, Uber must produce it.

## C.     JCCP_MDL_PRIVLOG007393

This document is a draft update on safety issues, which begins with the heading "ATTORNEY CLIENT PRIVILEGED." Uber's privilege log indicates that it was authored by Chief Marketing Officer Jill Hazelbaker, Dkt. No. 1811-6 at 2, although the face of the document attributes it to a different Uber employee. The document includes digital margin comments, some of which were authored by attorneys Salle Yoo and Matt Burton, as well as "what appears to be another in-house counsel" whom Uber could not identify, "apparently because his or her account is no longer active." Binnings Decl. ¶ 6. Some of the comments plainly convey legal advice and discuss potential litigation risk. The privilege log lists also lists several other "Google Collaborators," and many of the margin comments are attributed to other Uber employees, not all of whom are attorneys.

As with the previous document discussed above, attorney Scott Binnings asserts that "[i]n practice, drafts like this document that are marked as privileged reflect and incorporate legal advice provided by Uber's in-house counsel and are used to obtain legal advice from counsel."

United States District Court
Northern District of California

United States District Court
Northern District of California

Binnings Decl. ¶ 6. Binnings does not indicate that he is personally familiar with the document or that it was created specifically for the purpose of seeking legal advice, and Uber has not offered a declaration by Hazelbaker addressing her intent in creating it. Also like the previous document, Uber's privilege log indicates that the document was "prepared at the direction of in-house counsel," Dkt. No. 1811-6 at 2, but neither Binnings's declaration nor any other evidence offered by Uber supports that assertion. On its face, the draft itself (as opposed to the margin comments) does not seek or convey legal advice.

Much like the previous document discussed above, Uber has not shown that this document is itself privileged. It appears to be a draft business-related communication that was subject to collaborative editing by both lawyers and non-lawyers, for both legal and non-legal reasons. A particular transmission of the draft directly to an attorney retained to provide legal advice would likely be privileged, but Uber's privilege log and the margin comments on the document indicate that the same document was shared contemporaneously with both lawyers and non-lawyers, who edited it for content, style, accuracy, and public relations concerns in addition to assessing legal risk. In determining the "dominant purpose *of the relationship*" in which that "communication" took place, *see Costco*, 47 Cal. 4th at 739–40, the Court therefore looks to the relationship among *all* of those collaborators, which was primarily a business relationship focused on public relations. To hold otherwise—and allow the attorney-client relationship of some participants to control despite the business relationship among others—would contravene the principle that merely copying an attorney in on business communications is not sufficient to claim privilege. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504. Uber therefore must produce the draft, but may redact comments that seek or convey legal advice, which are themselves communications shared in the context of an attorney-client relationship. *See* Binnings Decl. ¶ 6 ("The primary purpose of the [attorney] comments was to provide legal advice and guidance.")

### D.    JCCP_MDL_PRIVLOG007396

Uber's privilege log asserts that this document is an "e-mail seeking legal advice from in-house counsel regarding driver background check policies and practices." Dkt. No. 1811-6 at 2. On its face, however, this email from Uber's Head of Safety and Insurance is directed to a

6

A163

combination of lawyer and non-lawyer employees, and includes updates on background check processes and other compliance issues, primarily from a logistical and technological vantage point.

Binnings states in his declaration that this email is a draft (which is not reflected on the privilege log), and that Binnings was "part of the team that drafted and revised this communication." Binnings Decl. ¶ 3. Binnings also states that he and other lawyers were "part of the working group that met to develop the technical and operational recommendations referenced in the communication," and that he "reviewed and provided legal advice on the communication and related project recommendation list." *Id.*

For this and other documents, Uber appears to rely at least in part on a premise that any internal documents that "reflect" legal advice can be claimed as privileged. It is true that courts— including this Court—have used that term in the context of privileged internal communications. *See, e.g.*, *Zurich Am. Ins.*, 155 Cal. App. 4th at 1502. In context, however, the sort of "reflective" communications that courts have treated as privileged are those that effectively *convey* advice to other employees, or otherwise tend to *reveal* the substance of that advice. *See id.* ("If legal advice is *discussed or contained in* the communication between Zurich employees, then to that extent, it is presumptively privileged. A communication *reflecting* a discussion of litigation strategy which *expresses that the strategy is in response to advice of counsel* would come within the privilege." (emphasis added)). But the mere fact that an internal communication *benefited* from legal advice does not render it privileged.

For example, if a human resources director has received training from in-house counsel regarding subject matter that should or should not be addressed when drafting notices of termination of employment, any such notices that the director later writes could be said to "reflect" that advice, but the notices would not themselves be privileged. On the other hand, if the director wrote to a subordinate who also prepared termination notices that, for example, "in-house counsel has asked that grounds for termination be discussed only in general terms because any error in the details could increase the risk of litigation," that communication would likely be privileged.

Here, as with other drafts discussed above, this document appears to be a product of collaboration between lawyers and non-lawyers. Contrary to the privilege log entry, it does not on

7

A164

its face seek legal advice. Nor does it appear to convey legal advice in any discernable sense. Although the language that appears in this draft may have been chosen to take into account legal advice from Binnings and other attorneys, a reader of the document would not be able to tell what that advice was. Binnings's declaration also does not establish that this particular draft of the email was written specifically for the purpose of soliciting legal advice on the proposed language, as opposed to being prepared as part the usual process of drafting an update addressing business issues. As with the draft addressed above, both the collaborative process of drafting this document and its intended dissemination[2] to a group of lawyers and non-lawyers appear to implicate relationships among many different employees. The dominant purpose of those broader relationships appears to have been managing the software systems and processes for driver background checks and other issues related to Uber's operations, not the provision of legal advice.

Uber has not shown that this document is privileged. The document must therefore be produced.

If—contrary to what the Court could discern from the face of the document—Uber believes that specific portions of this document convey legal advice, in a manner consistent with the discussion above of when privilege attaches to communications "reflecting" legal advice, Uber may redact those portions and provide a privilege log explaining its basis for doing so.

### E.    JCCP_MDL_PRIVLOG008375

This document is a Google Sheets notification indicating a reply to a comment in a collaboratively edited document. The notification email includes the comments at issue, in which an Uber employee requests advice from in-house counsel Daniel Kolta, and Kolta provides legal advice in response. *See* Dkt. No. 1811-9 (Kolta Decl.) ¶ 4. The document is privileged, and need not be produced.

Plaintiffs argue that it is not privileged because it is a "notification for Nick Silver (Uber's Head of Marketing) that Lizzie Ross (Uber's Safety Product Marketing manager at the time) left a

<div style="margin-left:2em">

United States District Court
Northern District of California

</div>

---

[2] An unsent draft that would be privileged in its anticipated final or delivered form can fall within the scope of the privilege. *People v. Gardner*, 106 Cal. App. 3d 882, 887 (1980) (holding that privilege applied to an unsent letter addressed to a public defender, when the author believed at the time that the public defender would represent him).

