**No. 26-2390**

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**IN RE UBER TECHNOLOGIES, INC.,**

---

**UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC,**
*Defendants-Petitioners*,

v.

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO**
*Respondent*,

**Plaintiffs in All Cases Consolidated, Transferred, or Filed in MDL No. 3084, *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*,**
*Real Parties in Interest.*

---

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, NO. 3:23-md-03084-CRB

---

**BRIEF OF LAWYERS FOR CIVIL JUSTICE AS *AMICUS CURIAE* IN SUPPORT OF PETITIONERS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC**

**Bradley Arant Boult Cummings LLP**
E. Todd Presnell
Timothy A. Rodriguez
Marlee G. Sacks
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
615.244.2582

Anna Cecile Pepper
One Federal Place
1819 5th Avenue N
Birmingham, Alabama 35203
205.521.8000

*Attorneys for Amicus Curiae*
Lawyers for Civil Justice

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... i

STATEMENT OF IDENTIFICATION .......... 1

SUMMARY OF ARGUMENT .......... 5

ARGUMENT .......... 9

I. Rule 502(d) supplies unconditional non-waiver protection, and PTO 14 should have exercised that protection in textbook fashion. .......... 9

II. The unexplained waiver ruling cannot be reconciled with Rule 502(d) under any possible rationale. .......... 12

A. Case-management concerns cannot override Rule 502(d). .......... 13

B. There is no exception to Rule 502(d) for de- and re-designating documents. .......... 16

C. If the waiver ruling rests on a sub silentio application of Rule 502(b), it was procedurally and substantively wrong. .......... 17

III. The error below is part of a broader pattern of departures from Rule 502(d)'s clear text that requires this Court's guidance. .......... 20

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Amazon.com, Inc.*,
No. 25-3099 (9th Cir.), *mandamus denied* ........ 21

*Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*,
146 F.3d 1071 (9th Cir. 1998) ........ 14

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988) ........ 6, 13, 14, 15

*Bauman v. U.S. Dist. Ct.*,
557 F.2d 650 (9th Cir. 1977) ........ 21

*Dietz v. Bouldin*,
579 U.S. 40 (2016) ........ 6, 13, 14, 15

*Epic Games, Inc. v. Apple Inc.*,
781 F. Supp. 3d 943 (N.D. Cal.), *rev'd and rem'd in part on other grounds*, 161 F.4th 1162 (9th Cir. 2025) ........ 19

*Hostetler v. Dillard*,
2014 WL 6871262 (S.D. Miss. Dec. 3, 2014) ........ 21

*Melendres v. Sheridan*,
2025 WL 3124741 (D. Ariz. Nov. 7, 2025) ........ 21

*Thomas v. Marshall Pub. Schs.*,
690 F. Supp. 3d 941 (D. Minn. 2023) ........ 19

*U.S. Home Corp. v. Settlers Crossing, LLC*,
2012 WL 3025111 (D. Md. July 23, 2012) ........ 21

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ........ 8, 24

*In re Vioxx Prods. Liab. Litig.*,
2006 WL 1726675 (5th Cir. May 26, 2006) ........ 16

Table of Contents (continued)

Page

**Other Authorities**

154 Cong. Rec. H. 7817 (2008) .................................................... 20

Advisory Committee on Evidence Rules of the Judicial Conference of the United States (January 5, 2007), https://www.uscourts.gov/sites/default/files/fr_import/06-EV-050.pdf .................................................... 2

Edwin M. Buffmire, *The (Unappreciated) Multidimensional Benefits of Rule 502(d): Why and How Litigants Should Better Utilize the New Federal Rule of Evidence*, 79 Tenn. L. Rev. 141, 155-56 (2011) .................................................... 23

Fed. R. App. P. 29 .................................................... 3

Fed. R. Evid. 502 .................................................... *passim*

Fed. R. Evid. 502(b) .................................................... *passim*

Fed. R. Evid. 502(b)(1) .................................................... 18

Fed. R. Evid. 502(d) .................................................... *passim*