8

comment on a document," and it therefore "appears to be a comment made by a non-attorney that does not provide legal advice." Dkt. No. 1858-2 at 5–6. Plaintiffs' position is somewhat understandable, because Uber's privilege log lists the document as an email from "Lizzie Ross (Google Sheets)" to Nick Silver, and describes it as a "[c]onfidential e-mail providing legal advice from in-house counsel regarding in-app features to advance rider safety." Dkt. No. 1811-6 at 2. Although Kolta's name is included in the "Privileged Name(s)" column, it is difficult to tell from the privilege log what role, if any, Kolta had in this email, for which he was neither the sender nor a recipient.

Uber is ORDERED to review its privilege log entries for notifications from Google Sheets and Google Docs (as well as any other substantially similar notifications) about comments on documents and to provide updated privilege log entries that state the authors of any comments included in those emails, whether those comments seek or convey legal advice, and any other information Uber believes is necessary to support its assertion of privilege.

### F.    JCCP_MDL_PRIVLOG009844

This document, much like the document discussed immediately above, is a Google Docs notification email that includes several comments provided by Uber employees on a collaboratively edited document. The comments include a request for review by attorney Scott Binnings, and a response by Binnings discussing issues raised in the document. Although Binnings's response here does not necessarily provide legal advice, it is clear from context that other employees sought Binnings's review in his capacity as an attorney.

"[T]he relevant inquiry is not the content of the communication but is instead the relationship of the communicators," and the "dominant purpose of the relationship between the parties to [this] communication was one of attorney-client." *Clark*, 196 Cal. App. 4th at 51–52. The document is therefore privileged, and Uber need not produce it. As discussed above, however, the privilege log for this document provides little context for the substantive communications contained within it (the comments on the shared Google Doc), and reinforces the Court's conclusion that Uber must provide more detailed entries this sort of similar notification email.

9

A166

United States District Court
Northern District of California

### G.    JCCP_MDL_PRIVLOG013948

This document is an email conveying legal advice and analysis by in-house counsel Lisa Tse and in-house counsel Gail Levine. Levine is the author of the email, which forwards a longer email from Tse. Plaintiffs speculate that the document appears to be primarily business-related because attorneys are only listed in the "cc" field (apparently neglecting Levine's status as its author), and that Uber's description of it as an "incident report" suggests that it "contains underlying facts and not legal advice." Dkt. No. 1858-2 at 5. It is apparent from the face of the document, however, that it contains and conveys privileged legal advice. Uber need not produce this document.

Uber's privilege log failed to include Levine—the author of the email—in the "Privileged Name(s)" column, which perhaps contributed to Plaintiffs' skepticism that the document is privileged, although the Court would expect that could be clarified easily during the meet-and-confer process. Uber's description of the document as an "incident report provided for purposes of seeking legal advice from in-house counsel" is also confusing, and may be inaccurate. Going forward, Uber should ensure that its privilege log descriptions are accurate and that attorneys are clearly identified.

### H.    JCCP_MDL_PRIVLOG014830

This document is an internal slide deck regarding safety transparency reports. According to the privilege log, it was authored by then-Vice President of Safety and Insurance Gus Felder. It is labeled on its first page as "PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT FOR DISCUSSION." Uber in-house attorney Scott Binnings asserts that it addresses "options for developing a safety transparency report, for which the safety team was seeking legal advice," that "at least five other Uber in-house counsel were included on the presentation to provide legal advice," and that presentation contains "legal advice from Uber's in-house counsel about legal and regulatory risk." Binnings Decl. ¶ 4. The document on its face discusses legal assessments like litigation risk (apparently conveying legal advice from counsel), and the list of collaborators on the privilege log indicates that it was provided to an audience largely consisting of in-house counsel, corroborating Binnings's declaration that the presentation was intended to

United States District Court
Northern District of California

10

seek further legal advice.  The Court is satisfied that this document is privileged.

### I.       JCCP_MDL_PRIVLOG019255

This document is an email from Uber's Vice President of Safety and Insurance Gus Fuldner to two employees of Crawford Co., a third-party claims administrator, regarding an upcoming USA Today article regarding Crawford's work with Uber.  Uber's in-house counsel Kathleen Waitzman and another Crawford employee are included in the "cc" line of the email, although Uber's privilege log does not identify Waitzman in the "Privileged Name(s)" column, *see* Dkt. No. 1811-6.

Uber argues that "[c]ourts regularly hold that communications with third-party claims administrators are privileged," and that this communication carried legal risk and was informed by advice Fuldner received from counsel.  Dkt. No. 1858-2 at 9 (citing *Montes v. State Farm Mut. Auto. Ins. Co.*, No. CV 22-2551-FLA(EX), 2023 WL 639706, at *2 (C.D. Cal. Aug. 2, 2023)). Senior Legal Director Maureen Frangopoulos asserts that "Fuldner was aware that the subject matter of this email carried legal risk based on the advice of Uber in-house counsel and his email to Crawford Co. was informed by and based on that advice," and that "Crawford Co. was acting on behalf of Uber at the direction of its in-house counsel."  Dkt. No. 1811-10, ¶ 7.

Disclosure of a privileged communication to a third person can waive attorney-client privilege, but when such disclosure is confidential and "reasonably necessary for . . . the accomplishment of the purpose for which the lawyer is consulted," it does not waive the privilege. *See* Cal Evid. Code § 952; *see also Zurich Am. Ins.*, 155 Cal. App. 4th at 1503–04 (applying California Evidence Code section 952 where the client is a corporation).

Even if Waitzman or another of Uber's in-house counsel directed Crawford to handle claims on Uber's behalf, this email is about how Crawford will respond to a media inquiry, and how a potential response from Crawford may affect the framing of an article.  Uber does not assert that Fuldner (the sender of the email) is himself a lawyer, or that his communication to Crawford conveyed legal advice from an attorney.  The communication advanced Uber's reputational concerns, but is not reasonably necessary to facilitate legal advice or to advance a litigation strategy.

A168

That remains true even if Crawford was the "functional equivalent of an Uber employee." *Cf. Montes*, 2023 WL 6369706, at *2. If the Crawford employees here were replaced with Uber public relations employees, this communication between non-lawyer Uber employees regarding a response to a media inquiry still would not be privileged. *See* Dkt. No. 1727 at 5–6 & n.2 (previous Order denying a clawback motion regarding a document primarily focused on public relations) (citing *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628 (N.D. Cal. 2019); *Behunin v. Superior Ct.*, 9 Cal. App. 5th 833 (2017)). This case is therefore not analogous to *Montes*, where the Court was satisfied that the communications at issue where privileged, and primarily addressed whether disclosure of those privileged communications to a third-party claims administrator waived that privilege. *See Montes*, 2023 WL 6369706, at *2–3 ("*Defendant's counsel* should be permitted to confer confidentially with a 'third-party' workers' compensation administrator in the same manner as *Defendant's counsel* could confer confidentially with an 'in-house' workers' compensation claims administrator." (emphasis added)).

Finally, the fact that Waitzman was "copied in" on this communication does not render it privileged. *Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

Uber has not shown that this document is privileged, and therefore must produce it.