S. Rep. No. 110-264 (2008) .................................................... 10

## STATEMENT OF IDENTIFICATION

Lawyers for Civil Justice ("LCJ") is a national coalition of defense trial lawyer organizations, law firms, and corporations that promotes excellence and fairness in the civil justice system to secure the just, speedy, and inexpensive determination of civil cases. For over 35 years, LCJ has advocated for procedural reforms that (1) promote balance in the civil justice system; (2) reduce the costs and burdens associated with litigation; and (3) advance predictability and efficiency in litigation. Working through the Rules Enabling Act process, LCJ often urges proposals to reform aspects of the Federal Rules of Civil Procedure and Federal Rules of Evidence.

LCJ has specific expertise on the meaning, history, and application of Federal Rule of Evidence 502, drawing on both its own efforts undertaken during the 2006–2007 rulemaking process and the collective experience of its members who are involved in litigation in the federal courts. LCJ provided extensive comments and original research to the U.S. Judicial Conference Advisory Committee on Evidence Rules

regarding the proposed new Federal Rule of Evidence 502.[1] LCJ's comments focused on preserving and enhancing privilege protections by adopting limitations on the impact of inadvertent disclosures and allowing courts to enter Rule 502(d) orders respecting privilege and disclosure.[2]

LCJ and its members have an interest in ensuring that courts across the nation correctly and consistently interpret the privilege-waiver protection plainly and clearly provided for in Rule 502(d). Consistent and proper enforcement of the plain language of Rule 502(d) and orders entered under it provides certainty to corporate entities as they review and evaluate voluminous, putatively privileged electronically stored information during the discovery process. It also furthers Rule 502(d)'s dual purposes—to reduce unnecessary litigation costs and supply a predictable, uniform standard under which parties may assess the consequences of disclosing privileged information.

Courts continue to misapply the plain language of Rule 502(d), even

---

[1] *See* Lawyers for Civil Justice, Proposed Revisions to Rule 502, Comments to the Advisory Committee on Evidence Rules of the Judicial Conference of the United States (January 5, 2007), https://www.uscourts.gov/sites/default/files/fr_import/06-EV-050.pdf.

[2] *Id.* at 24–25.

though the Rule contains no preconditions to enforcement of orders entered under it. This Court should grant mandamus and rule that the clear language of Rule 502(d) and orders entered under it, and not court-created prerequisites, controls whether a party waives its privilege protections when producing protected information.

Lawyers for Civil Justice files this brief pursuant to Rule 29 of the Federal Rules of Appellate Procedure.

## RULE 29(A)(4)(E) STATEMENT

Counsel certifies that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person or entity other than the amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

Federal Rule of Evidence 502(d) permits a federal court to enter an order that "the privilege or protection is not waived by disclosure connected with the litigation pending before the court." Fed. R. Evid. 502(d). That Rule is unconditional on its face. It contains no inadvertence requirement, no cross-reference to Rule 502(b), and no textual limit on the orders it authorizes. The Advisory Committee was even more explicit: a Rule 502(d) order may provide for return of privileged documents "irrespective of the care taken by the disclosing party." Fed. R. Evid. 502 advisory committee's note.

The district court below entered a textbook Rule 502(d) order—Pretrial Order No. 14—but then declined to apply it. PTO 14 unambiguously invokes Rule 502(d) by name, tracks the Rule's unconditional language, and goes further by barring any party from relying on "the fact or circumstances of disclosure" to contest a clawback. Uber produced 1.7 million documents in reliance on that order, stating in the cover letter accompanying each production that the production was "not intended to, and [did] not, waive any applicable privilege." The magistrate judge nevertheless ruled that Uber had waived privilege over

documents produced following a court-ordered re-review, and it did so sua sponte, at a status conference, with no briefing. The ruling was extended by the special master without independent analysis and affirmed by the district court in a single sentence. At no point did any decisionmaker reconcile that decision with the text of Rule 502(d) or the unambiguous PTO 14.

Because the district court did not articulate a reasoned basis for its waiver ruling, the pertinent question on mandamus is whether any rationale the record suggests could support it. None does.