## J.    JCCP_MDL_PRIVLOG019282

This document is an email sent by Gus Felder in response to a Google Docs notification email that included several comments from a shared document. On its face, it is a discussion of public relations concerns with respect to a draft email to the Washington Post. Uber's privilege log does not identify any attorney in the "Privilege Name(s)" column. Although Uber now explains that one of the commenters, Maureen Frangopoulos, was an attorney who served at the time as Director for Safety & Insurance Litigation, the comments by her and other participants are oriented solely to public relations concerns. Frangopoulos's assertions that other participants were "seeking input from a legal perspective" and that her "comment was provided in light of [her] assessment of the legal implications," Dkt. No. 1811-10, ¶ 3, is not consistent with the actual comments included in this document. As with other collaboratively edited documents discussed above, the dominant purpose of the overarching relationship among the participants here appears

12

A169

to have concerned business purposes rather than legal advice. Because this document includes only "communication[s] that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice," *McCaugherty*, 132 F.R.D. at 238, it is not privileged, and must be produced.

* * *

Uber shall produce documents as directed above no later than seven days after the date of this Order.

## IV.    PLAINTIFFS' PROPOSED RULES

Based on the parties' discussions thus far regarding privilege disputes, Plaintiffs asks the Court to order Uber to comply with four "rules." Dkt. No. 1858-2 at 3.

Plaintiffs first propose that "**[a]fter resolution of each privilege dispute (whether by concession or by Court order), Uber must apply the lessons learned to all logs already produced, as well as any future logs.**" *Id.* In Pretrial Order No. 20, the Court has set a schedule for Uber to apply any rulings by the Court and/or concessions by Uber with respect to future samples of privilege disputes. Dkt. No. 1808 at 7–10. The Court sets a substantially similar schedule here, with additional time for the first deadline due to the intervening holiday: Uber must apply lessons learned from the meet-and-confer process and this Order to other privilege log entries from the first tranche of custodial document production no later than fourteen days from the date of this Order, must apply those lessons to any other existing privilege log entries no later than twenty-one days from the date of this Order, and must continue to apply those lessons going forward.

Second, Plaintiffs assert that "**[a]bsent individualized analysis and conclusion of privilege, documents should be produced**," noting that Uber's counsel has previously acknowledged taking a "conservative" and broad approach to privilege designations. Dkt. No. 1858-2 at 3. Plaintiffs are correct that Uber cannot withhold documents based on the mere possibility or suspicion that they are privileged, and that Pretrial Order No. 14's clawback process is available if Uber later determines that a document it produced is privileged. The Court expects that Uber will only withhold documents that it has actually determined are privileged. That said,

A170

United States District Court
Northern District of California

Plaintiffs do not seek any particular relief with respect to this rule, and the Court declines to order any further action by Uber.

Third, Plaintiffs ask that "**[i]f an e-mail chain or thread includes a third party, it cannot be designated as privileged unless that document (or category of documents) absent [sic] a detailed explanation of the basis for the privilege assertion, including the role of the third party.**" Dkt. No. 1858-2 at 3. Uber responds, correctly, that disclosures to third parties do not necessarily waive privilege. *Id.* at 6–7. The Court agrees with Plaintiffs that some explanation of the role of third parties is appropriate if Uber believes disclosure to such a party does not waive privilege, and that Uber's privilege log entry for the only such document in the current sample— the email to Crawford Co. employees, where Uber's log entry does not acknowledge the presence of a third party or discuss its role—is inadequate.

Rather than including a detailed description in each log entry, Uber is ORDERED to prepare a digest of each third party Uber believes falls within the scope of its privilege with an explanation of each such party's role and Uber's position as to how that role furthers an attorney-client relationship or otherwise falls within the scope of attorney-client privilege.[3] Uber shall provide such a digest for already-served privilege logs no later than fourteen days from the date of this Order, and shall update the digest in conjunction with serving future privilege logs. Individual privilege log entries for communications that include third parties must be sufficient to understand Uber's claim of privilege when viewed in conjunction with the digest. If Uber would prefer to address the roles of some third parties (e.g., parties that appear in only a small number of documents) within individual log entries rather than in the digest, it may do so.

Fourth, Plaintiffs ask the Court to order Uber to "**individually review (and re-review) all privilege log entries where no attorney authors the document or is listed in the 'to' or 'from' fields.**" Dkt. No. 1858-2 at 3. Uber is correct that such documents may still be privileged, and the Court is not satisfied that the burden of substantively re-reviewing all such documents is

---

[3] This digest need not include outside counsel, so long as the privilege log otherwise makes clear when a non-Uber employee included on a purportedly privileged communication is an attorney or an employee of a law firm.

A171

warranted at this time.  The Court nevertheless requires further review in certain instances, based on what appear to be potentially systemic errors in certain privilege log entries in the current sample:

    (A)    Multiple log entries indicated that documents were "prepared at the direction of in-house counsel," but Uber did not provide evidence to support those assertions.  Uber therefore must review all entries that assert a document was prepared at the direction of counsel to determine whether they are accurate.

    (B)    Multiple log entries failed to list all attorneys involved in a document in the "Privileged Name(s)" column despite the apparent involvement of one or more attorneys, or failed to designate all attorneys listed in other fields with an asterisk. Uber shall review all log entries that do not include any attorneys in the "Privileged Name(s)" column to determine whether the lack of names in that column is accurate and whether any attorneys listed in other columns for those entries are properly designated.

Uber shall comply with those directives by the deadline set forth above to apply "lessons learned."

Plaintiffs also "propose a 1-2 day in person, *in camera* review process during which the Court can review samples and issue rulings from the first tranche of custodians."  Dkt. No. 1858-2 at 3.  That request is denied.  The Court will consider options for further samples of disputed documents from the first tranche of custodians at a future discovery status conference, after Uber has had the opportunity to implement the rulings in this Order.

## V.    APPLICATION OF PRETRIAL ORDER NO. 8

Uber seeks clarification that the deadlines set forth in Pretrial Order No. 8 apply to the exchange of joint letter related to privilege disputes, asserting that Plaintiffs have taken the position that they do not apply.  Dkt. No. 1858-2 at 8.  Plaintiffs contend that Uber's assertion that Plaintiffs failed to comply "is erroneous," but also contend that "PTO 8 does not purport to set out exchange deadlines where the submission date to the Court is set in advance."  *Id.* at 2 n.5.  The Court now clarifies that the exchange deadlines set forth in Pretrial Order No. 8 apply to any joint

United States District Court
Northern District of California

15

A172

letter submitted to the undersigned magistrate judge, regardless of whether a filing date has been set by the Court, unless: (1) the parties agree otherwise; (2) the Court orders otherwise, including where a more specific order sets forth a process that conflicts with those deadlines; or (3) the Court sets a filing deadline with less than seven days' notice.[4]

## VI.   CONCLUSION

Uber shall produce the specific documents addressed above that the Court determined not to be privileged no later than seven days from the date of this Order.  Uber shall prepare a digest of third parties whose involvement it contends does not waive privilege no later than fourteen days from the date of this Order.  Uber shall apply other directives in this Order and other lessons learned to first tranche of custodial discovery no later than fourteen days from the date of this Order, to other already-produced privileged logs no later than twenty-one days from the date of this Order, and to future privilege logs on an ongoing basis.

**IT IS SO ORDERED.**

Dated: November 27, 2024

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

---

[4] The parties also dispute whether delays exchanging drafts were attributable to delay by Uber in providing information to Plaintiffs.  The Court declines to resolve that dispute.