*First*, the closest thing to an articulated rationale—the magistrate judge's concern that iterative re-designation "undermines the completion of discovery on any reasonable schedule"—is a case-management override that cannot stand. A district court's inherent or supervisory authority must yield to an express procedural rule. *See Dietz v. Bouldin*, 579 U.S. 40, 45 (2016); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–55 (1988). And the Advisory Committee specifically considered and rejected the view that iterative review in large-volume productions should limit Rule 502(d)'s protection.

*Second*, if the ruling reflects a silent exception for affirmatively de-

designated documents, Rule 502(d)'s text draws no such line. It addresses "disclosure" full stop, and PTO 14 affirmatively forecloses reliance on "the fact or circumstances of disclosure" in a clawback dispute.

*Third*, if the ruling reflects a sub silentio application of Rule 502(b)—the Rule's default standard, which requires a court to find that a disclosure was inadvertent—it fails on two levels. The court never made the inadvertence findings Rule 502(b) requires, and in any event PTO 14 is a Rule 502(d) order that displaces Rule 502(b)'s default standard. No rationale survives.

The error below is not isolated. In the years since Rule 502(d)'s enactment, district courts have atextually demanded "concrete directives" that expressly disavow each Rule 502(b) prong and have read Rule 502(b)'s inadvertence requirement into Rule 502(d) as an implicit precondition. And now here, the district court overrode a facially valid Rule 502(d) order without explanation.

The consequences of this uncertainty are tangible. Corporate parties that produce documents under Rule 502(d) orders—most acutely in MDL proceedings, where productions routinely run into the millions—cannot make production decisions in reliance on those orders if district

courts may retroactively strip their protection on efficiency grounds. "An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981). Rule 502(d) was enacted to deliver the predictability *Upjohn* demands. The decision below defeats it.

This Court should grant the writ and hold that Rule 502(d) orders must be enforced according to their plain terms, that district courts may not impose extra-textual limits of any kind—whether drafting preconditions, implied prerequisites, or case-management overrides—and that case-management concerns in particular supply no exception to the protection Congress enacted.

## ARGUMENT

The Petitioners correctly challenge the district court's adoption of the special master's extension of the magistrate judge's sua sponte waiver ruling, which declined to apply Rule 502(d) and the operative order to clawback disputes.

### I. Rule 502(d) supplies unconditional non-waiver protection, and PTO 14 should have exercised that protection in textbook fashion.

Rule 502(d) authorizes a federal court to enter an order that "the privilege or protection is not waived by disclosure connected with the litigation pending before the court." Fed. R. Evid. 502(d). The grant of authority is unconditional. Unlike Rule 502(b), which conditions non-waiver on a three-part reasonableness test tied to the inadvertent character of the disclosure, Rule 502(d) imposes no parallel qualification on the orders it authorizes. The Advisory Committee made the point express: a Rule 502(d) order "may provide for return of documents without waiver irrespective of the care taken by the disclosing party." Fed. R. Evid. 502 advisory committee's note.

That design was deliberate. Rule 502 was enacted to "provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information

covered by the attorney-client privilege or work-product protection." *Id.* The Senate Report framed the need in starker terms: "Current law on attorney-client privilege and work product is responsible in large part for the rising costs of discovery." S. Rep. No. 110-264, at 2 (2008). Rule 502(d) is the provision that delivers on Rule 502's predictability promise. Professor Daniel Capra—the Reporter to the Advisory Committee on Evidence Rules, the author of the Committee Note, and a co-author of the Rule itself—has explained that the Committee viewed Rule 502(d) as "the most important provision in the rule" because it allows parties to obtain certainty "at the time of production—rather than waiting for an after-the-fact determination of reasonableness." A64–A65 ¶¶ 5, 7. Rule 502(b), by contrast, is a "band aid" whose protection is "dependent on whether a court, after the fact" finds its three prongs satisfied. A65 ¶ 4.