16

A173

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT
LITIGATION

This Document Relates To:

ALL CASES.

Case No.  23-md-03084-CRB   (LJC)

**PRETRIAL ORDER NO. 20:
MODIFIED SCHEDULE AND
DIRECTIVES REGARDING
PRODUCTION AND PRIVILEGE
DISPUTES**

Re: Dkt. Nos. 1745, 1746, 1759, 1774

The parties have submitted a series of letters addressing the production of documents and privilege logs in preparation for upcoming depositions.  The Court now sets a revised schedule for custodian document production and privilege log disputes.  The production and resolution of privilege disputes will proceed in four tranches, and this order specifies the size of the samples of privilege disputes that will be considered in each tranche.

## I.    BACKGROUND: PREVIOUS ORDERS AND NEGOTIATIONS

In the early stage of discovery, the parties filed, and the Court approved a stipulated order, Pretrial Order No. 14, to address Rule 502(d) of the Federal Rules of Evidence and privileged or otherwise protected information.  Paragraph 13 of Pretrial Order No. 14 requires privilege logs to be produced within thirty days after each production of documents.  Dkt. No. 396 at 6.  If the receiving party raises a dispute as to any claims of privilege, the producing party must provide a written response within fourteen days, and the parties then must meet and confer fourteen days before submitting the dispute to the Court.  *Id.* at 11.  Assuming that it takes a week for the receiving party to initiate a dispute, that process could take sixty-five days from when documents are produced before a privilege dispute is submitted to the Court, not to mention the time that the Court would need to resolve the dispute.

A174

The parties' Stipulated Deposition Protocol, Pretrial Order No. 16, sets, among other requirements, an expedited schedule for the production of custodial records when a document custodian's deposition has been calendared.[1]  The custodial file must be produced at least twenty-one days before the deposition date.  Dkt. No. 866 at 3.  The producing party must provide a privilege log ten days after producing documents (eleven days before the deposition[2]), challenges must be made within seven days after that (four days before the deposition), and the parties shall meet and confer within four days of the challenge (i.e., up to the date of the deposition).  *Id.* at 3–4.  Pretrial Order No. 16 does not address intervention by the Court in privilege disputes prior to a deposition, and the compressed timeframe for the parties to meet and confer leaves little time to seek relief from the Court prior to a deposition unless it is rescheduled.

In September, Uber produced documents for nine priority custodians.  *See* Dkt. Nos. 1622, 1774-2 at 2.  The Court ordered Uber to produce documents for thirty-seven undisputed custodians no later than October 1, 2024, and to provide privilege logs for those custodians by October 10, 2024.  Dkt. No. 1629 at 1–2.  The Court ordered Uber to produce documents for the remaining (and at the time disputed) custodians no later than November 1, 2024, and to produce privilege logs no later than November 10, 2024.  *Id.* at 2.  For custodians noticed for deposition, the Court allowed for accelerated production consistent with Pretrial Order No. 16.  *Id.*

As the production of custodial records and privilege logs ramped up, *see* Dkt. No. 1774-2 at 2, the parties negotiated towards a potential extension of the production schedule for the remaining custodians.  The parties alerted the Court that Uber had tens of thousands of privilege log entries, and Plaintiffs had challenged thousands of them.  Dkt. No. 1681 at 9.  The parties agreed that—at least if Plaintiffs' concerns about allowing sufficient time to address privilege disputes were satisfied—Uber would produce documents for eleven custodians by October 21, 2024, for an additional seventeen custodians by November 26, 2024, and for the remaining eighteen custodians by January 10, 2025, with privilege logs to follow ten days after each

---

[1] The parties filed a Stipulated Deposition Protocol after they briefed, and Court resolved, numerous disputes concerning their respective proposals.  *See* Dkt. Nos. 371, 771, 825.

[2] For the purpose of this summary, the Court has not considered potential effects of weekends or holidays.  *See* Fed. R. Civ. P. 6(a)(1)(c).

United States District Court
Northern District of California

2

A175

production, or that production of documents and privilege logs would occur sooner under the twenty-one-day schedule of Pretrial Order No. 16 if depositions were scheduled. *See* Dkt. No. 1745 at 4; Dkt. No. 1774 at 2. This production schedule reflects four tranches of custodial production.

Plaintiffs initially proposed a schedule with three tiers of deadlines depending on the number of entries in a custodian's privilege log. Dkt. No. 1746 at 4. For custodians with 750 or more privilege log entries (as Uber has now represented to be true for nearly all custodians, *see* Dkt. No. 1759 at 2), Plaintiffs' initial proposal called for production of privilege logs forty-five days before a deposition, completion of the meet-and-confer process thirty-five days before the deposition, submission to the Court twenty-eight days before the deposition, and production of de-designated documents fourteen days before the deposition. Dkt. No. 1746 at 4. After further discussions between the parties on this issue, Plaintiffs stand by their proposed deadlines except that rather than calling for production of privilege logs forty-five days before a deposition, Plaintiffs now propose that Uber should produce privilege logs on its proposed schedule, and the parties should "agree[] to workable deposition dates given the size of the logs produced, the scope of Plaintiffs' challenges, and the overall goal of coordinating with the JCCP as is realistic." Dkt. No. 1774 at 2.[3] Plaintiffs also propose that Uber should be required to revise all previously served privilege logs to account for any privilege rulings by the Court within ten days of each order resolving a privilege dispute. *Id.* at 3.

Uber asserts that the schedules in Pretrial Order Nos. 14 and 16 are sufficient to resolve privilege disputes, but proposes an alternative schedule if the Court is inclined to modify those Orders. Dkt. No. 1774 at 7. Under Uber's proposal, Uber would purportedly have ten days after production of documents to provide a privilege log, Plaintiffs would have seven days after service of a privilege log to raise a challenge, the parties would then have seven days to meet and confer,

---

[3] Plaintiffs propose that the parties would "request[] a hearing within two weeks" on any dispute submitted to the Court. Dkt. No. 1774 at 2. With disputes due four weeks before the deposition, and Uber's production of de-designated documents due two weeks before the deposition, a hearing towards the end of the contemplated two-week period would not seem to allow time of Uber to implement the Court's decision.

and then the parties would have ten days to submit the dispute to the Court. *Id.* at 7–8.  Uber's proposal is inconsistent as to whether depositions would occur "no earlier than 45 days following service of the privilege log" or if there would be "at least 35 days between service of a privilege log and any deposition." *Id.* at 8.  An attachment, Exhibit B, illustrating Uber's proposal allows forty-five days between the privilege log service deadline and the deposition, but also includes far more than the ten days Uber has proposed between document productions and service of a privilege log.[4]  Dkt. No. 1774-2 at 2–4.