The structural point follows directly. Rule 502(b) and Rule 502(d) are not cumulative requirements; they are alternatives. Rule 502(b) supplies a default waiver standard in the absence of a court order. Rule 502(d) allows the court to override that default with a non-waiver order that removes the case-by-case reasonableness inquiry entirely. Professor Capra has confirmed the point: the two subsections "are independent

protections," and "incorporating Rule 502(b) principles in a Rule 502(d) order makes no sense" because "[t]hose Rule 502(b) provisions apply by operation of law," and the function of a Rule 502(d) order is to displace them. A65–A66 ¶¶ 7–8. Treating Rule 502(b)'s requirements as preconditions to Rule 502(d)—whether as drafting requirements, implicit prerequisites, or after-the-fact overlays—collapses the structural distinction Congress built into the Rule.

Pretrial Order No. 14 is exactly the kind of order Rule 502(d) contemplates. It invokes the Rule by name and adopts its unconditional non-waiver language: "Pursuant to Federal Rule of Evidence 502(d), the production of any privileged or otherwise protected or exempted information in this case shall not be deemed a waiver or impairment of any claim of privilege or protection in this case." A184 ¶ 2. It also goes beyond the Rule's minimum. PTO 14 bars any party in a clawback dispute from relying on "the fact or circumstances of the disclosure." A186 ¶ 6. That provision is itself a pointed textual rejection of the case-specific circumstances inquiry the district court ultimately conducted. The order imposes no inadvertence requirement and no drafting precondition. Its terms, if enforced, resolve the question this petition

presents: the clawed-back documents must be returned unless Plaintiffs can establish that they are not privileged on the merits.

## II. The unexplained waiver ruling cannot be reconciled with Rule 502(d) under any possible rationale.

On top of the uncertainty ramifications of an unreliable Rule 502(d) order, here the district court bred more uncertainty with a lack of clarity. The district court did not hold that PTO 14 was ambiguous. It did not hold that PTO 14 failed to qualify as a Rule 502(d) order. It did not demand the "concrete directives" some district courts have required. And it made no inadvertence findings under Rule 502(b). Instead, it simply declined to apply Rule 502(d) and PTO 14 at all, based on no articulated legal theory. The magistrate judge's initial waiver ruling was issued sua sponte at a status conference, with no briefing from either side. A69–A76; A113–A114. The special master extended it without independent legal analysis. A32–A34; A60–A62. The district court affirmed in a single sentence. A3.

The absence of reasoning is not a matter of form. This case does not involve a considered interpretation of Rule 502(d) that is entitled to deference, but rather, an unreasoned override of a Rule and a court order whose terms are directly on point. The question on mandamus is whether

there is any rationale in the record that could sustain that override. Three come to mind. None does.

### A. Case-management concerns cannot override Rule 502(d).

The closest articulation of a rationale comes from the magistrate judge's denial of Uber's motion for reconsideration, which expressed concern that allowing Uber to "serially designat[e], de-designat[e], and re-designat[e] documents as privileged" would "undermine[] the completion of discovery on any reasonable schedule." A92; *see also* A72–A73. That is a case-management concern, and it cannot override an express procedural rule.

The Supreme Court has held that a district court's discretionary authority "must be a reasonable response to the problems and needs confronting the court's fair administration of justice," and "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz*, 579 U.S. at 45. *Dietz* drew that second limit directly from *Bank of Nova Scotia v. United States*, which held that federal courts "have no more discretion to disregard [a] Rule's mandate through the exercise of supervisory power than they do to disregard constitutional or statutory provisions." 487 U.S. at 255. To hold

otherwise, the Supreme Court explained, would "confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing." *Id.* at 254 (quoting *United States v. Payner*, 447 U.S. 727, 737 (1980)).