The following table compares the parties' proposals, using as an example the proposed third tranche of custodial production that Uber seeks to complete on November 26, 2024, and setting a hypothetical deposition date forty-five days after service of privilege logs:

| Event | Plaintiffs' Proposal | Uber's Proposal |
|---|---|---|
| Document Production | Nov. 26, 2024 (agreed) | Nov. 26, 2024 (agreed) |
| Privilege Log | December 9, 2024 (adopting Uber's initial proposal, *see* Dkt. No. 1774 at 2) | December 6, 2024[5] (10 days after production) |
| Privilege Challenge | N/A | December 13, 2024 (7 days after privilege log) |
| Conclusion of Meet-and-Confer | December 16, 2024 (35 days before | December 20, 2024 (7 days after challenge) |

[4] Exhibit B sets out specific dates for completion of custodial production, service of privilege logs, privilege challenges, and so forth, but the time period for service of a privilege log is not 10 days following production, as stated in the letter brief.  Dkt. No. 1774-2 at 2-4.  Instead, the time periods for service of the privilege logs are highly variable, ranging from three to twenty-five days.  Uber proposes that for the second tranche of custodial production, it have twenty-five days after production to serve the privilege logs for nine of the eleven custodians.  The brief offers no explanation for the inconsistency from Uber's proposal in the brief or why so much time is needed for the preparation of a privilege log.

[5] This chart uses Uber's narrative description of its proposal ("10 days after production," Dkt. No, 1774 at 7), rather than the chart Uber provided as Exhibit 2, which calls for privilege logs for the November 26, 2024 production to be served sixteen days later on December 12, 2024.  *See* Dkt. No. 1774-2 at 3.

4

United States District Court
Northern District of California

| Event | Plaintiffs' Proposal | Uber's Proposal |
|---|---|---|
| | deposition) | |
| Submission to Court | December 23, 2024 (28 days before deposition) | December 30, 2024 (10 days after meet-and-confer) |
| Last Day for Hearing | January 6, 2025 (two weeks after submission) | N/A |
| De-designation and Production | January 6, 2025 (14 days before deposition) | N/A |
| Deposition | January 20, 2025 | January 20, 2025 (45 days after privilege log) |

The Court declines to adopt either proposal, both of which include internal inconsistencies, and neither of which allows sufficient time for resolution of the anticipated disputes and implementation of the Court's orders resolving those disputes.

## II.    REVISED SCHEDULE

To determine how to advance discovery in this MDL, the Court has considered the parties' proposals, as well as how to maximize the opportunity for coordinated depositions between this MDL and the JCCP.  Coordination will reduce the likelihood of duplicative depositions, and in general discovery of custodial records should be completed before a custodian is deposed.  *See* Pretrial Order 16, Dkt. No. 866 at 3.  The discovery of custodial records necessarily calls for, to the extent feasible, the resolution of related privilege disputes.  At the October 23, 2024 discovery status conference for this MDL, the Court was informed that the January 15, 2025 discovery deadline in the JCCP is no longer a firm one, and that Judge Schulman, at the JCCP status conference the day prior, had ordered the parties to meet and confer regarding a new date.  Dkt. No. 1790 (Tr.) at 8:3–17.  Accordingly, there is an opportunity here to issue a revised schedule

5

United States District Court
Northern District of California

that promotes the efficient resolution of this litigation.  This Order modifies Pretrial Order Nos. 14 and 16, and applies regardless of whether a deposition has been scheduled.

### A.    Tranche 1 Custodians

The parties are currently preparing a joint letter addressing a sample of disputed privilege log entries from the first tranche of Uber's document custodians, to be submitted by October 30, 2024.  *See* Dkt. Nos. 1785, 1795.  Subsequent deadlines related to that tranche of custodians will be addressed in the Court's order resolving that dispute.  The parties should anticipate a schedule similar to those set forth below for subsequent tranches.

### B.    Tranche 2 Custodians

As proposed by the parties, the second tranche of custodial document production includes the following eleven Uber custodians: Matt Baker, Corey Freivogel, Tracey Breeden, Greg Brown, Philip Cardenas, Dennis Cinelli, Travis Kalanick, Dara Khosrowshahi, Carley Lake, Danielle Sheridan, and Kate Parker.  *See, e.g.*, Dkt. No. 1774-2 at 2–3.  The Court adopts that proposal, and understands that Uber has completed document production for these custodians.  Dkt. No. 1790 (Oct. 23, 2024 Tr.) at 6:18–7:15.  The Court sets the following schedule for this tranche:

**October 21, 2024:** Uber has completed production of non-privileged documents for Tranche 2 custodians.

**October 31, 2024:** Uber shall serve privilege logs for Tranche 2 custodians.  *See* Dkt. No. 1795.  If Uber determines while finalizing the privilege logs that any documents initially designated as privileged did not warrant that designation, Uber shall produce those documents.

**November 14, 2024:** Plaintiffs shall provide notice of any challenges to Tranche 2 privilege logs.  Plaintiffs may challenge any number of log entries, but must designate up to forty-five entries as potentially suitable for inclusion in a sample of disputed entries to be submitted to the Court.  The parties shall meet and confer regarding Plaintiffs' challenges.

**December 5, 2024:** The parties shall conclude their efforts to meet and confer.  Plaintiffs shall designate no more than fifteen remaining disputed log entries (of the initial sample of forty-five) to be addressed in a joint letter to the Court.  If no disputed log entries remain from the initial sample of forty-five, the parties shall file a status report not exceeding two pages apprising the

Court of that fact and whether they would like to continue to meet and confer regarding other privilege log disputes.

**December 12, 2024:** The parties shall file a joint letter addressing the sample of no more than fifteen privilege log entries selected on December 5, 2024. The joint letter shall be consistent with Pretrial Order No. 8, except that it may be up to ten pages long and may attach copies of disputed privilege log entries. The parties may also attach any declarations necessary to support or oppose a claim of privilege, although the relevant substance of those declarations must be set forth in the joint letter—declarations may authenticate the parties' assertions, but may not be used to circumvent the page limit. Uber has represented that it will submit the documents at issue for in camera review. Dkt. No. 1790 (Oct. 23, 2024 Tr.) at 29:23–30:8. All documents submitted for in camera review must also be received by this deadline via email or another method arranged in advance with the Courtroom Deputy (ljccrd@cand.uscourts.gov).

**December 19, 2024:** The Court will hear argument, if necessary, at 10:30 AM in Courtroom G. The Court may vacate this hearing or convert it to videoconference after reviewing the parties' joint letter.

**Seven days after the Court resolves disputes:** If the Court has ruled in Plaintiffs' favor on any dispute log entries, Uber shall de-designate and produce documents from Tranche 2 custodians consistent with the Court's order and with any concessions by Uber during the meet-and-confer process.[6]

**Twenty-one days after the Court resolves disputes:** Uber shall de-designate and produce documents from any other production set (e.g., the first or third tranche of custodians, non-custodial productions, etc.) consistent with the Court's order and with any concessions by Uber during the meet-and-confer process.

The Court anticipates that depositions for Tranche 2 custodians will begin by approximately January 18, 2025 and may be completed by April 24, 2025, but this Order does not

---

[6] If the parties resolve *all* disputes from the first sample of disputed log entries for Tranche 2 custodians without Court intervention, this deadline and the fourteen-day deadline below shall run from the date that the last of those disputes is resolved. The same is true for the subsequent tranches addressed below.

A180

restrict the parties in selecting deposition dates either within or outside of that range.