*Dietz* and *Bank of Nova Scotia* thus supply a clear rule: whether framed as inherent authority, supervisory power, or case management, a district court's discretion yields to an express procedural rule that governs the question before the court. This Court has similarly acknowledged that a district court's case-management authority is not boundless. *Cf. Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) ("[W]e join other circuits in holding that district courts have inherent power to control their dockets, but not when its exercise would nullify the procedural choices reserved to parties under the federal rules."). Here, the magistrate judge overrode Rule 502(d) and PTO 14 based on a case-management concern—that Uber's court-ordered re-designation effort risked turning the privilege process into a "merry-go-round" and "undermine[d] the completion of discovery on any reasonable schedule." A72–A73; A89. That is a paradigmatic discretionary rationale: it rests on the magistrate judge's assessment of

what the MDL's schedule could tolerate, not on any finding that Rule 502(d) or PTO 14 permitted the waiver ruling. *Dietz* and *Bank of Nova Scotia* foreclose that move.

The Advisory Committee, moreover, specifically anticipated and rejected the efficiency rationale the magistrate judge invoked. The Committee was aware that "in large scale productions of ESI, the producing party will be aware that many privileged documents will be turned over to the other side," and that iterative re-review is a predictable feature of large-volume discovery. A65–A66 ¶ 6. The Committee considered that reality and concluded that Rule 502(d) "could cover intentional disclosures as well as mistaken ones." A65 ¶ 6. In sum, the Committee's rationale was precisely that subjecting large productions to retrospective efficiency-based scrutiny would defeat the certainty Rule 502(d) was designed to provide. Professor Capra submitted his declaration to the special master saying as much in October 2025. The special master acknowledged receiving it and denied Uber's objection without engaging its substance. A60.

The serial-designation concern is also unmoored from the factual record. The 42 clawed-back documents represent 0.002% of the 1.7

million documents Uber produced. A21. There is no finding below that these clawbacks actually delayed the MDL's discovery schedule. Indeed, there was no briefing before the initial ruling from which any such finding could have emerged. But even a well-founded concern does not justify an override of Rule 502(d). *See In re Vioxx Prods. Liab. Litig.*, 2006 WL 1726675, at *3 (5th Cir. May 26, 2006) ("Traditional procedural protections are not limitlessly malleable. If staying within those traditional constraints takes more time than jumping their traces, that is not justification for doing so.").

### B. There is no exception to Rule 502(d) for de- and re-designating documents.

A second possibility is that the district court was implicitly carving out a categorical exception for privileged documents affirmatively—but mistakenly—de-designated after review. On this view, such productions are somehow qualitatively different from initial productions and fall outside Rule 502(d)'s protection. That theory cannot be reconciled with either the Rule or PTO 14.

Rule 502(d)'s text draws no distinction between types of disclosure. It states that privilege "is not waived by disclosure connected with the litigation"—full stop. Fed. R. Evid. 502(d). PTO 14 tracks that

unconditional language. And PTO 14 goes further: it affirmatively bars any party from relying on "the fact or circumstances of the disclosure" in a clawback dispute. A186 ¶ 6. Yet a silent de-designation exception does just that—it is a consideration about how and when the documents were produced, not whether they are privileged. The order expressly forecloses that consideration.

The Advisory Committee foreclosed it as well. A Rule 502(d) order, the Committee explained, may provide for return of documents "irrespective of the care taken by the disclosing party." Fed. R. Evid. 502 advisory committee's note; *see also* A65 ¶ 6 (explaining that the Committee "clearly intended that Rule 502(d) orders could cover intentional disclosures as well as mistaken ones"). A de-designation exception would drain Rule 502(d) of its core function, which is to permit predictable production decisions in high-volume discovery—including the iterative review-and-correction decisions that are unavoidable at MDL scale.

### C. If the waiver ruling rests on a sub silentio application of Rule 502(b), it was procedurally and substantively wrong.

A third possibility is that the magistrate judge was applying Rule

502(b)'s default standard under the surface—treating Uber's re-reviewed productions as disclosures that were not "inadvertent" within the meaning of Rule 502(b)(1) and therefore unprotected. This possibility fails twice over.

Procedurally, Rule 502(b) requires a district court to make findings on all three of its prongs. The court below made none. It did not evaluate whether the disclosures were inadvertent, whether Uber took reasonable steps to prevent disclosure, or whether Uber promptly took reasonable steps to rectify—the three findings Rule 502(b) mandates. It did not even identify the documents whose production was said to constitute waiver. That alone would require reversal on the merits.