### C.  Tranche 3 Custodians

The parties have proposed the following seventeen Uber custodians for the third tranche of custodial document production: Brooke Anderson, William Barnes, Jordan Burke, Lucas Coker, Chadd Fogg, Timothy Foran, Catherine Gibbons, Cassie Hawk, Mark Jones, Jenny Lewis (Avalon), Sarfraz Maredia, Jeff Marshall, Niraj Patel, Vaibhav Rikhye, Valerie Shuping, Michael Sullivan, and Kayla Whaling.  *See, e.g.*, Dkt. No. 1774-2 at 3.  The Court adopts that proposal, except that Plaintiffs may also select up to four additional custodians proposed for Tranche 4 for inclusion in Tranche 3, in order to expedite the discovery process in light of the Court setting a longer timeline for resolution of privilege log disputes than proposed by the parties.

The Court sets the following schedule for Tranche 3.  Details set forth above in the context of the equivalent Tranche 2 deadlines shall apply equally to the Tranche 3 deadlines.

**November 4, 2024:** Plaintiffs shall file in the record a notice identifying the four custodians to be added to Tranche 3.

**November 26, 2024:** Uber shall complete production of non-privileged documents for Tranche 3 custodians.

**December 3, 2024:** Uber shall serve privilege logs for Tranche 3 custodians.

**December 17, 2024:** Plaintiffs shall provide notice of any challenges to Tranche 3 privilege logs.  Plaintiffs shall select no more than sixty log entries as potentially suitable for submission in a sample to the Court.

**January 7, 2025:**  The parties shall complete their efforts to meet and confer.  Plaintiffs shall select up to twenty log entries from the initial sample of sixty for inclusion in a joint letter.

**January 14, 2025:**  The parties shall submit a joint letter to the Court addressing the sample of up to twenty disputed privilege log entries.  The joint letter shall be consistent with Pretrial Order No. 8, except that it may be up to fifteen pages long and may include attachments as set forth above for Tranche 2.

**January 28, 2025:**  Hearing at 10:30 AM in Courtroom G.

**Fourteen days after resolution of disputes:**  Uber shall de-designate and produce

United States District Court
Northern District of California

8

A181

documents from Tranche 3 consistent with the Court's order (if the Court sustains any challenges) and any concessions by Uber during the meet-and-confer process.

**Twenty-one days after resolution of disputes:** Uber shall de-designate and produce documents from other production sets consistent with the Court's order and any concessions by Uber during the meet-and-confer process.

The Court anticipates that depositions of Tranche 3 custodians will begin by approximately February 19, 2025 and may be completed by April 24, 2025, but sets no restrictions at this time on when the parties may set those depositions.

### D. Tranche 4 Custodians

The parties proposed the following eighteen Uber custodians for inclusion in the fourth and final tranche of document production: Mike Akamine, Ed Baker, William Barnes, Faiz Bushra, Frank Chang, Abbie Ding, Ryan Graves, Andrew Hasbun, Nairi Hourdajian, Joe Sullivan, Cameron Poetzscher, Jenny Luu, Susan Muehrcke, Mat Henly, Meghan Joyce, David Richter, Rachel Whetstone, and Pat Twomey. *See, e.g.*, Dkt. No. 1774-2 at 3–4. The Court adopts that proposal, except for the four custodians that may be shifted to Tranche 3 as discussed above, and sets the following deadlines for Tranche 4. Details set forth above in the context of the equivalent Tranche 2 and 3 deadlines shall apply equally to the Tranche 4 deadlines.

**January 3, 2025:** Uber shall complete production of non-privileged documents for Tranche 4 custodians.

**January 10, 2025:** Uber shall serve privilege logs for Tranche 4 custodians.

**January 24, 2025:** Plaintiffs shall provide notice of any challenges to Tranche 4 privilege logs. Plaintiffs shall select no more than forty-five log entries as potentially suitable for submission in a sample to the Court.

**February 7, 2025:** The parties shall complete their efforts to meet and confer. Plaintiffs shall select up to fifteen log entries from the initial sample of forty-five for inclusion in a joint letter.

**February 14, 2025:** The parties shall submit a joint letter to the Court addressing the sample of up to fifteen disputed privilege log entries. The joint letter shall be consistent with

9

A182

Pretrial Order No. 8, except that it may be up to ten pages long and may include attachments as set forth above for Tranche 2.

**February 28, 2025:**  Hearing at 10:30 AM in Courtroom G.

**Seven days after resolution of disputes:**  Uber shall de-designate and produce documents from Tranche 4 consistent with the Court's order (if the Court sustains any challenges) and any concessions by Uber during the meet-and-confer process.

**Twenty-one days after resolution of disputes:**  Uber shall de-designate and produce documents from other production sets consistent with the Court's order and any concessions by Uber during the meet-and-confer process.

The Court anticipates that depositions of Tranche 4 custodians will begin by approximately March 24, 2025 and may be completed by April 24, 2025, but sets no restrictions at this time on when the parties may set those depositions.

## III.   CONCLUSION

The parties shall comply with the schedule set forth above for custodial document production and privilege log disputes.  This Order modifies previous Pretrial Orders to the extent that they are inconsistent.

This Order sets schedules for the filing of only one sample of disputed privilege log entries for each tranche of custodial document production.  If further samples are necessary, the parties may address their proposed approaches to those disputes in a status report after the Court resolves at least one sample of disputed privilege logs.

**IT IS SO ORDERED.**

Dated: October 30, 2024

LISA J. CISNEROS
United States Magistrate Judge

10

A183

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB<br><br>**STIPULATED AND PRETRIAL ORDER NO. 14: FEDERAL RULE OF EVIDENCE 502(D) AND PRIVILEGED MATERIALS** |
| This Document Relates to:<br><br>ALL ACTIONS | |

**A.** **Applicability.**

1.     This Order shall be applicable to any privileged or otherwise protected or exempted information contained in deposition transcripts and/or videotapes, and documents produced in response to requests for production of documents, answers to interrogatories, responses to requests for admissions, affidavits, declarations, and all other information or material produced, made available for inspection, or otherwise submitted by any of the parties in this litigation pursuant to the Federal Rules of Civil Procedure, as well as testimony adduced at trial or during any hearing (collectively, "Information").

**B.** **Production of Discovery Materials Containing Potentially Privileged Information.**

2.     Pursuant to Federal Rule of Evidence 502(d), the production of any privileged or otherwise protected or exempted information in this case shall not be deemed a waiver or impairment of any claim of privilege or protection in this case or in any other federal or state proceeding, including, but not limited to, the attorney-client privilege, the protection afforded to work product materials, statutory privileges and protections, or the subject matter thereof, as to the produced document and any related material.

A184

3.     Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for responsiveness and/or segregation of privileged and/or protected information before production.

4.     The Producing Party must notify the Receiving Party within twenty-one (21) calendar days, in writing, upon discovery that a document has been produced for which the Producing Party asserts privilege and/or other protection. This "Clawback Notice" shall include (i) the Bates range of the materials subject to the Clawback Notice and (ii) a privilege log listing the item(s) subject to the Clawback Notice. If the Producing Party claims that only a portion of the document contains privileged or otherwise protected material, then the Clawback Notice shall include a new copy of the material (utilizing the same Bates number as the original material) with the privileged or protected material redacted. If the Producing Party claims that the entire document is privileged or protected, then the Producing Party shall provide a slip sheet noting that the document has been withheld.