Substantively, the premise collapses: PTO 14 is a Rule 502(d) order, and a Rule 502(d) order displaces Rule 502(b). That is what Rule 502(d) is for. *See* A65–A66 ¶¶ 7–8 (explaining that Rule 502(b) and 502(d) are "independent protections," and a Rule 502(d) order supersedes Rule 502(b)'s case-by-case analysis). A court that silently reverts to Rule 502(b) when an on-point Rule 502(d) order is in place has inverted the Rule's structure. Worse, it has imported into a Rule 502(d) case the very uncertainty the Rule was designed to eliminate—because the

inadvertence inquiry is precisely the kind of retrospective, circumstance-specific analysis that Rule 502(d) orders exist to avoid.

* * *

The three possible rationales share a common failing: each imposes on Rule 502(d) an extra-textual limit the Rule does not authorize. The first imports efficiency concerns the Advisory Committee rejected. The second imports a de-designation exception the Rule's text and PTO 14's terms foreclose. The third imports the very Rule 502(b) standard the Rule 502(d) order was entered to displace. On each, the ruling below fails.

True, a Rule 502(d) order is not inviolate. A party can still waive privilege notwithstanding a Rule 502(d) order by affirmatively using the otherwise privileged material offensively, "under the well-established doctrine that attorney-client privilege may not be used both as a sword and a shield." *Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943, 996 (N.D. Cal.), *rev'd and rem'd in part on other grounds*, 161 F.4th 1162 (9th Cir. 2025); *see also Thomas v. Marshall Pub. Schs.*, 690 F. Supp. 3d 941, 963 (D. Minn. 2023) ("While Rule 502(d) allows a party who discloses privileged material to claw them back without having to prove the disclosure was 'inadvertent,' it does not sanction the tactical, selective

disclosure of some privileged materials for use in litigation while withholding others on the same subject.”). Indeed, Congress intended that Rule 502(d) orders would obviate “the need for exhaustive pre-production privilege reviews, while still preserving each party’s right to assert the privilege *to preclude use in litigation* of information disclosed in such discovery.” Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence, 154 Cong. Rec. H. 7817 (2008), reprinted in Fed. R. Evid. 502 Advisory Committee Notes subdivision (d) (emphasis added).

This exception, however, proves the rule. Under any waiver theory the district court may have applied, Uber did nothing to use the 42 clawed-back documents offensively. It simply made a “disclosure connected with the litigation,” Fed. R. Evid. 502(d), during re-designation, exactly as Rule 502(d) was written and PTO 14 allowed.

## III. The error below is part of a broader pattern of departures from Rule 502(d)’s clear text that requires this Court’s guidance.

The ruling below is not an isolated one. Since Rule 502(d)’s enactment, district courts have, in different ways, departed from the Rule’s unconditional text. This Court’s intervention is needed to reaffirm

that Rule 502(d) orders mean what they say, regardless of the route by which a district court seeks to qualify them. *See Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977).

For example, some district courts have demanded that a Rule 502(d) order contain "concrete directives" expressly disavowing each prong of Rule 502(b) before the order will be enforced. *See, e.g.*, *U.S. Home Corp. v. Settlers Crossing, LLC*, 2012 WL 3025111, at *5 (D. Md. July 23, 2012).[3] This approach imposes drafting preconditions the Rule's text nowhere requires. Still other district courts have read Rule 502(b)'s inadvertence requirement into Rule 502(d) as an implicit precondition to the Rule's protection. *See, e.g.*, *Melendres v. Sheridan*, 2025 WL 3124741, at *11 (D. Ariz. Nov. 7, 2025); *Hostetler v. Dillard*, 2014 WL 6871262, at *4 (S.D. Miss. Dec. 3, 2014). That approach cannot be reconciled with Rule 502(d)'s text or with the Advisory Committee's express statement that a Rule 502(d) order operates "irrespective of the care taken by the disclosing party." Fed. R. Evid. 502 advisory committee's note.