5.     Upon receipt of a Clawback Notice, all such information, and all copies thereof, as well as any analyses, memoranda, or notes or portions thereof which were internally generated and contain or were based upon the item(s) listed in the Clawback Notice shall be sequestered, and the Receiving Party shall not use such information for any purpose except contesting the assertion of privilege to the Court.

6.     The Receiving Party may contest the Producing Party's assertion of privilege or other protection. In that instance, within seven (7) business days from receipt of the Clawback Notice, the Receiving Party shall give the Producing Party written "Notice of Clawback Challenge" providing the reason for said disagreement. The Producing Party will have seven (7) business days to respond to the Notice of Clawback Challenge, in writing, by either: (i) agreeing to withdraw the claim of privilege or other protection; or (ii) stating the reasons for such claim. If the Producing Party's response to the Notice of Clawback Challenge does not resolve the issue, the parties shall meet and confer within seven (7) business days of the response. If the conference

- 2 -

A185

does not resolve the dispute, within ten (10) business days of the conference, the parties shall submit the dispute to Judge Cisneros for resolution in a joint letter brief. The Producing Party retains the burden of establishing the applicability of the privilege or other protection as to any inadvertently produced materials and bears the burden of making the disputed materials available to the Court for *in camera* review. The joint discovery letter brief must be filed under seal and the Receiving Party must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure. If the Receiving Party does not serve a Notice of Clawback Challenge, then, upon expiration of the ten (10) business day period, all copies of the disputed material shall be returned or destroyed.

7.      Nothing in this Order precludes a Receiving Party from submitting the item(s) listed in the Clawback Notice to the Court for review or using the content of the item(s) in briefing submitted in connection with any challenge to such notice that is raised in accordance with this paragraph and paragraph 6. Prior to submitting the item(s) to the Court for review and/or using the content of the item(s) in briefing, the Receiving Party must (1) provide the Court with a factual basis adequate to support a good-faith belief by a reasonable person that the privilege or protection does not apply and (2) obtain an order from the Court authorizing the submission of the items to the Court for *in camera* review and/or use of the items(s) in briefing submitted in connection with the clawback dispute.

8.      If any material is found to be privileged or protected in accordance with the procedures herein, or the Receiving Party agrees that the document is properly designated as privileged, consistent with the Federal Rules of Civil Procedure 26(b)(5)(B), the Receiving Party shall promptly refrain from further copying or distributions of the subject materials, return or destroy all copies of the document including reasonable steps to retrieve all copies that have been distributed to counsel or non-parties, and destroy the portion of any work product that describes or contains the contents of the subject materials.

PTO NO. 14: RULE 502(D) AND
PRIVILEGED MATERIALS ORDER

A186

9.      Any analyses, memoranda or notes or portions thereof which were internally generated and contain or were based upon the item(s) listed in the Clawback Notice shall immediately be sequestered upon receipt of the Clawback Notice, and shall be destroyed in the event that (a) the Receiving Party does not contest that the information is privileged or subject to other protection pursuant to paragraph 6 above or (b) the Court rules that the information is privileged or otherwise protected. Such analyses, memoranda, or notes or portions thereof may only be removed from sequestration in accordance with paragraph 5 or in the event that (c) the Producing Party agrees in writing that the information is not privileged or otherwise protected or (d) the Court rules that the information is not privileged or otherwise protected.

10.      If, during a deposition, a Producing Party claims that a document being used in the deposition (e.g., marked as an exhibit, shown to the witness, or made the subject of examination) contains material that is subject to the attorney-client privilege, the attorney work product doctrine, or other protection, the Producing Party may (a) allow the document to be used during the deposition without waiver of any claim of privilege or other protection; (b) instruct the witness not to answer questions concerning the parts of the document containing privileged or protected material; or (c) object to the use of the document at the deposition to the extent the entire document is privilege or protected, in which case no testimony may be taken relating to the document during the deposition until the matter is resolved by agreement or by the Court. If a privilege challenge is raised as to a document, all parties shall sequester all copies of the inadvertently produced document. As to any testimony subject to a claim of privilege or other protection, the Producing Party shall serve a Clawback Notice within seven (7) business days of receipt of the final transcript, after which the parties shall follow the procedures set forth in paragraphs 5 through 8. With respect to any document or testimony that is the subject of a Clawback Notice that is sent more than twenty (20) days after receipt of the final transcript, the asserted privilege or protection will be deemed as waived absent good cause. Pending determination of the Clawback Challenge, all parties with access to the deposition transcript shall treat the relevant testimony in accordance with paragraph 5. In the event that a party asserts a

PTO NO. 14: RULE 502(D) AND
PRIVILEGED MATERIALS ORDER

A187

claim of privilege over a document during a deposition and instructs the witness not to answer questions about the document (or portions thereof) or objects to the use of the document in the deposition pursuant to Section 10(b) or 10(c) above, and if that document (and/or portions thereof) is ultimately determined not to be privileged or subject to protection, the Party or Non-Party asserting the claim of privilege or protection will work with the deposing party to ensure that the deposing party is given a reasonable opportunity to depose the witness about the document if the parties agree.  In the case of Party-witnesses (or their current employees) or any former employees of a Party who are represented by Counsel for such Party, the subsequent questioning shall take place within a reasonable time of said determination, and in the case of other Non-Party witnesses it shall take place at the earliest practicable time for the witness and his, her or its counsel.

11.     If a Receiving Party uses produced material in a brief or at a hearing, and the Producing Party has not served a Clawback Notice in advance of the briefing event or hearing, the Producing Party shall serve a Clawback Notice within five (5) business days of the briefing event or hearing. Thereafter, the procedures set forth in paragraphs 5 through 8 shall apply. With respect to any produced material used in a brief or at a hearing that is the subject of a Clawback Notice that is sent more than twenty (20) days after the filing of the brief or conclusion of the hearing, the asserted privilege or protection will be deemed as waived absent a showing of good cause.

12.     This Stipulation does not preclude a party from intentionally and voluntarily waiving any claims of privilege or protection. The provisions of Fed. R. Evid. 502(a) apply when a party uses privileged or other protected information to support a claim or defense. The Parties may stipulate, without the need for Court approval, to narrow or extend the time periods specified in this Order.

PTO NO. 14: RULE 502(D) AND
PRIVILEGED MATERIALS ORDER

A188

**C.    Privilege Logging.**

13.    Unless otherwise provided in this Order, any document falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party on a privilege log, which the Producing Party shall produce in Excel format.

14.    Within thirty (30) calendar days of each production of documents or ESI, the Producing Party shall provide a privilege log or logs concerning any information that has been redacted or withheld in whole or in part from that production. The log shall be produced in an electronic format (i.e. Excel format) that allows text searching, sorting, and organization of data. The documents that are produced with redactions based on a claim of privilege shall be Bates numbered using the same Bates numbering format agreed to by the parties for regular document productions, and shall be listed on the Producing Party's privilege log in Bates-number order. The documents withheld from production based on a claim of privilege will have a unique identifying number assigned to each document on the privilege log. The Producing Party shall produce a master privilege log in Excel format which shall be updated with each additional privilege log relating to subsequent production. The log shall have a field that contains the date of the production (or production number) to which the individual log entry relates. The log shall have a field that indicates whether a document was withheld from production entirely or if the document was produced with redactions of privileged information.