Yet the treatment of PTO 14 here poses the greatest risk to Rule

---

[3] This was the issue in *In re Amazon.com, Inc.*, No. 25-3099 (9th Cir.), *mandamus denied*.

502(d) and, in turn, litigants. A district court that demands "concrete directives" is at least applying a rule, however mistaken. A district court that imports inadvertence is at least engaging with Rule 502(b)'s text. A district court that overrides Rule 502(d) on case-management grounds engages with neither. It substitutes docket-management judgment for the Rule's categorical protection, with nothing in the Rule's text or in this Court's precedents supplying a limiting principle. If case-management concerns can justify overriding a Rule 502(d) order, no corporate party producing documents under such an order in this Circuit can rely on its protection—because every MDL court and every complex-litigation docket has efficiency concerns that could support a similar override.

MDL proceedings involve the largest document volumes, the most compressed timelines, and the most iterative privilege review in federal civil litigation. Predictable non-waiver protection is most critical precisely where production volume is greatest and the risk of mistaken disclosure is highest. If MDL case-management concerns can override a Rule 502(d) order, those orders are worthless in the context where parties most need them. Corporate counsel producing millions of documents under an MDL Rule 502(d) order must be able to rely on the order at the

moment of production. Retroactive, efficiency-driven stripping of that protection destroys the reliance interest the Rule was enacted to create. *See* Edwin M. Buffmire, *The (Unappreciated) Multidimensional Benefits of Rule 502(d): Why and How Litigants Should Better Utilize the New Federal Rule of Evidence*, 79 Tenn. L. Rev. 141, 155–56 (2011) ("Congress articulated two purposes for Rule 502: cost reduction and predictability. Subsection (d) furthers both of these goals.").

That reliance interest is tangible here, not abstract. When Uber produced documents under PTO 14, it expressly invoked the order's non-waiver protection in the cover letter accompanying every production, stating that the production was "not intended to, and [did] not, waive any applicable privilege or other legal basis under which information may be protected from disclosure." A13. That contemporaneous reliance is documented in the record. The district court nevertheless retroactively stripped the protection Uber had expressly invoked. The problem, moreover, is institutional rather than individual. Every corporate party that has produced documents in this Circuit in reliance on a Rule 502(d) order faces the same risk. LCJ's members include many such parties. They cannot make production decisions in reliance on Rule 502(d) orders

if those orders are subject to after-the-fact override on case-management grounds.

The need for intervention is also immediate. Privilege disputes rarely reach the courts of appeals on direct appeal, and the error below has already propagated: the magistrate judge's sua sponte ruling was extended by the special master to additional documents without independent analysis, and the district court affirmed in a single sentence. A3; A32–A34; A60–A62. Each additional application compounds the uncertainty Rule 502(d) was enacted to prevent. The Supreme Court's admonition applies with equal force here: "An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn*, 449 U.S. at 393. Rule 502(d) was enacted to deliver the certainty *Upjohn* demands. A Rule 502(d) order that district courts may override on case-management grounds provides no such certainty. This Court should hold that Rule 502(d) orders must be enforced according to their plain terms, that district courts may not impose any extra-textual limits to those orders, and that case-management concerns provide no exception to the protection Congress enacted.

## CONCLUSION

Lawyers for Civil Justice respectfully requests that this Court GRANT mandamus and REVERSE the District Court's order.

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** __26-2390________________________________

I am the attorney or self-represented party.

**This brief contains __3,845________ words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ **X**] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _s/E. Todd Presnell_______________ **Date __April 21, 2026__**
*(use* "s/[typed name]" *to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I certify that on April 21, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, serving all counsel of record.

DATED: April 21, 2026.

Respectfully submitted,

*s/ E. Todd Presnell*
E. Todd Presnell
Timothy A. Rodriguez
Marlee G. Sacks
Bradley Arant Boult Cummings LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
615.244.2582

Anna Cecile Pepper
Bradley Arant Boult Cummings LLP
One Federal Place
1819 5th Avenue N
Birmingham, Alabama 35203
205.521.8000

*Attorneys for Amicus Curiae*
Lawyers for Civil Justice