15.    The privilege log shall log information required by Federal Rules of Civil Procedure 26(b)(5) and set forth the privilege or protection relied upon and specify separately for each document or redaction. Where appropriate, information shall be designated by Metadata fields used in the Order Governing the Production of Electronically Stored Information and Hard Copies. The minimal information and fields to be produced include:

(a)    Bates-number range, or if no Bates-number range, a unique document

- 6 -

A189

identifier (BEGBATES, ENDBATES);

(b)     Family relationship, if applicable (i.e., identification of parent emails and all attachments) (BEGATTACH, ENDATTACH, ATTACHBATES, ATTACHCOUNT, ATTACHNAMES);

(c)     A description of the document or redaction, including the factual basis sufficient to support the claim that the document is privileged and/or protected and to allow the Parties to understand the basis for the redactions or privilege (DOCUMENT TYPE);

(d)     The name(s) of the author(s) and custodians (AUTHOR, ALLCUSTODIAN);

(e)     The names and email addresses of all addressees and recipients, including copyees and blind copyees (FROM, TO, CC, BCC);

(f)     The file type and subject line of all email messages, unless the subject of the email itself contains privileged information, in which case the title may be redacted from the privilege log (SUBJECT);

(g)     The document/communication date and title, unless the title itself contains privileged information, in which case the title may be redacted from the privilege log (SORTDATE, FILENAME, TITLE);

(h)     An indication of whether the document has been produced in redacted form or withheld in its entirety (Redacted);

(i)     The privilege designation (attorney-client; attorney work product; joint defense and/or common interest, etc.);

PTO NO. 14: RULE 502(D) AND
PRIVILEGED MATERIALS ORDER

A190

16.     Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

17.     Attorneys or their staff must be identified on the log with an asterisk (or similar notation). In the event an error on a produced log is discovered, the Producing Party shall promptly produce a corrected, replacement log.  An inadvertent failure to identify attorneys or their staff in accordance with this paragraph will not be deemed a waiver or impairment of the party's claim of privilege.

18.     The Receiving Party may make reasonable requests, on an individual basis or specified group basis and for good cause, that the Producing Party provide (a) in alphabetical order (by last name, then first name of such individuals(s)), (b) aliases for such individuals; (c) the job title of such individuals; and (d) the employer of such individual(s) at the time of the communication. This list shall be produced by the Producing Party in an electronic format (e.g., Excel format) that allows text searching, sorting, and organization of data, and it shall be produced in a cumulative manner, so that each subsequent list includes individuals from the prior lists. Nothing in this paragraph shall be construed to allow the Receiving Party to request this information for every individual listed in the log.

19.     Documents withheld on the basis of privilege and/or work product protection may be grouped into categories based on content, and a categorical privilege log prepared, including a description of the nature or general subject matter of the communications for each category sufficient to support the claim that the documents within the category are privileged and/or protected, and sufficient to enable the requesting party to make an intelligent determination about the validity of the assertion of privilege. The categorical log shall also include the following data for each document within the category:

(a)     Bates-number range, or if no Bates number range, a unique document identifier;

- 8 -

A191

(b)     Family relationship, if applicable (i.e., identification of parent emails and all attachments);

(c)     The names of the author(s);

(d)     The names of all addressees and recipients, and copyees and blind copyees;

(e)     The document date;

(f)     An indication of whether the document has been produced in redacted form or withheld in its entirety;

Notwithstanding the foregoing, the decision to log documents on a categorical basis does not waive the party's right to adjudicate any challenge(s) to privilege on a document-by-document basis. Nor does the foregoing preclude the Receiving Party from seeking relief from this provision allowing for some use of categorical logs. A Receiving Party may seek relief by making a showing to the Court that (a) a document-by-document listing of withheld documents included in the categorical log would not be unduly burdensome given the needs of the case, and (b) additional material would aid in assessing whether the privilege or protection claim is well grounded.

20.     Provided that they contain Privileged material, log identification is not required for the following materials:

(a)     Communications related to the defense of this litigation and created on or after March 15, 2023 or the actions captioned In re Uber Rideshare Cases, Case No. CJC-21- 005188 (or any individual litigation within such coordinated proceedings), exclusively within a law firm, or exclusively between or among law firms, serving as a party's outside counsel, as well as its employees and support staff;

- 9 -

PTO NO. 14: RULE 502(D) AND
PRIVILEGED MATERIALS ORDER

A192

(b)     Attorney work product and trial preparation materials related to defense of this litigation created on or after March 15, 2023 by a party's outside counsel, including their employees and support staff;

(c)     Internal communications solely within a legal department of a party that is a corporation or another organization created on or after March 15, 2023;

(d)     Communications related to defense of this litigation, or the actions captioned In re Uber Rideshare Cases, Case No. CJC-21-005188 (or any individual litigation within such coordinated proceedings), between the Producing party and its counsel and created on or after March 15, 2023;

(e)     Communications between or among counsel for Plaintiffs related to the prosecution of this litigation or the actions captioned In re Uber Rideshare Cases, Case No. CJC-21-005188 (or any individual litigation within such coordinated proceedings) created on or after March 15, 2023 and/or

(f)     Communications between or among counsel for Defendants related to defense of this litigation or the actions captioned In re Uber Rideshare Cases, Case No. CJC-21- 005188 (or any individual litigation within such coordinated proceedings), and created on or after March 15, 2023.

21.     Where multiple email messages are part of a single chain or "thread," a party is only required to include on a privilege log the most inclusive message ("Last In Time Email") and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the thread, provided that the log entry includes the names of the authors, email addresses, and recipients (including copyees and blind copyees) for all thread members, that the description of the thread includes the factual bases sufficient to support the claim of privilege, and that the log entry includes the privilege designations applicable to any thread members.

PTO NO. 14: RULE 502(D) AND
PRIVILEGED MATERIALS ORDER

A193

22.     After the receipt of a privilege log, any party may dispute a claim of privilege. Prior to seeking Court intervention, the party disputing, questioning, or otherwise objecting to a claim of privilege shall provide in writing the identification of the documents or category of documents for which it questions the claim of privilege and the reasons for disputing, questioning, or otherwise objecting to the privilege designation. Within fourteen (14) calendar days, the party that designated the documents as privileged will provide a written response explaining the basis for its claim or privilege, or if applicable, de-designating documents as privilege and producing such documents in accordance with this Order. Thereafter, if the parties continue to disagree, they will meet and confer in good faith as to the claims of privilege. If agreement has not been reached after fourteen (14) calendar days, the parties shall submit the dispute to Judge Cisneros for resolution.

23.     Any deadline imposed by this order may be extended by agreement of the parties or upon a showing of good cause, including, but not limited to, the need to challenge multiple Clawback Notices at once or the need to respond to multiple Clawback Challenges or challenges to assertions of privilege at once.

24.     Nothing in this Order overrides an attorney's ethical responsibility to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the disclosing party that such materials have been produced.

**IT IS SO ORDERED.**

Date: April 4, 2024

_____
Hon. Lisa J. Cisneros
United States Magistrate Judge

- 11 -